**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DIANE J. SCHROER             ) | |
|                              ) | |
|    Plaintiff ) | |
|                              ) | |
| v.                           ) | Civil Action No: 05-1090 (JR) |
|                              ) | (ECF) |
| JAMES H. BILLINGTON,         ) | |
| Librarian, Library of Congress ) | |
|                              ) | |
|    Defendant ) | |
| _____) | |

**DEFENDANT'S MOTION TO DISMISS**

Defendant, James H. Billington, Librarian of Congress, respectfully moves, through counsel, for dismissal of this employment discrimination case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. As set forth in the accompanying memorandum of points and authorities, Plaintiff's claims should be dismissed for failure to state a claim upon which relief can be granted.

A proposed order granting the relief requested is attached.

August 1, 2005                                   Respectfully submitted,

 

_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

 

_____
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney

                                                                                            _____
JULIA K. DOUDS
Special Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C.  20530
(202) 514-5134

Of Counsel:
Evelio Rubiella
Office of General Counsel
Library of Congress

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DIANE J. SCHROER )<br>)<br>    Plaintiff )<br>)<br>v. )<br>)<br>JAMES H. BILLINGTON, )<br>Librarian, Library of Congress )<br>)<br>    Defendant )<br>_____) | Civil Action No: 05-1090 (JR)<br>(ECF) |

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant, by and through its undersigned counsel, respectfully moves this Court to dismiss the above-captioned complaint. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq, ("Title VII"), the Due Process Clause of the Fifth Amendment, the Equal Protection component of the Fifth Amendment Due Process Clause, and the "Library of Congress Act," 2 U.S.C. § 140. However, because Plaintiff is not a member of a "protected class" as required by Title VII, Plaintiff has failed to establish her *prima facie* case of discrimination. Further, Plaintiff fails to state a claim upon which relief can be granted under the Fifth Amendment, and under 2 U.S.C. § 140. Accordingly, Plaintiff's Complaint should be dismissed in its entirety and with prejudice. Defendant's factual and legal bases for bringing this motion are set-forth below.

## FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts for this motion come entirely from Plaintiff's civil Complaint and her

administrative EEO complaints of discrimination.[1]

At the time of Plaintiff's birth, Plaintiff's sex was classified as male. Complaint ¶ 13. Accordingly, Plaintiff's parents gave her the traditionally male name "David John." Id. In 1976, while in college, Plaintiff enlisted in the United States Army through the Reserve Officers Training Corps. Id., ¶ 9. Over the course of her twenty-five years of military service, Plaintiff served in a variety of command and staff positions. Id. In October 2003, Plaintiff took a civilian position with a Washington, D.C. firm that provides consulting services to agencies in the federal government. Id., ¶ 12.

In August 2004, Plaintiff applied for a position as a Terrorism and International Crime Research Analyst with the Congressional Research Service ("CRS") of the Library of Congress. Id. ¶ 1.[2] On October 27, 2004, Plaintiff was interviewed by three members of the CRS, Charlotte Preece, Steve Bowman, and Francis Miko. Id., ¶ 28. On or about December 15, 2004, Ms. Preece called Plaintiff to inform her that she intended to recommend to the Director of CRS that he recommend to the Director of Human Resources Services that Plaintiff be offered[3] the Terrorism and International Crime Research Analyst position. Id., ¶ 33. On or about December 16, 2004, at Plaintiff's suggestion, Plaintiff and Ms. Preece agreed to meet for lunch the

---

[1] For purposes of this Motion only, Defendants are accepting Plaintiff's statement of facts.

[2] During the time Plaintiff applied and interviewed for the Terrorism and International Crime Research Analyst position, Plaintiff used her then-legal name David J. Schroer and presented herself as a man. Id. ¶ 29. Plaintiff has since changed her legal name to Diane. Id. ¶ 43.

[3] Ms. Preece did not and does not have authority to offer any applicant a position for employment at the Library. Pursuant to Library regulations, a selecting official, like Ms. Preece, can only make a recommendation for selection to the Head of the Service Unit (e.g., CRS) and the Head of the Service Unit then requests that Human Resources Services extend the offer to the applicant. Library of Congress Regulations, LCR 2010-1 and LCR 2011-4.

following week to discuss Plaintiff's start date and other details about the position. Id., ¶ 37. On December 20, 2004, Plaintiff and Ms. Preece met for lunch. Id., ¶ 39. During lunch Plaintiff informed Ms. Preece that there was a "personal aspect" about her (Plaintiff) of which Ms. Preece needed to be aware; Plaintiff then went on to explain to Ms. Preece that Plaintiff was "transgendered, a transitioning male to female transsexual." See Ex.1, Pl's administrative EEO complaint (Section entitled: Monday, 20 Dec 04 - Lunch). Plaintiff further explained to Ms. Preece that Plaintiff was about to begin using a traditionally feminine name (Diane), presenting a traditionally feminine appearance, and otherwise presenting as a woman. Complaint ¶ 41. The following day, Ms. Preece called Plaintiff and told her that based upon Plaintiff's "circumstances," the Library had decided to not hire Plaintiff for the position. Id. ¶ 46.

On December 22, 2004, Plaintiff filed an EEO complaint of discrimination alleging that the offer of employment was revoked "based solely on [Plaintiff's] identification as a transgendered individual." See Ex. 1. Plaintiff cites to no factual basis or support for this allegation. Plaintiff then tried to recast her claim by filing a supplemental EEO complaint alleging that the offer of employment was revoked "based solely on [Plaintiff's] sex and gender identity; and [Plaintiff's] failure to conform to sex stereotypes." Again, Plaintiff cites to no factual basis or support for this claim. See Ex. 2, Pl's supplemental EEO complaint.

On June 2, 2005, Plaintiff filed this civil action allegedly to remedy what she now claims was "sex stereotyping and gender discrimination in employment." Complaint ¶ 2. Yet again, Plaintiff's Complaint is utterly devoid of any factual basis or support for this allegation. In reality, however, Plaintiff's Complaint sounds in transgender discrimination. Plaintiff's efforts appear to be based on her pursuit of an attempt to engraft "transgender" as a protected class into

Title VII.  See Complaint, ¶ 68 ("Defendant purposefully and intentionally discriminated against Plaintiff because she is transgender."); see also Ex. 1, EEO Complaint (The Library allegedly reversed the decision to hire Plaintiff "based solely on [her] identification as a transgendered individual").

Because transgendered individuals are not a protected class under Title VII, Plaintiff cannot establish her *prima facie* case of discrimination and Count I of her complaint must now be dismissed.  In addition, because Plaintiff has established neither a liberty nor a property interest, Plaintiff's allegations in Count II of her Complaint do not constitute a valid claim under the Fifth Amendment, and must be dismissed.  Further, because Title VII is the exclusive remedy for claims of discrimination, Count III must be dismissed.  Lastly, 2 U.S.C. § 140 does not confer a cause of action against the Library; therefore, Count IV must be dismissed.  Accordingly, Plaintiff's complaint fails to state a claim upon which relief can be granted and dismissal of her complaint, in its entirety, is warranted.

## ARGUMENT

### A. Standard of Review

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint.  Dismissal is appropriate where the "plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Browning v. Clinton, 292 F.3d 235, 241 (D.C. Cir. 2002) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The Court is to treat the complaint's factual allegations as true, see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993), and must grant Plaintiff "the benefit of all inferences that can be derived from the facts alleged," Schuler v. U.S., 617 F.2d 605, 608 (D.C. Cir. 1979).  However, "the Court

need not accept inference drawn by the plaintiff if those inferences are unsupported by the facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions." Akintomide v. U.S., 99-MS-0055 (PLF), 2000 WL 1693739, at *1 (D.D.C. Oct. 31, 2000) (citing National Treasury Employees Union v. U.S., 101 F.3d 1423, 1430 (D.C. Cir. 1996) and Kowal v. MCI Communication Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

In determining whether a complaint fails to state a claim, the Court may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which it may take judicial notice. See E.E.O.C. v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-625 (D.C. Cir. 1997). If the Court considers any other matters in deciding a Rule 12(b)(6) motion, the motion should be converted into a motion for summary judgment and treated pursuant to Rule 56. See Fed. R. Civ. P. 12(b)(6).

**B. Plaintiff Cannot Establish a *Prima Facie* Case of Discrimination**

In order to prevail in a case pursuant to Title VII, a plaintiff must initially establish at least a *prima facie* case of prohibited discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc) ("under the McDonnell Douglas Framework, the complainant must first establish a *prima facie* case"). As a general matter, to establish a *prima facie* case of discrimination, a plaintiff must demonstrate by a preponderance of the evidence that (1) she is a member of a protected group, (2) she has been the subject of an adverse personnel action; and (3) the unfavorable action gives rise to an inference of discrimination. Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999). In the instant matter, Plaintiff cannot establish a *prima facie* case of sex discrimination because she cannot satisfy the first prong of the McDonnell Douglas test, i.e., that she is a

member of a class protected by Title VII.

      A fundamental canon of statutory construction requires that words within the statute itself be given their ordinary, common meaning. Perrin v. U.S., 444 U.S. 37, 42 (1979). Therefore, the term "sex," as used in Title VII, prohibits discrimination based on the biological state of a male or female, or discrimination against "women because they are women and against men because they are men." Ulane v. Eastern Airlines, Inc., 742 F.2d 1081, 1085 (7th Cir. 1984). This narrow or traditional interpretation of the term "sex" is supported by Congress' continual refusal to amend the statute "even after courts have specifically held that Title VII does not protect transsexuals from discrimination" and by a complete lack of legislative history which would indicate that Title VII should apply to transsexual individuals or persons with a sexual identity disorder. Id. at 1085-86; see also Etsitty v. Utah Transit Auth., 2005 WL 1505610 (D. Utah June 24, 2005). The Ulane court went so far as to state: "We agree with the Eighth and Ninth Circuits that if the term 'sex' as it is used in Title VII is to mean more than biological male or biological female, the new definition must come from Congress." 742 F. 2d at 1986.

      District Courts in this Circuit, as well as in many other circuits, have never held that transsexuals are a protected group under Title VII. See Grossman v. Board of Education, 11 Fair Empl. Prac. Cas. (BNA) 1196 (D.N.J. 1975), aff'd mem., 538 F.2d 319 (3d Cir.), cert. denied 427 U.S. 897 (1976); Spearman v. Ford Motor Co., 231 F.3d 1080 (7th Cir. 2000); Sommers v. Budget Marketing, Inc., 667 F.2d 748 (8th Cir. 1982); Holloway v. Arthur Andersen & Co., 566 F.2d 659 (9th Cir. 1977), rev'd on other grounds, Schwenk v. Hartford, 204 F.3d 1187 (9th Cir. 2000); Brown v. Zavaras, 63 F.3d 967 (10th Cir. 1995); Etsitty v. Utah Transit Authority, 2005 WL 1505610 (D. Utah 2005); Oiler v. Winn-Dixie Louisiana, Inc., 2002 WL 31098541 (E.D.

La. 2002); Underwood v. Archer Management Services, Inc., 875 F. Supp. 96 (D.D.C. 1994); Dobre v. National R.R. Passenger Corp., 850 F.Supp. 284 (E.D. Pa. 1993); Powell v. Read's, Inc., 436 F. Supp. 369 (D.C. Md. 1977); Voyles v. Ralph K. Davies Medical Center, 403 F. Supp. 456 (N.D. Cal. 1975). The D.C. Circuit continues to rely on the Ulane precedent when deciding incidents of alleged discrimination, maintaining that transsexuals are not members of a protected group under either Title VII or the District of Columbia statutes. See, Underwood v. Archer Management Services, Inc., 857 F. Supp. 96, 98 (D.D.C. 1994) (discussing the narrow scope of Title VII and refusing to grant protection to transsexuals under the District of Columbia Human Rights Act); Doe v. U.S. Postal Service, 1985 WL 9446, *2 (D.D.C. 1985) ("[W]e agree with the court in Ulane, that a 'prohibition against discrimination based on an individual's sex is not synonymous with a prohibition based on an individual's sexual identity disorder or discontent with the sex into which they were born.'").

Plaintiff's alternative argument based on gender stereotype discrimination is equally inappropriate because, as the court noted in Etsitty, above, even the medical establishment "does not equate transsexualism with a mere failure to conform to [gender] stereotypes." 2005 WL 1505610 at *5. As noted by the Court in Etsitty, such a disorder is not meant to describe a person's non-conformity with stereotypical sex-role behavior, such as "'tomboyishness' in girls or 'sissyish' behavior in boys . . . [but] a profound disturbance of the individual's sense of identity with regard to maleness or femaleness." Id. at * 5 (quoting *American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders*, 564 (4th ed. 1994)). As the Court in Etsitty therefore found, "[t]here is a huge difference between a woman who does not behave as feminine as her employer thinks she should, and a man who is attempting to change

his sex and appearance to be a woman." Id. Hence, transsexualism, or Gender Identity Disorder, encompasses more drastic behavior than a mere failure or inability to adhere or conform to accepted sex stereotypes, as Plaintiff wishes this Court to believe. As such, this Court should not extend the purview of Title VII to Plaintiff since her transsexualism is not merely a failure on her part to conform to sex stereotypes. Rather, it is a profoundly life-altering condition which Congress has never covered under Title VII.

Moreover, while some courts attempt to grant transsexuals protection under Title VII by circumventing the protected-class requirement, Etsitty acknowledges that applying the gender-nonconformity argument to transsexuals creates a slippery slope and requires "a complete rejection of sex-related conventions . . . never contemplated by the drafters of Title VII." Id. at *6. Thus, everything associated with a specific sex (e.g., dress codes or separate restrooms) would have to be eliminated in the workplace; if an employer allows a transsexual to flout the rules, then it must also allow non-transsexuals to do the same. Id. Because Plaintiff's claim fails to place her within a protected class, requires overruling established precedent, and requires the Court to redefine the scope of a federal statute, her Title VII claim should be dismissed.

## C. Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted Under the Fifth Amendment

### 1. Due Process

In Count II of Plaintiff's Complaint, Plaintiff alleges that "[Defendant] by rescinding the offer of employment with the [CRS] and otherwise refusing to hire Plaintiff because of her decisions regarding her course of medical treatment for gender dysphoria . . . violated rights guaranteed to the Plaintiff under the Due Process Clause of the Fifth Amendment of the

Constitution." Complaint ¶ 63.

To invoke the Due Process clause, a Plaintiff must first demonstrate that there has been a deprivation of life, liberty, or property interest. Matthews v. Eldridge, 424 U.S. 319, 332 (1976). Only if a plaintiff can make this showing need the Court even address the question of "how much process is due." Cleveland Board of Education v. Loudermill, 470 U.S. 532, 541 (1985). However, because Plaintiff has established neither a liberty nor a property interest, Plaintiff's allegations in Count II of her Complaint do not constitute a valid claim under the Fifth Amendment and must be dismissed.

### a. Plaintiff Has Not Established a Liberty Interest

In order to maintain a claim under the Fifth Amendment for deprivation of liberty, Plaintiff must allege an injury to her reputation that rises to the level of dishonesty or immorality. See generally Siegert v. Gilley, 500 U.S. 226 (1991); Paul v. Davis, 424 U.S. 693 (1976). Stigmatizing conduct is a charge that the individual was guilty of dishonestly or immorality. Board of Regents v. Roth, 408 U.S. 564, 573 (1972). "[C]harges of substandard performance do not amount to accusations of dishonesty or immorality or anything remotely approaching the nature of the degrading and unsavory stigma which would expose an employee to public embarrassment or ridicule." Matthews v. Hesburgh, 504 F. Supp. 108, 116 (D.D.C. 1980), aff'd 672 F.2d 895 (D.C. Cir. 1981). Additionally, the agency's alleged stigmatizing actions must be made public. Doe v. Cheney, 885 F.2d 898, 910 (D.C. Cir. 1989). In O'Donnell v. Barry, 148 F. 3d 1126 (D.C. Cir. 1998), this Circuit noted that "only defamation that is 'accompanied by a discharge from government employment or at least a demotion in rank and pay' is actionable." Id. at 1140. See also, Orange v. District of Columbia, 59 F.3d 1267 (D.C.

Cir. 1995) (firing without any associated public statements is not actionable).  In this case, Plaintiff does not allege, much less establish that any publication of critical remarks has been made by the Library that would support a claim that her reputation has been damaged in the workplace or in the community.  Therefore, Plaintiff's claims regarding any Fifth Amendment due process rights with regard to her liberty interest must be dismissed.

### b.  Plaintiff Has Not Established a Property Interest

As stated above, Plaintiff alleges that the decisions of the Defendant not to hire her deprived her of procedural due process rights under the Fifth Amendment.  In Board of Regents v. Roth, 408 U.S. 564 (1972), the Supreme Court analyzed whether or not the failure to renew a limited term employment contract was the denial of a property right and decided it was not.  The Court in Roth stated "[t]o have a property interest in a benefit a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  408 U.S. at 577.

Courts have held that property interests in employment can be "derived from independent sources, such as statutes, regulations, ordinances, or 'existing rules or understandings . . . that secure certain benefits and that support claims of entitlement to those benefits.'"  Dove v. Gates, 981 F.2d 1316, 1320 (D.C. Cir.), cert denied sub nom. Doe v. Woolsey, 510 U.S. 928 (1993), quoting Board of Regents v. Roth, 408 U.S. at 577.  But in this case, Plaintiff does not allege that a statute, regulation, ordinance, or "existing understandings" exist that create any entitlement to certain employment benefits.

Moreover, even though such property interest may exist, courts have held that a person's interest in government employment is not a property right.  "Property interests are not created by

-10-

the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from independent sources such as state laws'" or statutes. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538 (1985), quoting Board of Regents v. Roth, 408 U.S. 564, 576-578 (1978). The categories of constitutionally protected "substance and procedure are distinct. . . . 'Property' cannot be defined by the procedures provided for its deprivation. . . . [T]he legislature may elect not to confer a property interest in [certain] public employment." Loudermill, 470 U.S. at 541 (internal citations and quotations omitted).

An employee's interest in continued government employment does not by itself create a property right under the Fifth Amendment. Doe v. Department of Justice, 753 F.2d 1092, 1100 & n. 8 (D.C. Cir. 1985) (no property interest in continued employment for excepted service attorney); Witty v. Jones, 563 F. Supp. 415 (D.D.C. 1983). Therefore, Plaintiff's claims regarding any Fifth Amendment due process rights with regard to her property interest must be dismissed.

**2. Equal Protection**

In Count III of Plaintiff's Complaint, Plaintiff alleges that Defendant has "engaged in impermissible sex discrimination in violation of the equal protection component of the Fifth Amendment's Due Process Clause." See Complaint ¶ 66. However, pursuant to Brown v. General Services Administration, "the established principle leads unerringly to the conclusion that Section 717 of the Civil Rights Act of 1964, as amended, [i.e., Title VII], provides the exclusive judicial remedy for claims of discrimination in federal employment." 425 U.S. 820,

835 (1976).[4]  In <u>Lutes v. Goldin</u>, this Circuit explicitly recognized its reliance on <u>Brown v. GSA</u>: "Courts in this jurisdiction have relied upon <u>Brown</u> . . . repeatedly to bar constitutional challenges arising under claims of federal employment discrimination."  62 F. Supp.2d 118, 134 (D.D.C. 1999).  <u>See</u> <u>also</u> <u>Williams v. Bentsen</u>, 1993 WL 469110 (D.C. Cir. 1993) (refusing to allow plaintiff to assert claims under the Fifth Amendment when agency failed to select plaintiff for position); <u>Wagner v. Taylor</u>, 836 F.2d 566, 576-77 n.76 (D.C. Cir. 1987) ("[F]ederal employees cannot assert additional or alternative claims predicated directly upon the Constitution, but must use Title VII as the sole means of litigating their grievances."); <u>Ethnic Employees of the Library of Congress v. Boorstin</u>, 751 F.2d 1405, 1414-15 (D.C. Cir. 1985) ("Allowing federal employees to recast their Title VII claims as constitutional claims would clearly threaten the [legislative] policies [underlying Title VII]."); <u>Kizas v. Webster</u>, 707 F.2d 524, 543 (D.C. Cir. 1983) (holding that Title VII is the exclusive means for bringing an

---

[4]  To circumvent the holding in <u>Brown</u>, Plaintiff may attempt to argue that because she does not have a remedy under Title VII, the Court should permit her to recast her Title VII claim as a constitutional claim.  Plaintiff's argument would not be meritorious because Title VII is a comprehensive remedial scheme even though it may not remedy every conceivable type of discrimination.  <u>See</u> e.g., <u>Schweiker v. Chilicky</u>, 487 U.S. 412, 108 S.Ct. 2460 (1988), noting that "[t]he absence of statutory relief . . . for a constitutional violation . . . does not by any means necessarily imply that courts should award damages against the officers for that violation." <u>Id</u>. at 2467; <u>Spagnola v. Mathis</u>, 859 F. 2d 223 (D.C. Cir. 1988), holding that " . . . courts must withhold their power to fashion damages remedies when Congress has put in place a comprehensive system to administer public rights, has "not inadvertently" omitted damages remedies for certain claimants, and has not plainly expressed an intention that the courts preserve *Bivens* remedies."  <u>Id.</u> at 228.  Furthermore, Plaintiff cannot assert a claim for monetary damages under the Constitution as there has been no waiver of sovereign immunity.  <u>See</u> e.g. <u>FDIC v. Meyer,</u> 510 U.S. 471, 475 (1994).  Thus, because Congress has put in place a comprehensive system (Title VII), has not inadvertently omitted a remedy for transgender discrimination, and has not plainly expressed an intention that the courts preserve constitutional remedies for Plaintiff's discrimination claim, Plaintiff's claim pursuant to the Fifth Amendment must be dismissed.

employment discrimination claim); Torre v. Barry, 661 F.2d 1371, 1374 (D.C. Cir. 1981) ([A] federal employee who is covered by section 717 may not sue under . . . the Fifth Amendment."); Worth v. Jackson, 2005 WL 1705499 (D.D.C. 2005).  Further, Plaintiff herself concedes that pursuant to Brown v. GSA, she is precluded from bringing a claim of discrimination under the Constitution.  See Complaint ¶ 66.  Moreover, Plaintiff has offered no compelling reason for this Court to deviate from the long standing rule in Brown v. GSA.  Thus, Plaintiff has failed to state a claim upon which relief can be granted under the equal protection component of the Fifth Amendment and Count III of Plaintiff's Complaint should be dismissed.

**D.  2 U.S.C. § 140**

In Count IV, Plaintiff alleges that she was "not only fit for the duties of Terrorism Research Analyst but also the most qualified for the position."  See Complaint ¶ 72.  Plaintiff therefore, claims that the Library violated § 140 because she was "entitled to have her application considered 'solely with reference to [her] fitness for the particular duties' of the ...position."  See Complaint, ¶ 71.  Plaintiff infers in Count IV of her Complaint that § 140 confers on her an independent cause of action for her non-selection by the Library.  Plaintiff is incorrect. As noted above, Title VII is the exclusive remedy for claims of employment discrimination against the federal government.  Brown v. GSA, 425 U.S. at 829-33.  Nothing in the language of § 140 or in the legislative history of the statute indicates or hints at any type of intention on the part of the sovereign to waive its immunity to suit or creates any type of additional judicial remedy to a claim of employment discrimination which could not otherwise be brought under Title VII.[5]  Therefore, Count IV of Plaintiff's complaint should be dismissed.

---

[5] § 140 states in its entirety:  All persons employed in or about said Library of Congress under the Librarian shall be appointed solely with reference to their fitness for the particular duties."  While there is

**CONCLUSION**

For all of the foregoing reasons, Defendant respectfully requests that Plaintiff's Complaint be dismissed in its entirety and with prejudice.

August 1, 2005                                  Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


_____
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney


_____
JULIA K. DOUDS
Special Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C.  20530
(202) 514-5134

Of Counsel:
Evelio Rubiella
Office of General Counsel
Library of Congress

---

no Congressional debate regarding the statute, the Librarian of Congress' letter to the Senate explaining his initial selection of Library staff states a broad list of factors determining "fitness."  S. Doc. 42, 55th Cong. 2d session (Jan. 5, 1898).  The Senate Document indicates that the Librarian selected applicants based on "character, ability, and education of the candidates, as well as from personal observation."  Id.  A board--the precursor to the Library's modern-day human resources department–was chosen by the Librarian to review future candidates, advise the Librarian on appointments, and was instructed to consider "manners, personal habits and standing" of applicants among other criteria.  Id.