UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DIANE J. SCHROER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | Civil Action No. 05-1090 (JR) |
| ) | (ECF) |
| DR. JAMES BILLINGTON, ) | |
| In his official capacity ) | |
| as Librarian of Congress ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S MOTION IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

On August 1, 2005, Defendant ("Defendant," or "Library") in the above matter filed a Motion to Dismiss Plaintiff's complaint. On September 27, 2005, Plaintiff filed a Motion in Opposition to Defendant's Motion to Dismiss. Defendant now files its reply memorandum to address Plaintiff's Motion in Opposition ("Plaintiff's Opposition"), and in further support of its Motion to Dismiss.

**ARGUMENT**

Even accepting Plaintiff's version of events as true,[1] Plaintiff cannot establish a *prima facie* case of sex discrimination under Title VII because she is not a member of a protected class. Specifically, Plaintiff cannot establish that transsexual or transgender individuals, like herself, are a protected class covered by Title VII. Moreover, Plaintiff cannot establish that the

---

[1] For the purposes of Defendant's Motion to Dismiss and Reply only, Defendant is accepting Plaintiff's statement of facts as true. In doing so, Defendant does not waive its right to challenge any and all of the facts, statements, assertions and allegations made by Plaintiff in her Complaint and her Opposition to Defendant's Motion to Dismiss.

prohibition on discriminating against a person because of their non-conformity to a particular gender stereotype is synonymous with a prohibition based on a person's sexual identity disorder or discontent with the sex into which they were born.

Plaintiff also fails to state a cause of action under the Fifth Amendment of the United States Constitution. Specifically, Plaintiff cannot establish that she has a protected liberty interest in her decision to undergo gender reassignment surgery or in employment with the Library. There is no constitutional privacy interest implicated in a person's decision to undergo a medical procedure to change their sex. Moreover, Plaintiff cannot establish any liberty interest that defendant infringed upon in denying her employment at the Library. Even assuming that Plaintiff can establish a protected liberty interest in employment with the Library, she cannot establish that the denial of employment deprived her of that interest.

Lastly, Plaintiff cannot establish a private cause of action pursuant to 2 U.S.C. § 140. First, the language of the statute in no way implies a private cause of action for applicants who are not selected for employment–for whatever reason–with the Library. Second, even assuming that a private cause of action can be implied from the statute, there is no express waiver of sovereign immunity evidenced in the text of the statute. Therefore, the Library cannot be sued pursuant to this statute.

In consideration of the foregoing, Plaintiff's complaint should be dismissed in its entirety and with prejudice.

**A.  Plaintiff Cannot Establish That She Is A Member Of A Protected Class Or That Her Gender Identity Disorder Is Synonymous With A Failure To Conform to Sex Stereotypes.**

**1. Plaintiff is Not a Member of a Protected Class Under Title VII**

As previously delineated in Defendant's Motion, every federal court, including the District Court for the District of Columbia, that has dealt directly with this issue has held that Title VII does not prohibit discrimination based on an individual's transsexualism or Gender Identity Disorder.  See <u>Ulane v. Eastern Airlines, Inc.</u> 742 F. 2d 1081 (7th Cir. 1984); <u>Sommers v. Budget Mkg., Inc.</u>, 667 F. 2d 748 (8th Cir. 1982); <u>Underwood v. Archer Management Services, Inc.</u>, 875 F. Supp. 96, 98 (D.D.C. 1994); <u>see</u> <u>also</u> Defendant's Motion at 6-7.

Indeed, since the decision in <u>Ulane</u>, members of Congress have attempted to amend Title VII to prohibit discrimination based on sexual orientation.  As noted by the court in <u>Oiler v. Winn-Dixie Louisiana, Inc.</u>, from 1981 through 2001, thirty-one proposed bills were introduced in the United States House of Representatives and the United States Senate attempting to expand Title VII to prohibit discrimination on the basis of sexual orientation.  2002 WL 31098541 *4 n. 53 (E.D. La. Sept. 16, 2002) (listing proposed bills).  Every single one of these attempts has failed.  <u>Id.</u>  The rejection of these proposed amendments shows that Congress intended the prohibition against sex discrimination in Title VII to be narrowly interpreted.  Moreover, rejection of these amendments by Congress followed in the wake of court decisions which had held that transsexuals were <u>not</u> covered under Title VII.  <u>Ulane</u>, <u>supra</u> at 1086 (citations omitted). As the <u>Ulane</u> court correctly reasoned:

> "[T]o include transsexuals within the reach of Title VII far exceeds mere statutory interpretation.  Congress had a narrow view of sex in mind when it passed the Civil Rights Act, and it has rejected subsequent attempts to broaden the scope of its original interpretation.  For us to now hold that Title VII protects transsexuals would take us out of the realm of interpreting and reviewing and into the realm of legislating."

<u>Id</u>, <u>citing to Gunnison v. Commissioner</u>, 461 F.2d 496, 499 (7th Cir. 1972).

Contrary to Plaintiff's contention, the law is clear that Title VII does not cover transsexuals and therefore provides no cause of action for discrimination on the basis of a person's status as a transsexual. Therefore, Plaintiff's Title VII claim fails to place her within a protected class and should be dismissed.

**2. Plaintiff's Gender Identity Disorder is Not Synonymous with a Failure to Conform to Sex Stereotypes**

As explained above, even though Congress clearly did not include transsexuals as a protected class under Title VII, Plaintiff asserts that based on the Supreme Court's holding in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), she can nevertheless state a cognizable Title VII claim by alleging that she was discriminated against because she failed to conform to sex stereotypes.

In Price Waterhouse, the plaintiff - a female accountant - was denied partnership in an accounting firm because some partners in the firm thought she did not conform to their beliefs of how women should behave and dress in the workplace. The plaintiff in Price Waterhouse was told that she could improve her chances of promotion if she were to take "a course at charm school," and walk more femininely, talk more femininely, dress more femininely, wear makeup, have her hair styled and wear jewelry. Id. at 235. The Supreme Court held that "In the context of sex stereotyping, an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender." Id. at 251. Thus, Price Waterhouse stands for the proposition that an employer cannot use stereotypical male traits such as "aggressiveness" as a criteria for earning partnership status, but then punish a female employee who possesses those traits just because the female employee does not conform with

the employer's ideas about how women should behave. Plaintiff's assertion in this case of disparate treatment based on her being transgendered is not remotely similar to the assertions made by the plaintiff in Price Waterhouse.

Plaintiff attempts to stretch the Price Waterhouse doctrine too far in asserting that her transsexualism, or Gender Identity Disorder, is synonymous with a failure to conform to sex stereotypes.[2] Price Waterhouse stands for no such thing. As correctly noted by the court in Etsitty v. Utah Transit Authority, 2005 WL 1505610 (D. Utah 2005): "There is a huge difference between a woman who does not behave as femininely as her employer thinks she should, and a man who is attempting to change his sex and appearance to be a woman. Such a drastic change cannot be fairly characterized as a failure to conform to stereotypes." If this Court were to adopt Plaintiff's reasoning, then everything that could be labeled as "sex stereotyping" would be prohibited, something that would clearly yield absurd results. For example, under Plaintiff's theory any man, whether transsexual, gay, or straight, could come to work in a dress and makeup, appear and act as a woman, and use the women's restrooms. Clearly such "a complete rejection of sex-related conventions. . . [was] never contemplated by the drafters of Title VII." Id. at *6.

Plaintiff contends that a majority of federal circuits have held that Gender Identity Disorder is synonymous with a failure to conform to sex stereotypes. See Plaintiff's Opposition at 13-15. Plaintiff is wrong and the numerous cases cited by Plaintiff are irrelevant. In fact, the

---

[2] As noted in Defendant's Motion to Dismiss, even the medical community concludes that Gender Identity Disorder is not meant to describe a person's non-conformity with stereotypical sex-role behavior. See Defendant's Motion at 7-8.

cases cited by Plaintiff[3] for the proposition that Gender Identity Disorder is synonymous with a failure to conform to sex stereotypes did not address this issue at all and most involved the unrelated issue of same-sex sexual harassment under authority of Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75 (1998). Oncale, like the cases relied upon by Plaintiff (listed in footnote 3, below), was a sexual harassment case and had nothing to do with whether an individual's Gender Identity Disorder is synonymous with a failure to conform to a sex stereotype.

Plaintiff also relies upon several state law cases to support her proposition. However, the two state law cases highlighted by Plaintiff both expressly acknowledge that Title VII offers no such protection to transsexuals. In Maffei v. Kolaeton Industry, Inc., 626 N.Y.S.2d 391 (N.Y. Sup. 1995), a transsexual employee sued for hostile work environment sex discrimination pursuant to New York State and City anti-discrimination laws. The court in Maffei expressly acknowledged that transsexuals are not covered by Title VII stating that "the federal courts that have considered the issue at hand have unanimously held that the Title VII prohibition does not apply to transsexuals." 626 N.Y.S. 2d at 394. The court in Mafffei went on to hold that contrary to Title VII , New York City law protected transsexuals from discrimination. Likewise, in the case of Enriquez v. West Jersey Health Systems, 777 A. 2d 365 (N.J. Super. A.D., 2001), a New

---

[3] The cases cited by Plaintiff are: Doe v. City of Belleville, 119 F. 3d 563 (7th Cir. 1997); Medina v. Income Support Div., 413 F. 3d 1131 (10th Cir. 2005); Nichols v. Azteca Rest. Enters., Inc., 256 F. 3d 864 (9th Cir. 2001); Bibby v. Philadelphia Coca Cola Bottling Co., 260 F. 3d 257 (3d Cir. 2001); Higgins v. New Balance Athletic Shoe, Inc., 194 F. 3d 252 (1st Cir. 1999); Centola v. Potter, 183 F. Supp. 2d 403 (D. Mass. 2002); Heller v. Columbia Edgewater Country Club, 195 F. Supp. 2d 1212 (D. Or. 2002); Ianetta v. Putnam Invs. Inc., 142 F. Supp. 2d 131, 134 (D. Mass. 2001); Schwenk v. Hartford, 204 F. 3d 1187 (9th Cir. 2000); Rosa v. Park West Bank & Trust Co., 214 F. 3d 213 (1st Cir. 2000); Only the Rosa and Schwenk cases were not sexual harassment cases. However, neither the Schwenk nor Rosa cases had anything to do with Title VII. Instead, the Rosa and Schwenk cases dealt with other civil rights laws; specifically, the Equal Opportunity Credit Act and the Gender Motivated Violence Act. Whether or not a transgender individual can state a cognizable claim under the Equal Opportunity Credit Act or the Gender Motivated Violence Act is irrelevant to the instant matter.

Jersey state trial court held that New Jersey <u>state</u> anti-discrimination law protected transsexuals. The Court also acknowledged that Title VII did not protect transsexuals: ("Moreover, the federal courts construing Title VII have unanimously concluded that discrimination on the basis of gender dysphoria is not sex discrimination.") <u>See</u> <u>Enriquez</u>, 777 A.2d at 371. More important, the cases relied upon by Plaintiff are irrelevant and meaningless here because Plaintiff's claims are not brought under New York or New Jersey state law.

Therefore, because Plaintiff has failed to show that Gender Identity Disorder is synonymous with sex stereotyping, and has failed to show that transgendered individuals are a protected class under Title VII, she has failed to establish her *prima facie* case of discrimination, Plaintiff's Title VII claim should be dismissed.

**B.  Plaintiff Cannot Show That Her Non-Selection For A Position In The Library Violated Any Rights Under The Fifth Amendment Of The Constitution.**

Plaintiff has not suffered any deprivation of a liberty interest as a result of the Library's decision to not select her for the position of Research Analyst in Terrorism and International Crime. In order to invoke the Due Process Clause, a plaintiff must first demonstrate that there has been a deprivation of life, liberty, or a property interest. <u>Matthews v. Eldridge,</u> 424 U.S. 319, 332 (1976). The D.C. Circuit has previously held that, "[t]he government's relationship with an applicant for a particular job does not implicate the due process clause's protection of liberty interests." <u>White v. OPM</u>, 787 F.2d 660, 665 (D.C. Cir. 1986). Merely applying for a position with the federal government does not establish a liberty interest. <u>Sierzega v. Ashcroft,</u> 358 F.Supp. 2d 3, 5 (D.D.C. 2005). Moreover, even assuming that an applicant for federal employment has a liberty interest in employment, a conditional offer of employment which is later retracted does not deprive the applicant of that interest. <u>Id</u>. In determining if a liberty

7

interest is implicated in a particular applicant's non-selection for employment with the federal government, a Court must determine: (1) whether the government altered the status of the applicant in such a way so as to foreclose the applicant's future employment opportunities; and (2) whether the change in status was accompanied by injury to the applicant's "good name, reputation, honor, integrity, or imposition of a similar stigma." Id.

Plaintiff cannot establish that she has a liberty interest in undergoing gender reassignment surgery. Plaintiff alleges that the withdrawal of the Library's "offer of employment" violates her right to privacy under the Due Process Clause because she has a right to change her sex without adverse consequences from the government. See Plaintiff's Opposition at 27-28. Even assuming that Plaintiff's decision to change her sex from male to female was the reason why the Library decided not to hire her for a position, Plaintiff's decision to undergo such a procedure does not implicate any privacy right protected by the Constitution.[4] This Court was previously confronted with a case very similar to Plaintiff's in Doe v. USPS, 1985 WL 9446 (D.D.C. 1985). The plaintiff in Doe also alleged a violation of her constitutional right to privacy when the Postal Service withdrew its offer of employment after it learned that she would be undergoing gender reassignment surgery to become a woman and wanted to report to work as a woman. Id at *1. This Court held that there was no right to privacy in a person's decision to undergo gender reassignment surgery finding that:

> "While it could be argued that the personal decision to undergo a socially controversial surgical procedure ought to be protected against government reprisal, we have no legal basis...for holding that there is a constitutional right to privacy which protects persons in the plaintiff's situation."

---

[4] The Library disputes the facts set forth by Plaintiff in her Complaint with respect to the reasons for her non-selection for the position of Analyst in Terrorism and International Crime. For purposes of this Motion only however, the Library will assume that the facts set forth by Plaintiff in her Complaint are true.

Id at *4. None of the decisions cited by Plaintiff in her Opposition stand for the proposition that there is a general right to privacy protecting all medical decisions. See Plaintiff's Opposition at 27-33. To the contrary, they are consistent with the U.S. Supreme Court's finding of an implicit right to privacy only with respect to a person's personal autonomy with respect to fundamental decisions "relating to marriage, procreation, contraception, family relationships, child rearing, and education." Planned Parenthood v. Casey, 505 U.S. 833, 851 (1992). The Court in Casey also noted a constitutionally protected privacy interest limiting the government's power to mandate medical treatment or to bar its rejection. Id at 857. Plaintiff's decision to undergo gender reassignment surgery implicates no fundamental personal decision such as marriage, procreation, contraception, family relationships, child rearing, or education. Moreover, Plaintiff's desire to undergo gender reassignment surgery is not mandated by the government nor does this case present an issue with respect to her rejection of such a government-mandated medical procedure. In no way do any of the cases cited by Plaintiff in her Opposition stand for the proposition that there is a general right to privacy protecting all medical decisions nor do the cases to which she cites in any way stand for the proposition that there is a liberty interest in an individual's decision to undergo gender reassignment surgery. Therefore, Plaintiff cannot establish that her decision to undergo gender reassignment surgery implicates any recognized liberty interest.

Even assuming that Plaintiff has identified a protected liberty interest in her decision to undergo sexual reassignment surgery, Plaintiff cannot establish that the Library's decision to not select her for a position deprived her of that interest. First, Plaintiff was clearly not "foreclosed" from other employment opportunities in her field nor is there any allegation that other employers

will have knowledge of the Library's decision to deny her a position.  Sierzega, supra at *5.

Therefore, Plaintiff has not alleged conduct by the Library that, if true, would constitute a

foreclosure of her future employment opportunities in her field.  Second, Plaintiff has alleged no

public disclosure–except by herself in filing the instant complaint- or any reason to anticipate

public disclosure by the Library as to the basis for the Library's decision not to hire her.

Therefore, in the absence of public disclosure by the Library, the Plaintiff's reputation "cannot

be tarnished and the potential for stigmatization cannot be realized."  Id at *6.  For the foregoing

reasons, Plaintiff has not stated a claim upon which relief can be granted and the Court should

dismiss Count II of Plaintiff's complaint.

**C.  2 USC § 140 Does Not Confer a Private Cause of Action Nor Does It Waive the Library's Sovereign Immunity.**

2 USC § 140 does not confer on Plaintiff a cause of action against the Library.  It is a

well-settled principle that the United States may not be sued without its consent.  Block v. North

Dakota, 461 U.S. 273, 287 (1983); see also Library of Congress v. Shaw, 478 U.S. 310, 315

(1986); Sierra Club v. Lujan, 972 F.2d 312, 314 (10 Cir. 1992).  As an agency of the United

States, sovereign immunity protects the Library.  In Re University Medical Center, 973 F.2d

1065, 1085 (3d Cir. 1992).  A waiver of sovereign immunity by the government must be

"express and unequivocal" and cannot be implied.  Cabeza de Vaca Land & Cattle Co., v.

Babbit, 58 F.Supp. 2d 1226, 1229 (D. Colo. 1999), citing to Irwin v. Department of Veterans

Affairs, 498 U.S. 89, 95 (1990).  Not only does the language in 2 U.S.C. §140 not contain any

indication of a congressional intent to create a private cause of action, there is absolutely no

express waiver of sovereign immunity in the language of the statute.  Plaintiff posits that the

four-part test enunciated in Cort v. Ash, 422 U.S. 66 (1975), "implies a private right of action"

for herself under 2 U.S.C. § 140.  See Plaintiff's Opposition at 24.  Plaintiff's premise is incorrect.

Because sovereign immunity is jurisdictional in nature, the first inquiry in any case involving a government agency is whether Congress unequivocally expressed a waiver of sovereign immunity in the statute at issue.  FDIC v. Meyer, 510 U.S. 471, 475 (1994); see also Antol v. Perry, 82 F.3d 1291 (3d Cir. 1996)(finding that although district court reached correct result regarding whether Congress intended a private cause of action under Vietnam Era Veterans' Readjustment Assistance Act, it should have first considered whether the law contained an express waiver of Defense Department's sovereign immunity).  Nothing in the single sentence that comprises 2 U.S.C. § 140 evinces an unequivocal and express consent on the part of the United States to be sued.  Considering the complete absence of any language in 2 U.S.C. §140 waiving the Library's sovereign immunity, Plaintiff cannot prevail on this issue.  Therefore, this Court should dismiss Count IV of Plaintiff's complaint.[5]

## CONCLUSION

---

[5] Notwithstanding the complete bar to jurisdiction imposed by the lack of any express and unequivocal waiver of sovereign immunity in 2 U.S.C. § 140, the Library also disputes Plaintiff's contention that the lack of explicit language in the statute precluding private causes of action can be read to infer just such a private cause of action.  See Plaintiff's Opposition at 25-27.  Private rights of action to enforce federal law must be created by Congress.  Touche Ross & Co. v. Redington, 442 U.S. 560, 578 (1979).  A private right of action does not exist, and courts may not create such a right of action, absent Congressional intent to create such a private right and a concomitant private remedy and "no matter how desirable...[creating a private cause of action] might be as a policy matter, or how compatible with the statute."  Alexander v. Sandoval, 532 U.S. 275, 286 (2001)(citations omitted).  Hence, in the absence of any intent by Congress, either in the language of the statute itself or in the legislative history accompanying 2 U.S.C. § 140, Plaintiff cannot establish that the statute confers upon her a private cause of action against the Library for not selecting her for a position.

For the foregoing reasons, and the reasons set-forth in Defendant's Motion to Dismiss, the Court should grant Defendant's Motion to Dismiss because Plaintiff has failed to establish that she is entitled to relief as a matter of law.

October 21, 2005                    Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

_____
R. CRAIG LAWRENCE, D.C. Bar #171538
Assistant United States Attorney

_____
JULIA K. DOUDS
Special Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20540
202-514-5134

OF COUNSEL:

EVELIO RUBIELLA
Assistant General Counsel
Library of Congress
101 Independence Avenue, S.E.
Washington, D.C. 20540
(202) 707-3343