UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DIANE J. SCHROER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 05-1090 (JR) |
| | ) |
| JAMES BILLINGTON, | ) |
| Librarian of Congress, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**DEFENDANT'S MOTION TO DISMISS AND
IN THE ALTERNATIVE FOR JUDGMENT ON THE PLEADINGS**

Defendant James Billington, Librarian of Congress, moves to dismiss this suit for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and alternatively, for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  In support of this motion, the Court is respectfully referred to the accompanying memorandum of points and authorities.  A proposed order consistent with this motion is also attached hereto.

Respectfully submitted,

/s/ Jeffrey A. Taylor /dvh
_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


/s/ Rudolph Contreras
_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

/s/ Beverly M. Russell
_____
BEVERLY M. RUSSELL, D.C. Bar #454257
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia,
 Civil Division
555 4th Street, N.W., Rm. E-4915
Washington, D.C.  20530
Ph:  (202) 307-0492
Fax: (202) 514-8780
E-mail: beverly.russell@usdoj.gov


/s/ Julia K. Douds /bmr
_____
JULIA K. DOUDS
Special Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia,
 Civil Division
555 4th Street, N.W.
Washington, D.C.  20530
Ph:  (202) 707-7198
Fax: (202) 514-8780
E-mail: jdou@loc.gov

OF COUNSEL:
EVELIO RUBIELLA
Assistant General Counsel
Library of Congress

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DIANE J. SCHROER, | ) |
|     Plaintiff, | ) |
|     v. | )    Civil Action No. 05-1090 (JR) |
| JAMES BILLINGTON,<br>  Librarian of Congress, | ) |
|     Defendant. | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND IN THE ALTERNATIVE FOR JUDGMENT ON THE PLEADINGS**

On August 1, 2005, Defendant in the above matter filed a Motion to Dismiss Plaintiff's complaint. In the Motion ("first motion"), Defendant argued that Plaintiff failed to allege a *prima facie* case of employment discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") because transsexuals are not a protected group under the statute. Defendant also argued that Plaintiff's constitutional claims must be dismissed because (1) she does not have an interest protected by the Fifth Amendment; and (2) her equal protection claim is precluded by Title VII's exclusive scheme for resolving claims of federal employment discrimination. Finally, Defendant argued that the Library of Congress Act, 2 U.S.C. § 140, does not provide a private right of action or a waiver of sovereign immunity, and therefore, Plaintiff's cause of action based upon the Library of Congress Act must be dismissed.

On March 31, 2006, the Court denied Defendant's motion, focusing solely upon the availability of a claim for relief under Title VII.[1] The Court first rejected Plaintiff's argument that she could make out a claim under a theory of sex stereotyping in-as-much as Plaintiff does not seek "acceptance as a man with feminine traits," but rather "to express her female identity." Schroer v. Billington, Civil Action No. 05-1090(JR), slip op. at 16 (D.D.C. March 31, 2006). Having rejected Plaintiff's sex stereotyping theory, the Court then directed the parties to create a factual record that "reflects the scientific basis of sexual identity in general and gender dysphoria in particular" to resolve the issue of whether discrimination against transsexuals is "literally" discrimination "because . . . of sex." Id. at 20-22.

The parties have now completed discovery consistent with the Court's March 31, 2006 Order and Plaintiff's claims are ripe for dismissal. Accordingly, and for the reasons set forth below, Plaintiff's claims should be dismissed in their entirety.

## STANDARD OF REVIEW

**A.   Dismissal for Lack of Subject Matter Jurisdiction**

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the Plaintiff bears the burden of establishing that the court has subject matter jurisdiction. Dist. of Columbia Ret. Bd. v. United States, 657 F. Supp. 428, 431 (D.D.C. 1987). In considering a motion

---

[1] The Court has not yet addressed Defendant's arguments with respect to Plaintiff's constitutional claims, or the Library of Congress Act. However, Defendant's arguments with respect to those claims are briefly reiterated in this Motion.

to dismiss for lack of subject matter jurisdiction, the court accepts as true all material factual allegations in the complaint. Hohri v. United States, 782 F.2d 227, 241 (D.C. Cir. 1986), vacated on other grounds, 482 U.S. 64 (1987). In addition, a court may consider such materials outside the pleadings as appropriate to resolve the question whether it has jurisdiction to hear the case. See Herbert v. Nat'l. Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992); Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987); Borg-Warner Protective Servs. Corp. v. EEOC., 81 F. Supp. 2d 20, 23 (D.D.C. 2000).

A plaintiff's burden to properly plead jurisdiction is particularly heavy when suing the sovereign. United States v. Mitchell, 463 U.S. 206, 212 (1983). As sovereign, the United States is "immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941). Statutory waivers of sovereign immunity "are to be construed strictly in favor of the sovereign." McMahon v. United States, 342 U.S. 25, 27 (1951) (citations omitted).

**B.    Dismissal under Rule 12(c) of the Federal Rules of Civil Procedure.**

The standard of review for motions brought for judgment on the pleadings (i.e., Fed. R. Civ. P. 12(c)) is essentially the same as that for motions brought pursuant to Fed. R. Civ. P. 12(b)(6). Robinson v. District of Columbia, 403 F.Supp.2d 39, 46-47 (D.D.C. 2005). A motion to dismiss brought pursuant to either Rule should be granted if the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." Id. quoting Conley v. Gibson, 355 U.S. 4`, 45-46 (1957)    Although the plaintiff

is given the benefit of all inferences that reasonably can be derived from the facts alleged in the complaint, the court need not accept inferences that are not supported by such facts, nor must the court accept plaintiff's legal conclusions cast in the form of factual allegations.  Robinson, 403 F.Supp.2d at 46 quoting Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)(quotation marks omitted).

## ARGUMENT

**A.  Plaintiff Cannot Establish That She Is A Member Of A Protected Class Under Title VII.**

To address the guidance sought by the Court in its Order of March 31, 2006, Defendant retained Dr. Chester W. Schmidt, M.D.  In 1956, Dr. Schmidt received his Bachelor of Science degree from Johns Hopkins University and, in 1960, received his medical degree from the Johns Hopkins University School of Medicine.  Ex. 2, Expert Report of Chester W. Schmidt, Jr., M.D. ("Schmidt Report") ¶ 3.  Dr. Schmidt has been licensed to practice medicine in the state of Maryland since 1960 and was certified by the American Board of Psychiatry and Neurology in 1970.  Id. ¶¶ 2, 4.  In 1971, Dr. Schmidt co-founded the Sexual Behavioral Consultation Unit of the Johns Hopkins University Hospital.  Id. ¶ 6.  The Sexual Behavior Consultation Unit, a clinical and research unit which is still in operation today, has continuously been open to the evaluation and treatment of patients with Gender Identity Disorders, Sexual Dysfunctions and Paraphilias.  Id.  From 1972-2006, Dr. Schmidt was the chairman of the Department of Psychiatry of Johns Hopkins Bayview Medical Center.  Id. ¶ 5.  Dr. Schmidt is currently

a Professor of Psychiatry in the Department of Psychiatry and Behavioral Health Sciences at the Johns Hopkins University School of Medicine. Id. ¶ 1. He is also the Chief Medical Director of Johns Hopkins Health Care and Chair of the Medical Board of Johns Hopkins Bayview Medical Center. Id. ¶ 5. From 1971 to the present, Dr. Schmidt has personally evaluated approximately twelve Gender Identity Disorder patients per year. Id. ¶ 7.[2]

  1. Sexual Identity/Gender Identity[3]

Dr. Schmidt identified the term "sex" as a biologic reality which refers to the biologic status of a fetus or newborn with regard to their chromosomal configuration - "xx" genes for female and "xy" genes for males. Ex. 2, Schmidt Report ¶¶ 1, 3. Dr. Schmidt explained that sexual identity is not a biologic reality but a social process - an acquired, internal, subjective construct about whether an individual thinks of themselves as male, female, or ambivalent.[4] Id. ¶¶ 2, 3. Dr. Schmidt further explained that in the medical community there is no scientific basis supporting a presumed etiology of gender or sexual identity. Ex. 3, Deposition of Chester Schmidt, M.D. 78:4-22; 112:4-8 (Feb. 21, 2007). Plaintiff's expert, Dr. Walter Bockting, Ph.D., likewise acknowledged

---

[2] See also Ex. 1, Curriculam Vitae of Chester W. Schmidt, Jr., M.D.

[3] For the purposes of this motion, "sexual identity" and "gender identity" are used interchangeably.

[4] Even assuming the accuracy of Plaintiff's expert's opinion that gender identity is a component of sex (see Ex. 5, Supplemental Report of Walter O. Bockting, PHD, at ¶ 1 (Dec. 21, 2006)), such an opinion fails to address the Court's questions regarding the scientific basis of sexual identity and Gender Identity Disorder.

that as of today there is no scientific basis supporting a presumed etiology of sexual identity. Ex. 5, Bockting Suppl. Report ¶ 4.

### 2. Gender Identity Disorder

Dr. Schmidt explained that Gender Identity Disorder ("GID") is a mental disorder classified in the Diagnostic and Statistical Manual of Mental Disorders ("DSM"), Fourth Edition, American Psychiatric Association. Ex. 2, Schmidt Report ¶ 4. Dr. Schmidt also summarized the current criteria for an adolescent or an adult to be diagnosed with GID: a) a strong and persistent cross-gender identification, which is the desire to be, or the insistence that one is, of the other sex; b) persistent discomfort about one's assigned sex or a sense of inappropriateness in the gender role of the sex; c) the diagnosis is not made if the individual has a concurrent physical intersex condition; d) to make the diagnosis there must be evidence of clinically significant distress or impairment of social, occupational, or other important areas of functioning. Id.

Dr. Schmidt revealed that as of today, there is no scientific evidence supporting a presumed etiology of GID, and what causes GID remains unknown. Ex. 2, Schmidt Report at ¶¶ 6,7; see also Ex. 3, Schmidt Depo. 193:8-21; Ex. 4, Expert Report of Walter O. Bockting, Ph.D at ¶ 19 (Sept. 14, 2006). Dr. Schmidt specified that there are no known pathologic, neuropathologic, psychopathologic, genetic or congenital causes of GID. Ex. 2, Schmidt Report ¶ 8. The record is also devoid of any evidence demonstrating that there are known pathologic, neuropathologic, psychopathologic, genetic or congenital causes of GID. See generally Ex. 4 and 5, Bockting Reports.

Indeed, Plaintiff's expert concedes that the biologic etiology of GID is not known.[5]  Ex. 4, Bockting Report at ¶ 19.

In its Order of March 31, 2006, the Court states that discrimination against individuals with intersexed conditions cannot be anything other than discrimination "because of . . . sex" because intersex conditions themselves are borne in physical sexual development.  Slip op. at 21.  Dr. Schmidt confirmed that intersex conditions are biological in their etiology.  Ex. 2, Schmidt Report ¶ 11.  Specifically, an intersex condition is a physical condition caused by genetic abnormalities that results in missing or ambiguous internal and external genitalia and/or partial expression of sexual phenotype.  Id.  On the other hand, unlike intersex conditions, and as stated previously, Dr. Schmidt specified that there are no known pathologic, neuropathologic, psychopathologic, genetic or congenital causes of GID.[6]  Id. ¶¶ 8, 12.  In fact, Dr. Schmidt explained that an individual who is diagnosed with an intersex condition, cannot be diagnosed as having GID.[7]  Id. ¶¶ 4, 12; see also Ex. 4, Bocking Report at ¶

---

[5]In his report, Plaintiff's expert states: "What causes gender identity disorder remains unknown.  Biological factors . . . and psychosocial factors . . . most likely interact, but research is still in its infancy and findings to date are inconcluive."  Ex. 4, Bockting Report at ¶ 19.

[6]Moreover, because an intersex condition is biological in its etiology, it can be medically determined by simple diagnostic tests.  In contrast to an intersex condition, GID is a self-identified condition.  Ex. 3, Schmidt Depo. at 190:8-22; 191:1-22.

[7]Plaintiff was diagnosed by Martha Harris, Plaintiff's mental health counselor, as having Gender Identity Disorder (DSM IV-R Diagnosis 302.85).  Ex. 6, Expert Report of Martha O. Harris at ¶ 22.b (Sept. 15, 2006).

17.c.  Thus, because there is a verifiable biological basis for intersex conditions, but not a verifiable biological basis for GID, intersex conditions and GID are not on the same continuum.[8]

Accordingly, the record demonstrates that there is neither a scientific basis for sexual identity nor a scientific basis for GID.  Hence, for lack of any scientific basis for GID or one's sexual identity, there are no grounds to conclude that GID or sexual identity is synonymous with one's biologic "sex," or that there is any causal relationship between GID, or sexual identity and any pathologic, neuropathologic, psychopathologic, genetic or congenital marker.  GID and sexual identity are not rooted in biology, but in behavior, preference, and choice.  It follows, therefore, that the word "sex" as defined and encompassed by Title VII does not cover individuals who have GID or that claim discrimination on the basis of their sexual identity.  Accordingly, Count I of Plaintiff's Complaint should be dismissed.

**B.      Plaintiff Cannot Show That Her Non-Selection For A Position At the Library Violated Any Rights Under The Fifth Amendment Of The Constitution.**

1.      Due Process Clause

Plaintiff alleges that the Due Process Clause protects her right to "take medically appropriate steps to bring her body into conformity with her gender identity" without adverse consequences from the Government.  Compl. ¶¶ 60-64.  Plaintiff's claim appears

---

[8] There is no evidence in the record that there is a verifiable causal relationship between hormonal influences on the developing brain *in utero* and GID, or a verifiable causal relationship between any other biological component and GID.

to be one invoking the substantive rather than that procedural due process component of the Fifth Amendment.[9]  Plaintiff has failed to state a claim upon which relief can be granted, and her Due Process claim should be dismissed.

As already indicated in Defendant's first motion, Plaintiff's decisions to undergo medical procedures to change her physical appearance from male to female does not implicate any privacy right protected by the United States Constitution.  Indeed, the Supreme Court has found an implicit right to privacy only with respect to a person's personal autonomy with respect to fundamental decisions "relating to marriage, procreation, contraception, family relationships, child rearing, and education."  Planned

---

[9]To the extent that Plaintiff is, in fact, invoking the procedural due process component of the Fifth Amendment, this claim must likewise fail.  In order to invoke the Due Process Clause, a plaintiff must first demonstrate that there has been a deprivation of life, liberty, or a property interest.  Matthews v. Eldridge, 424 U.S. 319, 332 (1976).  Plaintiff has established neither a liberty nor a property interest.  The D.C. Circuit has previously held that, "[t]he government's relationship with an applicant for a particular job does not implicate the due process clause's protection of liberty interests."  White v. OPM, 787 F.2d 660, 665 (D.C. Cir. 1986).  Merely applying for a position with the federal government does not establish a liberty interest.  Sierzega v. Ashcroft, 358 F.Supp. 2d 3, 5 (D.D.C. 2005).  Furthermore, a property or liberty interest in continued employment can be "derived from independent sources, such as statutes, regulations, ordinances, or 'existing rules or understandings . . . that secure certain benefits and that support claims of entitlement to those benefits.'"  Doe v. Gates, 981 F.2d 1316, 1320 (D.C. Cir.)(quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)), cert. denied, Doe v. Woolsey, 510 U.S. 928 (1993).  But an individual must first have a "legitimate claim of entitlement" to the benefit rather than merely a "unilateral expectation," "abstract need" or "desire."  Board of Regents, 408 U.S. at 576.  In the instant matter, Plaintiff has not alleged, much less established, that a statute, regulation, ordinance, or "existing understandings" exists that creates any entitlement to certain employment benefits.  See also, R. 7, Def.'s Mot. Dismiss, at 8-11.

Parenthood v. Casey, 505 U.S. 833, 851 (1992).[10]  Moreover, the Supreme Court has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.'" Washington v. Glucksburg, 521 U.S. 702, 720 (1997) (citing Collins v. Harker Heights, 503 U.S. 115, 125 (1992)).  This Circuit has also commented on the dangers of expanding the zones of privacy relative to medical decisions: "[A] decision by this court to confer privacy protection on all medical determinations, no matter what their nature or consequences, would require us to range far beyond the traditional purview of the Court's privacy jurisprudence." New York State Ophthalmological Soc. v. Bowen, 854 F.2d 1379, 1389 (D.C. Cir.,1988).  See also Doe v. U.S. Postal Service, 1985 WL 9446 (D.D.C. 1985) (holding that there is no right to privacy in a person's decision to undergo gender reassignment surgery).

While Plaintiff may wish it otherwise, there is simply no legal authority to support her contention that there is an all-encompassing right to privacy involving all medical decisions in general, and medical procedures related to gender reassignment specifically. Accordingly, Plaintiff's Due Process claim should be dismissed.

---

[10] The Supreme Court has carefully defined the zones of privacy in which liberty interests are protected under the Due Process Clause.  See e.g., Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535 (1942) (establishing the right to have children); Griswold v. Connecticut, 381 U.S. 479 (1965) (establishing the right to use contraception); Loving v. Virginia, 388 U.S. 1 (1967)(establishing the right to marry); Cruzan v. Director, Mo. Dept. of Health, 497 U.S. 261 (1990) (establishing the right to refuse unwanted medical treatment).

### 2. Equal Protection

Plaintiff alleges that Defendant has "engaged in impermissible sex discrimination in violation of the equal protection component of the Fifth Amendment. . . " See Compl. ¶ 66. However, as previously stated in Defendant's first motion, Title VII is the exclusive remedial scheme for claims of employment discrimination in federal employment. See Brown v. General Services Administration, 425 U.S. 820 (1976). See R. 7, Def.'s Mot. Dismiss, at 11-13.  To the extent that Plaintiff argues that her Title VII claim should be recast as a Constitutional claim because she does not have a remedy under Title VII, this Court should find Plaintiff's argument unconvincing and without support of law.  See e.g., Schweiker v. Chilicky, 487 U.S. 412, 108 S. Ct. 2460 (1988), noting that "[t]he absence of statutory relief. . . for a constitutional violation. . . does not by any means necessarily imply that courts should award damages for that violation.  Id. at 2467.  See also, R. 7, Def.'s Mot. Dismiss at 12.  Accordingly, Counts II and III of Plaintiff's Complaint should be dismissed.

**C.  2 USC § 140 Does Not Confer a Private Cause of Action Nor Does It Waive the Library's Sovereign Immunity.**

As already delineated in the Defendant's first motion and reply, nothing in the Library of Congress Act suggests that it conveys a private right of action or effects a clear and expressed waiver sovereign immunity.  See R. 7, Def.'s Mot. Dismiss at 13; R. 10, Def.'s Reply to Pl.'s Mot. In Op. To Def.'s Mot. Dismiss, at 10-11.  A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory

text and cannot be implied.  United States v. Nordic Village, Inc., 503 U.S. 30, 33-34, 37 (1992); Irwin v. Department of Veterans Affairs, 498 U.S. 89, 95 (1990).  Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the Government.  Library of Congress v. Shaw, 478 U.S. 310, 318 (1986); Lehman v. Nakshian, 453 U.S. 156, 161 (1981).[11]  Considering the complete absence of any language in 2 U.S.C. §140 waiving the Library's sovereign immunity, Plaintiff cannot prevail on this issue.  Therefore, this Court should dismiss Count IV of Plaintiff's complaint.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant's Motion to Dismiss because Plaintiff has failed to establish that she is entitled to relief as a matter of law.

---

[11] Plaintiff's December 5, 2005, Motion for Oral Argument Regarding Defendant's Motion to Dismiss states that the "sovereign immunity analysis differs with respect to claims for injunctive relief and claims for damages."  R. 11.  While it may be correct that actions for injunctive relief and monetary damages are distinguishable, both require a waiver of sovereign immunity.  Lane v. Pena, 518 U.S. 187, 192 (1996); United Tribe of Shawnee Indians v. U.S., 253 F.3d 543, 546 (10th Cir. 2001).  Here, there is no waiver of sovereign immunity.  Plaintiff might be presuming that the Administrative Procedure Act ("APA") functions as a waiver of sovereign immunity.  However, actions by the Library of Congress are not reviewable under the APA. The judicial review provisions of the APA, 5 U.S.C. §§ 701–706, only permit review of actions taken by an "agency" as defined in §§ 551(1) and 701(b) of the statute.  See id. §§ 704, 706. The statutory definition of "agency" specifically excludes Congress. Id. §§ 551(1)(A), 701(b)(1). For purposes of these provisions, the Librarian of Congress is considered part of Congress and thus outside the scope of the Act.  Kissinger v. Reporters Cmte. for Freedom of the Press, 445 U.S. 136, 145 (1980) (finding that the Library of Congress is not an agency for purposes of § 551(1)(A)); see also Ethnic Employees of the Library of Cong. v. Boorstin, 751 F.2d 1405, 1416 n.15 (D.C. Cir. 1985) (finding that the Library of Congress is not an agency under the APA).

Respectfully submitted,


/s/ Jeffrey A. Taylor /dvh

_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


/s/ Rudolph Contreras

_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney


/s/ Beverly M. Russell

_____
BEVERLY M. RUSSELL, D.C. Bar #454257
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia,
  Civil Division
555 4th Street, N.W., Rm. E-4915
Washington, D.C.  20530
Ph:  (202) 307-0492
Fax: (202) 514-8780
E-mail: beverly.russell@usdoj.gov


/s/ Julia K. Douds /bmr

_____
JULIA K. DOUDS
Special Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia,
  Civil Division
555 4th Street, N.W.
Washington, D.C.  20530
Ph:  (202) 707-7198
Fax: (202) 514-8780
E-mail: jdou@loc.gov


OF COUNSEL:
EVELIO RUBIELLA
Assistant General Counsel
Library of Congress

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing *Defendant's Motion to Dismiss* was made by electronic and first class mail on the 26th day of April, 2007 to:

Arthur B. Spitzer
American Civil Liberties Union
 of the National Capital Area
1400 20th Street, N.W., #119
Washington, D.C.  20036
Artspitzer@aol.com

Sharon M. McGowan/
Kenneth Y. Choe
American Civil Liberties Union Foundation
125 Broad Street
New York, New York 10004
Smcgowan@aclu.org

        /s/ Beverly M. Russell
        _____
        BEVERLY M. RUSSELL
        Assistant United States Attorney