# Attachment H

Westlaw.

2001 WL 1602800 (MCAD)                                    Page 1

(Cite as: 2001 WL 1602800 (MCAD))

2001 WL 1602800 (MCAD)

Massachusetts Commission Against Discrimination

**\*1 CHARLEGNE MILLETT, COMPLAINANT**

v.

LUTCO, INC., RESPONDENT

98 BEM 3695

October 10, 2001

**ORDER OF THE FULL COMMISSION**

This matter is before us following a referral from the Investigating Commissioner pursuant to 804 CMR 1.20(3)(b).[FN1]

Complainant, a male-to-female transsexual, filed the instant complaint with the commission on December 2, 1998. The complainant contends that respondent discriminated against her because of her sex and sexual orientation. Specifically, complainant alleged that she was pretextually issued written warnings by her supervisor for insubordination and threatened with termination of employment after complaining about her supervisor's harassing behavior towards her.

The respondent filed a motion to dismiss, on January 22, 1999. This respondent argued that, as a matter of law, discrimination against a transsexual is not discrimination based upon sex and is not discrimination based upon sexual orientation, as those terms are used in Chapter 151B.

The Investigating Commissioner determined that this matter presents important questions of law and policy. She certified the questions below to us for

resolution pursuant to our regulations. 804 CMR 1.20(3)(b). The legal questions presented may be answered without a full hearing on the facts and will have an impact on the pending investigative determination under 804 CMR 1.15. We take jurisdiction to answer the questions of law presented by the Investigating Commissioner and to generally provide guidance on specific issues of law and policy.

The questions presented are:
1. Is discrimination against an individual because he or she is a transsexual a violation of the prohibition against sexual orientation discrimination found at M.G.L. c. 151B?
2. Is discrimination against an individual because he or she is a transsexual a violation of the prohibition against sex discrimination found at M.G.L. c. 151B?

We will address each question in turn.

**Sexual Orientation Discrimination**

We first are called upon to consider whether discrimination against an individual because he or she is a transsexual is a violation of the prohibition against sexual orientation discrimination found at Chapter 151B of the Massachusetts General Laws. Chapter 151B §3(6) defines "sexual orientation" as follows:

*The term "sexual orientation" shall mean having an orientation for or being identified as having an orientation for heterosexuality, bisexuality, or homosexuality.*

This definition is unambiguous on its face: only heterosexuals, bisexuals and homosexuals are protected under the provisions of the statute [FN2]

Complainant in the instant matter is transsexual. " Transsexual" has been defined as "The desire to change one's anatomic sexual characteristics to conform physically with one's perception of self as a member of the opposite sex." *Stedman's Medical*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2001 WL 1602800 (MCAD)

(Cite as: 2001 WL 1602800 (MCAD))

*Dictionary* 1841 (26th d. 1995).

**\*2** When interpreting a statute, it is our responsibility to construe it, to the best of our ability, as the legislature intended. Where the statute's meaning is expressed in plain words, we cannot read more into them than is there. Attorney General v. Hahnemann Hosp., 397 Mass. 820, 494 N.E.2d 1011 (1986) "Transsexuality" is not included within the statute's definition of sexual orientation, nor is it tantamount to or synonymous with ""heterosexuality," "homosexuality," or " bisexuality," the terms actually used in the statute.".

We, therefore, conclude that "transsexuality" is not a "sexual orientation" as that term is defined by M.G.L. c. 151B §3(6)[FN[FN3]].

**Sex Discrimination**

We are also called upon to consider whether discrimination against an individual because he or she is a transsexual violates the prohibition against sex discrimination found at M.G.L. c. 151B

Because M.G.L. c. 151B does not define "sex," looking to the plain language of the statute ·is not helpful in our consideration. *See* Dahill vs. City of Boston, SJC-08324, (May, 2001), (the language of the Massachusetts statute is not dispositive…because the language of the statute does not end our inquiry… we *turn to other sources to discern the Legislature's intent*). (emphasis added)

Case law provides some guidance. In the years since "sex" was added to Title VII protections in an attempt to defeat the legislation, *See:* C. & B. Whalen, The Longest Debate: A Legislative History of the 1964 Civil Rights Act, 115-117 (1985), the legal understanding of sex discrimination has been in a state of continual evolution and expansion. Sex discrimination is a concept that is read broadly; in other words, illegal "sex discrimination" takes into account non-anatomical concepts, like gender. [FN[FN4]] Examples of these concepts abound in the case law.

Massachusetts courts have held that pregnancy and childbirth are linked with ""sex", and therefore, an impermissible basis for discrimination. Massachusetts Elec. Co. v. MCAD, 375 Mass. 160,

167 (1978). *See also* Carmichael v. Wynn & Wynn, 17 M.D.L.R. 1641 (1995), *affirmed* Wynn & Wynn v. Massachusetts Commission Against Discrimination, 431 Mass. 655 (2000), White v. Michaud Bus Lines, Inc., 19 MDLR 18, 20 (1997); Lane v. Laminated Papers, Inc., 16 MDLR 1001, 1013 (1994)

The United States Supreme Court has held that where an employer holds female employees to standards of personal appearance not applied to men, the employer will be liable for sex discrimination. Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) (Holding that an accounting partner was discriminated against not because she was a woman, but because of the kind of woman she was, failing to exhibit stereotypical characteristics expected of women); *See also* Mavro v. University Cinema Assoc., Inc., 73-Emp.-129 (1976), *cited in* Macauley v. Massachusetts Commission Against Discrimination, 379 Mass. 279 (1979). The First Circuit Court of Appeals recently held that a man denied a loan application because he was dressed in female clothing may well be able to establish that the refusal was based upon sex:

>  **\*3** It is reasonable to infer that [the teller] told [plaintiff] to go home and change because she thought that [plaintiff's] attire did not accord with his male gender: In

Illegal sex discrimination includes an employer who acted against an employee because she had a mastectomy. Brady v. Art-Cement Products Co., Inc. , 11 M.D.L.R. 1053, 1061-5 (1989). In Brady, the Commission based its analysis upon the societal distinction between male and female breasts, and the trauma of their removal, "in a society surrounded by images of Playboy bunnies." Brady, at 1064. In addition, discrimination based on fertility, familial and marital status can be sex discrimination. In United Automobile Workers v. Johnson Controls, 499 U.S. 187 (1991), the Court held that an employer policy preventing fertile women from holding a class of jobs was direct evidence of sex discrimination. In Phillips v. Martin Marietta, 400 U.S. 542 (1971), an employer was required to show a *bona fide* occupational qualification in defense of its policy to not hire women with pre-school aged children. *See also:* Sprogis v. United Air Lines, Inc., 444 F.2d 1194,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2001 WL 1602800 (MCAD)                                      Page 3

(Cite as: 2001 WL 1602800 (MCAD))

1197-98 (7th Cir.), *cert. denied.*, 404 U.S. 991 (1971); 29 C.F.R. § 1604.4 (marital status).

Penalizing those who do not fit stereotypical ideas of who they should be as women or men is illegal sex discrimination. Doe & Doe v. City of Belleville, Ill., 119 F.3rd 563 (7th Cir., 1997), vacated and remanded in City of Belleville, Ill., vs Doe and Doe 118 S. Ct. 1183 (1998), (Holding that a man was subjected to illegal sexual harassment because "the way in which he projected the sexual aspect of his personality did not conform to his co-workers' view of appropriate masculine behavior."); Albeita v. Transamerica Mailing, 159 F.3rd 246, 1998 Fed. App. 0323P (6th Cir.) (Considering whether a comment about female employee's weight reflected gender stereotyping.) *But see* Macauley v. Massachusetts Commission Against Discrimination, 379 Mass. 279 (1979) (Holding, without further explanation, that "sexual preference" was not sufficiently sex-linked, to warrant liability without legislative action.)

The issue for us, then, is whether transsexuality is sufficiently sex-linked to bring it within the ambit of the sex discrimination laws. We believe that it is.

We believe that discrimination against transsexuals is a form of sex discrimination within the conceptual framework of cases such as Price-Waterhouse supra, and its progeny; where an individual was subjected to workplace discrimination not because of the anatomical notion of "sex," but because of a broader concept incorporating elements of "gender" and societal expectation. Hopkins was subjected to discrimination because she was "macho" and wore masculine suits. The complainant here contends that she was subjected to harassment because of the kind of man she was - one who wanted to be a woman.

*4 Sex discrimination is a result of stereotypes of women and men, mandating conformity with society's expectations of each sex; discrimination against transsexual people is, oftentimes, because the individual is well outside these expectations:

By definition, the transgendered person literally embodies a plethora of sexual stereotypes that are contrary to her birth sex. The sex of the transgendered person is only partially based upon her genitals; the rest is a sometimes strange mixture of complimentary and competing anatomical secondary physical characteristics, behaviors, life histories, psychological presumptions, and stereotypes. Nevertheless, the combination of these factors is what comprises the transgendered person's "sex" - not always "either / or," but often "both." … The day when the sexes were rigidly defined by stereotypical behaviors and anatomies is gone. Holt, Reevaluating Holloway: Title VII, Equal Protection, and the Evolution of a Transgender Jurisprudence, 70 Temp. L. Rev. 283, 290 (1997). In this way, discrimination against complainant on account of her transsexuality *is* completely about her current sex, in light of her former sex:

When a transgendered person suffers from an adverse employment decision, it is generally because the employer objects to the fact that she is "really" a man, or that she used to be a man. What the employer is objecting to is the fact that the employee no longer exhibits the stereotypical characteristics and behaviors of the sex the employer considers his or her employee to be. This reason flies in the face of the reality that the transgendered individual often exhibits many of the stereotypical traits of her new sex flawlessly. On its face, both this motivation and resulting action violates Title VII. Holt, at 296.

Although we are not bound by federal interpretations of law, or interpretations of other state statutes, we note that most federal[FN5] and state[FN6] courts have held that discrimination against transsexuals is not considered discrimination based on sex. However, the New York courts have failed to dismiss, on legal grounds, claims asserting that discrimination against transsexuals is a violation of sex discrimination laws. Rentos v. OCE-Office Systems, 1996 U.S.Dist. LEXIS 19060 (S.D.N.Y. 1996); *see also* Maffei v. Kolaeton Industry, Inc., 626 N.Y.S.2d 391 (N.Y.Sup.Ct. 1995) (Holding that New York city ordinance prohibiting "gender" discrimination protects transsexuals.) In Rentos, the New York State Human Rights Law was interpreted (by the federal court) to cover transsexuals under the term "sex." The court reasoned that although the state anti-discrimination statute is similar to the federal law (Title VII), New York courts are not bound to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2001 WL 1602800 (MCAD)                                    Page 4

(Cite as: 2001 WL 1602800 (MCAD))

apply federal law in interpreting a state statute; and that discrimination based on a change of sexual status creates discrimination based on "sex." In addition, the New Jersey Appellate Division recently held that transsexuals are protected from discrimination based on sex, under the states' anti-discrimination laws. Carla Enriquez v. West Jersey Health Systems *et al* 2001 N.J. Super. LEXIS 283 (July 3, 2001). In Enriquez, the court eloquently noted (that);

> *5 *It is incomprehensible to us that our Legislature would ban discrimination against heterosexual men and women; against homosexual men and women; against bisexual men and women; against men and women who are perceived, presumed or identified by others as not conforming to the stereotypical notions of how men and women behave, but would condone discrimination against men or women who seek to change their anatomical sex because they suffer from a gender identity disorder. We conclude that sex discrimination under the LAD includes gender discrimination so as to protect plaintiff from gender stereotyping and discrimination for transforming herself from a man to a woman.*

While the current state of federal law is that discrimination based on *change of sex* is not the same thing as discrimination *based on sex*, the rationale of these cases is utterly unsatisfying to us. We would clearly not accept this proposition, raised as a defense in any other context. For example, if an individual who had changed religion, and as a result was subjected to disparate treatment filed a complaint with this commission, it would not be an appropriate defense to claim that the employee was subjected to the treatment because of the *change* in religion, as opposed to the *membership* in the new religion. Yet, in the case of transsexuals, courts have adopted this very analysis.

We instead hold that "sex" discrimination, as prohibited by chapter 151B, includes a prohibition against discrimination against transsexual individuals. As the Supreme Judicial Court recently stated in Dahill *supra*;

> *"The public policies underlying M.G.L. c. 151B... are clear... to protect individuals from deprivations based on prejudice, stereotypes, or unfounded fear... (The) Legislature has*

directed that the provisions of G. L. c. 151B " " *shall be construed liberally" for the accomplishment of the remedial purposes of the statute. M.G. L. c. 151B, sect. 9."* (emphasis added). This being the case, Respondent's Motion to Dismiss the Sex discrimination charge is,hereby, DENIED.

### ORDER

**1.** The portions of the Complaint alleging discrimination on the basis of sexual orientation are, hereby, **DISMISSED.**

**2.** The portions of the Complaint alleging discrimination on the basis of sex are, hereby, **REMANDED** for an expedited completion of the investigation and determination of Probable Cause.

**3.** Respondent shall provide a substantive position statement to the allegations of sex discrimination, within twenty-one (21) days of receipt of this **ORDER.**

SO ORDERED this 10th day of October, 2001.

Dorca I. Goméz, Commissioner
Cynthia A. Tucker, Commissioner
Walter J. Sullivan, Jr., Commissioner

FN1. Pursuant to the Commission's Rules of Procedure at 804 CMR 1.24, which went into effect on 1/1/99, the Order of the Full Commission in the instant matter is not ripe for judicial review. 804 CMR 1.24(1) states that "for the purpose of judicial review pursuant to M.G.L. c. 151B, §6, the Decision of the Full Commission on appeal from the *Decision of the Hearing Commissioner* pursuant to 804 CMR 1.23(1)(h), shall constitute the Final Order of the Commission. (Emphasis added).

FN2. *cf.* Minnesota Stat. Ann. §363.01(45)(1996) "Sexual orientation' means having or being perceived as having an emotional, physical, or sexual attachment to another person without regard to the sex of that person or having or being

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2001 WL 1602800 (MCAD)                                                      Page 5

(Cite as: 2001 WL 1602800 (MCAD))

perceived as having an orientation for such attachment, or having or being perceived as having a self image or identity not traditionally associated with one's biological maleness or femaleness...")

FN3. In so concluding, we recognize that transsexual individuals (as well as transgendered and transvestite individuals) may be more likely to be perceived as gay or lesbian than the general population, and subject to discrimination based upon such perception. *See, e.g.:* Rosa v. Park West Bank and Trust Co., 214 F.3rd 213 (1st Cir., 2000) ( "It is… reasonable to infer… that [the teller] refused to give [plaintiff] the loan application because she thought he was gay, confusing sexual orientation with cross-dressing.") We do *not*, as part of our conclusion today, deny a transsexual individual's ability to contend that he or she was subjected to discrimination based upon a perceived sexual orientation of homosexuality, bisexuality, or heterosexuality.

FN4. "The term 'sex' in Title VII refers to an individual's distinguishing biological or anatomical characteristics, whereas the term 'gender' refers to an individual's sexual identity." Holloway v. Arthur Anderson, Inc., 566 F.2d 659 at 662-63 other words, that [plaintiff] did not receive the loan application because he was a man, whereas a similarly situated woman would hate received the loan application. That is, the Bank may treat, for credit purposes, a woman who dresses like a man differently than a man who dresses like a woman… Indeed, under Price Waterhouse, "stereotyped remarks [including statements about dressing more ' femininely'] can certainly be evidence that gender played a part." Price Waterhouse, 490 U.S. at 251 (1989), *see also* Rosa v. Park West Bank & Trust Co., --- F.3rd ----(2000).

FN5. The federal courts that have considered the issue have unanimously held that Title VII prohibitions do not apply to transsexuals. Holloway v. Arthur Andersen & Co., 566 F.2d 659 (9th Cir., 1977) (Holding that, in enacting Title VII, "… Congress had only the traditional notions of 'sex' in mind. Later legislative activity makes this narrow definition even more evident. Several bills have been introduced to *amend* the Civil Rights Act to prohibit discrimination because of 'sexual preference.' None have been enacted into law.").

*Followed:* Ulane v. Eastern Airlines, Inc., 742 F.2d 1081 (7th Cir., 1984), *cert. Denied,* 471 U.S. 1017 (1985); Somers v. Budget Marketing, 667 F.2d 748 (8th Cir., 1982); James v. Ranch Mart Hardware, Inc., 881 F.Supp. 478 (D.Kan. 1995). Even earlier cases refused to extend Title VII's prohibitions, on similar grounds. *See, e.g:* Powell v. Read's Inc., 436 F.Supp. 369 (D.Md. 1977); Voyles v. Ralph K. Davies Medical Center, 403 F.Supp. 456 (N.D.Calif. 1975). For further exploration of the Title VII jurisprudence in this area, see Reevaluating Holloway: Title VII, Equal Protection and the Evolution of a Transgender Jurisprudence, 70 Temp L. Rev. 283 (1997).

FN6. The majority of states have determined that there is no protection afforded to transsexual individuals under sex discrimination laws. *See:* Conway v. City of Hartford, 1997 Conn. Super. LEXIS 282 (2/4/97) (Ct. Fair Employment Practice Act). (Holding that "the weight of outside authority holding that Title VII and similar state statutes do not prohibit discrimination against transsexuals and the absence of any Connecticut legislative intent to cover discrimination against transsexuals."); Underwood v. Archer Management Services, Inc., 857 F.Supp. 96 (D.D.C. 1994) (DC Human Rights Act) (Holding that the Human Rights Commission regulations which defined "sex" as "the state of being male or female…" precluded a discrimination claim based on transsexuality.) Dobre v. National RR Passenger Corp. (AMTRAK), 850 F.Supp. 284 (E.D. Pa. 1993) (Pa. Human Rights Act) (Holding that the term "sex" in state human rights act "was to be given its plain meaning.").

2001 WL 1602800 (MCAD)
END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.