Schroer v. Billington, No. 05-cv-1090 (JR)

# Attachment I



Not Reported in F.Supp.                                                                 Page 1
Not Reported in F.Supp., 1985 WL 9446 (D.D.C.), 37 Fair Empl.Prac.Cas. (BNA) 1867
**(Cite as: Not Reported in F.Supp.)**

▷
Doe v. U.S. Postal Service
D.D.C., 1985.

United States District Court, District of Columbia.
Jane DOE, Plaintiff,
v.
UNITED STATES POSTAL SERVICE, et al.,
Defendants.
**Civ. A. No. 84-3296.**

June 12, 1985.

Victor M. Clasberg, Alexandria, Va., for Jane Doe.
John W. Polk, Asst. U.S. Atty., Washington, D.C., for defendants.

MEMORANDUM OPINION
JOHN H. PRATT, District Judge.
*1 In this sad case, the plaintiff has sued the United States Postal Service (Postal Service), the Postmaster General, Paul N. Carlin,* and the General Manager of the Postal Service Headquarters Personnel Division, Stephen Leavey, for rescinding an offer of temporary employment to the plaintiff, then a male, after learning that the plaintiff was a transsexual, who intended to undergo gender reassignment surgery. Plaintiff alleges violations of the Rehabilitation Act of 1973, 29 U.S.C. § 791, et seq., of her rights to equal protection and due process under the Fifth Amendment, of her constitutional right to privacy, of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), as well as two claims of violation of the statutory and common law of the District of Columbia. She seeks compensatory, punitive and injunctive relief. The defendants have filed a motion to dismiss the complaint on the grounds that the court lacks subject matter jurisdiction and that the complaint fails to state a claim upon which relief can be granted. [FN1]

Factual Allegations

The allegations of the complaint must be taken as true for purposes of this motion. The plaintiff alleges that she is a transsexual who underwent gender reassignment surgery to change her sex from male to female, on November 29, 1983. Prior to that time, the plaintiff was a male who had a 'medically and psychologically established need for gender reassignment surgery.' Complaint, ¶2.

On or about May 20, 1983, while still a male, the plaintiff was offered and accepted a temporary, six month Senior Clerk Typist position with the Postal Service. The position was offered based upon a personal interview, the recommendation of former employers and a job application. After accepting the offer, but before the appointment became effective, the plaintiff told her appointing authority of her intention to undergo gender reassignment surgery, and suggested that she be allowed to begin work as a woman rather than changing her physical appearance during her employment. Plaintiff alleges that the appointing authority agreed to this proposal and, in turn, obtained the approval of her supervisor. Thereafter, after learning of the plaintiff's status, defendant Leavey withdrew the offer of employment. The plaintiff claims that even after she offered to serve the entire employment term as a man, intending to postpone the surgery, Leavey refused to reinstate the offer, based solely on his opposition to her intention to undergo gender reassignment surgery.

The plaintiff filed an Equal Employment Opportunity complaint on July 5, 1983 alleging that the Postal Service discriminated against her on the basis of her sex and her transsexualism, in violation of Title VII and the Rehabilitation Act respectively. The Postal Service rejected that complaint on September 23, 1983, finding that neither claim was within the purview of the Equal Employment Opportunity Commission's (EEOC) processing regulations. That decision was appealed to the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2

Not Reported in F.Supp., 1985 WL 9446 (D.D.C.), 37 Fair Empl.Prac.Cas. (BNA) 1867
**(Cite as: Not Reported in F.Supp.)**

EEOC, which affirmed on October 2, 1984. This action was filed on October 26, 1984.

Discussion

**\*2** Defendants argue that the complaint must be dismissed in its entirety. We shall consider each argument raised.

Title VII Claim

The plaintiff urges the court to adopt the view that the prohibition against sex discrimination in federal employment contained in Title VII should be extended to cover discrimination against transsexuals. To our knowledge, no court presented with this question has so held. See, e.g., Ulane v. Eastern Airlines, Inc., 742 F.2d 1081 (7th Cir. 1984) cert. denied, 105 S. Ct. 2023 (1985); Sommers v. Budget Marketing, Inc., 667 F.2d 748 (8th Cir. 1982); Holloway v. Arthur Andersen & Co., 566 F.2d 659 (9th Cir. 1977). Rather, the courts have focused, as is appropriate, on the Congressional intent discernable from the plain language of Title VII. Title VII prohibits discrimination in employment on account of sex. Especially in the absence of legislative history suggesting that Congress intended the word 'sex' to mean anything other than the biological male or female sexes, we agree with the court in Ulane, that a 'prohibition against discrimination based on an individual's sex is not synonymous with a prohibition against discrimination based on an individual's sexual identity disorder or discontent with the sex into which they are born.' 742 F.2d at 1085. Accordingly, we find that the plaintiff has failed to state a claim upon which relief can be granted under Title VII.

Rehabilitation Act Claim

The plaintiff alleges that she was handicapped by reason of her 'medically and psychologically established need for gender reassignment surgery.' In order to state a claim of handicap discrimination under the Rehabilitation Act, the plaintiff must allege that she is a handicapped person who was otherwise qualified for the position in question, and that her rejection was based solely on the handicap. The Rehabilitation Act defines a handicapped person as, 'Any person who (i) has a physical or mental impairment which substantially limits one or more of such persons major life activities, (ii) has a record of such impairment, or (iii) is regarded as having such an impairment.' 29 U.S.C. § 706(7)(B).

The defendants argue that transsexualism is not a physical or mental handicap subject to the protections of the Rehabilitation Act. Our task, at this point, is not to determine whether transsexualism in fact constitutes a physical or mental impairment for this plaintiff. Rather, we must examine the complaint and decide whether the 'plaintiff can prove no set of facts in support of [her] claim.' Conley v. Gibson, 355 U.S. 41, 45-6 (1957).

Under the applicable regulations, an 'impairment' can be 'any mental or psychological disorder, such as . . . emotional or mental illness.' 45 C.F.R. § 84.3(j)(2)(i)(B). The language of the Rehabilitatio Act and of the accompanying regulations is broadly drafted, indicating a legislative intent not to limit the Act's coverage to traditionally recognized handicaps. See 45 C.F.R. 84 App. A § 3. For purposes of this motion, we find that the complaint adequately alleges the necessary 'physical or mental impairment' to state a claim under the Rehabilitation Act.[FN2]

**\*3** Acknowledging that the plaintiff does allege 'emotional and psychological disorders,' the defendants focus on the requirement that the plaintiff allege an impairment which 'substantially limits one or more of . . . her major life activities.' The regulations define the term 'major life activities' as 'functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, and working.' 45 C.F.R. § 84.3(j)(2)(ii). No definition is given to the term 'substantially limits.' Although these elements are not alleged with great specificity, we find that taken as a whole the complaint adequately alleges that at the time of the alleged discrimination the plaintiff's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                  Page 3
Not Reported in F.Supp., 1985 WL 9446 (D.D.C.), 37 Fair Empl.Prac.Cas. (BNA) 1867
**(Cite as: Not Reported in F.Supp.)**

impairment substantially limited at least her major life activity of 'working.'FN3 The burden, of course, will be on the plaintiff to prove that her transsexualism actually is an impairment which substantially limits one or more of her major life activities, or otherwise brings her within the definition of handicapped persons. See Jasany v. United States Postal Service, No. 84-3134 (6th Cir. Feb. 28, 1985) at 7-9. On this point, we do observe that the definition of handicapped person given in the Rehabilitation Act and 45 C.F.R. § 84.3(j) extends to those who are merely 'regarded' by others as having an impairment which substantially limits major life activities. In particular, the regulations state that a handicapped person can be one who has a 'physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment.' 45 C.F.R. § 84.3(j)(2)(iv). The questions of fact necessarily raised by defendants' arguments preclude our resolving the Rehabilitation Act claim on a motion to dismiss.

Finally, defendant argues that the plaintiff does not allege that she was denied the position with the Postal Service 'solely by reason of her handicap' but rather that she was discriminated against because of her transsexualism. Defendants' argument is based on the unproven assumption that the plaintiff's transsexualism is not a handicap. Considering that this is a pivotal question, yet to be decided in this case, defendants' argument must fail. We find that the plaintiff has stated a claim of handicap discrimination under the Rehabilitation Act of 1973.

Constitutional Claims

Defendants argue that the court lacks subject matter jurisdiction over the plaintiff's constitutional claims because Title VII and the Rehabilitation Act are her exclusive remedies. The Supreme Court declared in Brown v. General Services Administration, 425 U.S. 820 (1975) that federal employees claiming discrimination are limited to the Title VII remedy, which would preclude their bringing actions under the Constitution for such discrimination. In Shirey v. Devine, 670 F.2d 1188 (D.C.Cir. 1982), the District of Columbia Circuit strongly suggested that the Brown holding on exclusivity of remedy also applies to claims of discrimination brought under the Rehabilitation Act. Id., at 1191, n. 7.

*4 Whether or not Brown applies to Rehabilitation Act claims, the Supreme Court has made it clear that the statutorily designed remedy of Title VII is exclusive only in those cases where the plaintiff alleges discrimination that is prohibited by the statute. In Davis v. Passman, 422 U.S. 228 (1978), the Court considered the scope of Title VII's exclusivity, stating '[t]hat [Title VII] does not prohibit discrimination on the basis of alienage did not prevent [the court in Hampton v. Mow Sun Wong, 426 U.S. 88 (1976)] from authorizing relief. In a similar manner, we do not now interpret [Title VII] to foreclose the judicial remedies of those expressly unprotected by the statute.' Id., at 247. In this case, we have already concluded that the plaintiff does not state a cognizable claim under Title VII but that she may have protection under the Rehabilitation Act. Should the plaintiff actually establish her status as a handicapped person under the Rehabilitation Act, and assuming the application of Brown to such claims, she will not be entitled to pursue remedies under the Constitution regardless of whether she prevails on the Rehabilitation Act claim. However, should we find that plaintiff is not among those protected by the Rehabilitation Act, we should then be obliged to consider whether the alleged discrimination was in violation of her constitutional rights. In short, we agree with the plaintiff that the inclusion of both statutory and constitutional claims in the complaint constitutes permissible pleading in the alternative.

(a) Right to Privacy Claim

Defendants argue, as a matter of substantive law, that plaintiff has no special right to privacy under the Constitution as a transsexual and no protection from discrimination under the guarantees of equal protection and due process contained in the Fifth Amendment. We agree that the plaintiff has no special right of privacy under the Constitution. The court in Dronenburg v. Zech, 741 F.2d 1388 (D.C.Cir. 1984), after reviewing the Supreme Court

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                              Page 4
Not Reported in F.Supp., 1985 WL 9446 (D.D.C.), 37 Fair Empl.Prac.Cas. (BNA) 1867
**(Cite as: Not Reported in F.Supp.)**

cases that recognize a constitutional right to privacy, concluded that 'only rights that are ' fundamental' or 'implicit in the concept of ordered liberty' are included in the right of privacy.' Id., at 1396. While it could be argued that the personal decision to undergo a socially controversial surgical procedure ought to be protected against government reprisal, we have no legal basis, especially in light of the Dronenburg opinion, for holding that there is a constitutional right to privacy which protects persons in the plaintiff's situation. We shall therefore dismiss this claim.

### (b) Equal Protection Claim

As for the equal protection claim, however, the matter stands in a different posture. Defendants take the position that transsexuals are not entitled to equal protection because they are not members of a suspect class. While we agree that transsexuals do not comprise a suspect class, see Holloway, supra, 566 F.2d at 663, we are not aware of any court's having held that all governmental discrimination against transsexuals is necessarily rationally based or is somehow outside the scope of the equal protection clause. Certainly, the Holloway court did not so hold. See id., at 663-64. It has long been established in this Circuit that applications for public employment are 'not without Constitutional protection.' Scott v. Macy, 349 F.2d 183, 184 (D.C.Cir. 1965). As the court stated in Scott, both applicants and employees of the federal government are 'entitled, like other people, to equal protection against arbitrary or discriminatory treatment by the Government Id. The defendants assert that it is rationally related to a legitimate governmental interest for 'an employer to treat a transsexual in the manner the Postal Service did here.' Reply at 14. No government interest has been identified, however, and this issue is properly a question to be decided should the court reach the merits of this claim. The complaint clearly states a claim for denial of equal protection.

### Constitutional Claims against Leavey

*5 The plaintiff is suing defendant Leavey in his individual capacity for violation of her constitutional rights to privacy, equal protection and due process. Leavey argues that he is immune from suit under the rule of Harlow v. Fitzgerald, 457 U.S. 800 (1982). The Supreme Court held in Harlow that government officials performing discretionary functions are immune from liability for civil damages if the challenged action 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. . . .' Id., at 818. In Davis v. Sherer, 104 S. Ct. 3012 (1984), the Supreme Court emphasized that the clearly established right must be the basis of the claim against the official in order to defeat a defense of immunity. Id., at 3020 & n. 12.

In this case, we have already decided that the plaintiff does not state a claim against defendants for violation of her right to privacy. The remaining issue with respect to defendant Leavey's claim of immunity, therefore, is whether his alleged conduct violated the plaintiff's clearly established right to equal protection. The complaint alleges that Leavey made the decision to deny the plaintiff a clerk/typist position, notwithstanding her offer to remain a man throughout her employment. Unquestionably, the law of equal protection applies to federal government employees and applicants. Bolling v. Sharpe, 347 U.S. 497 (1954); Scott v. Macy, supra. While defendant Leavey should have known that, like any other applicant, the plaintiff was entitled to protection from arbitrary and discriminatory action it is not clear that Leavey, in the context of the facts of this case, knew or should have known that denial of employment to a transsexual was discrimination in employment and therefore a denial of equal protection. Under Harlow, supra, we cannot say that Leavey's actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known. . . .' We therefore hold Leavey immune from the claims of constitutional violation.

An order consistent with the foregoing has been entered this day.

### ORDER

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                           Page 5
Not Reported in F.Supp., 1985 WL 9446 (D.D.C.), 37 Fair Empl.Prac.Cas. (BNA) 1867
**(Cite as: Not Reported in F.Supp.)**

Upon consideration of the defendants' Motion to Dismiss and the opposition thereto, it is by the court this 12th day of June, 1985,

ORDERED that the defendants' motion is granted with respect to the claims against the United States Postal Service and Carlin for sex discrimination under Title VII, 42 U.S.C. § 2000(e), for violation of plaintiff's constitutional right of privacy, for intentional infliction of emotional distress and for violation of the D. C. Human Rights Law, D. C. Code § 1-2512, and it is

ORDERED that defendants' motion is granted with respect to all constitutional and common law claims against defendant Leavey, and it is

ORDERED that defendants' motion is denied with respect to the claims against the United States Postal Service and Carlin for violation of the Rehabilitation Act, 29 U.S.C. § 791, et seq., and the claims against said defendants for denial of plaintiff's constitutional right to equal protection and due process, without prejudice; and it is

*6 ORDERED that defendants shall respond to plaintiff's outstanding discovery requests within 20 days, and it is

FURTHER ORDERED that a status call be held on Thursday, July 18, 1985 at 9:30 a.m., Courtroom No. 12, United States Courthouse.

> FN* Paul N. Carlin became Postmaster General effective January 1, 1985 and is substituted for defendant Bolger, the former Postmaster General.
>
> FN1 In response to this motion, plaintiff has agreed to the dismissal of her pendent claims. Memorandum in Opposition to Defendants' Motion to Dismiss, p. 2.
>
> FN2 We disagree with defendants' contention that because a transsexual's condition may be alleviated through the use of hormones and gender reassignment surgery, plaintiff's impairment is merely '

short term' and therefore not covered by the Rehabilitation Act. The mere fact that treatment may be available does not automatically remove an afflicted individual from the scope of this statute. Cf. 29 U.S.C. § 706(7)(B)(ii).

> FN3 In reaching this conclusion, it has not been necessary to rely on plaintiff's two affidavits attached to the memorandum in opposition to defendants' motion to dismiss. We shall therefore consider defendants' motion to strike as moot.

D.D.C., 1985.
Doe v. U.S. Postal Service
Not Reported in F.Supp., 1985 WL 9446 (D.D.C.), 37 Fair Empl.Prac.Cas. (BNA) 1867

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.