# Attachment L

Schroer v. Billington, No.
05-cv-1090 (JR)



Not Reported in F.Supp.                                                                                               Page 1

Not Reported in F.Supp., 1976 WL 735 (M.D.Tenn.), 14 Fair Empl.Prac.Cas. (BNA) 1024, 14 Empl. Prac. Dec. P 7726
**(Cite as: Not Reported in F.Supp.)**

**H**
Krzyzewski v. Metropolitan Government of Nashville

United States District Court; M.D. Tennessee, Nashville Division.
**Lorraine A. Krzyzewski, Plaintiff
v.
Metropolitan Government of Nashville et al., Defendants.
Civil Action No. 75-415-NA-CV**
75-415-NA-CV
October 20, 1976
MORTON, D.J.

[*Statement of Case*]

*1 Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, the First, Ninth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983.

This cases arises out of the termination of plaintiff's employment while she was a probationary police officer with the defendant Police Department. The reason given for plaintiff's discharge was conduct unbecoming a police officer-having a relationship with a married male police officer, John Owen. Plaintiff alleges that the sole reason she was discharged, while the male officer was not, was because she is a woman, and that this disparity of treatment is in violation of Title VII. The plaintiff also claims that she was fired for constitutionally impermissible reasons under the First, Ninth and Fourteenth Amendments. Plaintiff further alleges that she was denied any hearing before an impartial body to determine the validity of the accusations against her, and that the defendants Police Department and Police Chief Joe Casey have provided disparaging information about the plaintiff to her prospective employers. Plaintiff alleges that these actions have deprived her of liberty and property without due process of law under § 1983.

The defendants admit that plaintiff was discharged because of her involvement with Officer Owen, but deny that she was discharged solely because of her sex. The defendants assert that they have the unfettered authority to discharge a probationary employee without any right of hearing or appeal.

The defendants also seek dismissal of this action because the complaint filed by the plaintiff with the Equal Employment Opportunity Commission (EEOC) was not filed within one hundred eighty days of the alleged unlawful employment practice as required by 42 U.S.C. § 2000e-5(e).

**Findings of Fact**

From the evidence adduced at trial on May 4, 1976, the court makes the following findings of fact:

The plaintiff began training at the Police Department Training Academy on April 1, 1974, after having been appointed as a Police Officer Trainee on January 1, 1974. Plaintiff's performance at the Academy was satisfactory (see Exhibits A and B), and during the twelfth week of her training, she was assigned to field duty. During this period, the plaintiff rode with Officer Owen on three occasions, but never had sexual intercourse with him while on duty.

The plaintiff had started seeing Officer Owen socially during the twelfth week of her training, just after she was assigned to field duty. It was not until the sixteenth week of her training that she learned that Officer Owen was married.

After successfully completing her police training course, plaintiff was assigned as a probationary police officer in the Patrol Division at the South

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                           Page 2
Not Reported in F.Supp., 1976 WL 735 (M.D.Tenn.), 14 Fair Empl.Prac.Cas. (BNA) 1024, 14 Empl. Prac. Dec. P 7726
**(Cite as: Not Reported in F.Supp.)**

Station. On August 14, 1974, approximately one week after she began working at South Station, the plaintiff was called into the office of Chief Casey. At that time Chief Casey questioned her about her relationship with Officer Owen. The following day, plaintiff was informed that she was being terminated because she had engaged in conduct unbecoming a police officer.[FN1] However, the plaintiff was kept on the Police Department payroll until August 29, 1974. Prior to her termination, plaintiff's work was in all respects considered satisfactory (See Exhibit B and Exhibit G at pp. 11-12).

> FN1 Plaintiff was fired for violating Article 24 of Title II, Chapter A of the Police Department Rules and Regulations which provides:
> "A member shall always conduct himself in accordance with the highest degree of morality which is required of the law enforcement profession. He shall not act in a manner which will reflect discredit upon himself, the Metropolitan Police Department or the Metropolitan Government."

*2 Officer Owen was suspended for ten days without pay for his participation. Chief Casey explained that he was not firing Officer Owen because he was a permanent employee and had a family (Exhibit D).

On February 18, 1975, plaintiff filed a complaint with the E.E.O.C. On September 25, 1975, plaintiff received a "right-to-sue" letter from the E.E.O.C. (Exhibit I). Plaintiff filed her complaint with this court on December 11, 1975.

[*Rules on Socializing*]

The court further finds:

1. That there was no written Police Department regulation which forbade police officers either of the same or opposite sex from socializing with one another on their off-duty hours.

2. That there was an "unwritten rule" in the Police Department that unmarried and married police officers of the opposite sex should not socialize with one another on their off-duty hours (See Exhibit H at pp. 18-19).

3. That permanent male police officers have historically been suspended for a short period of time without pay for violations of the regulation in question, while permanent female officers have been terminated for violating the same regulation.

### Conclusions of Law

*Plaintiff's § 1983 Claims.* The plaintiff's claims under § 1983 are threefold. She first claims that she was denied liberty and property without due process of law because she was denied a hearing before an impartial body to determine the validity of the accusations against her. Plaintiff's second claim is that Chief Casey and the Police Department have provided disparaging information about her to her prospective employers causing her to lose job opportunities. Plaintiff's third claim is that her standing and reputation in the community have been damaged by the dissemination of this information. For the reasons discussed below, the court finds that no relief can be granted under § 1983.

An initial inquiry in all § 1983 cases is whether the defendant is a "person" within the meaning of that section. It is well settled that "Congress did not undertake to bring municipal corporations within the ambit of § 1983." *Kenosha v. Bruno,* 412 U.S. 507, 513, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Khan v. Garanzini,* 411 F.2d 210 (6th Cir., 1969); *Puett v. City of Detroit,* 323 F.2d 591 (6th Cir. 1963) *cert. denied,* 376 U.S. 957 (1964). Thus this portion of the complaint must be dismissed as to the defendant, Metropolitan Government.

The court is also of the opinion that suit may not be brought under § 1983 against the defendant Police Department since it is an agency of a city government and thus not a "person" within the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 3

Not Reported in F.Supp., 1976 WL 735 (M.D.Tenn.), 14 Fair Empl.Prac.Cas. (BNA) 1024, 14 Empl. Prac. Dec. P 7726
**(Cite as: Not Reported in F.Supp.)**

meaning of that section. *Henschel v. Worcester Police Dept.,* 445 F.2d 624 (1st Cir. 1971); *United States ex rel. Lee v. Illinois,* 343 F.2d 120 (7th Cir. 1965). *See also, Kenosha v. Bruno, supra; Memphis Am. Fed. of Tchrs. v. Board of Education,* 534 F.2d 699, 702 (6th Cir. 1976); *Muzquiz v. San Antonio,* 520 F.2d 993, 1004 nn. 4-8 (5th Cir. 1975) (Godbold, J. dissenting); *Lopez v. Williams,* 372 F.Supp. 1279, 1295 (S.D. Ohio 1973), *affd. sub nom., Goss v. Lopez,* 419 U.S. 565 (1975); *Tennessee ex rel. Davis v. Hartman,* 306 F.Supp. 610, 612-13 (E.D. Tenn. 1969). Thus this portion of the complaint must also be dismissed as to the defendant Police Department.

[*Property Interest*]

*3 The safeguards of procedural due process apply only when a person is deprived of liberty or property. Plaintiff cannot prevail here unless her discharge affected one of these protected interests.

The Supreme Court established guidelines for determining whether an employee has a property interest in continued public employment in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). There, the Court held that to have a property interest in a given benefit,
a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a *legitimate claim of entitlement to it.* It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.
Property interests, of course, are not created by the Constitution. *Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law*-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

408 U.S. at 577 (emphasis added).

The Court in *Roth* held that the mere showing by the plaintiff that he was not rehired in a particular job, without more, did not amount to a showing of a loss of liberty or property, and thus the plaintiff was not entitled to a due process hearing to examine the reasons for his nonretention.

[*Probationary Status*]

In general, probationary and non-tenured employees have been held to have no reasonable expectation of continued employment. *Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974); *Ryan v. Aurora City Board of Ed.,* No. 75-2067 (6th Cir. filed Aug. 2, 1976); *Burnley v. Thompson,* 524 F.2d 1233 (5th Cir. 1975); *Ring v. Schlesinger,* 502 F.2d 479 (D.C. Cir. 1974). In *Burnley,* the court was dealing with, among other things, the firing of seventeen probationary employees of the Macon, Georgia fire department. The Court held
The ordinances of the City of Macon make clear that a probationary fire fighter does not become a member of the Fire Department-thereby benefiting from various employment guarantees, including the procedural safeguards . . . until, among other requirements, he or she satisfactorily completes the prescribed period of training and serves satisfactorily in probationary status for 18 months.
Thus, the probationary fire fighters, like their counterparts in teaching and in federal government, were not given a reasonable expectation of continued employment and were thus not deprived of a property interest when they were discharged by the City.

524 F.2d at 1240.

This is not to say, however, that a probationary or non-tenured employee never has a legitimate claim of entitlement to continued employment. If, because of the rules and understandings promulgated by state officials, or the policies and practices of a particular institution, an individual is reasonably led to believe that his employment will be continued, he has a property interest in his employment and is entitled to a due process hearing before he is terminated. *Perry v. Sindermann,* 608

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 4

Not Reported in F.Supp., 1976 WL 735 (M.D.Tenn.), 14 Fair Empl.Prac.Cas. (BNA) 1024, 14 Empl. Prac. Dec. P 7726
**(Cite as: Not Reported in F.Supp.)**

U.S. 593, 603, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Ryan v. Aurora City Board of Ed., supra; Lake Michigan College Fed. of Teach. v. Lake Michigan Community College,* 518 F.2d 1091 (6th Cir. 1975), *appeal pending; Soni v. Board of Trustees,* 513 F.2d 347, 350 (6th Cir. 1975), *appeal pending; Gabriel v. Benitez,* 390 F.Supp. 988, 992 (D. P.R. 1975).

[*Civil Service Rules*]

*4 The plaintiff was a probationary employee of Metropolitan Government and the Police Department. As such, she was governed by the Metro Civil Service Commission Rules and Regulations (as revised, 1972) ("Metro Civil Service Rules") (Appendix 3 to Exhibit H).
Chapter 6, regarding probationary employees, provides
Section 1. Probationary Period
Every person appointed or promoted from a Civil Service Eligibility Register shall be required to complete successfully a probationary period of six months.
Section 2. Purpose
The Department shall use the probationary period to closely observe and evaluate the work of all employees newly appointed and to encourage their effective adjustment to the job and the service of the Metropolitan Government; and shall be utilized for the most effective adjustment of a new employee and for the elimination of any probationary employees whose performance does not meet the required standard of work.
A probationary period of service may not be extended beyond the statutory or authorized period of service. Retention of an employee after the six months probationary period shall become equivalent to a permanent appointment.
A department head must make a decision before the completion of the work test period as to whether an employee should be dismissed or placed in the classified service. If the department head fails to carry out his duty, the employee shall automatically achieve permanent Civil Service status.
The supervisor of each probationary employee shall furnish his department head evaluation reports as required, making a positive recommendation as to the employees' retention or separation. Department heads shall retain only those employees who meet an acceptable standard of work during the probationary period.
Section 3. Separation of Probationary Employee
A new employee may be dismissed at any time after the first thirty days during the probationary period when, in the judgment of the department, the quality of his work is not such as to merit continuation in the service. The separation from the roll of a new employee during the probationary period shall not be subject to appeal or hearing.
When a probationary employee is found to be physically unfit for performance of the duties of the position which he seeks to hold, or is addicted to the habitual use of narcotics or intoxicating beverages, or has failed to submit pertinent information requested by the Director of Personnel, or has practiced fraud or deception, or made false statements in his application, the department head shall terminate his employment, unless irregularities are waived by the department head and approved by the Civil Service Commission.

In addition, Section 8 of Chapter 4 provides: "The probationary period shall be an essential part of the examination process."

The court is of the opinion that based on these rules, the plaintiff could have no reasonable expectation of continued employment. The rules provide that the probationary period shall be used to determine whether the probationary employee's performance meets the standard required by the particular department. Should the employee's work prove unsatisfactory, he or she may be dismissed. The decision as to whether the employee shall be placed on permanent status rests within the discretion of the particular department head.[FN2] Such clear language effectively negates any expectation of continued employment which might otherwise call into play the due process requirement of a pre-termination hearing.[FN3] See *Burnley v. Thompson, supra* at 1240; *Orr v. Trinter,* 444 F.2d 128, 134-35 (6th Cir. 1971), *cert. denied,* 408 U.S. 943 (1972); *Ninow v. Blanton,* No. 75-326-NA-CV (M.D. Tenn., filed Dec. 18, 1975), and the cases

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 5
Not Reported in F.Supp., 1976 WL 735 (M.D.Tenn.), 14 Fair Empl.Prac.Cas. (BNA) 1024, 14 Empl. Prac. Dec. P 7726
**(Cite as: Not Reported in F.Supp.)**

cited therein. Moreover, plaintiff has introduced no evidence to show that the policies or practices of the Police Department were such as to reasonably induce the belief in the plaintiff that she was to be made a permanent employee as was the case in *Perry* and *Soni, supra.* Thus, plaintiff's first claim under § 1983 must be rejected.

> FN2 Of course, as will be discussed, *infra,* this discretion cannot be exercised in such a manner as to have discriminatory results.
>
> FN3 Of interest to the court is the fact that the rules specifically state that a probationary employee is not entitled to a hearing, thus negating any expectation that plaintiff could receive a hearing. Metro Civil Service Rules, Chapter 6, Section 3.

[*Injury to Good Name*]

*5 If the plaintiff is to succeed at all on her claim that she was entitled to a due process hearing, such claim must be grounded on the injury to her good name, reputation, or ability to secure future employment allegedly caused by the entries made in her record by Chief Casey, or by the actions of Chief Casey with respect to job recommendations requested of him. Support for the requirement of such a hearing may be found in *Roth, supra,* where the Court stated:
For "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."

408 U.S. at 573 (citations omitted).
However, in *Paul v. Davis,* - U.S. -, 96 S.Ct. -, 47 L.Ed.2d 405, 418 (1976), the Supreme Court stated that there must be more than mere defamation, such as the deprivation by governmental action of a right previously held by an individual under state law, *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); *Paul v. Davis, supra,* or the foreclosure of freedom to take advantage of other employment opportunities. *Board of Regents v. Roth, supra* at 573; *Cafeteria and Restaurant Workers Union v. McElroy,* 367 U.S. 886, 898, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). As this court has said, "In determining whether a discharged employee is entitled to a *Roth*-type hearing to clear his good name, this court is of the opinion that its inquiry must go beyond a mere examination of the *nature* of the charges leveled at him. What is crucial [is] the effect of those charges on the employee's good name, reputation, or future employment opportunities." *Ninow v. Blanton, supra* at 23 (emphasis in original).

Plaintiff has failed to prove that she has lost any employment opportunities or that she has been stigmatized. Plaintiff places muct reliance on the fact that she almost lost her job at Woolco because of what was contained in a job reference form completed by Chief Casey (Exhibit F at pp. 19-20 and Appendix #2 to Exhibit H). However, the court finds that the reference form in no way had the effect of stigmatizing the plaintiff. In the reference form, Chief Casey wrote that the plaintiff was a "[g]ood employee" who "should do a good job." Clearly, that in no way stigmatized the plaintiff. Chief Casey also noted that he would not re-employ the plaintiff because of her "envolvement [sic] with a male police officer." That the plaintiff was involved with a male police officer is a mere statement of fact which even the plaintiff admits. Given its terse, unelaborated nature, this statement cannot be considered to have had the effect of stigmatizing the plaintiff. There is absolutely no proof that it irreparably injured her reputation or materially damaged her future employment prospects. Plaintiff still is employed by Woolco, and has not proved that the information in the job reference form was disseminated to future employers. See *Board of Regents v. Roth, supra* at 573-74; *Blair v. Board of Regents,* 496 F2d 322 (6th Cir. 1974).

[*Job prospects*]

*6 At trial, plaintiff claimed that her discharge also adversely affected her job prospects at the Red Stone Arsenal in Huntsville, Alabama. Plaintiff testified that her Civil Service rating from the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 6

Not Reported in F.Supp., 1976 WL 735 (M.D.Tenn.), 14 Fair Empl.Prac.Cas. (BNA) 1024, 14 Empl. Prac. Dec. P 7726
**(Cite as: Not Reported in F.Supp.)**

Huntsville Civil Service Commission was delayed for one month because the Commission was looking into the circumstances surrounding her job termination in Nashville. However, plaintiff did get a Civil Service rating from the Huntsville authorities, albeit one month later than other people received their ratings. Plaintiff has failed to show how the circumstances surrounding her discharge prejudiced her, or that there was in fact any prejudice at all. Moreover, plaintiff has not adduced any facts to show that her case was treated any differently than that of any other previously discharged employee who requests a Civil Service rating. Had the plaintiff not received a Civil Service rating, the court would be faced with a different problem. However, the plaintiff did receive her rating. It does not appear to this court to be unreasonable for a city or state agency to investigate the circumstances under which a prospective employee left her previous employment.

Moreover, plaintiff has failed to establish that her failure to secure employment with the Huntsville, Alabama Police Department was in any way attributable to the specific content of Chief Casey's statement in the job reference form or in plaintiff's record. Plaintiff failed to introduce any evidence that the Huntsville Police Department authorities were even aware of Chief Casey's statements. Plaintiff testified that the Huntsville Police Department authorities told her that they would not consider hiring her until she "cleared up" the matter of her discharge in Nashville. However, that is insufficient proof to establish that Chief Casey's statements stigmatized her.

[*Community Standing*]

Plaintiff also claims that her standing and associations in her community have been seriously damaged because of the dissemination of disparaging information by Chief Casey. However, as was previously mentioned, *supra,* the court has found that the information disseminated by Chief Casey could not be reasonably deemed "disparaging," and thus did not have the effect of stigmatizing her. Moreover, plaintiff failed to introduce any evidence that her standing or reputation have been detrimentally affected.

Thus, for the reasons hereinbefore mentioned, plaintiff's claims under § 1983 must be dismissed.

*Plaintiff's Right to Privacy and Free Association Claims*

It has long been recognized that an individual may not be fired for constitutionally impermissible reasons. *Orr v. Trinter, supra* at 134. The courts have acknowledged that even a probationary employee may not be fired for exercising rights guaranteed by the free speech clause of the First Amendment, the self-incrimination clause of the Fifth Amendment, the due process clauses of the Fifth and Fourteenth Amendments, or the equal protection clause of the Fourteenth Amendment. *Orr v. Trinter, supra; Blair v. Board of Regents, supra* at 324. Were the plaintiff to present a valid claim that she was fired for exercising one of these protected rights, the court would not hesitate to grant her relief.[FN4] However, plaintiff claims that she was impermissibly terminated because she exercised rights protected by the First and Ninth Amendments-the right of free association and the right of privacy. Inquiry therefore must be made into the nature of these rights and whether plaintiff's activities were protected by them.

> FN4 As was discussed before, *supra,* plaintiff's due process claim must be rejected.

*7 Although the Constitution does not explicitly mention any right of privacy or right of free association, that such rights exist has long been recognized. The right of freedom of association has been found to exist under the First Amendment, *Healy v. James,* 408 U.S. 169, 181, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972), while the right to privacy has been found to exist under either the First, Fourth, Fifth, Ninth, or Fourteenth Amendments, or under the penumbras of the Bill of Rights. *Roe v. Wade,* 410 U.S. 113, 152, 93 S.Ct. 705, 35 L.Ed.2d 147 (1972); *Griswold v. Connecticut,* 381 U.S.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.    Page 7
Not Reported in F.Supp., 1976 WL 735 (M.D.Tenn.), 14 Fair Empl.Prac.Cas. (BNA) 1024, 14 Empl. Prac. Dec. P 7726
**(Cite as: Not Reported in F.Supp.)**

479, 484-485, 499, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Gasper v. Louisiana Stadium and Exposition District, et al.,* Civil No. 75-3732 (E.D. La., filed September 6, 1976). For the purposes of this opinion, however, it does not matter from what Amendments these rights emanate; that the Supreme Court has recognized such rights is sufficient.

[*Discharge for Immoral Conduct*]

Many recent cases have dealt with the issue presented here: whether an individual may be fired because he or she engages in "immoral" sexual conduct. See, *e.g., McKeand v. Laird,* [6 EPD P 8896] 490 F.2d 1262 (9th Cir. 1973); *Norton v. Macy,* 417 F2d 1161 (D.C. Cir. 1969); *Drake v. Covington County Board of Education,* [8 EPD P 9616] 371 F.Supp. 974 (M.D. Ala., 1974); *Burton v. Cascade School Dist. Union High School No. 5,* 353 F.Supp. 254 (D. Ore. 1973); *Wentworth v. Laird,* 348 F.Supp. 1153 (D. D.C. 1972), *aff'd sub. nom, Gayer v. Schlesinger,* 490 F.2d 740 (D.C. Cir. 1973); *Mindel v. United States Civ. Serv. Com.,* 312 F.Supp. 485 (N.D. Cal. 1970). What these and other cases make clear is that the right of privacy is not absolute.[FN5] If the particular governmental agency can prove that the claimed immorality has affected the "offending" individual's ability to perform his particular job, or has affected the efficiency of those working with him, that individual may be dismissed and the invasion of the right of privacy will be justified. *Norton v. Macy, supra* at 1167; *Drake v. Covington County Board of Education, supra* at 979. However, if this "rational connection" is absent, the individual may not be discharged. *Pickering v. Board of Education,* 391 U.S. 563, 572-73, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Mindel v. United States Civ. Serv. Com., supra* at 488.

> FN5 None of the cases cited have addressed the issue of whether it is constitutionally impermissible to discharge an individual for exercising the right of free association. These cases have all dealt with the issue in terms of violations of due process rights or the right to privacy. However, the court is of the opinion that the rationale of those cases is equally applicable when the right of free association is involved since, at least for this particular case, the court is of the opinion that the right of free association is encompassed by the broader right to privacy.

[*Rational Connection*]

*8 The court is of the opinion that such a rational connection has been established here. As a police officer, plaintiff was charged with enforcing laws regulating the sexual conduct (or misconduct) of individuals. And while plaintiff was violating no statute or ordinance herself by engaging in intercourse with Officer Owen,[FN6] she was potentially deterring the effectiveness of the police department in the enforcement of the law with respect to crimes involving moral turpitude. Public reaction to plaintiff's conduct might very well undermine the general respect for police authority in the enforcement of these types of crimes. Moreover, the likelihood that this type of conduct would cause morale problems, both within the police force itself and among the officers and their spouses, with a consequent loss of efficiency within the force, seems quite substantial. In fact, part of the reason this case was first brought to the attention of Chief Casey was that Officer Owen's wife complained about her husband's relationship with plaintiff (Exhibit H at pp. 33-34).

> FN6 Neither the Tennessee Code nor the Metro ordinances provide that adultery or fornication is a crime. Even though adultery and fornication can still be punished as common-law crimes, the court has been unable to discover any reported case since 1873 in which an individual has been charged with either common-law adultery or fornication. See *Cole v. State,* 65 Tenn. (6 Baxter) 239 (1873).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                              Page 8
Not Reported in F.Supp., 1976 WL 735 (M.D.Tenn.), 14 Fair Empl.Prac.Cas. (BNA) 1024, 14 Empl. Prac. Dec. P 7726
**(Cite as: Not Reported in F.Supp.)**

The interest in maintaining respect for police officers and promoting harmony among the officers themselves outweighs plaintiff's rights of privacy and free association. *Pickering v. Board of Education, supra* at 570. Thus, the court finds that as to this allegation the plaintiff was not fired for a constitutionally impermissible reason.

*[Plaintiff's Title VII Claim]*

A threshold question with respect to this claim is whether plaintiff's complaint was timely filed with the E.E.O.C. 42 U.S.C. § 2000e-5(e) provides that a charge of discrimination must be filed with the E.E.O.C. "within one hundred and eighty days after the alleged unlawful employment practice occurred . . . ." Since this requirement is jurisdictional, *McDonnell Douglas Corp. v. Green,* [5 EPD P 8607] 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Thornton v. East Texas Motor Freight,* [7 EPD P 9385] 497 F2d 416, 424 (6th Cir. 1974); *Olson v. Rembrandt Printing Co.,* [7 EPD P 9419] 375 F.Supp. 413, 416-17 (E.D. Mo. 1974), if the plaintiff failed to file with the Commission within the required time period, her claim must be dismissed. Both the applicable regulations and the pertinent case law make it clear that a charge is deemed to be filed when it is received by the E.E.O.C. regardless of when it was prepared or mailed. 29 C.F.R. § 1601.11(b); *Voutsis v. Union Carbide Corp.,* [3 EPD P 8053] 321 F.Supp. 830, 834 (S.D. N.Y. 1971); *rev'd on other grounds,* [4 EPD P 7592] 452 F.2d 889 (2nd Cir. 1971), *cert. denied,* [4 EPD P 7813] 406 U.S. 918 (1972); *Washington v. Aerojet-General Corp.,* [1 EPD P 9864] 282 F.Supp. 517, 521 (C.D. Cal. 1968).

*[Timeliness of EEOC Charge]*

*9 Plaintiff's complaint was filed on February 18, 1975. When the acts complained of "occurred" for purposes of the limitations period is the subject of much dispute. The plaintiff contends that the acts "occurred" on August 29, 1974, when the plaintiff was officially terminated from the police payroll.

The defendants contend that the acts "occurred" on August 15, 1974, when the plaintiff was notified of her termination. If the August 29 date is deemed the date of "occurrence," the plaintiff has satisfied the jurisdictional requirement. However, such is not the case if the August 15 date is adopted.

The court is of the opinion that for purposes of Title VII the acts occurred on August 15. On that date, plaintiff was removed from duty and finally and effectively fired. She performed no services for the Police Department thereafter. However, because she had accumulated three holidays and six "good time" days (Exhibit I), the payroll records reflect that she was paid to August 29.

The purpose of a limitations period in the statute is to insure that claims are diligently pursued once the "person aggrieved" discovers that he in fact does have a "grievance." The *grievance,* then, is the event which triggers the running of the limitations period. Plaintiff became aware that she had a colorable grievance on the day Chief Casey announced that she was being discharged, not when the purely ministerial act of terminating her for payroll purposes occurred. Thus, this court must hold that the plaintiff did not timely file her grievance within the required statutory period. See generally, *McCarty v. Boeing Co.,* 321 F.Supp. 260 (W.D. Wash. 1970).

*[Statutory Provisions]*

In passing, and to forego the necessity of a remand should the Sixth Circuit decide that the jurisdictional prerequisites were satisfied, the court will rule on the merits of plaintiff's Title VII claim.

42 U.S.C. § 2000e-2 provides, in pertinent part,
(a) It shall be unlawful employment practice for an employer-
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 9
Not Reported in F.Supp., 1976 WL 735 (M.D.Tenn.), 14 Fair Empl.Prac.Cas. (BNA) 1024, 14 Empl. Prac. Dec. P 7726
**(Cite as: Not Reported in F.Supp.)**

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

*[Initial Showing of Bias]*

In a Title VII case, the plaintiff has the initial burden of establishing a prima facie case of discrimination. Once a prima facie case is established, the burden shifts to the employer[FN7] to articulate some legitimate non-discriminatory reasons for the plaintiff's termination. The plaintiff then must be afforded an opportunity to show that the defendant's stated reasons are, in fact, pretextual. *McDonnell Douglas Corp. v. Green, supra* at 802-04.

> FN7 The Police Department and Metropolitan Government are employers for Title VII purposes. 42 U.S.C. § 2000e(b).

**\*10** The prima facie proof required in Title VII cases varies from case to case. *McDonnell Douglas Corp. v. Green, supra* at 802 n.13; *McDonald v. Sante Fe Trail Transp. Co.,* [12 EPD P 10,997] 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493, 500 n. 6 (1976). In the case at bar, the plaintiff may establish her prima facie case by proving that (1) the plaintiff is a member of one of the "protected classes" under Title VII, (2) the employment practices of the defendant adversely affected her, and (3) although neutral on its face, an employment practice of the defendant is being applied in such a manner as to reach a discriminatory result. *Griggs v. Duke Power Co.,* [3 EPD P 8137] 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *McDonnell Douglas Corp. v. Green, supra.* The plaintiff may use statistical data, and patterns and past practices of the defendant to establish that discrimination exists. *McDonnell Douglas Corp. v. Green, supra* at 805; *Brown v. Gaston County Dyeing Machine Co.,* [4 EPD P 7737] 457 F.2d 1377, 1382 (4th Cir.), *cert. denied,* [5 EPD P 8021] 409 U.S. 982 (1972).

Plaintiff has established both her prima facie case and that the defendants' articulated reasons for her termination are, in fact, pretext. It is undisputed that the plaintiff was adversely affected by her discharge. What is at issue here is whether plaintiff's firing was the product of discriminatory or administratively neutral practices. It is the opinion of this court that the firing of the plaintiff was the result of discrimination.

*[Disparate Treatment]*

Plaintiff clearly established that as a member of the protected class, she was treated differently from a similarly situated male who was found to be guilty of the same conduct. Both the plaintiff and Officer Owen were charged with "conduct unbecoming a police officer," for which she was terminated and he received a ten-day suspension without pay. This disparity of treatment was due to discrimination on the basis of sex.

In a 1971 decision, the E.E.O.C. found probable cause to believe that Title VII had been violated where a female employee was discharged for having had an affair with a male employee while the male employee was not discharged. E.E.O.C. Decision No. 71-2678, [CCH EEOC Decision (1973) P 6287] 4 F.E.P. Cases 24 (1971). The Commission stated: "Where similarly placed persons of different sex receive dissimilar treatment, it is reasonable to infer that sex was a factor in the dissimilar treatment." *Id.* at 25. Although the courts are not bound by the decisions of administrative agencies, the "administrative interpretation of a particular Act by the enforcing agency is entitled to great deference." *Albemarle Paper Co. v. Moody,* [9 EPD P 10,230] 422 U.S. 405, 431, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Griggs v. Duke Power Co., supra* at 433-34.

*[Marital Status]*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 10
Not Reported in F.Supp., 1976 WL 735 (M.D.Tenn.), 14 Fair Empl.Prac.Cas. (BNA) 1024, 14 Empl. Prac. Dec. P 7726
**(Cite as: Not Reported in F.Supp.)**

The defendants contend that Officer Owen and the plaintiff are not similarly situated, there being differences in their respective cases that justify the disparate treatment. The defendants first seek to justify the difference in treatment by pointing out that the defendant is the married head of a family while the plaintiff is single. The court rejects this as a rational basis for disparate treatment.

*11 The court would so find even if two male officers were involved. The fact that one individual is married while another is not is insufficient reason, standing alone, to justify disparate treatment. There has been no showing that plaintiff's conduct was more detrimental to the efficiency of the Police Department than Officer Owen's merely because she was not married. Thus, at least in this case, marital status is not one of the permissible rational bases for disparate treatment.

[*Permanent v. Probationary Status*]

The defendants' second contention is equally untenable. The defendants contend that the fact that Officer Owen was a permanent employee while the plaintiff was only a probationary employee is a sufficient distinction to justify the differing punishments. While plaintiff's status as a probationary employee was conclusive for her § 1983 claim, it is not conclusive in a Title VII case.

When Officer Owen waived his formal disciplinary hearing when confronted by Chief Casey (Appendix 1 to Exhibit H), he was waiving many of the rights that separated him, as a permanent employee, from the plaintiff, a probationary employee.[FN8] He and the plaintiff were thenceforth equals with respect to the manner in which, and the degree to which, punishment could be imposed. What punishment could be imposed was then within the discretion of Chief Casey. Had there been some real and substantial differences between the two individuals, Chief Casey would have been justified in imposing different punishments. However, there were no such substantial differences in this case. Both individuals were guilty of the same conduct. Both individuals had satisfactory work records. But both were not given the same punishment. Given these sets of facts of circumstances, the court reasonably infers that the only reason for the differing punishments was the sex of the individuals involved.

> FN8 The court would also note that even if Officer Owen had requested a formal hearing, he still could have been dismissed from the force. Metro Civil Service Rules, Chapter 9, Sections 6 and 10.

[*Conclusion*]

Support for the court's conclusion can be found in two recent Supreme Court cases. In *McDonnell Douglas Corp. v. Green, supra,* the Court held that an employer "may justifiably refuse to hire one who has engaged in unlawful disruptive acts against it, but only if this criterion is applied alike to members of all races." 411 U.S. at 804. In a recent decision dealing with whether it was a violation of Title VII to only fire the white employees when both white and black employees had engaged in the same conduct, *McDonald v. Santa Fe Trail Transp. Co., supra,* the court reiterated its conclusions in *McDonnell Douglas* and held:
The Act prohibits all racial discrimination in employment, without exception for any group of particular employees, and while crime or other misconduct may be a legitimate basis for discharge, it is hardly one for racial discrimination. Indeed, the Title VII plaintiff in *McDonnell Douglas* had been convicted for a nontrivial offense against his former employer. It may be that theft of property entrusted to an employer for carriage is a more compelling basis for discharge than obstruction of an employer's traffic arteries, *but this does not diminish the illogic in retaining guilty employees of one color while discharging those of another color.*

*12 49 L.Ed.2d 502-03 (footnotes omitted) (emphasis added).

It is this court's opinion that the decisions and language of *McDonnell Douglas* and *McDonald* are applicable with equal force to instances of sex discrimination. Thus, this court holds that when

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 11

Not Reported in F.Supp., 1976 WL 735 (M.D.Tenn.), 14 Fair Empl.Prac.Cas. (BNA) 1024, 14 Empl. Prac. Dec. P 7726
**(Cite as: Not Reported in F.Supp.)**

two employees with work records of comparable quality are given disparate punishment for engaging in the same conduct, the defendant is guilty of conduct proscribed by title VII, absent some real and substantial justification for the differing treatment.

The court is also of the opinion that the plaintiff established that there is a pattern of discrimination based on sex in the defendant Police Department. On a number of occasions, female police officers have been fired while male officers who engaged in the same conduct have received less severe disciplinary treatment. Although the court lacks jurisdiction to order an end to such practices because of plaintiff's untimely filing of her E.E.O.C. charge, the defendants would be well advised to see that such disparate treatment is discontinued.

An appropriate order will be entered.

### Order

In accordance with the Memorandum contemporaneously filed, it is Ordered that the complaint in this cause is dismissed.

Krzyzewski v. Metropolitan Government of Nashville
Not Reported in F.Supp., 1976 WL 735 (M.D.Tenn.), 14 Fair Empl.Prac.Cas. (BNA) 1024, 14 Empl. Prac. Dec. P 7726

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.