# Attachment M



Slip Copy                                                        Page 1

Slip Copy, 2006 WL 3030323 (N.D.W.Va.)
**(Cite as: Slip Copy)**

**Afshari** v. **Leavitt**
N.D.W.Va.,2006.
Only the Westlaw citation is currently available.
United States District Court, N.D. West Virginia,
Clarksburg Division.
Aliakbar **AFSHARI** and Shahla Afhsari, Plaintiffs,
v.
Michael **LEAVITT**, Secretary of Health and
Human Services, Dr. Julie L. Gerberding, Director,
Center for Disease Control and Prevention, and Dr.
John Howard, Director, National Institute of
Occupational Safety and Health, Defendants.
**Civil Action No. 1:05-CV-127.**

Oct. 23, 2006.

Allan N. Karlin, Sophie E. Zdatny, Allan N. Karlin
& Associates, Robert M. Bastress, Jr., Morgantown,
WV, Arthur B. Spitzer, American Civil Liberties
Union, Washington, DC, for Plaintiffs.
Helen Campbell Altmeyer, U.S. Attorney's Office,
Wheeling, WV, Marcia N. Tiersky, Robert J.
Katerberg, U.S. Dept. of Justice, Marina Utgoff
Braswell, U.S. Attorneys Office, Washington, DC,
for Defendants.

*MEMORANDUM OPINION AND ORDER*
IRENE M. KEELEY, District Judge.
*1 This case arises from the termination of two
federal employees from their Civil Service
Fellowships and raises the following questions:
1) Whether the plaintiffs, as Civil Service Fellows,
are appointed civil service employees covered by
the Civil Service Reform Act;
2) Whether the plaintiffs have a property interest in
their employment when the Civil Service Reform
Act does not confer such an interest on them;
3) Whether the circumstances surrounding the
plaintiffs' terminations demonstrate the stigma and
public disclosure required to establish deprivation
of a liberty interest; and
4) Whether the plaintiffs' Title VII claim preempts

their First Amendment Freedom of Association
claim?

For the reasons that follow, the Court **GRANTS** the
defendants' motion regarding the plaintiffs' claims
under the Administrative Procedures Act ("APA")
and Fifth Amendment Due Process Clause, and
**DENIES** the defendants' motion as to the plaintiffs'
First Amendment freedom of association claim.

**I. FACTUAL AND PROCEDURAL
BACKGROUND**

The plaintiffs, Aliakbar and Shahla Afshari (the "
Afsharis"), are Iranian-born, permanent residents of
the United States, who reside in Morgantown, West
Virginia. In December, 2000, each received initial
two-year appointments as Service Fellows working
at the National Institute for Occupational Safety and
Health facility ("NIOSH") located in Morgantown,
West Virginia. Upon completion of those
appointments in December, 2002, each received a
second appointment. Dr. Afshari's appointment was
scheduled to run through December 25, 2004, and
Mrs. Afshari's appointment was scheduled to run
through December 25, 2007.

In May, 2004, however, while the Afsharis were at
work, NIOSH officials summarily terminated their
appointments and escorted them off the NIOSH
premises. Subsequently, the Afsharis received a
letter signed by Dr. John Howard, the Director of
NIOSH, and another individual on behalf of Dr.
Julie Gerberding ("Gerberding"), the Director of
the Centers for Disease Control and Prevention ("
CDC"), that stated "[t]he reason for this termination
is your failure to satisfactorily pass a required
background investigation."

The Afsharis then contacted a Department of Health
and Human Services ("HHS") personnel officer to
obtain a further explanation of their terminations.
According to the Afsharis, this officer reiterated

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                   Page 2

Slip Copy, 2006 WL 3030323 (N.D.W.Va.)
**(Cite as: Slip Copy)**

that their terminations resulted from a failed background investigation, and that the reasons for the failure were classified.

Pursuant to the policies of the HHS and also the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, the Afsharis initiated what ultimately proved to be an unsuccessful Equal Employment Opportunity ("EEO") proceeding in which they alleged discrimination based on their religion, Islam, and their national origin, Iranian. The EEO counselor reported that during the investigation the Director of the CDC's Office of Security and Emergency Preparedness had explained that "the background investigation was ordered by Homeland Security on individuals from threat countries to the United States" and that Iran is "one of the threat countries." The EEO counselor also reported that the HHS personnel officer had stated the "investigation was a routine investigation that was done on all employees who have access to classified information." The Afsharis maintain that their jobs did not require security clearance and that they had no access to classified information.

*2 During this time, the Afsharis also requested documents from the CDC and NIOSH pursuant to the Freedom of Information Act ("FOIA") and the Privacy Act; those agencies, however, produced only the CDC Human Resources Management Manual. According to the Afsharis, administrators of the agencies advised them that they had no right to internally appeal their terminations. Thus, on August 13, 2004, CDC Director Gerberding notified the Afsharis that, "upon thorough review and consideration of the information available to [her], which is classified," she had determined that they were terminated "for failure to satisfactorily pass a required background investigation" and she agreed with their terminations. On December 28, 2004, the Afsharis sued the directors of the HHS, CDC, and NIOSH in federal court in the District of Columbia. In their suit, they alleged that their terminations as Service Fellows violated their rights under the Civil Rights Act of 1964 ("Title VII"). On August 5, 2005, United States District Judge Reggie B. Walton transferred the Afsharis' case to this district.

Following that transfer, on March 24, 2006, the

Afsharis amended their complaint to assert several constitutional claims in addition to their Title VII claim. Count One of their amended complaint alleges that the arbitrary, capricious and discretionarily abusive nature of the Afsharis' terminations "without cause and without ... notice of or opportunity to respond to allegations against them" violated CDC and NIOSH agency rules and regulations, as well as the APA. *See* 5 U.S.C. § 706. Count Two alleges that their terminations "deprived them of liberty and property without due process of law in violation of the Fifth Amendment." Count Three alleges that the special background investigations and subsequent terminations were based on the Afsharis' Islamic religion or Iranian nationality, and violated their rights under Title VII. Count Four alleges that the terminations, based on the Afsharis' associations with others from Iran, and the government's failure to adequately and reasonably investigate those associations, violated their right to freedom of association under the First Amendment.

On April 4, 2006, the defendants moved to dismiss all counts except the Title VII claim. Because the motion was fully briefed by the time of the July 19th scheduling conference, the Court heard oral argument in support of the parties' respective positions.

## II. STANDARD OF REVIEW

In their briefs and also at the hearing, the defendants focused their argument on this Court's alleged lack of subject matter jurisdiction to review the Afsharis' claims, and asserted that the Civil Service Reform Act ("CSRA") provides the exclusive remedy for those claims.[FN1] They also argued that the CSRA precludes review of the plaintiffs' constitutional due process claims to the extent they are based on a property interest because the Afsharis do not qualify as protected employees under the CSRA and, consequently, have no property interest in their employment.

> FN1. 5 U.S.C. § 2302 expressly preserves a civil service employee's right to bring a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 3

Slip Copy, 2006 WL 3030323 (N.D.W.Va.)
**(Cite as: Slip Copy)**

claim under Title VII.

**\*3** Motions to dismiss based on lack of subject matter jurisdiction may be brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Once a defendant files such a motion, a plaintiff has the burden of proving that subject matter jurisdiction exists. *Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991). The district court should grant a Rule 12(b)(1) motion to dismiss only "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* Moreover, in ruling on a motion to dismiss for lack of subject matter jurisdiction, a court may consider evidence outside the pleadings without converting the motion to one for summary judgment. *Id.*

In their motion, the defendants also asserted that the Afsharis failed to state a Fifth Amendment due process claim for violation of a liberty interest. Motions to dismiss based on a failure to state a claim upon which relief may be granted are brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint. *Randall v. U.S.,* 30 F.3d 518, 522 (4th Cir.1994)(citing *Schatz v. Rosenberg,* 943 F.2d 485, 489 (4th Cir.1991)). The legal conclusions in the complaint must be accompanied by factual allegations sufficient to support them. *Migdal v. Rowe Price-Fleming Int'l, Inc.,* 248 F.3d 321, 326 (4th Cir.2001). This Court, thus, must accept as true all well-pleaded factual allegations in the complaint and construe them in the light most favorable to the plaintiffs. *Mylan Lab., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993). A court may dismiss a complaint under Rule 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).

### III. ANALYSIS

### A. The Civil Service Reform Act

The defendants' motion asserts that because the Afsharis are federal employees appointed in the civil service any appeal of their termination is exclusively covered by the CSRA, and this Court, therefore, is barred from exercising jurisdiction over their procedural due process claims. After reviewing the CSRA and all relevant authority, the Court concludes that the Afsharis were appointed civil service employees subject to the CSRA and agrees that it does not have jurisdiction to consider their procedural due process claims.

### 1. Appointed Civil Service Employees

5 U.S.C. § 2101(1) defines the scope of the civil service, stating that "the 'civil service' consists of all *appointive* positions in the executive, judicial, and legislative branches of the Government of the United States, except positions in the uniformed services." (Emphasis added) 5 U.S.C. § 2105(a)(1)(E) further defines "employee" as "an individual who is *appointed* in the civil service by ... the head of a Government controlled corporation." (Emphasis added). The Afsharis were appointed to their Service Fellowships pursuant to 42 U.S.C. § 209(g), which states:
**\*4 Designation for fellowships; duties; pay**
In accordance with regulations, individual scientists, other than commissioned officers of the Service, may be designated by the Surgeon General to receive fellowships, *appointed* for duty with the Service *without regard to the civil-service laws* and compensated without regard to the Classification Act of 1923, as amended, may hold their fellowships under conditions prescribed therein, and may be assigned for studies or investigations either in this country or abroad during the terms of their fellowship.

(Emphasis added). Pursuant to the applicable statutory language, the Afsharis were appointed civil service employees and, therefore, according to the defendants, subject to the exclusive remedies provided by the CSRA.

The Afsharis argue that the language "without regard to the civil-service laws" in § 209(g) exempts them from all provisions of the CSRA, and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                              Page 4

Slip Copy, 2006 WL 3030323 (N.D.W.Va.)
**(Cite as: Slip Copy)**

that to find otherwise fails to distinguish between a temporary excepted employee and a Service Fellow. FN2 A careful reading of the statutory language, however, belies this argument and demonstrates clearly that, although it was the intention of Congress to provide federal agencies with the flexibility to hire Service Fellows without regard to the normal hiring formalities of the Civil Service, Congress did not intend to disregard the CSRA in its entirety with respect to Civil Service Fellows.

> FN2. The CSRA divides civil service employees into three main classifications: (1) *Senior Executive Service employees* -high-level positions in the Executive Department, but for whom appointment by the President and confirmation by the Senate is not required; (2) *Competitive Service employees*-all other employees for whom nomination by the President and confirmation by the Senate is not required, and who are not specifically excepted from the competitive civil service by the statute or by statutorily authorized regulation; and (3) *Excepted Service personnel*-those who are in neither the Competitive Service nor the Senior Executive Service.

Courts that have analyzed the applicability of the CSRA usually have focused on the statute's language to determine whether an employee is exempt from specific civil-service laws. In *King v. Briggs,* 83 F.3d 1384 (Fed.Cir.1996), the Federal Circuit reviewed the Merit Systems Protection Board's (the "Board") reversal of an Administrative Law Judge's ("ALJ") decision that the Board had no jurisdiction over a plaintiff's appeal of her removal from the National Council on Disability. The ALJ had based his decision on the plain language of the plaintiff's hiring statute, 29 U.S.C. § 783(a)(1), which stated that "the Chairperson ... may appoint and remove, without regard to the provisions of Title 5." The ALJ had concluded that the plaintiff was exempted from Title 5 and had no right of appeal to the Board. The full Board, however, reversed because the plaintiff was an "employee" as defined by 5 U.S.C. § 7511(a)(1)(C)(ii) over whom it had jurisdiction to decide her personnel dispute.

*Id.*

The Federal Circuit affirmed the Board's decision after determining that the text of the hiring statute " makes plain that Congress gave the Council the option of disregarding only certain parts of Title 5." *Id.* at 1388. Notably absent from those parts which specifically may be disregarded were Chapters 75 and 77, both of which afford an employee the right to appeal an adverse action to the Board and also to seek judicial review of the Board's decision. Finding that those omissions were not accidental, the court stated:

*5 Congress knows how to exempt a civil service position from the protections found in chapters 75 and 77 of Title 5 if it so desires. Although the language "without regard to the provisions of Title 5 " appeared to be all-encompassing, it was only limited to those provisions enumerated in the plain language of the statute.

*Id.* Consequently, despite the "without regard" language, § 783(a) did not remove the Executive Director's position from the ambit of Title 5's procedural protections concerning removal. *Id.*

No federal court appears to have considered the specific exemption language in 42 U.S.C. § 209(g) that is under review here. The Merit Systems Protection Board, however, recently decided that the "without regard to civil-service laws" language in 42 U.S.C. § 209(f) FN3 exempted the application of civil-service laws pertaining to the " *appoint[ment]* of special consultants in order to provide the agency with flexible hiring authority to meet its specialized needs free from the appointing procedures of Title 5 ." *Fishbein v.* HHS, 102 M.S.P.B. 4 (M.S.P.B 2006). (Emphasis added).

> FN3. Section 42 U.S.C. § 209(f) states:
> (f) Special consultants: In accordance with regulations, special consultants may be employed to assist and advise in the operations of the Service. Such consultants may be appointed *without regard to the civil-service laws* and their compensation may be fixed without regard to the Classification Act of 1923, as amended. 42

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 5

Slip Copy, 2006 WL 3030323 (N.D.W.Va.)
**(Cite as: Slip Copy)**

U.S.C. § 209(f) (emphasis added).

The decision in *Fishbein* is significant to the analysis here because in that case the Board concluded that, while special procedures falling outside of Title 5 may be used to recruit and hire talented scientists as special consultants, once hired, the special consultants are subject to Title 5's requirements concerning conditions of federal employment. Although *Fishbein* is not binding on this Court, it provides persuasive authority and is consistent with the holding in *King v. Briggs.*

In this case, the Court must focus on the plain language of the Afsharis' hiring statute, 42 U.S.C. § 209(g), to determine to what extent, if at all, they were excepted from the Civil Service. While § 209(g) expressly allows for appointments "without regard to civil-service laws," it does not expressly exclude a Service Fellow from all other civil-service laws. A close review of the language of § 209(g) convinces the Court that the Afsharis are subject to the remedies provided by the CSRA for their disputed terminations.

The Afsharis argue that their appointments were contractual in nature and that they are excepted from the CSRA. They focus on the introductory language of § 209(g), which states "[i]n accordance with regulations ...," and contend that the regulations applicable to Service Fellowships, found at 42 C.F.R. Part 61, Subpart B, §§ 61.30-61.38, state, at § 61.33, that "all service fellowships shall be established by the Secretary ... [who] shall prescribe in writing the conditions under which service fellows will be appointed and will hold their fellowships." According to the Afsharis, those " conditions" are set forth in the CDC's Human Resources Management Manual ("HR Manual").

In asserting that they were contract employees, the Afsharis rely on one line in the Appendix of the HR Manual that provides: "[A] Service Fellow's *contract* can be terminated before expiration but termination for cause must be recommended by the CIO director." (Emphasis added). Unfortunately, they produce no employment contract to support their contention. Moreover, it is difficult to ignore the overwhelming evidence within the HR Manual,

and the Afsharis' hiring documents themselves, supporting the presumption that the Afsharis were appointed into the civil service. In its section concerning Service Fellows, for example, the HR Manual uses a form of the word "appoint" approximately twenty-one (21) times, including " appointees may be citizens or non-citizens ..." and " appointments are made to secure the services of talented scientists...." Far from supporting their argument, the express language of the HR Manual reinforces the conclusion that the Afsharis are civil service appointees rather than contract employees.

**\*6** The Afsharis also argue that not every person who works for a federal agency is covered by the CRSA. This argument is wholly unpersuasive, however, because the cases on which they rely for support are of limited applicability. In *Suzal v. Director, United States Information Agency, et. al.,* 32 F.3d 574 (D.D.C.1994), for example, the district court limited its holding to the Smith-Mundt Act. And, in *Scarnati v. Department of Veterans Affairs,* 344 F.3d 1246 (Fed.Cir.2003), the court concluded that the plaintiff did not fall under the civil-service rules, both because of the title under which he could have been hired and also because he never was hired in the first place. *Scarnati* is consistent with the decision of the Federal Circuit in *King v. Briggs;* in both cases the Federal Circuit determined that *selection* into the civil service can be more flexible than the ordinary Title 5 appointment procedures. *Scarnati,* 344 F.3d at 1247-49; *King,* 83 F.3d at 1388. Finally, in *Miller v. U.S. Department of Agriculture,* 143 F.3d 1413 (11th Cir.1998), the Eleventh Circuit decided that the plaintiff was exempted from the CSRA because the regulations under which he was hired, 7 C.F.R. §§ 7 .28 and 7.29, made him an at-will employee and not a federal employee subject to the CSRA. In the case of the Afsharis, neither the statute nor the regulations applicable to them establish that they were hired as at-will or non-federal employees.

Beyond the specific statutory and regulatory language, courts also look to hiring documents to determine whether an employee was appointed or employed under a contract. *Federico v. U.S.,* 70 Fed. Cl. 378, 384-85 (2006). Here, the Afsharis executed "Appointment Affidavits" on the line

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 6

Slip Copy, 2006 WL 3030323 (N.D.W.Va.)
**(Cite as: Slip Copy)**

above the words "Signature of Appointee." Furthermore, there is a strong presumption that civil service employees serve by appointment unless there is significant evidence to suggest otherwise. *Adams v. U.S.,* 391 F.3d 1212, 1221 (Fed.Cir.2004) ; *Hamlet v. U.S.,* 63 F.3d 1097, 1101(Fed.Cir.1995) ; *McCauley v. Thygerson,* 732 F.2d 978, 981 (D.C.Cir.1984); *Federico,* 70 Fed. Cl. at 384; *Calvin v. U.S.,* 63 Fed. Cl. 468, 472 (2005). Such evidence does not exist in this case.

Because there is nothing in the applicable statutes, supporting regulations or hiring documents on which the Afsharis may successfully rely to challenge the presumption that they were appointed to their positions at NIOSH, the Court concludes that they are civil service appointees subject to the provisions of the CSRA.

### 2. CSRA Preemption

The United States Supreme Court has recognized that the CSRA prescribes in great detail the protections and remedies applicable to actions concerning personnel disputes, including the availability of administrative and judicial review. *U.S. v. Fausto,* 484 U.S. 439, 443 (1988). Thus, in enacting the CSRA, Congress explicitly reduced the participation of the federal courts to consider claims brought by civil service employees regarding conditions of their employment. *Id.*

*7 Even before its decision in *Fausto,* the United States Supreme Court declined to grant federal employees access to the courts beyond that explicitly provided by the CSRA. In *Bush v. Lucas,* 462 U.S. 367, 389 (1983), the Court held that, because plaintiff's claims arose out of an employment relationship governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States, it would be inappropriate for a court to supplement that regulatory scheme with a "new judicial remedy." The Court stated: "Congress is in a far better position than a court to evaluate the impact of a new species of litigation between federal employees on the efficiency of the civil service." *Bush,* 462 U.S. at 389.

Five years later, in *Fausto,* the Court held that an excepted civil service employee in the Department of the Interior's Fish and Wildlife Service had no " right to administrative or judicial review of suspension for misconduct." 484 U.S. at 443. The Court explained that the entire statutory scheme of the CSRA "displays a clear congressional intent to deny [excepted service employees] the protections of Chapter 75-including judicial review-for personnel action covered by that chapter." *Id.* at 447. In so deciding, the Court noted the " comprehensive nature of the CSRA, the attention that it gives throughout to the rights of nonpreference excepted service employees, and the fact that it does not include them in provisions for administrative and judicial review contained in Chapter 75," and found "a congressional judgment that those employees should not be able to demand judicial review for the type of personnel action covered by that chapter." *Id.* at 448.

Chapter 75 of the CSRA governs adverse personnel actions against civil service employees. Employees covered by that chapter who are subjected to a proposed adverse personnel action must receive notice of that proposed action and be given an opportunity to respond. 5 U .S.C. § 7513(b). They then are entitled to appeal to the Merit Systems Protection Board pursuant to 5 U.S.C. § 7701, followed by the opportunity to have the Board's decision reviewed by the United States Court of Appeals for the Federal Circuit. 5 U.S.C. § 7703,

Because the Afsharis were Service Fellows appointed in the Civil Service, their employment arose from a relationship governed by the comprehensive procedural and substantive provisions of the CSRA. As a result, they are subject to the explicit and integrated scheme embodied in that statute and must seek remedies for their termination within that framework.

### B. Administrative Procedures Act

Because the CSRA provides the exclusive remedy for the Afsharis' terminations, this Court lacks jurisdiction to hear their APA claims. *Leistiko v. Stone,* 134 F.3d 817 (6th Cir.1998). In *Leistiko,* the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 7

Slip Copy, 2006 WL 3030323 (N.D.W.Va.)
(Cite as: Slip Copy)

Sixth Circuit concluded that the CSRA precluded judicial review of an excepted civil service plaintiff's APA claim. *Id.* at 819. Leistiko was a lieutenant colonel in the Ohio National Guard and a civilian member of the excepted service who had been terminated after a medical condition disqualified him from further aviation service. *Id.* at 819. He filed suit in federal court, alleging that th e defendants had acted arbitrarily and capriciously in violation of their own regulations and the APA. *Id .* The Sixth Circuit held that Congress had not provided a remedy for his claim under the APA. *Id.* at 819-20.

*8 In *Leistiko,* the Sixth Circuit recognized that the APA generally provides judicial review of agency action for which there is no adequate remedy in court, but held that the Act is inapplicable whenever other statutes preclude judicial review. *Id.* Relying on the Supreme Court's holding in *Fausto,* the court concluded that where the CRSA expressly excludes a specific employee from Chapter 75 protections (i.e.-judicial review) Congress clearly intended to deny that employee judicial review for adverse employment actions covered by that Chapter. *Id.* Inasmuch as Chapter 75 expressly excluded employees described in 5 U.S.C. § 8337(h)(1) (relating to technicians in the National Guard, 5 U.S.C. § 7511(b)(5)), it held that Leistiko's removal as a technician was not subject to judicial review under the APA. *Id.* at 820.

The decision in *Leistiko* is significant to the outcome here because it establishes that civil service employees cannot circumvent the requirements of the CSRA merely by alleging claims under the APA. Where Congress clearly intended the CSRA to be the exclusive framework through which civil service employees may challenge employment actions, even when the CSRA provides no remedy to an employee, a court cannot conduct judicial review by relying on another statute. Therefore, this Court has no jurisdiction to review the Afsharis' claims under the APA.

**C. Fifth Amendment Due Process Claim**

Although the Afsharis' claims primarily fall under the CSRA, federal case law dictates the need for a thorough review of the related constitutional claims for which they seek injunctive relief. *Mitchum v. Hurt,* 73 F.3d 30, 35 (3rd Cir.1995).[FN4] The Court, therefore, must determine whether the Afsharis possess the necessary property or liberty interests required to sustain their Fifth Amendment due process claim.

> FN4. Distinguishing *Bush v. Lucas,* 42 U.S. 367 (1988), the Third Circuit stated that, despite the fact that the Supreme Court had chosen not to create new non-statutory monetary damages in that case, it did not necessarily follow that the long-recognized availability of injunctive relief should be restricted because the factors that counsel against one type of relief are not equally applicable with respect to the other. *Mitchum v. Hurt,* 73 F.3d at 35-36. Therefore, the court concluded that the CSRA did not limit its jurisdiction to enjoin unconstitutional personnel actions by federal agencies. *Id.* at 36.

**1. Property Interest**

The defendants contend that the Afsharis' Fifth Amendment claim fails as a matter of law because they have neither a property interest nor a liberty interest to support their due process claim. Any property interest the Afsharis may have in their employment necessarily would arise under the CSRA. According to the defendants, however, the CSRA does not confer such an interest on the Afsharis because they are not "employees" as expressly defined by 5 U.S.C. § 7511.

In *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538 (1985), the Supreme Court concluded that a federal constitutional claim depends on whether a plaintiff has a property right in continued employment. "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 8

Slip Copy, 2006 WL 3030323 (N.D.W.Va.)
**(Cite as: Slip Copy)**

source such as state law....' " *Id.* at 538 (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972) ). In *Loudermill,* the Court stated:
The Due Process Clause provides that certain substantive rights-life, liberty, and property-cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct. Were the rules otherwise, the Clause would be reduced to a mere tautology. "Property" cannot be defined by the procedures provided for its deprivation any more than can life or liberty. The right to due process "is conferred, not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards."

**\*9** *Id.* at 540 (quoting *Arnett v. Kennedy,* 416 U.S. 134, 167 (1974)).

Pursuant to Ohio Rev.Code Ann. § 124.11 (1984), the plaintiffs in *Loudermill* were "classified civil service employees entitled to retain their positions ' during good behavior and efficient service,' [and] who could not be dismissed 'except ... for ... misfeasance, malfeasance, or nonfeasance in office.' " *Id.* The Court, therefore, determined that the Ohio statute provided the plaintiffs with a property right in continued employment on which they could base a constitutional due process claim. *Id.*

Here, Chapter 75 of the CSRA governs the removal of civil service employees. Like the Ohio statute in *Loudermill,* 5 U.S.C. § 7513(a) provides that an " employee" may be removed for "such cause as will promote the efficiency of the service." Defining " employee", 5 U.S.C. § 7511(a)(1) states:
(a) For the purpose of this subchapter-
(1) "employee" means-
(A) an individual in the competitive service-
(i) who is not serving a probationary or trial period under an initial appointment; or
(ii) who has completed 1 year of current continuous service under other than a temporary appointment limited to 1 year or less;
(B) a preference eligible in the excepted service who has completed 1 year of current continuous

service in the same or similar positions-
(i) in an Executive agency; or
(ii) in the United States Postal Service or Postal Rate Commission; and
(C) an individual in the excepted service (other than a preference eligible)-
(i) who is not serving a probationary or trial period under an initial appointment pending conversion to the competitive service; or
(ii) who has completed 2 years of current continuous service in the same or similar positions in an Executive agency under other than a temporary appointment limited to 2 years or less. 5 U.S.C. 7511(a).

Section 7513(b) provides the "employee" defined at § 7511 with specific rights and procedures regarding a proposed adverse personnel action. Namely, an "employee" against whom an action is proposed is entitled to:(1) at least 30 days' advance written notice ..., (2) not less than 7 days to answer orally and in writing and to furnish ... evidence in support of the answer, (3) be represented by an attorney ..., and (4) a written decision and specific reasons therefore at the earliest practicable date.

5 U.S.C. § 7513(b).

The Afsharis, however, do not fall within the ambit of § 7511(a)(1)(C)(i) because neither served under an initial appointment pending conversion to the competitive service. They also do not fall within the provisions of § 7511(a)(1)(C)(ii) because they did not complete two (2) years of current continuous service in the same or similar positions, other than a temporary appointment limited to two years or less. In fact, they concede that, if the CSRA applies to them, they did not qualify as "employees" under 5 U.S.C. § 7511. Indeed, the Afsharis do not qualify as "employees" under § 7511, can be terminated at will, and are not afforded any property interest conferred by § 7513(b). Despite the absence of any actual property interest under § 7513, they nevertheless argue that a property interest constructively arose from their appointments under 5 U.S.C. § 209(g) and the HR Manual.

**\*10** In *Board of Regents v. Roth,* 408 U.S. 564 (1972), the Supreme Court created a standard to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                     Page 9

Slip Copy, 2006 WL 3030323 (N.D.W.Va.)
(Cite as: Slip Copy)

determine when a property interest can be constructively created. In *Roth,* a statute provided that all state university teachers initially would be employed on probation, and that only after completing four years of continuous service would teachers achieve permanent employment with procedural protection against separation. *Id.* at 564. The plaintiff was given a one-year fixed term of employment as an assistant professor and, after completion of one academic year, was informed that he would not be rehired for the next year. *Id.*

Based on those facts, the Court concluded that the plaintiff had no property interest in his employment and no ability to challenge the non-renewal of his contract. It explained that a plaintiff must show that he possesses more than an abstract need, desire or unilateral expectation of continued employment. *Id.* at 577. Rather, a plaintiff must identify "rules or mutually explicit understandings" that establish a claim of entitlement to his employment. *Id.*

On the same day it decided *Roth,* the Supreme Court handed down another opinion providing a plaintiff with an opportunity to establish, by the existence of informal policies and practices of an institution, a property interest in his continued employment. In *Perry v. Sinderman,* 408 U.S. 593, 601-02 (1972), the Court stated that the absence of a formal tenure system would not always foreclose the possibility of a property interest in continued employment. *Id.* Because the plaintiff had taught at the same institution for a number of years, he had an opportunity to show that a *de facto* tenure system existed at the college. *Id.* at 603. The court stated that, if such a *de facto* system did exist, the plaintiff would possess a property interest in his employment and be entitled to a hearing where he could refute the grounds for the non-renewal of his contract. *Id.*

While conceding that they are not "employees" under 5 U.S.C. § 7511(a)(1)(C), the Afsharis nevertheless rely on the Supreme Court's holding in *Perry* to assert that the HR Manual supports a reasonable expectation for continued employment on which to base a property interest.[FN5] Based on their reading of the HR Manual, the Afsharis continue to contend that Service Fellows are contract, not at-will, employees and that they may

rightfully expect to serve until the end of their alleged contracts. As discussed earlier in this opinion, however, the presumption that federal employees are appointed, coupled with the overwhelming evidence to support that presumption in this case, confirms the conclusion that the Afsharis were appointed in the civil service. Thus, they are at-will employees who have no property interest in their employment. Even if they had a reasonable expectation that they would remain in their positions for the duration of their appointed terms, that expectation alone does not constitute a property interest. *Board of Regents v. Roth,* 408 U.S. at 577; *Senior Executives Ass'n v. U.S.,* 576 F.Supp. 1207, 1214 (D.D.C.1983).

> FN5. The facts in the present matter differ significantly from the circumstances in *Perry,* and are more analogous to the facts in Roth. In *Perry,* the Court provided the plaintiff with an opportunity to demonstrate a *de facto* tenure system because no formal tenure program existed at the college. Here, similar to the statute in *Roth,* § 7513 expressly provides a formal procedure through which civil service employees, as defined by § 7511, may challenge adverse employment actions. There is no dispute that the Afsharis are not "employees" who are afforded mutual expectations in their employment pursuant to § 7513(b).

**\*11** Recognizing the weakness in basing their argument on the language of the HR manual, the Afsharis assert that Service Fellows are a "different kind of animal" and are an exception to the rule established in *Fausto.* They contend that 42 C.F.R. § 61.33 provides the Secretary of Health and Human Services with the authority to prescribe in writing the conditions under which Service Fellows will be appointed and hold their fellowships. Relying on this language, they assert that the Secretary's failure to establish a procedure for Service Fellows to challenge adverse employment actions demonstrates that direct judicial review is their only available remedy, and that the Court should create such a remedy in this case.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                        Page 10

Slip Copy, 2006 WL 3030323 (N.D.W.Va.)
**(Cite as: Slip Copy)**

Neither the applicable statutes nor regulations state that Service Fellows have a right to direct judicial review of adverse personnel actions if the Secretary fails to create a procedure to challenge such actions. Any judicial remedy created by the Court therefore, would lack a legal basis and would rely entirely on equity. This, of course, is specifically the type of remedy the Supreme Court prohibited in *Fausto,* where it recognized the exclusive nature of the system Congress established in the CSRA.

A review of the statutory language, the applicable regulations, and the HR Manual leads to the conclusion that the Afsharis were at-will employees who lacked any property interest in their employment.

### 2. Liberty Interest

The defendants also argue that the Afsharis have not alleged sufficient facts to establish deprivation of a liberty interest, and point to the fact that the Afsharis have failed to demonstrate that their supervisors made any charges against them that could "seriously damage" their standing in the community, or somehow impose a "stigma" on them that would foreclose their ability to take advantage of other employment opportunities. The defendants further assert that the Afsharis have alleged no publication of the reasons for their dismissal. They therefore contend that the Court should dismiss the Afsharis' claim for violation of a liberty interest.

In *Board of Regents v. Roth,* 408 U.S. at 574-76, the Supreme Court identified two tests to determine whether a party had been deprived of a liberty interest: (1) does a public charge against a party seriously damage the party's standing and associations within the community; and (2) does an adverse employment decision stigmatize a party in a way that forecloses their freedom to take advantage of other employment opportunities? The Afsharis contend they meet both of these tests.

First, they assert that their former employers will relay the reason for their termination, a failed background investigation, to potential employers.

They characterize such information as a "publication" that would seriously damage their standing in the community. The Afsharis also assert that their liberty interest should survive the defendants' motion to dismiss even absent public disclosure.

**\*12** They also assert that their termination for a failed background investigation unfairly stigmatizes them with a label of "untrustworthiness" that has foreclosed, and will continue to foreclose, their freedom to take advantage of other employment opportunities. They argue that this stigma results from their status as Iranian-born Muslims living in the United States post September 11, 2001.

### a. Public Disclosure

Four years after its decision in *Roth,* in *Bishop v. Wood,* 426 U.S. 341 (1976), the Supreme Court required public disclosure to establish deprivation of a liberty interest:
In *Board of Regents v. Roth,* 408 U.S. 564, we recognized that the nonretention of an untenured college teacher might make him somewhat less attractive to other employers, but nevertheless concluded that it would stretch the concept too far to suggest that a person is deprived of liberty when he simply is not rehired in one job but remains as free as before to seek another. This same conclusion applies to the discharge of a public employee whose position is terminable at the will of the employer when there is no *public disclosure* of the reasons for the discharge.

*Id.* at 348 (emphasis added). In *Bishop,* the Court failed to find that the necessary public disclosure had occurred because the reasons for the plaintiff's termination "were communicated orally to the [plaintiff] in private and ... stated in writing in answer to interrogatories" during the litigation. *Id.* at 347-49. To find public disclosure under these facts, the Court stated, "would penalize forthright and truthful communication between employer and employee...." *Id.* at 349.

In footnote five of *Stone v. University of Maryland Med. Sys. Corp.,* 855 F.2d 167 (4th Cir.1988), the Fourth Circuit referred to the public disclosure

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 11

Slip Copy, 2006 WL 3030323 (N.D.W.Va.)
(Cite as: Slip Copy)

requirement in *Bishop v. Woods* when describing the factors that must be alleged to establish deprivation of a liberty interest:
Stone's complaint also alleged that the defendants " failed to accord [ him] due process in regard to his right to be free from taint in his reputation, good name, honor and integrity." J.A. 7. This suggests that Stone means to claim that the defendants' conduct deprived him of a "liberty" as well as " property" interest. In order to state such a claim, Stone would have to allege facts tending to show that his superiors made charges against him that " might seriously damage his standing and associations in his community" or otherwise " imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities," *Board of Regents v. Roth,* 408 U.S. 564, 573-75 (1972); that those charges were made "public" by his employer, *Bishop v. Wood,* 426 U.S. 341, 348-49 (1976); and that the charges were false, *Codd v. Velger,* 429 U.S. 624, 627 (1977). Whether the allegations of this complaint are legally sufficient to satisfy these requirements is a difficult question, for it is unclear whether the charges against Stone were made public by his employers or by third parties within the Hospital.

*13 *Id.* at 173, n. 5. In *Stone,* however, the Fourth Circuit never determined whether the plaintiff's allegations were legally sufficient to establish a deprivation of a liberty interest because he had voluntarily resigned and was not terminated. *Id.* Although the Afsharis argue that the language in *Stone* was merely dicta, other courts, citing to *Bishop v. Wood,* have considered a lack of public disclosure a critical factor when rejecting claims of deprivation of liberty interest. *See e.g., Doe v. Cheney,* 885 F.2d 898, 910 (D.C.Cir.1989); and *Ranger v. Tenet,* 274 F.Supp.2d 1, 9 (D.D.C.2003) (agency's conduct would not be considered stigmatizing if basis for revocation of security clearance was never disclosed to the public).

In *Jackson v. Long,* 102 F.3d 722 (4th Cir.1996), the Fourth Circuit had to determine whether public statements made by an employer concerning the termination of two employees were sufficient to support a due process claim. After dismissing two

prison employees accused of rape, a county sheriff issued a press release announcing the dismissals and then publicly stated that a criminal investigation was underway; he did not, however, disclose the accusation of sexual assault. *Id.* at 725. Subsequently, the rape charges were dropped, after which both employees sued the sheriff, alleging that their terminations deprived them of their property and liberty interests in their jobs without due process of law. *Id.* at 726.

The Fourth Circuit held that "state action must so seriously damage the plaintiff's reputation and standing in his community as to foreclose his freedom to take advantage of other employment opportunities." *Id.* at 730 (citing *Zepp v. Rehrmann,* 79 F.3d 381 (4th Cir.1996)).[FN6] It further found that, if the defendants were suggesting that a constitutional deprivation of liberty resulted from the sheriff's public announcement of a criminal investigation into his employees' job performance, they had failed to cite any case law supporting their contention. *Jackson v.. Long,* 102 F.3d at 730.

> FN6. In *Zepp,* the plaintiff asserted he was deprived of a constitutionally protected liberty interest in his reputation when the County Executive represented on television that Zepp was being forced to retire because of management problems at the Harford County Detention Center. In *Zepp,* the Fourth Circuit stated that "public employees' liberty interests are not implicated by harm to reputation alone." *Zepp,* 79 F.3d at 388. It concluded that the most Zepp could derive from the statement made by the County Executive was an accusation of incompetence or unsatisfactory performance. *Id.*

As in *Jackson,* where the alleged sexual assault of an inmate was never publicly disclosed, the specific results of the Afsharis' background investigations have never been publicly disclosed by the defendants. Furthermore, unlike the defendant in *Jackson,* who had publicly announced the plaintiffs' suspension pending a criminal investigation, the defendants here have made no announcement;

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                       Page 12

Slip Copy, 2006 WL 3030323 (N.D.W.Va.)
**(Cite as: Slip Copy)**

rather, they have been preemptively accused of informing future employers of the Afsharis' about their failed background checks.

In *Doe v. Cheney,* 885 F.2d 898 (D.C.Cir.1989), the court concluded that the plaintiff's liberty interest claim was untenable because the alleged stigmatizing information had not been disseminated to the public. The plaintiff, an employee at the National Security Administration ("NSA"), had argued that the NSA's action in communicating the determination that he was a "security risk" to potential employers unconstitutionally deprived him of his liberty. *Id.* at 909-10. The court disagreed, stating that the "NSA did not disseminate publicly any of the information that it used in making its decision vis-a-vis [the plaintiff]. By contrast, NSA disclosed the information only to other federal agencies with whom NSA tried to place [him]." *Id.* at 910.

*14 Pursuant to such reasoning, the defendants' private disclosure to the Afsharis of the reason for their termination (at their own request) can hardly constitute public disclosure. Furthermore, in light of *Doe v. Cheney,* the possibility that the defendants may explain to future employees that the Afsharis " failed a background investigation" is not enough to compel a finding of public disclosure. *Id.*

#### b. Stigma

A critical element in a claim of deprivation of liberty interest is the creation of a stigma that forecloses a person's freedom to take advantage of other employment opportunities. *Board of Regents v. Roth,* 408 U.S. 564. In *Molerio v. FBI,* 749 F.2d 815 (D.C.Cir.1984), the FBI denied the plaintiff employment as a special agent after he failed a "top secret" security clearance. The plaintiff suspected that the Bureau's denial resulted from his familial ties to Cuba and claimed that the denial stigmatized him in violation of his right to due process under the Fifth Amendment. *Id.* at 824.

A critical factor for the Court in determining whether a stigma existed in *Molerio* was defamatory content. *Id.* The suspected basis for the denial,

Molerio's connection to Cuba, was deemed not to be defamatory. Thus, any supposed "stigma" resulting from that suspicion did not provide a basis for a deprivation of liberty claim. *Id.*

In this case, the Afsharis' argument echos that of the plaintiff in *Molerio.* Specifically, they assert that, while the denial of employment for failure to pass a background investigation might not invoke a liberty interest in every case, the decision terminating them cannot be separated from their identity and society's purported view of them at the time the decision occurred. They argue that, in a post-9/11 world, a summary termination under these circumstances connotes to the average American and, most importantly, to prospective employers, that they cannot be trusted and are a potential threat to the United States. Accordingly, they claim their terminations have stigmatized them and foreclosed their ability to take advantage of employment opportunities. Were the Court to adopt the Afsharis' theory, it would open the floodgates to requests to create a liberty interest for each person of Iranian nationality or Muslim faith who may be terminated by an employer. The Court declines to do this

The Afsharis' allegations that they were terminated for failing to pass a background investigation and, consequently, cannot find employment in their professional fields do not rise to a sufficient level to implicate a constitutional liberty interest. Their Fifth Amendment due process claims, therefore, fail as a matter of law.

#### D. First Amendment Freedom of Association

The defendants assert that § 717 of Title VII provides the exclusive remedy for employment discrimination claims for federal employees, *Brown v. General Services Administration,* 425 U.S. 820, 829 (1976), and from that principle argue that the Afsharis' First Amendment freedom of association claim in Count Four is subsumed in, and preempted by, their Title VII claim alleged in Count Three. Despite providing a broad scope of preemption, § 717 cannot preempt causes of action that, while arising from the same set of facts, are completely distinct from discrimination. *Baird v. Haith,* 724

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 13

Slip Copy, 2006 WL 3030323 (N.D.W.Va.)
**(Cite as: Slip Copy)**

F.Supp. 367, 373 (D.Md.1988)(citing *Ethnic Employees of the Library of Congress v. Boorstin,* 751 F.2d 1405, 1415 (D.C.Cir.1985)) [FN7].

> FN7. In *Ethnic Employees of the Library of Congress v. Boorstin,* 751 F.2d 1405, 1415 (D.C.Cir.1985), the court of appeals for the District of Columbia held that the constitutional claims in that case, which merely restated claims cognizable under Title VII, were properly dismissed, but noted that not all of the plaintiff's constitutional claims could be asserted in a Title VII lawsuit. *Id.* at 1415-16. It stated that the legislative history for § 717 did not suggest that Congress intended to prevent federal employees from suing their employers for constitutional violations against which Title VII provides no protection at all. *Id.*

*15 The Afsharis rely primarily on *Hazen Paper Co. v. Biggins,* 507 U.S. 604 (1993), to rebut the argument that their First Amendment claim is subsumed and preempted by their Title VII claim. In *Hazen,* the Supreme Court vacated the First Circuit's decision that an employer's motive in firing an employee-to prevent his pension from vesting-was tantamount to age discrimination. *Id.* at 612. The employee had brought a claim under the Age Discrimination in Employment Act ("ADEA") alleging that age was the determinative factor in his employer's decision to fire him. *Id.* at 604. The employer, however, had asserted that the purpose of the termination had been to prevent the employee's pension benefits from vesting. *Id.*

The question before the Supreme Court was whether an employer can violate the ADEA by acting on the basis of a factor, such as an employee's pension status or seniority, that is empirically correlated with age. *Id.* The Court concluded that, even though pension status and seniority are related to age, the concepts are " analytically distinct" and an employer can take account of one while ignoring the other. *Id.* at 611-612. It stated that "it is incorrect to say that a decision based on years of service is necessarily "

age based." *Id.*

Under Title VII, it is "an unlawful employment practice" for an employer to fail to hire or to discharge, or to otherwise discriminate against any employee with respect to their conditions of employment because of *their* race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2(a)(1) .(emphasis added). Accordingly, to prevail on their Title VII discrimination claim, the Afsharis must establish that the defendants terminated them because *they* are Iranian or Muslim. To prevail on their First Amendment claim, by contrast, the Afsharis must prove that, regardless of *their* own national origin or religion, their association with Iranians or Muslims resulted in their termination.

A decision based on the nationality or religion of an employee's associates is not necessarily also based on the employee's own nationality or religion. Had the Afsharis alleged a violation of their freedom to associate with individuals in a specific political party, such a claim clearly would not be preempted under Title VII simply because the Afsharis are members of a protected class recognized by Title VII. The defendants, thus, have failed to persuade this Court that it should treat the Afsharis differently simply because they allegedly associated with individuals who were members of the same protected class.[FN8] *Hazen* 507 U.S. at 611-12.

> FN8. If defendants could demonstrate that they fired the Afsharis because they associated with suspect organizations, and not because they were Muslim or Iranian, they could defeat the plaintiffs' Title VII claim. The Afsharis, nevertheless, could still maintain a viable First Amendment freedom of association claim.

Although the Afsharis' Title VII and First Amendment claims both arise from the same facts, they are analytically distinct. *See Baird,* 724 F.Supp. at 373. The Afsharis' freedom of association claim simply is not based on discrimination arising from their own national origin or religion, but, rather, arises from the national origin or religion of their associates.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 14

Slip Copy, 2006 WL 3030323 (N.D.W.Va.)
**(Cite as: Slip Copy)**

Therefore, Title VII does not preempt that claim, and the Court denies the defendants' motion to dismiss the plaintiffs' First Amendment claim.

### IV. CONCLUSION

**\*16** For the reasons stated above, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the defendants' motion to dismiss, and **DISMISSES WITH PREJUDICE** the Afsharis' APA and Fifth Amendment due process claims.

It is so **ORDERED.**

The Clerk of the Court is directed to transmit copies of this Memorandum Opinion and Order to counsel of record.

N.D.W.Va.,2006.
Afshari v. Leavitt
Slip Copy, 2006 WL 3030323 (N.D.W.Va.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.