IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DIANE J. SCHROER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JAMES H. BILLINGTON,<br>　Librarian of Congress,<br><br>　　　　　Defendant. | No. 05-cv-1090 (JR) |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
FOR LEAVE TO AMEND COMPLAINT**

　　In response to Plaintiff's Motion for Leave to Amend Complaint, Defendant claims that the proposed amendments are untimely, prejudicial, made in bad faith and ultimately futile. For the reasons set forth below, none of Defendant's arguments have merit and Plaintiff's Motion for Leave to Amend Complaint should be granted.

**APPLICABLE LEGAL STANDARD**

　　Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). As courts have recognized on numerous occasions, "[i]t is common ground that Rule 15 embodies a generally favorable policy toward amendments." Davis v. Liberty Mutual Insurance Co., 871 F.2d 1134, 1136-37 (D.C.Cir.1989) (citations omitted). See also Black v. National Football League Players Ass'n, 87 F. Supp. 2d 1, 6 (D.D.C. 2000) ("It is well settled that 'a liberal, pro-amendment ethos dominates the intent and judicial construction of Rule 15(a).'") (quoting Moore's Federal Practice § 15.14[1]).

"The presumption runs in the plaintiff's favor that he [or she] may amend his [or her] complaint." Steinbuch v. Cutler, 463 F. Supp. 2d 1, 3 (D.D.C. 2006). A plaintiff loses the benefit of that presumption only where a defendant can demonstrate "undue delay, bad faith or dilatory motive on the part of the [plaintiff], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." Id. (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)); see also Dove v. Washington Metro. Area Trans. Auth., 221 F.R.D. 246, 247 (D.D.C. 2004) (recognizing that, "under Rule 15(a), the non-movant generally carries the burden in persuading the court to deny leave to amend," and noting that "[c]ourts require a sufficient basis for denial of leave to amend because the purpose of pleading under the Federal Rules of Civil Procedure is 'to facilitate a proper decision on the merits.'") (citing, *inter alia*, Gudavich v. District of Columbia, 22 Fed. Appx. 17, 18 (D.C. Cir. 2001) (unpublished decision)); In re Vitamins Antitrust Litigation, 217 F.R.D. 30, 32 (D.D.C. 2003) ("In essence, to show prejudice, the non-movant must show unfairness in procedure or timing preventing the non-movant from properly responding.").

## ARGUMENT

**A.  Plaintiff's Motion to Amend Is Timely and Does Not Prejudice Defendant, Who Has Been on Notice of Plaintiff's Intention to Develop a Factual Record in Support of Her Sex Stereotyping Theory of Liability.**

Defendant's suggestion that Plaintiff's motion to amend her complaint is untimely or the product of undue delay is belied by the actual history of this case. Contrary to Defendant's assertion, Plaintiff did not sit idly after first adducing evidence of sex stereotyping on January 11, 2007. Rather, Plaintiff doggedly pursued additional

discovery to adduce additional evidence of sex stereotyping until discovery was stayed on April 12, 2007, as set forth below.

Plaintiff's first opportunity to explore the motivations of Charlotte Preece, the decision-maker in this case, was January 11, 2007.[1] At that time, Preece explained why she decided that Plaintiff was no longer her top candidate for the position. Among her reasons were considerations that rested on sex stereotypes about how Plaintiff looked when dressed in female attire and how she believed others would react to Plaintiff based on what she viewed as a disconnect between Plaintiff's masculine professional experience and Plaintiff's feminine gender presentation. See Memorandum in Support of Plaintiff's Motion for Leave to Amend Complaint (Rec. Doc. 33) ("Pl. Memo") at 2-4.

Shortly after this deposition, Plaintiff informed Defendant that she intended to take additional depositions to ascertain, among other things, whether Preece had made statements to others that further reflected her reliance on impermissible sex stereotyping. Specifically, in her deposition, Preece testified that she believed that she had spoken to approximately ten people about her decision during or shortly after the less-than-twenty-four-hour time period between the moment when she learned of Plaintiff's transsexuality

---

[1] Plaintiff first attempted to schedule the deposition of Preece during the first week of October 2006, and proposed dates in late October 2006 and early November 2006. After originally scheduling the deposition of Preece on November 8, 2006, Plaintiff agreed to postpone Preece's deposition until January 11, 2007, to accommodate both opposing counsel's and Preece's requests to reschedule the deposition. See Supplemental Declaration of Sharon M. McGowan ("McGowan Supp. Decl.") Exh. A. Had Plaintiff been able to depose Preece sooner, Plaintiff might have been able to complete some of her follow-up discovery regarding Preece's actual motivations and, as a result, would have been in a position to file a motion for leave to amend sooner and with more supporting evidence in the record. See discussion infra at 3-6. Thus, when considering Defendant's argument that Plaintiff's motion for leave to amend her complaint is tardy, the Court should take into account the fact that the timing of Plaintiff's attempt to amend her complaint has been driven in significant part by delays attributable to Defendant.

3

and the moment when she communicated to Plaintiff that Plaintiff was no longer under consideration for the Terrorism Research Analyst position.  With respect to work colleagues, Preece stated that she had spoken to Steve Bowman and possibly Francis Miko, the other two members of the selection committee; Daniel Mulhollan, Director of the Congressional Research Service ("CRS"); Bessie Alkisswani and Kathy Deese from the Library's Office of Workforce Development; Cynthia Wilkins, the Library's Personnel Security Officer; Kent Ronhovde, Associate Director of CRS; and Gary Pagliano, a CRS colleague.  See Deposition of Charlotte Preece ("Preece Depo") (attached to Defendant's Opposition to Plaintiff's Motion for Leave to Amend Complaint) at 176-84, 189-201, 212-13, 270-73.  With the exception of Bessie Alkisswani, whom Plaintiff had already deposed, Plaintiff noticed the deposition of each of these individuals for the purpose, among others, of ascertaining whether, during these conversations, Preece had made any statements reflecting the fact that Preece's actions had been motivated, at least in part, by her belief that Plaintiff did not conform to social sex stereotypes.

   In addition to her colleagues at the Library, Preece testified that she had discussed Plaintiff's application with her two adult sons during this crucial time period.  Id. at 201-207.  Preece testified that she had actually shared Plaintiff's resume with her adult sons who, as members of the Pennsylvania National Guard, had been impressed by Plaintiff's experiences in the military.  Id. at 202-04.  Plaintiff further testified that she had spoken with her adult sons during the time that she was making the decision to go with another candidate over Plaintiff, and that, at that time, she had specifically discussed with them the fact that Plaintiff was undergoing a gender transition.  Id. at 205-07.  For this reason,

4

Plaintiff sought to ascertain through brief depositions whether, among other things, there were any statements made by Preece during these conversations that would further evidence her reliance on sex stereotypes in making her decision.

On February 5, 2007, after Defendant had refused to agree voluntarily to produce any of the individuals identified by Preece for depositions, Plaintiff served Defendant with deposition notices for these individuals.  See McGowan Supp. Decl. Exh. B. Defendant then informed Plaintiff that it intended to seek relief from the Court from these deposition notices as well as related written discovery, and the parties asked the Court to convene a telephonic status conference to resolve this dispute.

At the February 23, 2007, status conference, Plaintiff explained that she needed this discovery, among other reasons, to explore further the issue of what had actually motivated Preece's actions by learning more about the conversations she had with others at or near the time of her decision.  Although Defendant insisted that discovery was appropriate only with respect to the limited question of whether gender identity is a component of sex as a matter of scientific fact, the Court ruled that Plaintiff was allowed to proceed with discovery unrestricted by subject matter unless and until Defendant sought a stay of discovery in connection with the filing of a potentially dispositive motion.  Turning then to the specific discovery items at issue, the Court allowed Plaintiff to proceed with the depositions that she had noticed, with the exception of Preece's two adult sons, Cynthia Wilkins (who had previously been offered as a Rule 30(b)(6) deponent) and Kent Ronhovde (due to an assertion of attorney-client privilege based on

his role as a legal advisor to Preece).[2] Thereafter, Plaintiff worked with Defendant to schedule these depositions. At this time, Plaintiff has not yet taken these depositions only because, prior to the agreed upon dates for these depositions, the parties agreed to stay discovery pending the resolution of Defendant's pending dispositive motion.[3]

Given this history, Defendant cannot plausibly argue that he is caught off guard or otherwise prejudiced by Plaintiff's attempt to amend her Complaint to reflect the fact that

---

[2] Preece indicated in her deposition that she might have also spoken to another CRS colleague, Ed Bruner. See Preece Depo at 190, 198-99. Prior to issuing a deposition notice for Bruner, Plaintiff attempted to ascertain through written discovery whether Bruner, in fact, spoke with Preece around the time of her decision. See McGowan Decl. Exh. E (Plaintiff's Interrogatory No. 30). As with Plaintiff's other interrogatories, Defendant refused to respond to this interrogatory on the ground that Plaintiff had exceeded the limit under the Federal Rules of Civil Procedure. At the March 27, 2007, telephonic conference with the Court, however, the Court allowed Plaintiff to propound this interrogatory. Prior to receiving Defendant's response to this interrogatory, however, the parties agreed to stay discovery pending the resolution of Defendant's pending Motion to Dismiss. See McGowan Decl. Exh. F.

[3] At the February 23, 2007, status conference, the Court also allowed Plaintiff to proceed with some of the written discovery that she had served on Defendant, but sustained Defendant's objection to some of Plaintiff's interrogatories and document requests because they were unduly broad. See McGowan Decl. Exh. C. Much of the written discovery with respect to which the Court sustained Defendant's objection was intended to adduce evidence demonstrating that the justifications offered by Defendant for why it selected another candidate for the position of Terrorism Research Analyst over Plaintiff are pretextual. See McGowan Decl. Exh. D at 4-5 (Defendant's Response to Plaintiff's First Set of Interrogatories and Discovery Requests). Because Plaintiff has the burden of demonstrating pretext at trial, Plaintiff propounded new discovery requests intended to adduce the same evidence, but did so in a narrowly tailored way that addressed the overbreadth concerns that had led the Court to sustain Defendant's objection to the original discovery requests. See McGowan Decl. Exh. E. Defendant refused to respond to this written discovery, and the parties again sought the assistance of the Court. During a telephonic conference held on March 27, 2007, the Court inquired whether Defendant would be filing a motion addressing the outstanding jurisdictional question regarding the scope of Title VII's coverage, and Defendant indicated he intended to do so. Defendant filed a Motion to Dismiss and in the Alternative a Motion for Judgment on the Pleadings on April 26, 2007, which is currently pending before the Court. (Rec. Doc. 30) Prior to Defendant filing his motion, the parties conferred and agreed to stay discovery until the Court had the opportunity to adjudicate Defendant's motion. See McGowan Decl. Exh. F.

there is evidence that supports Plaintiff's allegation that Defendant's actions rested at least in part on impermissible sex stereotyping. The fact that Plaintiff intended to conduct additional discovery to bolster her sex stereotyping allegation prior to amending her complaint should not preclude her from seeking to amend her complaint now, especially in light of Defendant's motion to dismiss Plaintiff's Title VII claim in its entirety. Indeed, it furthers the interests of judicial economy for the Court to have before it the proposed Amended Complaint, which addresses all possible theories of liability under Title VII, prior to deciding whether Plaintiff can state a claim under Title VII.

**B.     Plaintiff's Proposed Amendment Is Not Futile and Is Grounded in Clear Record Evidence.**

As Plaintiff explained in her opening memorandum, this Court made clear in its ruling on Defendant's first motion to dismiss that Plaintiff could allege facts that would state a claim of impermissible sex stereotyping, Mem. Op. at 16 ("a transsexual plaintiff might successfully state a Price Waterhouse-type claim if the claim is that he or she has been discriminated against because of a failure to act or appear masculine or feminine enough for an employer,"), but had simply failed to do so in her Complaint, id. at 16-17 (ruling that Plaintiff's Complaint failed to allege impermissible sex stereotyping because it "allege[d] that [her] non-selection was the direct result of her disclosure of her gender dysphoria and of her intention to begin presenting herself as a woman, or her display of photographs of herself in feminine attire, or both.").

In addition to the proposed additional allegations in Count 1 of Plaintiff's Complaint, Proposed Amended Complaint ¶¶ 56-57, which Defendant acknowledges, Def. Br. at 8, Plaintiff's proposed Amended Complaint includes other specific factual

7

allegations of the type specifically contemplated by this Court as sufficient to state a claim that Defendant engaged in impermissible sex stereotyping.  See Proposed Amended Complaint ¶ 46 ("Upon information and belief, Preece conferred with colleagues at the Library of Congress about Plaintiff's application and ultimately decided that she would not recommend Plaintiff for the position because, for among other reasons, when Preece saw the photographs of Plaintiff in female attire, she believed that Plaintiff looked like a man in women's clothing rather than what she believed a woman should look like, and because she believed that others would share her view."); id. at ¶ 47 ("Upon information and belief, Preece's decision was also based at least in part on her belief that Plaintiff would not be viewed as a credible authority on terrorism by members of Congress because, in Preece's view, (a) Plaintiff's appearance when presenting as a female would not conform to their social stereotypes regarding how women should look, and (b) members of Congress would not believe that a woman could, in fact, have the kind of life experiences that were part of Plaintiff's background.").

      As previously set forth, there are now facts in the record that directly support Plaintiff's allegation that this case involves a decision-maker relying on impermissible sex stereotyping when deciding to withdraw her recommendation of the person who was otherwise viewed as the top candidate for the position.  While Plaintiff intends to explore this issue further through additional discovery once the parties' voluntary stay of discovery in this case has been lifted, the facts already revealed through the discovery conducted to date are sufficient to permit Plaintiff to state a claim of discrimination due to Defendant's reliance on impermissible sex stereotypes.  Accordingly, Plaintiff's proposed amendment is not futile.

Relatedly, Defendant's suggestion that Plaintiff has distorted the record and otherwise acted in bad faith is baseless. In her opening memorandum in support of her motion for leave to amend, Plaintiff quoted specific excerpts from the deposition of Charlotte Preece that form the basis for her allegation that Preece was motivated, at least in part, by impermissible sex stereotypes. Defendant disputes whether, from these statements, a reasonable fact-finder could infer that Preece was, in fact, motivated by impermissible sex stereotypes when she decided to eliminate Plaintiff from consideration for the Terrorism Research Analyst position. Yet such an argument is no basis for denying Plaintiff's motion *for leave to amend her complaint*, a motion which simply asks the Court to allow Plaintiff the opportunity to prove her allegation that Preece engaged in impermissible sex stereotyping. As outlined above, Plaintiff intends to conduct additional discovery to garner additional direct and indirect evidence that will support this theory of relief. Defendant's effort to short-circuit this process is improper. At this stage of the proceedings, Plaintiff has presented evidence that is more than sufficient to sustain a good faith allegation of impermissible sex stereotyping.

## CONCLUSION

For all of these reasons, as well as the reasons offered in Plaintiff's opening memorandum, the Court should grant Plaintiff's Motion for Leave to Amend Complaint.

Respectfully submitted,

/s/ Sharon M. McGowan

| | |
|---|---|
| Arthur B. Spitzer | Sharon M. McGowan |
| (D.C. Bar No. 235960) | (D.C. Bar No. 476417) |
| American Civil Liberties Union | Kenneth Y. Choe |
| of the National Capital Area | American Civil Liberties Union Foundation |
| 1400 20th Street, N.W., #119 | 125 Broad Street |
| Washington, D.C. 20036 | New York, NY 10004 |
| (202) 457-0800 | (212) 549-2627 |

Date: June 25, 2007          *Counsel for Plaintiff*