# Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DIANE J. SCHROER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 05-1090 (JR) |
| v. | ) | |
| | ) | PLAINTIFF'S SIXTH SET |
| JAMES H. BILLINGTON, | ) | OF INTERROGATORIES |
| Librarian of Congress, | ) | PURSUANT TO RULE 33 |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S SIXTH SET OF INTERROGATORIES PURSUANT TO RULE 33

Plaintiff, Diane J. Schroer, by and through her attorneys and pursuant to Federal Rule of Civil Procedure 33, serves the following interrogatories upon Defendant, James H. Billington, in his official capacity as the Librarian of Congress, to be responded to within 30 days after the date of service.

## DEFINITIONS

1. "Defendant" shall mean the Library of Congress, its officers, employees, agents, representatives, and others known to have acted on their respective behalves.

2. "Plaintiff" refers to Diane J. Schroer, formerly known as David J. Schroer.

3. "You," "your" and "yourself" refer to the party to whom the following requests are addressed, and its agents, representatives, officers, directors, affiliates, predecessors and successors in interest, parents, divisions, subsidiaries, and employees.

4.    "Person" shall mean natural persons, firms, proprietorships, associations, partnerships, corporations and every other type of organization or entity.

5.    "Openly transgender" means someone who self-identifies as transgender and/or transsexual, and who has either made that fact known or confirmed their transgender and/or transsexual self-identification to at least one other person at a manager level at the Library of Congress.

6.    "Applicant" shall mean an individual who applies for employment with the Library of Congress.

7.    "Position of Specialist in Terrorism and International Crime" shall mean the position for which Plaintiff applied in 2004 and which was identified in the Third Defense of Defendant's Answer.

8.    "Security clearance investigation process" shall mean all stages of the process by which an individual is cleared or otherwise authorized by the Library of Congress, including but not necessarily limited to the Library of Congress's Personnel Security Office, to access classified information or otherwise obtain or maintain a security clearance.

9.    "Waiver of the pre-appointment security clearance investigation requirement" shall mean all stages of the process by which an individual is cleared or otherwise authorized by the Library of Congress, including but not necessarily limited to the Library of Congress's Personnel Security Office, to begin working in a position at the Library of Congress requiring a security clearance prior to having completed the "security clearance investigation process" defined in the previous paragraph.

10.    "Hiring process" shall mean the entire process by which the Library of Congress hires a new employee, including the determination of the qualifications and requirements for a

particular position, the publication of the position vacancy and the position's requirements including the drafting and posting of any notice, the recruitment of candidates for the position, the evaluation of applicants for the position, whether on paper or in person, whether formally or informally, the ranking of applicants for the position, the decision whether or not to hire an applicant, the making and processing of an offer of employment, the receiving and processing of an acceptance or rejection of an offer of employment, the process of obtaining a waiver of the pre-appointment security clearance investigation requirement, as defined in Paragraph 9, and the completion of the security clearance investigation process, as defined in Paragraph 8.

11.     "Relating to" shall mean consisting of, referring to, describing, discussing, constituting, evidencing, containing, reflecting, mentioning, concerning, pertaining to, citing, summarizing, analyzing, or bearing any logical or factual connection with the matter discussed.

12.     The term "identify," when referring to a person, means the response must state, to the extent known, the person's full name, present or last known address and telephone number, and, in addition, when referring to a natural person, the person's present or last known place of employment.

13.     The term "identify," when referring to a document, means the response must state, to the extent known, (i) the type of document; (ii) the date of the document; (iii) the author(s), addressee(s) and recipient(s) of the document, and, where not apparent, the relationship of the author(s), addressee(s) and recipient(s) to one another; and (iv) the subject matter of the document.

14.   The term "describe in detail" means providing with respect to any act, occurrence, transaction, event, statement, communication or conduct (hereinafter collectively "act") all facts concerning any such act, including but not limited to, a description of each act, the date and time of the act, the location, and the names and addresses of all persons involved.

15.   "Any" shall also mean "all" and vice versa.

16.   "And" shall mean "or" and "or" shall mean "and" as necessary to call for the broadest possible answer.

17.   The use of the singular form of any word includes the plural or vice versa, as necessary to make the requests inclusive rather than exclusive.

18.   Unless expressly indicated otherwise, these interrogatories seek information concerning the period beginning on or after June 1, 2004, and continuing to the present.

## INSTRUCTIONS

1.   In answering these interrogatories, you are required to furnish all information available to you and any of your representatives, employees, agents, brokers, servants, or attorneys as will enable you to ascertain all of the facts necessary to fully answer each request for information.

2.   Each request that seeks information relating in any way to communications to, from, or within the government and/or government entity, is hereby designated to demand, and should be construed to include, all communications by and between representatives, employees, agents, brokers and/or servants of the government and/or government entity.

4

3.    If you object to a portion of an interrogatory, please furnish information responsive to the remainder of the request.

4.    Each interrogatory refers to information that is either known by Defendant to exist or that can be located or discovered by reasonably diligent efforts of Defendant.

5.    Please be advised that Defendant, pursuant to Fed. R. Civ. P. 26(e), has a continuing duty to reasonably amend or supplement any prior response if information is obtained which makes Defendant aware that a prior response was incorrect (when made), or that the response when made was correct but is no longer correct.

6.    All information requested by these interrogatories for which Defendant claims a privilege or statutory authority as a ground for non-production shall be listed chronologically as follows:

    a)    Subject matter (without revealing the relevant information for which privilege or statutory authority is claimed); and

    b)    Factual and legal basis for claim, privilege or specific statutory or regulatory authority that provides the claimed ground for non-production.

7.    Responses shall be mailed within the rule time to Sharon M. McGowan, Esq., American Civil Liberties Union Foundation, 125 Broad Street, New York, NY 10004.

## INTERROGATORIES

18.    Since March 1, 1997, has the Library of Congress employed any openly transgender
       people?

19.    If the answer to Interrogatory Number 18 is yes, has the Library of Congress ever
       employed an openly transgender person in a position requiring a security clearance?

20.    If the answer to Interrogatory Number 19 is yes, with respect to any openly transgender
       person who has been employed by the Library of Congress in a position requiring a
       security clearance, describe in detail any security clearance concerns that emerged in
       connection with the employee's gender transition and/or transgender status and how
       those concerns were handled.

21.    If the answer to Interrogatory Number 18 is yes, with respect to any openly transgender
       person who has been employed by the Library of Congress, describe in detail any
       employment concerns, other than security clearance concerns, that emerged in connection
       with the employee's gender transition and/or transgender status and how those concerns
       were handed.

22.    Identify all government interests that were furthered by recommending a non-transgender
       applicant over a transgender applicant for the Position of Specialist in Terrorism and
       International Crime.

23.    Have there been any applicants for employment, where Charlotte Preece was the
       selecting official, who were selected for a position with the Library of Congress
       notwithstanding the fact that, at some point during the hiring process, the applicant

revealed information about himself or herself that Ms. Preece or any other official at the Library of Congress believed might have the effect of slowing down the security clearance investigation process?

24.  If the answer to Interrogatory Number 23 is yes, describe in detail the nature of the information, how this information was assessed and who was involved in the assessment, the amount of time the assessment process took, whether there was any time sensitivity with respect to filling the position at issue, and the ultimate disposition of the application.

25.  Have there been any other applicants for employment, where Charlotte Preece was the selecting official, who were not selected for the position because of the fact that, at some point during the hiring process, the applicant revealed information about himself or herself that Ms. Preece or any other official at the Library of Congress believed might have the effect of slowing down the security clearance investigation process?

26.  If the answer to Interrogatory Number 24 is yes, describe in detail the nature of the information, how this information was assessed and who was involved in the assessment, the amount of time the assessment process took, whether there was any time sensitivity with respect to filling the position at issue, and the ultimate disposition of the application.

27.  Was Kent Ronhodve acting as an attorney to a client when he provided guidance to Charlotte Preece and others involved in the decision not to recommend Plaintiff for the Position of Specialist in Terrorism and International Crime?

28.  Does Defendant contend that its decision not to recommend Plaintiff for the Position of Specialist in Terrorism and International Crime was due, even in part, to any concern

7

about Plaintiff's need to take medical or disability leave in connection with her gender transition?

29.    Does Defendant contend that its decision not to recommend Plaintiff for the Position of Specialist in Terrorism and International Crime was due, even in part, to any concern that Plaintiff would not be able to obtain, maintain, hold and/or otherwise be eligible for the top secret security clearance required for the position?

30.    Did Ed Bruner speak with Charlotte Preece on either December 20 or 21, 2004, regarding the Plaintiff and/or the hiring process for the Position of Specialist in Terrorism and International Crime?

31.    Does Defendant contest the fact that Plaintiff has held a Top Secret – Sensitive Compartmented Information (TS-SCI) security clearance at least from the date on which she applied for the Position of Specialist in Terrorism and International Crime in August 2004 through the date on which she was deposed in this action in February 2007?

Date: March 12, 2007

By:

X̲/̲h̲e̲ ̲L̲ ̲l̲ ̲r̲

Sharon M. McGowan    (D.C. Bar No. 476417)
Kenneth Y. Choe
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004
(212) 549-2627

Arthur B. Spitzer  (D.C. Bar No. 235960)
American Civil Liberties Union
  of the National Capital Area
1400 20th Street, N.W. #119
Washington, D.C. 20036
(202) 457-0800

*Counsel for Plaintiff*

8

## CERTIFICATE OF SERVICE

I hereby certify that I have this 12th day of March 2007, caused the foregoing Plaintiff's

Sixth Set of Interrogatories Pursuant to Rule 33 to be served upon the following persons by

electronic mail and by United States Mail, First Class postage prepaid:

Attorney for Defendant

Beverly M. Russell
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia, Civil Division
555 4th Street, N.W. Rm. E-4915
Washington, D.C. 20530
Beverly.Russell@usdoj.gov


Sharon M. McGowan

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DIANE J. SCHROER, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 05-1090 (JR) |
| ) | |
| v. ) | PLAINTIFF'S FIFTH REQUEST |
| ) | FOR PRODUCTION OF |
| JAMES H. BILLINGTON, ) | DOCUMENTS PURSUANT TO |
| Librarian of Congress, ) | RULE 34 |
| ) | |
| Defendant. ) | |
| ) | |

## PLAINTIFF'S FIFTH REQUEST FOR PRODUCTION OF DOCUMENTS PURSUANT TO RULE 34

Plaintiff, Diane J. Schroer, by and through her attorneys and pursuant to Federal Rule of Civil Procedure 34, serves the following request for production of documents upon Defendant, James H. Billington, in his official capacity as the Librarian of Congress, to be responded to within 30 days after the date of service.

### DEFINITIONS

1.  "Defendant" shall mean the Library of Congress, its officers, employees, agents, representatives, and others known to have acted on their respective behalves.

2.  "Plaintiff" refers to Diane J. Schroer, formerly known as David J. Schroer.

3.  "You," "your" and "yourself" refer to the party to whom the following requests are addressed, and its agents, representatives, officers, directors, affiliates, predecessors and successors in interest, parents, divisions, subsidiaries, and employees.

4.  "Person" shall mean natural persons, firms, proprietorships, associations, partnerships, corporations and every other type of organization or entity.

5.     "Communication" shall mean any transmission of information, the information

transmitted, and any process by which information is transmitted, and shall include

written, oral and electronic communications.

6.     "Document," shall be construed in its broadest possible sense, and shall mean any writing

or other matter (such as drawings, graphs, charts, photographs, film, audio, video or

computer tape or other electronic media or devices) from which information can be

obtained, translated if necessary through detection devices into reasonably usable form,

including without limitation agreements, letters, appointment books, calendars, electronic

mail or correspondence, computer diskettes, CD-ROMs and other electronically-recorded

or stored data, bookkeeping ledgers and journals, memoranda, notes, notebooks, diaries,

desk pads, logs, telephone bills and telephone call records. A draft or non-identical copy

(including one with notations) is a separate document.

7.     "Openly transgender" means someone who self-identifies as transgender and/or

transsexual, and who has either made that fact known or confirmed their transgender

and/or transsexual self-identification to at least one other person at a manager level at the

Library of Congress.

8.     "Applicant" shall mean an individual who applies for employment with the Library of

Congress.

9.     "Position of Specialist in Terrorism and International Crime" shall mean the position for

which Plaintiff applied in 2004 and which was identified in the Third Defense of

Defendant's Answer.

10.    "Security clearance investigation process" shall mean all stages of the process by which

an individual is cleared or otherwise authorized by the Library of Congress, including but

not necessarily limited to the Library of Congress's Personnel Security Office, to access classified information or otherwise obtain or maintain a security clearance.

11. "Waiver of the pre-appointment security clearance investigation requirement" shall mean all stages of the process by which an individual is cleared or otherwise authorized by the Library of Congress, including but not necessarily limited to the Library of Congress's Personnel Security Office, to begin working in a position at the Library of Congress requiring a security clearance prior to having completed the "security clearance investigation process" defined in the previous paragraph.

12. "Hiring process" shall mean the entire process by which the Library of Congress hires a new employee, including the determination of the qualifications and requirements for a particular position, the publication of the position vacancy and the position's requirements including the drafting and posting of any notice, the recruitment of candidates for the position, the evaluation of applicants for the position, whether on paper or in person, whether formally or informally, the ranking of applicants for the position, the decision whether or not to hire an applicant, the making and processing of an offer of employment, the receiving and processing of an acceptance or rejection of an offer of employment, the process of obtaining a waiver of the pre-appointment security clearance investigation requirement, as defined in Paragraph 11, and the completion of the security clearance investigation process, as defined in Paragraph 10.

13. "Relating to" shall mean consisting of, referring to, describing, discussing, constituting, evidencing, containing, reflecting, mentioning, concerning, pertaining to, citing, summarizing, analyzing, or bearing any logical or factual connection with the matter discussed.

14. "Any" shall also mean "all" and vice versa.

3

15.    "And" shall mean "or" and "or" shall mean "and" as necessary to call for the broadest possible answer.

16.    The use of the singular form of any word includes the plural or vice versa, as necessary to make the requests inclusive rather than exclusive.

17.    Unless expressly indicated otherwise, these interrogatories seek information concerning the period beginning on or after June 1, 2004, and continuing to the present.

## INSTRUCTIONS

1.    You are required, in responding to this request, to obtain and furnish all information available to you and any of your representatives, employees, agents, brokers, servants, or attorneys and to obtain and furnish all information that is in your possession or under your control, or in the possession or under the control of any of your representatives, employees, agents, brokers, servants, or attorneys.

2.    Each request that seeks information relating in any way to communications to, from, or within the government and/or government entity, is hereby designated to demand, and should be construed to include, all communications by and between representatives, employees, agents, brokers and/or servants of the government and/or government entity.

3.    Each request should be responded to separately. However, a document that is the response to more than one request may, if the relevant portion is marked or indexed, be produced and referred to in a later response.

4.    All documents produced shall be segregated and identified by the paragraphs to which they are primarily responsive. Where required by a particular paragraph of this request, documents produced shall be further segregated and identified as indicated in this paragraph. For any documents that are stored or maintained in files in the normal course

4

of business, such documents shall be produced in such files, or in such a manner as to preserve and identify the file from which such documents were taken.

5. If you object to part of any request, please furnish documents responsive to the remainder of the request.

6. Each request refers to all documents that are either known by Defendant to exist or that can be located or discovered by reasonably diligent efforts of Defendant.

7. The documents produced in response to this request shall include all attachments and enclosures.

8. The documents requested for production include those in the possession, custody, or control of Defendant, its agents, representatives or attorneys.

9. References to the singular include the plural.

10. The use of any tense of any verb shall be considered also to include within its meaning all other tenses of the verb so used.

11. Please note that Defendant, pursuant to Fed. R. Civ. P. 26(e), is under a continuing duty to reasonably supplement the production with documents obtained subsequent to the preparation and filing of a response to each request.

12. All documents called for by this request or related to this request, for which Defendant claims a privilege or statutory authority as a ground for non-production shall be listed chronologically as follows:

a. The place, date, time, and manner of recording or otherwise preparing the document;

b. The name and title of the sender;

c. The identity of each person or persons (other than stenographic or clerical assistants) participating in the preparation of the document;

5

    d.  The identity and title of the person or persons supplying Defendant's attorneys with the information requested above;

    e.  The identity of each person to whom the contents of the document have heretofore been communicated by copy, exhibition, sketch, reading or substantial summarization, the dates of said communication, and the employer and title of said person at the time of said communication;

    f.  Type of document;

    g.  Subject matter (without revealing the relevant information for which privilege or statutory authority is claimed); and

    h.  Factual and legal basis for claim, privilege or specific statutory or regulatory authority that provides the claimed ground for non-production.

13.    Each request to produce a document or documents shall be deemed to call for the production of the original document or documents to the extent that they are in, or subject to, directly or indirectly, the control of the party to whom this request is addressed. In addition, each request should be considered as including a request for separate production of all copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other (e.g., by reason of differences in form or content or by reason of handwritten notes or comments having been added to one copy of a document but not on the original or other copies thereof).

14.    All documents produced in response to this request shall be produced *in toto* notwithstanding the fact that portions thereof may contain information not requested.

15.    If any documents requested herein have been lost or destroyed, the documents so lost or destroyed shall be identified by author, date, time, and subject matter, and the date on which the document was lost or destroyed.

16.    Where exact information cannot be furnished, estimated information is to be supplied to

the extent possible.  Where estimation is used, it should be so indicated, and an

explanation should be given as to the basis on which the estimate was made and the

reason exact information cannot be furnished.

17.    With respect to any document requested which was once in possession, custody or

control, but no longer is, please indicate the date the document ceased to be in possession,

custody, or control, the manner in which it ceased to be so, and the name and address of

its present custodian.

18.    Production can be accomplished by mailing the documents within the rule time to Sharon

M. McGowan, Esq., American Civil Liberties Union Foundation, 125 Broad Street, New

York, NY 10004.

7

**REQUESTS**

26.    Provide all documents upon which Defendant bases its answer to Interrogatory

Number 20, or that otherwise relate to any security clearance concerns that emerged

in connection with the gender transition and/or transgender status of any openly

transgender Library of Congress employee in a position requiring a security clearance

and how those concerns were handled.

27.    Provide all documents upon which Defendant bases its answer to Interrogatory

Number 21, or that otherwise relate to any employment concerns, other than security

clearance concerns, that emerged in connection with the gender transition and/or

transgender status of any openly transgender Library of Congress employee and how

those concerns were handled.

28.    Provide all documents upon which Defendant bases its answer to Interrogatory

Number 24, or that otherwise relate to or reflect the nature of the potentially security

clearance-related information, how this information was assessed and who was

involved in the assessment, the amount of time the assessment process took, whether

there was any time sensitivity with respect to filling the position at issue, and the

ultimate disposition of the application.

29.    Provide all documents upon which Defendant bases its answer to Interrogatory

Number 26, or that otherwise relate to or reflect the nature of the potentially security

clearance-related information, how this information was assessed and who was

involved in the assessment, the amount of time the assessment process took, whether

there was any time sensitivity with respect to filling the position at issue, and the ultimate disposition of the application.

Date:  March 12, 2007                    By:


Sharon M. McGowan    (D.C. Bar No. 476417)
Kenneth Y. Choe
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004
(212) 549-2627

Arthur B. Spitzer  (D.C. Bar No. 235960)
American Civil Liberties Union
  of the National Capital Area
1400 20th Street, N.W. #119
Washington, D.C. 20036
(202) 457-0800


*Counsel for Plaintiff*

9

## CERTIFICATE OF SERVICE

I hereby certify that I have this 12th day of March 2007, caused the foregoing

Plaintiff's Fifth Request for Production of Documents Pursuant to Rule 34 to be served

upon the following persons by electronic mail and United States Mail, First Class postage

prepaid:

Attorney for Defendant

Beverly M. Russell
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia, Civil Division
555 4th Street, N.W. Rm. E-4915
Washington, D.C. 20530
Beverly.Russell@usdoj.gov

Sharon M. McGowan