UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DIANE J. SCHROER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-1090 (JR) |
| ) | |
| JAMES BILLINGTON, ) | |
| Librarian of Congress, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND IN THE ALTERNATIVE FOR JUDGMENT ON THE
PLEADINGS**

On April 26, 2007, Defendant in the above matter filed a second Motion to Dismiss Plaintiff's complaint. On June 11, 2007, Plaintiff filed an Opposition to Defendant's second Motion to Dismiss. Defendant now files his reply memorandum to address Plaintiff's Opposition.

### ARGUMENT

**I. Plaintiff Is Not A Member of A Protected Class Under Title VII**

On March 31, 2006, in its Memorandum Order and Opinion ("Order"), this Court directed the parties to create a factual record that "reflects the scientific basis of sexual identity in general and gender dysphoria in particular" to resolve the issue of whether discrimination against transsexuals is "literally" discrimination "because . . . of sex." Schroer v. Billington, Civil Action No. 05-1090 (JR), slip op at 16, (D.D.C. March 31, 2006). Thus, this Court's Order requested that the parties examine whether or not there is a verifiable biological cause for Gender Identity Disorder ("GID") and, therefore, whether or not GID is rooted in biology rather

than in choice and personal preference of the individual. Id. at 21, n.5. In other words, there is no doubt that Plaintiff prefers to present herself as a female rather than a male: The question here is whether there exists a causal relationship between Plaintiff's preference to present herself as a female and any biological marker which the medical community accepts as a cause for her preference to identify and present herself as a female.

To address this Court's question, Defendant retained Dr. Chester W. Schmidt, M.D.[1] Dr. Schmidt testified that there are no known pathologic, neuropathologic, psychopathologic, genetic, or congenital causes of GID. See Def.'s Ex. 2, Expert Report of Chester W. Schmidt, Jr., M.D., at ¶¶ 6,7 (Nov. 20, 2006); see also Def.'s Ex. 3, Deposition of Chester Schmidt, M.D., 193:8-21 (Feb. 21, 2007). Plaintiff's expert, Walter Bockting, on the other hand, is unable to refer the Court to a single piece of evidence establishing a known pathologic, neuropathologic,

---

[1] Plaintiff, in her opposition memorandum, attempts to impugn Dr. Schmidt's credibility. However, Plaintiff's own expert confirmed Dr. Schmidt's opinion regarding whether there is a verifiable biological determinant for GID (i.e. Dr. Bockting confirmed that the medical community does not know what causes GID). In any event, Plaintiff's attempts to besmirch Dr. Schmidt are unavailing and contradicted by the record. Specifically, it is undisputed that Dr. Schmidt has spent the last 35+ years of his medical career specializing in sexual dysfunctions, paraphilias, and gender identity disorders; has spent the last 35+ years teaching psychiatry at Johns Hopkins University School of Medicine (where he has taught and teaches courses that address GID); and has devoted more than 30% of his daily reading in the last 4 years to the study and research of GID. See Def.'s Ex. 1, Curriculum Vitae of Chester W. Schmidt; Def.'s Ex. 3, Schmidt Depo. at 259:15-22; 260:1-18; 341:14-22; 342:1-9; 343:1-9; Def.'s Ex. 7, Deposition of Chester W. Schmidt, Jr., M.D., at 265:6-22; 266:1-22 (March 13, 2007)(attached hereto). In formulating his knowledge of the field of GID, on a regular basis Dr. Schmidt reads the Archives of Sexual Disorders, The American Journal of Psychiatrists, the Archives of Psychiatry, the New England Journal of Medicine, the Journal of American Medical Association, and the Lancet. Schmidt March 13, 2007, depo at 340:10-22; 341:1-4. Thus, the record demonstrates that Dr. Schmidt has a "reliable basis in the knowledge and experience of his discipline," Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999)(quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993)(citation omitted), to give opinion testimony regarding whether the medical community has accepted a biological determinant as the cause of GID.

psychopathologic, genetic, or congenital causes of GID. In fact, Dr. Bockting, concedes that the cause of GID is not known. ("What causes gender identity disorder remains unknown." Def.'s Ex. 4, Expert Report of Walter O. Bockting report, ¶ 19 (Sept. 14, 2006)). Otherwise stated, the medical establishment does not know the cause of Plaintiff's decision to identify as a female and undergo gender reassignment surgery. This Court could spend endless hours in an effort to find a single pronouncement establishing that the medical community has accepted a verifiable biological determinant for GID. But such a search would prove fruitless. To be sure, Plaintiff's repeated plea for an evidentiary hearing where Plaintiff's expert would allegedly present new evidence is a clear sign indeed that Plaintiff, herself, recognizes evidentiary support for her position to be absent in the record.[2]

Recognizing her failure to identify a biological cause of GID, Plaintiff is merely attempting to create a factual dispute by setting up a strawman; *to wit*, whether or not the term "sex" includes the term "gender identity." Pl.'s Op. at 10-19. However, whether or not the term "sex" includes the term "gender identity" is not germane to the question posed by this Court.[3] Specifically, even assuming Dr. Bockting's definition of "sex" encompasses the term "gender identity," Dr. Bockting's understanding of these words does not address this Court's question of whether or not there is a biological cause of GID. There are no material facts in dispute: Both Dr. Schmidt and Dr. Bockting agree that "what causes GID remains unknown." Def.'s Ex. 4, Bockting Report at ¶ 19; see also Ex. 2, Schmidt Report at ¶ 8). And Plaintiff has failed to direct

---

[2] At present there is no ambiguity in the evidence before the Court.

[3] More relevant to this case is the legal question of whether the term "sex" in Title VII includes gender identity. There is no evidence in the legislative history or the cases interpreting the statute to conclude that Congress ever intended it to.

the Court's attention to a single piece of evidence that establishes a known pathologic, neuropathologic, psychopathologic, genetic, or congenital cause of GID.

There does not seem to be any dispute that someone's sex ("xx" genes for female, "xy" genes for male), or someone's race are both immutable qualities that are the result of the vagaries of genetics and biology. In the instant case, Plaintiff, born a male, chose to undergo gender reassignment surgery to change her physical appearance to a female. The question is whether Plaintiff's course of action was compelled by some known biological marker on par with the factors that caused Plaintiff to be born male. On this question, Plaintiff's and Defendant's experts agree - there are no known biological factors for such behavior. In short, at present, there is no basis to conclude that Plaintiff's personal preference about how she wants to appear or behave is anything more than simply that - a preference and choice. Accordingly, Title VII does not cover individuals who have GID or that claim discrimination on the basis of their sexual identity, and Plaintiff's Title VII claim should be dismissed.

II.     **Plaintiff Has Failed to State a Claim Under the Fifth Amendment of the U.S. Constitution**

Plaintiff alleges that the Due Process Clause of the Fifth Amendment protects her right to "take medically appropriate steps to bring her body into conformity with her gender identity" without adverse consequences from the Government. Compl. ¶¶ 60-64. Plaintiff invokes the substantive due process component of the Fifth Amendment, arguing that where the government "intentionally and substantially penalizes the exercise" of a "fundamental right or constitutionally protected liberty interest" substantive due process protections are implicated. Pl.'s Op. at 30-31.

Plaintiff's contention that all medical treatment, including her decision to undergo a procedure to change her physical appearance from male to female, is protected under the due process clause of the Fifth Amendment is without legal authority.  As already stated in Defendant's Motion, the Supreme Court has recognized the right to privacy only with respect to a person's autonomy regarding fundamental decisions "relating to marriage, procreation, contraception, family relationships, child rearing, and education."  Planned Parenthood v. Casey, 505 U.S. 833, 851 (holding that woman has right to choose to have abortion before viability of the fetus without undue interference from the state).[4]  In no way do the cases relied upon by Plaintiff stand for the proposition that there is a general right to privacy protecting all medical decisions.  Pl.'s Op. at 31-33.  Rather, the cases are consistent with the Supreme Court's finding of an implicit right to privacy only with respect to a person's personal autonomy regarding fundamental decisions "relating to marriage, procreation, contraception, family relationships, child rearing and education."  Casey, 505 U.S. at 851.  Plaintiff's decision to undergo gender reassignment surgery implicates no fundamental personal decision related to marriage, procreation, contraception, family relationships, child rearing and education.  Furthermore, the Supreme Court has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decision-making in this unchartered area are scarce and open-ended."[4]  Collins v. City of Harker Heigts, Tex., 503 U.S. 115, 125 (1992)(citation omitted).

---

[4]The Supreme Court has carefully defined the zones of privacy in which liberty interests are protected under the Due Process Clause.  See e.g., Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535 (1942) (establishing the right to have children); Griswold v. Conneticut, 381 U.S. 479 (1965) (establishing the right to use contraception); Loving v. Virginia, 388 U.S. 1 (1967) (establishing the right to marry); Cruzan v. Director, Missouri Dept. of Health, 497 U.S. 261 (1990) (establishing the right to refuse unwanted medical treatment).

[4]Indeed, this Circuit has also commented on the dangers of expanding the zones of
(continued...)

Moreover, Plaintiff has provided no compelling justification for this Court to deviate from the Supreme Court's carefully defined zones of privacy in which liberty interests are protected. Therefore, Plaintiff cannot establish that her decision to undergo gender reassignment surgery implicates any recognized liberty interest and her claims arising under the substantive due process clause of the Constitution should be dismissed.[5]

As previously stated in Defendant's Motion, Plaintiff has likewise failed to state a claim under the equal protection component of the Fifth Amendment of the Constitution. Specifically, Plaintiff has provided no convincing rationale why this Court should permit her to circumvent the holding in Brown v. General Services Administration, 425 U.S. 820 (1976), and recast her Title VII claim as a Constitutional claim simply because she does not have a remedy under Title VII. To the contrary, Title VII is a comprehensive remedial scheme even though it may not remedy every conceivable type of discrimination. See e.g., Schweiker v. Chilicky, 487 U.S. 412 (1988); Spagnola v. Mathis, 859 F. 2d 223 (D.C. Cir. 1988). Moreover, Plaintiff cannot assert a claim for monetary damages under the Constitution because there has been no waiver of sovereign immunity. FDIC v. Meyer, 510 U.S. 471 (1994). Accordingly, Plaintiff's claims arising under the equal protection component of the Fifth Amendment should be dismissed.

---

[4](...continued)
privacy relative to medical decisions: "[A] decision by this court to confer privacy protection on all medical determinations, no matter what their nature or consequences, would require us to range far beyond the traditional purview of the Court's privacy jurisprudence." New York State Opthamalogical Soc. v. Bowen, 854 F.2d 1379, 1389 (D.C. Cir. 1988). See also Doe v. U.S. Postal Service, 1985 WL 9446 (D.D.C. 1985) (holding that there is no right to privacy in a person's decision to undergo gender reassignment surgery).

[5]It should be noted that the Government has not sought to interfere in Plaintiff's choices concerning her gender. This case involves nothing more than a job selection and whether Title VII covers Plaintiff.

**III.    The Library of Congress Act, 2 U.S.C. § 140, Does Not Confer A Right of Action Against the Library**

The Library of Congress Act, 2 U.S.C. § 140, does not confer on Plaintiff a cause of action against the Library. It is a well-settled principle that the United States may not be sued without its consent. Block v. North Dakota, 461 U.S. 273, 287 (1083); see also Library of Congress v. Shaw, 478 U.S. 310, 315 (1986); Sierra Club v. Lujan, 972 F.2d 312, 314 (10 Cir. 1992). As an agency of the United States, sovereign immunity protects the Library. In Re University Medical Center, 973 F.2d 1065, 1085 (3d Cir. 1992). A waiver of sovereign immunity by the government must be "express and unequivocal" and cannot be implied. Cabeza de Vaca Land & Cattle Co., v. Babbit, 58 F.Supp. 2d 1226, 1229 (D. Colo. 1999), citing to Irwin v. Department of Veterans Affairs, 498 U.S. 89, 95 (1990). Not only does the language in 2 U.S.C. §140 not contain any indication of a congressional intent to create a private cause of action, there is absolutely no express waiver of sovereign immunity in the language of the statute. Plaintiff posits that the Librarian has been "stripped of his cloak of [sovereign] immunity." Pl.'s Op. at 42. However, even assuming the Library of Congress Act does confer a right of action against the Library, or the Librarian has been "stripped of his cloak of [sovereign] immunity,"[6]   Congress has already created a framework with respect to the limits of the

---

[6]Relying on Larson v. Domestic Foreign Corp. 337 U.S. 682 (1949), Plaintiff posits that her claims for non-monetary relief are not barred by sovereign immunity because the Librarian allegedly acted beyond his statutory authority pursuant to 2 U.S.C. § 140. Pl.'s Op. 43. 2 U.S.C. § 140 states in its entirety: All persons employed in or about said Library of Congress under the Librarian shall be appointed solely with reference to their fitness for the particular duties. Plaintiff's reliance on Larson, however, is misplaced. The relevant question as discussed in Larson is whether a claimant is seeking relief from the officer in his individual capacity or relief that may only be effectuated by the sovereign. Larson, 377 U.S. at 688. If the latter, the suit is barred. Because the type of non-monetary relief sought by Plaintiff relates to the hiring decision for the Terrorism and International Crime Research Analyst position, the Librarian, in his

(continued...)

Librarian's appointment authority (i.e. Title VII). And as noted above, Title VII is the exclusive remedy to claims of employment discrimination against the federal government. Brown v. GSA, supra. Nothing in the language of 2 U.S.C. § 140 or in the legislative history of the statute[7] indicates or hints at any type of intention on the part of the sovereign to waive its immunity to suit, or creates any type of additional judicial remedy to a claim of employment discrimination which could not otherwise be brought under Title VII. Accordingly, Plaintiff's claims pursuant to the Library of Congress Act should be dismissed.

## **CONCLUSION**

For the foregoing reasons, and the reasons set-forth in Defendant's Motion to Dismiss, the Court should grant Defendant's Motion to Dismiss because Plaintiff has failed to establish that she is entitled to relief as a matter of law.

---

[6](...continued) individual capacity, could not modify or otherwise provide remedy with regard to that decision. See, e.g. U.S. v. Rural Elec. Convenience Co-op. Co., 922 F.2d 429, 433 (7th Cir. 1991)(The general rule is that a suit is against the sovereign if the judgment would expend itself on the public treasury or domain, or interfere with public administration, or if the effect of the judgment would be to restrain the Government from acting or compel it to act.)(internal citations and quotation marks omitted). Therefore, even assuming that Plaintiff could bring suit for equitable relief under 2 U.S.C. § 140 regarding the hiring decision, the Librarian could only provide such relief in his official capacity. Thus, consistent with Larson, Plaintiff's suit is barred. The case, Clark v. Library of Congress, 750 F.2d 89 (1984), also cited by Plaintiff, is inapposite as well. Clark states, "[I]t is well-established that sovereign immunity does not bar suits for specific relief where the challenged actions of the officials are alleged to be unconstitutional or beyond statutory authority." Id. at 102. However, each of the cases on which Clark relies for this contention references suits against officials in their personal capacities. See Id. citing Dugan v. Rank, 372 U.S. 609, 621-23 (1963); Malone v. Bowdoin, 369 U.S. 643, 646-48 (1962); and Larson, 337 U.S. at 689-91. Notably, Plaintiff cannot demonstrate that the selecting official's actions were either unconstitutional or beyond his authority. Specifically, the selecting official, in fact, complied with the Library of Congress Act and "appointed [the selectee] solely with reference to [his] fitness for the particular duties."

[7]While there is no Congressional debate regarding the Library of Congress Act, the Librarian of Congress' letter to the Senate explaining his initial selection of Library staff states a broad list of factors determining "fitness." S. Doc. 42, 55th Cong. 2d session (Jan. 5, 1898). The Senate Document indicates that the Librarian selected applicants based on "character, ability, and education of the candidates, as well as from personal observation." Id. A board – the pre-curser to the Library's modern-day human resources department - was chosen by the Librarian to review future candidates, advise the Librarian on appointments, and was instructed to consider "manners, personal habits and standing" among other criteria, of applicants. Id.

        Respectfully submitted,


/s/ Jeffrey A. Taylor /dvh
_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

/s/ Rudolph Contreras
_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

/s/ Beverly M. Russell
_____
BEVERLY M. RUSSELL, D.C. Bar #454257
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia,
Civil Division
555 4th Street, N.W., Rm. E-4915
Washington, D.C.  20530
Ph:  (202) 307-0492
Fax: (202) 514-8780
E-mail: beverly.russell@usdoj.gov

/s/ Julia K. Douds /bmr
_____
JULIA K. DOUDS
Special Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia,
Civil Division
555 4th Street, N.W.
Washington, D.C.  20530
Ph:  (202) 514-5134
Fax: (202) 514-8780
E-mail: jdou@loc.gov

OF COUNSEL:
EVELIO RUBIELLA
Assistant General Counsel
Library of Congress

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that service of the foregoing ***Defendant's Reply to Plaintiff's Motion in Opposition to Defendant's Motion to Dismiss and in the Alternative for Judgment on the Pleadings*** was made by electronic and first class mail on the 16th day of July, 2007 to:

Arthur B. Spitzer
American Civil Liberties Union
 of the National Capital Area
1400 20th Street, N.W., #119
Washington, D.C.  20036
Artspitzer@aol.com

Sharon M. McGowan/
Kenneth Y. Choe
American Civil Liberties Union Foundation
125 Broad Street
New York, New York 10004
Smcgowan@aclu.org

/s/ Beverly M. Russell
_____
BEVERLY M. RUSSELL
Assistant United States Attorney