# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

DIANE J. SCHROER,                          )
                                           )
                Plaintiff,                 )
                                           )
                                           )
        v.                                 )        Civil Action No. 05-1090 (JR)
                                           )
DR. JAMES BILLINGTON,                      )
        Librarian of Congress,             )
                                           )
                Defendant.                 )
_____)

## DEFENDANT'S MOTION TO DISMISS

Defendant James Billington, Librarian of Congress, moves to dismiss this suit for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), and alternatively, for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). In support of this motion, the Court is respectfully referred to the accompanying memorandum of points and authorities. A proposed order consistent with this motion is also attached hereto.

Respectfully submitted,

/s/ Jeffrey A. Taylor /dvh
_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

/s/ Rudolph Contreras
_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

/s/ Beverly M. Russell
_____
BEVERLY M. RUSSELL, D.C. Bar #454257
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia,
  Civil Division
555 4th Street, N.W., Rm. E-4915
Washington, D.C.  20530
Ph:  (202) 307-0492
Fax: (202) 514-8780
E-mail: beverly.russell@usdoj.gov


/s/ Julia K. Douds /bmr
_____
JULIA K. DOUDS
Special Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia,
  Civil Division
555 4th Street, N.W.
Washington, D.C.  20530
Ph:  (202) 707-7198
Fax: (202) 514-8780
E-mail: jdou@loc.gov

OF COUNSEL:
EVELIO RUBIELLA
Assistant General Counsel
Library of Congress

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DIANE J. SCHROER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) Civil Action No. 05-1090 (JR) |
| | ) |
| DR. JAMES BILLINGTON, | ) |
| Librarian of Congress, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

On August 1, 2005, Defendant in the above captioned matter filed a Motion to Dismiss Plaintiff's complaint. R. 7. In his Motion, Defendant argued that Plaintiff failed to allege a *prima facie* case of employment discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") because transsexuals are not a protected group under Title VII.[1] Id. On March 31, 2006, this Court denied Defendant's Motion. Schroer v. Billington, Civil Action No. 05-1090 (JR) (D.D.C. March 31, 2006). In its denial of Defendant's motion, this Court first rejected Plaintiff's argument that she could make out a claim under a theory of sex stereotyping inasmuch as Plaintiff does not seek "acceptance as a man with feminine traits," but rather "to express her female identity." Id. at 16. This Court then directed the parties to create a factual record that "reflects the scientific basis of sexual identity in general and gender dysphoria in particular" to resolve the issue of whether discrimination against transsexuals is "literally" discrimination "because . . . of sex." Id. at 20-22.

---

[1]Defendant also argued that Plaintiff had failed to state a claim under both the Fifth Amendment of the U.S. Constitution and the Library of Congress Act. R. 7.

On June 7, 2007, Plaintiff filed a Motion for Leave to Amend Her Complaint.[2]  R. 33.

On July 3, 2007, this Court granted Plaintiff's Motion.  On July 5, 2007, Plaintiff filed her

Amended Complaint.  R. 39.  Plaintiff's Amended Complaint is little more than a request for this

Court to revisit its decision with respect to Plaintiff's sex-stereotyping theory.[3]  However,

Plaintiff offers nothing in her Amended Complaint that gives this Court reason to reverse its

prior ruling that Plaintiff cannot make out a claim under a sex-stereotyping theory.  Accordingly,

for the reasons set forth below and the reasons contained in Defendant's second Motion to

Dismiss, Plaintiff's Amended Complaint should be dismissed in its entirety.

## STANDARD OF REVIEW

I.    **Dismissal for Lack of Subject Matter Jurisdiction (Fed.R.Civ.P. 12(b)(1))**

"A motion under 12(b)(1) 'presents a threshold challenge to the court's jurisdiction.'"

Gardner v. U.S., No. CIV. A. 96-1467EGS, 1999 WL 164412, *2 (D.D.C. Jan. 29, 1999), aff'd,

213 F.3d 735 (D.C. Cir. 2000) and cert. denied, 531 U.S. 1153 (2001), quoting, Haase v.

Sessions, 835 F.2d 902, 906 (D.C. Cir.1987).  Specifically, "subject matter jurisdiction deals

with the power of the court to hear [a] plaintiff's claims in the first place, and therefore imposes

---

[2]Plaintiff has not made any substantive changes with respect to her other claims.  See Amended Complaint generally.  Plaintiff merely attempts to recast her allegations with respect to her sex-stereotyping theory.  For the sake of clarity and brevity, Defendant will not reassert its arguments with respect to Plaintiff's remaining claims in this Motion.  Defendant respectfully refers this Court to Defendant's second Motion to Dismiss with respect to whether discrimination against transsexuals is discrimination "because . . . of sex" and whether or not Plaintiff has stated a claim under the Fifth Amendment of the U.S. Constitution and the Library of Congress Act.  R. 30 and 40.  For the reasons contained in Defendant's second motion to dismiss, and this motion, Plaintiff's Amended Complaint should be dismissed in its entirety.

[3]After completing discovery consistent with the Court's Order of March 31, 2006, Defendant filed its second motion to dismiss Plaintiff's complaint on April 25, 2007;  Plaintiff filed her Opposition to Defendant's motion on June 11, 2007; and Defendant filed its Reply on July 16, 2007.

upon courts an affirmative obligation to ensure that they are acting within the scope of their

jurisdictional power." 4 Wright & Miller: Federal Prac. & Proc. § 1350 (R12)(2002

Supplement). A court may resolve a motion to dismiss for lack of subject matter jurisdiction

under Rule 12(b)(1) in two ways. First, the court may determine the motion based solely on the

complaint. Herbert v. National Academy of Science, 974 F.2d 192, 197 (D.C. Cir. 1992).

Alternatively, to determine the existence of jurisdiction, or lack thereof, a court may look beyond

the allegations of the complaint, consider affidavits and other extrinsic information, and

ultimately weigh the conflicting evidence. See id.

## II.    Motion for Failure to State a Claim (Fed.R.Civ.P. 12(b)(6))

In Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007), the Supreme Court essentially

abrogated or "retired" the holding in Conley v. Gibson that "a complaint should not be dismissed

for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of

facts in support of his claim which would entitle him to relief." Twombly, 127 S.Ct. at 1968-

1969, quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Supreme Court stated that

Conley v. Gibson's "'no set of facts' language can be read in isolation as saying that any

statement revealing the theory of the claim will suffice unless its factual impossibility may be

shown from the face of the pleadings. . ." Twombly, 127 S.Ct. at 1968. The Supreme Court

added that the "[no set of facts] phrase is best forgotten as an incomplete, negative gloss on an

accepted pleading standard: once a claim has been stated adequately, it may be supported by

showing any set of facts consistent with the allegations in the complaint." Id. at 1969.

Accordingly, as clarified by Twombly, a motion to dismiss brought pursuant to Fed. R.

Civ. P. 12(b)(6) should be granted if the plaintiff, in his or her pleading, fails to present "enough

facts to state a claim to relief that is plausible on its face." Twombly, 127 S.Ct. at 1974.

"Factual allegations must be enough to raise a right to relief above the speculative level,. . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact). . ." Id. at 1265 (citations omitted).

## ARGUMENT

In her Amended Complaint, Plaintiff continues to allege that when she informed Defendant "that consistent with medical treatment for gender dysphoria, she would be dressing in traditionally feminine attire and otherwise presenting herself as a female, Defendant rescinded its offer of employment."[4]  Amended Complaint at ¶ 54.  Plaintiff's Amended Complaint also continues to allege that Defendant took this action because it "believed that Plaintiff did not conform to the gender stereotypes associated with males in our society. . . or because [Defendant] believed that Plaintiff did not conform to the gender stereotypes associated with females in our society."[5]  Amended Complaint at ¶¶ 56-57.

Plaintiff's claim of sex stereotyping appears to arise from the Supreme Court's decision in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).  In Price Waterhouse, the Plaintiff - a female accountant named Ann Hopkins - was denied partnership in an accounting firm because some partners in the firm thought she did not conform to their beliefs of how women should behave and dress in the workplace.  Ms. Hopkins was told by her employer that she could

---

[4]Plaintiff states identical allegations in her initial Complaint.  Specifically, Plaintiff alleged that "When Plaintiff told Defendant that, consistent with medical treatment for gender dysphoria, she would be dressing in traditionally feminine attire and otherwise presenting as a woman, Defendant rescinded its offer of employment and otherwise refused to employ her." Complaint at ¶ 52.

[5]Again, Plaintiff states identical allegations in her initial Complaint.  Specifically, Plaintiff alleged that Defendant did not hire her "either because it perceived Plaintiff to be a man who did not conform with gender stereotypes associated with men in our society, or because it perceived Plaintiff to be a woman who did not conform with gender stereotypes associated with woman in our society."  Complaint at ¶ 53

improve her chances of promotion if she were to take "a course at charm school," and walk more femininely, talk more femininely, dress more femininely, wear makeup, have her hair styled and wear jewelry. Id. at 235. Considering these remarks, the Supreme Court held that: "In the context of sex stereotyping, an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender." Id. at 251. Thus, Price Waterhouse stands for the proposition that an employer cannot use stereotypical male traits such as "aggressiveness" as a criteria for earning partnership status, but then punish a female employee like Ms. Hopkins who possesses those traits just because they are typically "masculine."

As this Court recognized in its opinion, the actual holding of Price Waterhouse is "considerably more narrow than its sweeping language suggests." Slip Op. at 12. Specifically, this Court reasoned that "adverse action taken on the basis of an employer's gender stereotype that does not impose unequal burdens on men and women or disadvantage one or the other does not state a claim under Title VII." Slip Op. at 13. Thus, this Court concluded that Price Waterhouse allows women such as Ms. Hopkins to express their female identity without being punished for being "macho," and men to express their male identity without being punished for being "effeminate."[6] Plaintiff in this case comes nowhere close to asserting similar allegations.

As this Court realized, Plaintiff's assertion is not remotely similar to the assertions made by Ms. Hopkins in Price Waterhouse. Ms. Hopkins did not seek to present herself as a man: She

_____

[6]See e.g., Nichols v. Azteca Restaurant Enterprises, Inc. (256 F.3d 864)(harassment "based on perception that [the plaintiff] is effeminate" is discrimination because of sex. The Court further stated that "We do not imply that all gender-based distinctions are actionable under Title VII. For example, our decision does not imply that there is any violation of Title VII occasioned by reasonable regulations that required male and female employees to conform to different dress and grooming standards." Id. at 874-75.

was an assertive woman. As correctly reasoned by this Court, there is a difference between "assertive" women like Ann Hopkins, and persons such as Schroer "whose adoption of a name and choice of clothing is part of an intentional presentation of herself of a different sex than that of her birth."[7] Slip Op. at 15. Indeed, as this Court noted, this difference is "not one of degree," but is even recognized by the medical community:

> Gender Identity Disorder . . . is not meant to describe a child's non-conformity to stereotypic sex-role behavior as, for example, "tomboyishness" behavior in girls or "sissyish" behavior in boys. Rather, it represents a profound disturbance of the individual's sense of identity with regard to maleness or femaleness.

Slip Op. at 15.[8] Therefore, this Court reasoned that protecting women like Ms. Hopkins, who act "assertive," is different from protecting men, like Schroer, who seek to assume female personae and present themselves as women.[9] Slip Op. 15-16. Accordingly, this Court concluded that a refusal to hire a man who seeks to assume a female persona and otherwise present himself as a woman does not establish a cause of action for sex discrimination based on sex stereotyping. Id.

Even assuming a refusal to hire a man who seeks to present himself as a woman established a cause of action for sex discrimination based on sex stereotyping, nothing Plaintiff has provided in her Amended Complaint resurrects her sex stereotyping theory already dispatched by this Court. In fact, Plaintiff's Amended Complaint continues to assert that

---

[7]Similarly, as correctly noted by the Court in Etsitty v. Utah Transit Authority, 2005 WL 1505610 (D. Utah 2005): "there is a huge difference between a woman who does not behave as femininely as her employer thinks she should, and a man who is attempting to change his sex and appearance to be a woman. Such a drastic change cannot be fairly characterized as a failure to conform to stereotypes." Etsitty at * 5.

[8]Citing to the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 564 (4th e. 1994).

[9]Or, indeed, from protecting women who seek to assume male personae and present themselves as men.

Defendant rescinded its offer of employment when Plaintiff informed Defendant that "consistent with medical treatment for gender dysphoria, she would be dressing in traditionally feminine attire and otherwise presenting as a female." Amended Complaint at ¶ 54. That is precisely the reason this Court concluded that the allegations in Plaintiff's first Complaint did not assert a Price Waterhouse claim. Specifically, this Court held that Plaintiff failed to state a Price Waterhouse type claim where the "complaint alleges that [Plaintiff's] non-selection was the direct result of her disclosure of her gender dysphoria and of her intention to begin presenting herself as a woman, or her display of photographs or herself in feminine attire, or both." Slip Op. at 17. Furthermore, Plaintiff has not alleged that she was "seeking acceptance as a man with feminine traits" but continues to assert in her Amended Complaint that she is a woman who intends to wear "traditionally feminine attire" and otherwise present herself "as a female."[10] Amended Complaint at ¶¶ 52,54. Thus, Plaintiff has merely recited identical allegations in her Amended Complaint; allegations that the Court already concluded could not support a Price Waterhouse type claim.

Accordingly, Plaintiff has again failed to state a cognizable Price Waterhouse claim, and for the reasons contained in Defendant's second motion and the reasons set forth above, Plaintiff's Amended Complaint should be dismissed in its entirety.

---

[10]This Court explained that "Protection against sex stereotyping is different, not in degree, but in kind, from protecting men whether effeminate or not, who seek to present themselves as women, or women, whether masculine or not, who present themselves as men. . . Schroer is not seeking acceptance as a man with feminine traits. She seeks to express her female identity, not as an effeminate male, but as a woman." Slip Op. at 15-16.

## CONCLUSION

For the foregoing reasons, and the reasons contained in Defendant's second Motion to Dismiss, the Court should dismiss Plaintiff's Amended Complaint because Plaintiff has failed to establish that she is entitled to relief as a matter of law.

Respectfully submitted,

/s/ Jeffrey A. Taylor /dvh
_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

/s/ Rudolph Contreras
_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

/s/ Beverly M. Russell
_____
BEVERLY M. RUSSELL, D.C. Bar #454257
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia,
Civil Division
555 4th Street, N.W., Rm. E-4915
Washington, D.C.  20530
Ph:  (202) 307-0492
Fax: (202) 514-8780
E-mail: beverly.russell@usdoj.gov

/s/ Julia K. Douds /bmr
_____
JULIA K. DOUDS
Special Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia,
Civil Division
555 4th Street, N.W.
Washington, D.C.  20530
Ph:  (202) 514-5134
Fax: (202) 514-8780
E-mail: jdou@loc.gov

OF COUNSEL:
EVELIO RUBIELLA
Assistant General Counsel
Library of Congress

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing ***Defendant's Motion to Dismiss***

***Plaintiff's Amended Complaint*** was made by electronic and first class mail on the <u>6th</u> day of

August, 2007 to:

Arthur B. Spitzer
American Civil Liberties Union
 of the National Capital Area
1400 20th Street, N.W., #119
Washington, D.C.  20036
Artspitzer@aol.com

Sharon M. McGowan/
Kenneth Y. Choe
American Civil Liberties Union Foundation
125 Broad Street
New York, New York 10004
Smcgowan@aclu.org

/s/ Beverly M. Russell
_____
BEVERLY M. RUSSELL
Assistant United States Attorney