UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DIANE J. SCHROER,  :
 :
      Plaintiff,  :
 :
  v.  : Civil Action No. 05-1090 (JR)
 :
JAMES H. BILLINGTON, Librarian  :
of Congress,  :
 :
      Defendant.  :

### MEMORANDUM ORDER

Plaintiff Diane Schroer sues defendant Librarian of Congress for sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). In the alternative, she asserts a claim under the Equal Protection Clause of the Fifth Amendment. She also presses claims under the Due Process Clause of the Fifth Amendment and the Library of Congress Act, 2 U.S.C. § 140. Defendant has moved to dismiss the complaint, or in the alternative, for judgment on the pleadings.

### Background

Plaintiff's allegations are laid out in detail in my March 31, 2006, memorandum, Schroer v. Billington, 424 F. Supp.2d 203 (D.D.C. 2006), and will be restated here only briefly. Diane Schroer is a male-to-female transsexual. In August 2004, before she changed her name or began presenting herself as a woman, Schroer applied for a position as a terrorism research analyst with the Congressional Research Service (CRS), a division of the Library of Congress. She was invited to interview for the

position and did so under her previous male name, attending the interview dressed in traditionally masculine clothing.  Shortly after the interview, Charlotte Preece of the CRS called to offer Schroer the position, and, on December 16, 2004, Schroer accepted.  Preece and Schroer arranged to meet for lunch during the following week to discuss details such as Schroer's start date.  At that meeting, Schroer explained to Preece that she was under a doctor's care for gender dysphoria and that, consistent with her treatment, she was about to change her name, begin dressing in traditionally feminine attire, and start presenting herself full-time as a woman.  In part to allay any concerns that Preece might have about whether Schroer would be dressing in a workplace-appropriate manner, Schroer showed Preece photographs of herself, dressed in traditionally feminine clothing.  As they were leaving the restaurant, Preece told Schroer that she had "really given [her] something to think about."  Am. Compl. at ¶ 45.  The next day, Preece called Schroer and said that after a "long, restless night" she had decided that "for the good of the service," Schroer would not be a "good fit" given the "circumstances that [they] spoke of yesterday."  Id. at ¶ 48.  On February 7, 2005, Schroer received a form email stating that the terrorism research analyst position had been filled.

Schroer timely filed an administrative complaint with the Equal Employment Office of the Library of Congress, alleging

sex discrimination under Title VII.  After exhausting her appeals, Schroer filed this suit.  On August 1, 2005, the defendant moved to dismiss, arguing that Schroer could not make out a prima facie case of employment discrimination under Title VII because the statute does not prohibit discrimination on the basis of transsexualism or gender identity.  I denied that motion and explained that there were at least two conceivable theories according to which discrimination against a transsexual may violate Title VII's proscription of discrimination "because of . . . sex."  42 U.S.C. § 2000e-2(a)(1).

First, an allegation that the decisionmaker was motivated by the plaintiff's failure to conform to sex stereotypes can state a claim under the <u>Price Waterhouse</u> line of cases.  Thus, an allegation by a male-to-female transsexual that she was discriminated against because of her failure to act or appear feminine enough for her employer states a claim under Title VII.  Schroer's original complaint did not state this kind of sex stereotyping claim, however.  It alleged only that her non-selection was the direct result of her disclosure of her gender dysphoria.

That claim was the second theory described in my March 2006 memorandum – that discrimination against transsexuals <u>because they are transsexuals</u> might "literally" be discrimination "because of . . . sex" and therefore be prohibited by the plain

terms of the statute itself.  See Ulane v. Eastern Airlines, Inc., 581 F. Supp. 821, 825 (N.D. Ill. 1983).  Before reaching a definitive conclusion on whether the definition of sex under Title VII should be so construed, however, I asked the parties to develop a factual record that "reflects the scientific basis of sexual identity in general, and gender dysphoria in particular." Schroer, 424 F. Supp.2d at 213.

The parties have compiled such a record.  It consists largely of the reports and depositions of two physicians who have considerable experience with gender identity disorder.  Plaintiff offers the testimony of Dr. Walter O. Bockting, an Associate Professor in the Department of Family Medicine and Community Health at the University of Minnesota Medical School.  Bockting, who holds the position of Coordinator of Transgender Health Services, explains that a person's sex is a multifaceted concept that incorporates a number of factors, including sex assigned at birth, hormonal sex, internal and external morphological sex, hypothalamic sex, and gender identity.  Bockting Supp. Decl. at ¶ 5 [Dkt. # 30, Ex. 5].  Defendant's expert, Dr. Chester W. Schmidt, takes a narrower view. Schimdt, who is a Professor of Psychiatry at the Johns Hopkins University School of Medicine, asserts that sex refers only to a person's chromosomal configuration – xy for males and xx for females.  Schmidt Decl. at ¶ 9 [Dkt. # 30, Ex. 3].

On April 26, 2007, the defendant filed its second motion to dismiss, or in the alternative, for judgment on the pleadings. [Dkt. # 30]. In this motion, the defendant relies on Dr. Schmidt's opinion, arguing that sex is not synonymous with sexual or gender identity and that Title VII should not therefore be read as extending protection against discrimination on the basis of gender identity. Plaintiff opposed that motion [Dkt. # 35], but she also amended her complaint to add the sex stereotyping claim that had been absent from her original complaint. [Dkt. # 39]. The amended complaint alleges that Schroer's non-selection resulted from Preece's reaction on seeing photographs of Schroer in women's clothing – specifically, that Preece believed that Schroer looked "like a man in women's clothing rather than what she believed a woman should look like." Am. Compl. at ¶ 46. The amended complaint also alleges that Preece's decision was based on the belief that Schroer would not be viewed as a credible authority on terrorism by members of Congress because, in Preece's view, Schroer's "appearance when presenting as a female would not conform to [members of Congress'] social stereotypes regarding how women should look, and [] members of Congress would not believe that a woman could, in fact, have the kind of life experiences that were part of [Schroer's] background." Id. at ¶ 47. On August 6, 2007, the

defendant filed a third motion to dismiss all claims.  [Dkt. # 41].

**Analysis**

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must make sufficient factual allegations to suggest "plausible grounds" for the suit.  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1965 (2007).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  <u>Id.</u> at 1968.

1. Title VII

Schroer's amended complaint states a sex stereotyping claim under Title VII.  <u>See</u> <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 251 (1989)("we are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group").  The plaintiff in <u>Price Waterhouse</u>, a female senior manager, was denied partnership in part because she was perceived to be too "macho" for a woman. <u>Id.</u> at 235.  Her employer advised her that she would improve her chances at partnership if she would "take 'a course at charm school'" and would "'walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry.'"  <u>Id.</u>  "In the specific context of sex stereotyping," the Court explained, "an employer who acts on the

basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender." Id. at 250.

Applying the logic of Price Waterhouse, numerous federal courts have held that punishing employees for failure to conform to sex stereotypes, including stereotypes regarding dress and appearance, is a form of sex discrimination actionable under Title VII. See, e.g., Nichols v. Azteca Rest. Enters., Inc., 256 F.3d 864, 874 (9th Cir. 2001) (male plaintiff stated a Title VII claim where he was harassed "for walking and carrying his tray 'like a woman' -- i.e., for having feminine mannerisms"); Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 261 n.4 (1st Cir. 1999) ("Just as a woman can ground an action on a claim that men discriminated against her because she did not meet stereotyped expectations of femininity, a man can ground a claim on evidence that other men discriminated against him because he did not meet stereotypical expectations of masculinity."); Doe v. City of Belleville, 119 F.3d 563, 581 (7th Cir. 1997) ("a man who is harassed because his voice is soft, his physique is slight, his hair is long, or because in some other respect he . . . does not meet his coworkers' idea of how men are to appear and behave, is harassed 'because of' his sex"), vacated and remanded on other grounds, 523 U.S. 1001 (1998). In her amended complaint, Schroer invokes this line of sex stereotyping cases.

- 7 -

Schroer's transsexuality is not a bar to her sex stereotyping claim. Title VII is violated when an employer discriminates against any employee, transsexual or not, because he or she has failed to act or appear sufficiently masculine or feminine enough for an employer. This is not to say that Schroer's gender dysphoria is of no significance: a Price Waterhouse-type claim could not be supported by facts showing that Schroer's non-selection resulted solely from her disclosure of her gender dysphoria and her intention to present herself as a woman. As my previous opinion explained, this is so because protection from sex stereotyping is different, not in degree, but in kind, from protecting transsexuals as transsexuals. The point here, however, is that Schroer does not claim that disclosure of her gender dysphoria was the singular cause of her non-selection. Instead, informed by the discovery she has taken, Schroer now asserts that she was discriminated against because, when presenting herself as a woman, she did not conform to Preece's sex stereotypical notions about women's appearance and behavior.

Because Schroer has stated a Title VII claim based on a sex stereotyping theory, the defendant's motion to dismiss must be denied, and it will not be necessary to decide at this time on the alternative theory of her amended complaint, whether discrimination against transsexuals because they are transsexuals is "literally" discrimination "because of . . . sex." As it may

become necessary to draw lines at a later stage, however – <u>in limine</u>, or in jury instructions – the following observations may be useful to the parties.  First, it is of no moment that the defendant's expert would limit the definition of sex, as a medical matter, to a person's "chromosomal configuration."  It is well-established that, as a legal concept, "sex" as used in Title VII refers to much more than which chromosomes a person has.  As the Sixth Circuit has explained, "[b]y holding that Title VII protected a woman who failed to conform to social expectations concerning how a woman should look and behave, the Supreme Court established that Title VII's reference to 'sex' encompasses both the biological differences between men and women, and gender discrimination, that is, discrimination based on a failure to conform to stereotypical gender norms."  <u>Smith v. City of Salem</u>, 378 F.3d 566, 573 (6th Cir. 2004).

Second, however, plaintiff's definition of sex under Title VII may be too expansive.  At the time of my 2006 opinion there was no relevant legislative history as to Title VII's relationship to discrimination on the basis of sexual identity.  That is no longer the case.  In recent months, a bill which would have banned employment discrimination on the basis of both sexual orientation and gender identity was introduced in the House of Representatives.  <u>See</u> H.R. 2015, 110 Cong., 1st Sess. (2007).  An alternate bill that prohibited discrimination only on the basis

of sexual orientation was also introduced.  <u>See</u> H.R. 3685, 110 Cong., 1st Sess. (2007).  The House ultimately passed the version that banned discrimination only on the basis of sexual orientation.  Companion legislation in the Senate has not yet been introduced.  If Title VII itself bans discrimination on the basis of sexual or gender identity, the omission of protection for transsexuals in H.R. 3685 may be meaningless, but, even in an age when legislative history has been dramatically devalued as a tool for statutory interpretation, one proceeds with caution when even one house of Congress has deliberated on a problem and, <u>mirabile</u> <u>dictu</u>, negotiated a compromise solution.

<u>2. Due Process</u>

Schroer contends that she has "a constitutionally protected liberty interest in making medical decisions without penalty by the government in the absence of constitutionally sufficient justification."  Pl.'s Mem. in Opp. to Mot. to Dismiss at 30 [Dkt. # 34].  Specifically, she seeks to vindicate a right to take "the medically appropriate steps to bring her body into conformity with her gender identity."  Am. Compl. at 65.

The Due Process Clause of the Fifth Amendment "provides heightened protection against government interference with certain fundamental rights and liberty interests," <u>Washington v. Glucksberg</u>, 521 U.S. 702, 720 (1997), including "the rights to marry, to have children, to direct the education and upbringing

of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." Abigail Alliance for Better Access to Developmental Drugs v. Von Eschenbach, 495 F.3d 695, 702 (D.C. Cir. 2007) (en banc) (internal citation and quotation marks omitted). As a general matter, the Supreme Court has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992). Judicial reluctance flows from the effect of such constitutional rulings: "By extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action." Glucksberg, 521 U.S. at 720. As a result, "the Supreme Court has directed courts to 'exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the [courts' members].'" Abigail Alliance, 495 F.3d at 702 (quoting Glucksberg, 521 U.S. at 720).

The Supreme Court has described substantive due process analysis as having "two primary features." Id.

> First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that neither

- 11 -

> liberty nor justice would exist if they were
> sacrificed.  Second, we have required in
> substantive-due-process cases a careful
> description of the asserted fundamental
> liberty interest.

Id. at 720-21 (internal citation and quotation marks omitted).

Even assuming that Schroer's claim meets the careful description requirement, she cannot show that the decision to undergo gender reassignment is entitled to constitutional protection.  Our circuit has recognized that the constitutional right to privacy does not "comprehensively protect[] all choices made by patients and their physicians or subject[] to 'strict scrutiny' all government interference with choice of medical treatment."  New York State Ophthalmological Soc'y v. Bowen, 854 F.2d 1379, 1389 (D.C. Cir. 1988).  No court has held that the Constitution extends protection to a person's decision to undergo gender reassignment and, critically, Schroer has not attempted to show that this right is either deeply rooted in this country's history or implicit to the concept of ordered liberty.

Because the decision to undergo gender reassignment does not implicate a fundamental liberty interest, Schroer can only assert a substantive due process claim if she had a protected property interest in the job with Library of Congress itself.  Our circuit has assumed that when a public employee has a property interest in continued employment, substantive due process may be violated when the employer acts "irrationally and

arbitrarily" in terminating the employee.  Yates v. District of Columbia, 324 F.3d 724, 726 (D.C. Cir. 2003) (per curiam). Schroer, however, does not assert that she had a property interest in the terrorism research analyst position.  See Pl.'s Mem. In Opp. To Def.'s Mot. to Dismiss at 27 [Dkt. # 7].  The lack of such an interest is fatal to her substantive due process claim.  See Singleton v. Cecil, 176 F.3d 419, 424 (8th Cir. 1998) (en banc) ("Merely labeling a governmental action as arbitrary and capricious, in the absence of the deprivation of life, liberty, or property, will not support a substantive due process claim."); Independent Enters. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1179 (3d Cir. 1997) ("a substantive due process claim grounded in an arbitrary exercise of governmental authority may be maintained only where the plaintiff has been deprived of a [constitutionally protected] property interest") (internal citation omitted); Zorzi v. County of Putnam, 30 F.3d 885, 895 (7th Cir. 1994) ("Thus, in the absence of a life, liberty or property interest [public employee] could be terminated for arbitrary and capricious reasons.").

3. Library of Congress Act

Finally, Schroer's prayer for equitable relief pursuant to the Library of Congress Act must be dismissed.  That statute provides that "[a]ll persons employed in and about said Library of Congress . . . shall be appointed solely with reference to

their fitness for their duties." 2 U.S.C. § 140. Although the statute does not set up a private cause of action for its violation, Schroer argues that her claim is well-pleaded according to the doctrine of non-statutory review. Under this doctrine, "'judicial review is available when an agency acts <u>ultra vires</u>,' even if a statutory cause of action is lacking." <u>Trudeau v. FTC</u>, 456 F.3d 178, 190 (D.C. Cir. 2006) (quoting <u>Aid Ass'n for Lutherans v. United States Postal Serv.</u>, 321 F.3d 1166, 1173 (D.C. Cir. 2003)). Non-statutory review is a doctrine of last resort, "intended to be of extremely limited scope" and applicable only to preserve judicial review when an agency acts "in excess of its delegated powers." <u>Griffith v. Federal Labor Relations Authority</u>, 842 F.2d 487, 493 (D.C. Cir. 1988). The doctrine does not apply in a case such as this one, where the injury the plaintiff alleges may be fully remedied under a statutorily provided cause of action – here, under Title VII.

\*   \*   \*   \*   \*

The defendant's motions to dismiss [Dkt. # 30, # 41] are **denied in part** and **granted in part**. The Clerk is directed to set a status conference, for the purpose of discussing and scheduling the next steps in this case.

JAMES ROBERTSON
United States District Judge