UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DIANE J. SCHROER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-1090 (JR) |
| ) | |
| JAMES BILLINGTON, ) | |
| In his official capacity ) | |
| as Librarian of Congress, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

Defendant James H. Billington, Librarian of Congress, by and through his undersigned counsel, hereby submits this Statement of Undisputed Material Facts pursuant to Local Civil Rule 56.1 and Fed. R. Civ. P. 56 in support of Defendant's Motion for Summary Judgment. All exhibits and evidence of record supporting these facts are attached hereto.

1. The Congressional Research Service ("CRS") is a Service Unit within the Library of Congress. Ex. 1.

2. The current Director of the CRS is Daniel Mulhollan. Mulhollan Depo. at 12:11-13.

3. There are six divisions in the CRS including the Foreign Affairs, Defense and Trade division. Ex. 2.

4. Charlotte Preece has worked at the Library since 1976 and in 1994 was selected, by Mr. Mulhollan, to be the Assistant Director of the Foreign Affairs, Defense and Trade Division. Preece Depo. at 11:6-9; Mulhollan Depo. at 36:20-22; 37:1-5.

5. In 2002, Congress gave CRS additional money to create ten (10) new positions - including a GS-15 Specialist in Terrorism and International Crime position ("Specialist in Terrorism position"). Mulhollan Depo. 41:14-22; 42:1-12.

6. In 2003, Ms. Preece selected a female, Audrey Cronin, for the newly created Specialist in Terrorism position. Exs. 3 and 4.

7. In July 2004, Ms. Cronin announced that she had accepted another position outside the Library and that she would be resigning from the Library that same month. Preece Depo. at 12:16-17; 13:1-12.

8. Particularly in the aftermath of the September 11th terrorist attacks, the CRS' client - the United States Congress ("Congress") - relied upon the expertise of the Specialist in Terrorism in the CRS. Mulhollan Depo. at 40:13-22; 41:1-10; 43:18-22; 44:1-18; Preece Depo. 14:3-6.

9. Ms. Preece appealed to the Director, Mr. Mulhollan, to allow her to fill the position out of CRS' normal hiring cycle. Preece Depo. at 14:8-22.

10. Mr. Mulhollan viewed terrorism as a high-profile and important issue and he was concerned that the CRS have the capacity to provide Congress any assistance it needed on this subject matter. Mulhollan Depo. at 40:13-22; 41:1-10; 43:18-22; 44:1-18.

11. Mr. Mulhollan granted Ms. Preece's request to announce the position outside of CRS' normal hiring cycle and on August 12, 2004, the Library advertised the Specialist in Terrorism position which, as previously noted, had recently been vacated by Ms. Cronin. Preece Depo. at 15:1-7; Ex.5.

12. Eighteen applicants, including Plaintiff, were granted interviews for the Specialist in Terrorism position. Ex. 6.

13. The interview panel was comprised of three CRS managers - Ms. Preece (the selecting official), Francis Miko and Steve Bowman. Preece Depo. at 73:5-22; 74:1-6. After the interviews, three applicants emerged as the leading candidates for the position: Kel Britvec, John Rollins and Plaintiff. Preece Depo. at105:12-22; 106:1-5.

14. After conducting reference checks on Mr. Britvec, Mr. Rollins and Plaintiff, Ms. Preece decided that she would recommend Plaintiff for the position because he "had the best interview." Id. at 119:10-18.

15. Before Ms. Preece could recommend Plaintiff for the Specialist in Terrorism position, Plaintiff requested a meeting with her (Ms. Preece). Id. at 124:2-12.

16. On December 20, 2004, during the meeting that Plaintiff had requested with Ms. Preece, Plaintiff informed Ms. Preece that she (Plaintiff) was under a doctor's care for gender dysphoria and that she was in the process of transitioning from male to female and that she intended to start her employment at the CRS as a woman. Id. at 140:5-22; 141:1-12.

17. Based on Plaintiff's revelation, Ms. Preece expressed concerns about whether Plaintiff's transition from male to female might affect her ability to obtain the security clearance that was required for the position. Id. at 149:8-22; 150:1-15.

18. When she returned to the Library from her meeting with Plaintiff, Ms. Preece decided that she needed to speak to the Library's Personnel Security Officer, Cynthia Wilkins, regarding questions she (Ms. Preece) had related to the impact Plaintiff's revelation might have on her ability to obtain a security clearance. Id. at 178:13-22; 179:1-5.

19. Ms. Wilkins was contacted by CRS and it was explained to Ms. Wilkins that there was an applicant for a position who was undergoing a gender transition and that the position required a security clearance. Id. at 179:9-16; 180:4-16.

20. Ms. Wilkins was asked by CRS whether, if at all, the applicant's revelation would have any impact on the security clearance process. Id. at 179:1-5; Wilkins Depo. at 128:19-22; 129:1-6.

21. On December 21, 2004, Ms. Preece met with Ms. Wilkins. Id. at 211:14-22; 212:1-3, 9-22; 213:1-2.

22. During the meeting, based on her understanding of the "Adjudicative Guidelines," Ms. Wilkins explained to those present at the meeting that the applicant's transsexuality was not *per se* disqualifying. Wilkins Depo. 69:11-22, 70:1-2; Exs. 7 and 8. Ms. Wilkins also explained that because the applicant voluntarily disclosed her transsexuality to Ms. Preece, Ms. Wilkins did not think that the threat of blackmail or coercion was an issue. Id. at 134:3-17. Ms. Wilkins further explained, however, that because of the applicant's disclosure of GID, as part of the security clearance process, the applicant would need to be referred to the Library's Health Services Office ("HSO") and that the HSO's evaluation could take some time. Id. at 69:11-22, 70:1-2; 135:7-15. Moreover, Ms. Wilkins informed the CRS that she would probably not grant a "waiver" for the applicant to begin employment until HSO completed its evaluation, the evaluation was favorable, and Ms. Wilkins completed any additional checks she deemed necessary. Id. at 99:1-22; 100:1-13; 135:7-19.

23. Based on her discussion with Ms. Wilkins, and upon further reflection on Plaintiff's revelation, Ms. Preece decided that she would not recommend Plaintiff for the Specialist in Terrorism position. Preece Depo at 227:1-22; 228:1-15; 253:17-22; 254:1-11; 268:3-22; 296:1-5. Specifically, Ms. Preece declined to recommend Plaintiff because she (Ms. Preece) believed that Plaintiff, considering her transsexual status and transition from male to female, would be required to undergo a lengthy background investigation process to acquire a security clearance. Id. at 227:1-21; 228:1-22. Ms. Preece was eager for the selectee to start at the beginning of the new Congress (i.e., the end of January 2005) because, as discussed above, the sudden departure of Ms. Cronin left a void in the CRS' ability to assist Congress in the area of terrorism. Id. at 242:7-22; 243:1-5. Ms. Preece believed that the amount of time it may have taken to process Plaintiff's security clearance was incompatible with the needs of the CRS at the time. Id. at 227:1-22: 228:1-21. Ms. Preece was additionally concerned that because of Plaintiff's transition from male to female, Plaintiff might be unable to maintain the high-level contacts in the military intelligence community she had developed in the past and this was one of the required Knowledge, Skills and Abilities of the position. Id. at 153:16-22; 154:1-3; 157:19-22; 158:1-22. Ms. Preece was also concerned that Plaintiff might not be viewed as credible by Members of Congress given Plaintiff's transsexuality. Id. at 164: 8-22; 165:1-15. Further, Ms. Preece was concerned that the transitioning process would divert Plaintiff's attention away from the mission of the CRS. Id. at 257:11-22; 258:1. Finally, Ms. Preece was concerned about Plaintiff's future trustworthiness, since after appearing at the interview--and in all subsequent contacts including their December 20, 2004,

meeting–Plaintiff presented herself as a male when Plaintiff had every intention of starting work as a female. Id. at 160:2-19; 314:12-20.

24. On December 21, 2004, Ms. Preece telephoned Plaintiff and informed her that she (Ms. Preece) had decided to recommend another candidate for the position. Id. at 274:1-22; 275:1-2.

25. On December 29, 2004, Ms. Preece recommended John Rollins for the Specialist in Terrorism position. Exs. 9 and 10. On February 6, 2005, Mr. Rollins was officially appointed to the Specialist in Terrorism position. Id.

    Respectfully submitted,

    /s/ Jeffrey A. Taylor /dvh
    _____
    JEFFREY A. TAYLOR, D.C. BAR #498610
    United States Attorney

    /s/ Rudolph Contreras
    _____
    RUDOLPH CONTRERAS, D.C. Bar #434122
    Assistant United States Attorney

    /s/ Beverly M. Russell
    _____
    BEVERLY M. RUSSELL, D.C. Bar #454257
    Assistant United States Attorney
    U.S. Attorney's Office for the District of Columbia,
    Civil Division
    555 4th Street, N.W., Rm. E-4915
    Washington, D.C. 20530
    Ph: (202) 307-0492
    Fax: (202) 514-8780
    E-mail: beverly.russell@usdoj.gov

/s/ Julia K. Douds /bmr

_____
JULIA K. DOUDS
Special Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia,
Civil Division
555 4th Street, N.W.
Washington, D.C.  20530
Ph:  (202) 514-5134
Fax: (202) 514-8780
E-mail: jdou@loc.gov

Of Counsel:
Evelio Rubiella,
Associate General Counsel
Library of Congress