McGowan Declaration – Exhibit X

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22757935 (W.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 22757935 (W.D.N.Y.))

Page 1

CTronetti v. TLC HealthNet Lakeshore Hosp.
W.D.N.Y.,2003.
Only the Westlaw citation is currently available.
United States District Court,W.D. New York.
Caillean McMahon TRONETTI, Plaintiff,
v.
TLC HEALTHNET LAKESHORE HOSPITAL,
Defendant.
No. 03-CV-0375E(SC).

filed May 9, 2003.
last filing Oct. 21, 2003.
Sept. 26, 2003.

Employee, who at all relevant times was a biological male transsexual, sued employer, asserting claims under Title VII, the Family Medical Leave Act (FMLA), and state law. On a defense motion to dismiss, the District Court, Elfvin, J., held that: (1) claims were not barred by limitations period; (2) employee stated actionable discrimination and retaliation claims under Title VII; (3) employee failed to state a claim for violation of the FMLA; (4) employee's state law disability claim would be dismissed on ground that employee had elected an administrative remedy.

Motion granted in part and denied in part.

West Headnotes

[1] Civil Rights 78 €=1505(3)

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
        78k1503 Administrative Agencies and Proceedings
            78k1505 Time for Proceedings; Limitations
                78k1505(3) k. Operation; Accrual and Computation. Most Cited Cases
Statutory limitations period under Title VII ran from the date of former employee's constructive discharge. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

[2] Civil Rights 78 €=1193

78 Civil Rights
    78II Employment Practices
        78k1191 Discrimination by Reason of Sexual Orientation or Identity
            78k1193 k. Particular Cases. Most Cited Cases
Former employee, a transsexual, stated an actionable claim under Title VII where he was not claiming protection as a transsexual, but was claiming to have been discriminated against for failing to "act like a man"; transsexuals are not gender-less, but are either male or female, and thus, are protected under Title VII to the extent that they are discriminated against on the basis of sex. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

[3] Civil Rights 78 €=1532

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
        78k1532 k. Pleading. Most Cited Cases
Former employee stated a retaliation claim under Title VII; he alleged (1) that he complained of harassment on the basis of sex, (2) that his employer was aware of such harassment, (3) that there had been a constructive discharge and (4) that the discharge was a result of his complaints. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

[4] Labor and Employment 231H €=388

231H Labor and Employment
    231HVI Time Off; Leave
        231Hk381 Actions
            231Hk388 k. Pleading. Most Cited Cases
    (Formerly 78k1501)
Former employee failed to state a claim for violation of the Family Medical Leave Act (FMLA), absent any allegation that his employer employed the statutorily required number of employees, or any identification of the provision of the FMLA under which he sought relief. Family and Medical Leave Act of 1993, § 101(2)(B)(ii), 29 U.S.C.A. §

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 2
Not Reported in F.Supp.2d, 2003 WL 22757935 (W.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 22757935 (W.D.N.Y.))

2611(2)(B)(ii).

**[5] Election of Remedies 143 €⇒7(1)**

143 Election of Remedies
    143k7 Acts Constituting Election
        143k7(1) k. In General. Most Cited Cases
Employee's disability claim under New York law would be dismissed where the employee elected an administrative remedy by filing an administrative complaint three days before filing the complaint in the instant action; under New York Executive Law, a plaintiff could elect to either file a complaint in a court of appropriate jurisdiction or with the Division of Human Rights (DHR). N.Y. McKinney's Executive Law § 297(9).

Melinda G. Disare, Damon & Morey, Buffalo, NY, Lead Attorney, Attorney to be Noticed, representing TLC Healthnet Lakeshore Hospital, (Defendant).
Lindy Korn, Buffalo, NY, Lead Attorney, Attorney to be Noticed, representing Caillean McMahon Tronetti, (Plaintiff).

MEMORANDUM and ORDER [FN1]

    FN1. This decision may be cited in whole or in any part.ELFVIN, J.

*1 PLEASE take notice of the entry of an ORDER filed on 9/29/03, of which the within is a copy, and entered 9/29/03 upon the official docket in this case. (Document No. 12.)

Plaintiff ("Tronetti") filed a Complaint on May 9, 2003 asserting claims under Title VII, 42 U.S.C. § 2000e *et seq.* (including a retaliation claim under 42 U.S.C. § 2000e-3), the Family Medical Leave Act ("FMLA") and the New York State Human Rights Law ("NYHRL").[FN2] On July 7, defendant ("TLC") [FN3] filed a motion to dismiss. Oral argument was heard and this matter was submitted on August 15. For the reasons set forth below, TLC's motion will be granted in part and denied in part.

    FN2. Also known as New York Executive Law § 290 et seq.

    FN3. TLC Health Network was erroneously named in the Complaint as TLC Healthnet Lakeshore Hospital.

When ruling on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCvP"), this Court "must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor" - *Phelps v. Kapnolas,* 308 F.3d 180, 184 (2d Cir.2002) (citation omitted) - and cannot dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [plaintiff's] claim which would entitle [plaintiff] to relief."*Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Accordingly, this Court must not consider whether the claims will ultimately be successful, but merely "assess the legal feasibility of the complaint."*Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998). Moreover, when reviewing a motion to dismiss, this Court must of course limit its review to the face of the Complaint and documents incorporated by reference therein that are properly subject to judicial notice. See *Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir.1996).

Tronetti is a person who, prior to sexual reassignment surgery, was a biological male transsexual who suffered from gender dysphoria.[FN4] Tronetti had been a male at all times relevant to the Complaint - *i.e.,* before undergoing sex reassignment surgery. Tronetti, a clinical psychiatrist and Doctor of Osteopathy, was hired by TLC in September of 2000. During the relevant time period, Tronetti was also employed by the Chautauqua County Jail. Inasmuch as Tronetti was a transsexual scheduled to have sexual reassignment surgery in February of 2003. Tronetti assumed the social role of a woman (*i.e.,* in terms of dress and appearance) during Tronetti's "transition" period. The medical standard applicable to patients scheduled to undergo sexual reassignment surgery calls for a transition period of at least one year. When Tronetti was hired, TLC was advised that Tronetti was a transsexual in transition.

    FN4. The Supreme Court has noted that transsexuals exhibit a " 'rare psychiatric disorder in which a person feels persistently uncomfortable about his or her anatomical sex,' and who typically seeks medical treatment, including hormone therapy and surgery, to bring about a permanent sex change."*Farmer v. Brennan,* 511 U.S. 825,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22757935 (W.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 22757935 (W.D.N.Y.))

Page 3

829, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting American Medical Association, Encyclopedia of Medicine 1006 (1989)); see also *Ulane v. Eastern Airlines, Inc.*, 742 F.2d 1081, 1083 n. 3 (7th Cir.1984) (defining transsexualism), *cert. denied*, 471 U.S. 1017, 105 S.Ct. 2023, 85 L.Ed.2d 304 (1985); Mark Strasser, *Harvesting The Fruits of Gardiner: On Marriage, Public Policy, and Fundamental Interests*, 71 Geo. Wash. L.Rev. 179, 180-181 (2003).

Dr. Mark Cooper, TLC's Vice President for Mental Health, advised Tronetti to avoid wearing overtly feminine attire. Tronetti was accepted by members of the department as a woman; they were aware of Tronetti's plans for sexual reassignment surgery. Tronetti's attire gradually became more feminine around December of 2001.

*2 In December of 2001 and thereafter, Tronetti became the subject of demeaning rumors concerning Tronetti's sexuality and medical condition.[FN5] Tronetti believes that Luisa Kelsey, Nurse Manager of the inpatient psychiatric unit, was responsible for these rumors. Tronetti alleges that these rumors were motivated by sex-role stereotyping and gender-related animosity. These rumors "made it very difficult" for Tronetti to do work.[FN6] Tronetti complained to Dr. Cooper about the rumors and requested an investigation. Dr. Cooper told Tronetti that co-workers needed time to adjust to Tronetti's new lifestyle. Dr. Cooper, however, did not indicate that an investigation would be conducted.

> FN5. One rumor suggested that Tronetti sexually harassed a male homosexual employee of TLC.

> FN6. Nonetheless, many of Tronetti's co-workers were upset by the rumors and more than twenty of them met with Dr. Cooper to discuss the problem.

On January 31, 2002, Tronetti underwent facial feminization surgery. On March 14, 2002, Tronetti was summoned to a disciplinary meeting attended by Dr. Cooper, Dr. Kim (Chairman of the Psychiatry Department) and Tracy Luther (the personnel director). Tronetti was charged with improperly discussing cosmetics with a nurse who had asked about Tronetti's post-surgical cosmetics use.[FN7] Dr. Kim objected to the disciplinary action. After the meeting, Dr. Cooper told Tronetti privately that the hospital administration wanted to fire Tronetti but that he and Dr. Kim insisted that Tronetti be given an opportunity to respond to the charges. Tronetti believes that the discipline was motivated by sex-role stereotyping and gender discrimination.

> FN7. The charge was changed to "improper conversation" and was noted in Tronetti's personnel record. Three disciplinary charges are required for dismissal.

In April of 2002 someone left a penis-shaped toy on Kelsey's desk. Kelsey complained that Tronetti was harassing her. When another person admitted to the prank, Kelsey dropped her complaint. That same month, Kelsey urged her staff to address Tronetti using male pronouns - as opposed to the female pronouns to which Tronetti had become accustomed during the transition period. Until her departure from TLC, Kelsey displayed hostility and disrespect towards Tronetti, who alleges that the rumors and Kelsey's hostility created a hostile work environment of which TLC was aware but ignored.

Tronetti asked Dr. Cooper if the hostility had diminished. Dr. Cooper stated that Ron Krawiec, the Hospital Administrator, was uncomfortable with Tronetti's "life choices" and was unhappy that Tronetti was progressing towards sexual reassignment surgery. Dr. Cooper advised Tronetti to keep a low profile.

In October of 2002 Tronetti informed the human resources department that the sex reassignment surgery had been scheduled for February of 2003 and requested a leave of absence. In December, Luther informed Tronetti that TLC had agreed to pay 60% of Tronetti's salary while on six to eight weeks of sick leave for sex reassignment surgery.

In November of 2002 the human resources department announced a game called "Thanksgiving Turkey," which involved the guessing of the identity of a TLC employee. Although Tronetti was not the target of the game, several clues pointed towards a trans-gendered person; Tronetti was the sole transsexual employee. Tronetti believes that the game

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 4
Not Reported in F.Supp.2d, 2003 WL 22757935 (W.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 22757935 (W.D.N.Y.))

was designed to ridicule Tronetti.

*3 On January 2, 2003 Tronetti learned that a member of TLC's Board of Directors was spreading rumors among outpatients that Tronetti was (1) marrying a heterosexual couple, (2) marrying a lesbian couple and (3) talking to ghosts.[FN8] This unnamed Board Member was also openly questioning whether Tronetti's sanity was adversely affected by the transitioning. Tronetti believes that these rumors were motivated by sex-role stereotyping.

> FN8. The Complaint does not elaborate what was meant when it was said that Tronetti was rumored to be "marrying" various couples.

This unnamed Board Member "had close contact" with a member of the ACT Program.[FN9] On January 2, 2003 Tronetti left a voicemail message for Cynthia Koener, ACT Program Director, indicating disapproval of the rumors emanating from the ACT Program and threatening to complain to Dr. Cooper. Tronetti had a friendly relationship with Koener and believed that she would attempt to stop the rumors. On January 8 Tronetti was summoned to a meeting with Luther and Dr. Cooper where Tronetti was suspended with pay for two weeks while TLC investigated charges of an "interpersonal nature." Luther and Cooper, however, refused to inform Tronetti of the details of the charges.

> FN9. The Complaint does not define the ACT Program.

On January 17 Tronetti was summoned to a meeting with Krawiec and Luther. Tronetti requested permission to bring a representative to the meeting; such request was denied. Tronetti was presented with a list of charges, most of which involved discussion of Tronetti's personal situation with ACT employees as well as Tronetti's irate phone message of January 2. Tronetti believed that many of the charges were unfounded and inaccurate and unsuccessfully attempted to explain and correct the charges. Tronetti was given no prior notice of the charges or an opportunity to respond. Tronetti was given the option of resigning that day or waiting for TLC to complete its investigation, which would result in termination. Tronetti requested a delay until the following Monday to make a decision. Tronetti was informed that resignation should be tendered by 4:00 p.m. that day or Tronetti would be terminated, at which time TLC would inform the New York Office of Professional Misconduct that Tronetti harassed Koener during the January 2 phone message - thereby threatening Tronetti's medical license and livelihood. Tronetti submitted a resignation letter, which indicated that Tronetti was being constructively discharged.

Tronetti filed a charge with the Equal Employment Opportunity Commission ("EEOC") on January 31, 2003 on the basis of sex discrimination and retaliation. On May 6, 2003 Tronetti filed a complaint with the New York State Division of Human Rights on the basis of disability (i.e., gender dysphoria). Three days later, Tronetti filed a Complaint in federal court on the basis of sex discrimination - to wit, sex-stereotyping (i.e., an expected conformity to a masculine gender role), a hostile work environment and retaliation. Tronetti also asserted claims for disability discrimination and violation of the FMLA.

[1] TLC contends that Tronetti's claims are time-barred to the extent that they relate to conduct that occurred before April 6, 2002 - i.e., 300 days before the filing of the EEOC complaint on January 31, 2003.[FN10] This statutory period runs from the day the "alleged unlawful employment practice occurred."[FN11] The alleged unlawful employment practice is Tronetti's constructive discharge, which occurred on January 17, 2003. Consequently, the Title VII claim is timely.[FN12]

> FN10. Indeed, Tronetti concedes that any claim accruing before April 6, 2002 - other than the hostile environment claim - is time-barred.
>
> FN11. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109-110, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (quoting 42 U.S.C.2000e-5(e)(1)).
>
> FN12. The hostile environment claim is also timely. See Morgan, supra note 11, at 115-122.

*4 [2] TLC claims that Tronetti's Title VII claims must fail because transsexuals are not protected under

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22757935 (W.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 22757935 (W.D.N.Y.))

Page 5

Title VII. Tronetti, however, is not claiming protection as a transsexual. Rather, Tronetti is claiming to have been discriminated against for failing to "act like a man." Consequently, an actionable claim has been alleged under Title VII.

In support of its argument that Tronetti was not protected by Title VII because Tronetti was neither male nor female, TLC cites decisions from Courts of Appeals outside the Second Circuit (the "*Ulane* decisions").[FN13] This Court is not bound by the *Ulane* decisions.[FN14] More importantly, the *Ulane* decisions predate the Supreme Court's decision in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), which undermined the reasoning of the *Ulane* decisions. *See Schwenk v. Hartford*, 204 F.3d 1187 (9th Cir.2000) (noting that the approach taken in *Ulane* and *Holloway* "has been overruled by the logic and language of *Price Waterhouse*").[FN15] Indeed, *Schwenk* held:

> FN13.*See e.g., Ulane, supra* note 4, at 1084-1086 (holding that Title VII does not cover transsexuals); *Sommers v. Budget Marketing, Inc.*, 667 F.2d 748, 750 (8th Cir.1982) (same); *Holloway v. Arthur Anderson*, 566 F.2d 659, 661-663 (9th Cir.1977) (holding that transsexuals are not a protected class, but that Title VII does protect transsexulas discriminated against on the basis of sex). Of these, *Ulane* appears to be the leading case.
>
> FN14. The Second Circuit Court of Appeals has not yet addressed the issue. *See Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 767 (2d Cir.2002) (noting that "[i]t is also not clear that Mario, as a transsexual, is a member of a protected class. [*Ulane* and *Sommers* ]. We need not reach these questions, however * * *.").
>
> FN15.*But see Sweet v. Mulberry Lutheran Home*, 2003 WL 21525058, at *3 (S.D.Ind.2003) (holding that *Ulane* remains good law after *Price Waterhouse* );*Rentos v. Oce-Office Systems*, 1996 WL 737215, at *6-7 (S.D.N.Y.1996)(following *Ulane* ). This Court disagrees with the reasoning of *Sweet* and *Rentos*.Although Title VII does not protect people on the basis of sexual preference/orientation - *see e.g., Spearman v. Ford Motor Co.*, 231 F.3d 1080 (7th Cir.2000) -, it nonetheless covers transsexuals to the extent that they have been discriminated against on the basis of sex as opposed to transsexuals who have been discriminated against on the basis of sexual preference/orientation. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998); *Simonton v. Runyon*, 232 F.3d 33, 35-36 (2d Cir.2000); *Holloway, supra* note 13, at 664 ("[T]ranssexuals claiming discrimination because of their sex, male or female, would clearly state a cause of action under Title VII. [Plaintiff] has not claimed to have [been] treated discriminatorily because she is male or female, but rather because she is a transsexual who chose to change her sex."); *Cox v. Denny's, Inc.*, 1999 WL 1317785, at *2 (M.D.Fla.1999) ( "What [the *Ulane* decisions] do not hold, however, is that an individual who happens to be a transsexual can never establish an actionable Title VII claim."); *Centiola v. Potter*, 183 F.Supp.2d 403, 408-409 (D.Mass.2002) ( "If an employer acts upon stereotypes about sexual roles in making employment decisions * * *, then the employer opens itself up to liability under Title VII's prohibition of discrimination on the basis of sex."); *cf. Miles v. New York Univ.*, 979 F.Supp. 248, 249-250 (S.D.N.Y.1997) (noting that the phrase "on the basis of sex" in Title IX is interpreted in the same manner as similar language in Title VII and holding that a male-to-female transsexual was sexually harassed "on the basis of sex" in violation of Title IX). Inasmuch as transsexualism does not involve sexual orientation, - *i.e.,* being attracted to members of one's own sex -, there is no risk of impermissible bootstrapping protection for sexual orientation under Title VII. *Cf. Simonton*, at 38-39.

"The initial judicial approach taken in cases such as *Holloway* has been overruled by the logic and language of *Price Waterhouse*. In *Price Waterhouse,* which was decided after *Holloway* and *Ulane,* the Supreme Court held that Title VII barred not just

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22757935 (W.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 22757935 (W.D.N.Y.))

Page 6

discrimination based on the fact that [plaintiff] was a woman, but also discrimination based on the fact that she failed 'to act like a woman'-that is, to conform to socially-constructed gender expectations. [*Price Waterhouse* ]. What matters, for purposes of this part of the *Price Waterhouse* analysis, is that in the mind of the perpetrator the discrimination is related to the sex of the victim: here, for example, the perpetrator's actions stem from the fact that he believed that the victim was a man who failed to act like' one. Thus, under *Price Waterhouse,* 'sex' under Title VII encompasses both sex-that is, the biological differences between men and women-*and* gender. Discrimination because one fails to act in the way expected of a man or a woman is forbidden under Title VII."*Schwenk,* at 1201-1202.

Consequently, this Court will not follow *Ulane.*Transsexuals are not gender-less, they are either male or female and are thus protected under Title VII to the extent that they are discriminated against on the basis of sex. *See Oncale, supra* note 15 at 80.[FN16]Indeed, the Supreme Court has held that sex-stereotyping is evidence of sex discrimination, *Price Waterhouse,* at 250-251.[FN17]Accordingly, Tronetti's Title VII claim - based on the alleged discrimination for failing to "act like a man" - is actionable.

   FN16.*See supra* note 15.

   FN17.*See Thomas v. Eastman Kodak Co.,* 183 F.3d 38, 60 n. 14 (1st Cir.1999) (noting that *Price Waterhouse* was superseded by statute on other grounds); *see also Galdiert-Ambrosini v. Nat'l Realty & Dev.,* 136 F.3d 276, 289 (2d Cir.1998) ("Evidence of sexual stereotyping may provide proof that an employment decision or an abusive environment was based on gender."); *Dawson v. Bumble & Bumble,* 246 F.Supp.2d 301, 314-315 (S.D.N.Y.2003) (applying *Price Waterhouse* and discussing sex stereotyping).

Inasmuch as Tronetti alleges suspension with pay and constructive discharge an actionable adverse employment action has been sufficiently alleged. *See Chase v. Kaufmann's,* 2003 WL 251949, at *3 (W.D.N.Y.2003) (citing, *inter alia, Flaherty v. Metromail, Corp.,* 235 F.3d 133, 138 (2d Cir.2000)).[FN18]

   FN18. TLC's failure to address Tronetti's express allegation of constructive discharge wastes this Court's time and energy.

*5[3] This Court also rejects TLC's argument that Tronetti has failed to sufficiently allege a retaliation claim. *Galdieri-Ambrosini, supra* note 17 at 292 (setting forth the elements for a retaliation claim under Title VII). Tronetti alleged (1) that he complained of harassment on the basis of sex, (2) that TLC was aware of such harassment, (3) that there had been a constructive discharge and (4) that the discharge was a result of Tronetti's complaints.[FN19] Moreover, much of TLC's argument assumes that Tronetti is not protected by Title VII, which is rejected for the reasons set forth above. Accordingly, Tronetti has sufficiently alleged a retaliation claim under Title VII.

   FN19. Inasmuch as the parties do not address (1) what ACT is or (2) whether Cynthia Koener was part of TLC's management, this Court assumes *arguendo* that Koener was part of TLC's management and that Tronetti's complaint to her was sufficient to allege protected activity under Title VII. Although TLC contends that Koener was not part of TLC management, such is not evident from the face of the Complaint and is therefore not appropriately considered on a motion to dismiss.

TLC argues that events prior to April 6, 2003 should be disregarded for purposes of ascertaining the viability of Tronetti's sexual harassment claim. TLC cites *Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 713 (2d Cir.1996) for this proposition. This part of *Zant,* however, did not survive the Supreme Court's decision in *Morgan.*[FN20]Again, TLC presses an argument that is completely unsupportable in light of the relevant law and facts.[FN21] Consequently, for purposes of this motion, this Court finds that Tronetti has adequately alleged an actionable hostile environment claim.[FN22]

   FN20.*Supra* note 11, at 115-122.

   FN21. Notably, TLC cited *Morgan* on page 7 of its brief, which makes its argument on page 32 all the more egregious. Moreover,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-01090-JR   Document 49-37   Filed 06/18/2008   Page 8 of 9

Not Reported in F.Supp.2d                                                                                   Page 7
Not Reported in F.Supp.2d, 2003 WL 22757935 (W.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 22757935 (W.D.N.Y.))

the argument made in TLC's reply brief - that the alleged acts are not sufficiently related to constitute part of the same hostile environment -should have been made in its initial brief, but nonetheless fails to rectify TLC's initial reliance on Zant.

> FN22. TLC may renew this argument at the summary judgment stage.

Title VII claims and NYHRL claims are governed by the same standards.[FN23] Inasmuch as Tronetti's Title VII claims will survive TLC's motion to dismiss, Tronetti's state law claims will survive as well.

> FN23. *See Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1177 (2d Cir.1996); *Mittl v. N.Y. State Div. of Human Rights*, 100 N.Y.2d 326, 330, 763 N.Y.S.2d 518, 794 N.E.2d 660 (2003) (citing *Ferrante v. Am. Lung Ass'n*, 90 N.Y.2d 623, 629, 665 N.Y.S.2d 25, 687 N.E.2d 1308 (1997)).

[4] TLC next argues that Tronetti has failed to state a claim for violation of the FMLA. This Court agrees. First, Tronetti has failed to allege that TLC employed a sufficient number of employees within the meaning of 29 U.S.C. § 2611(2)(B)(ii).[FN24] Second, the Complaint failed to "identify the provision of the FMLA under which" Tronetti seeks relief.[FN25] Accordingly, Tronetti's FMLA claim will be dismissed without prejudice.[FN26]

> FN24. *Cf. Paleologos v. Rahab Consultants, Inc.*, 990 F.Supp. 1460, 1468 (N.D.Ga.1998) (granting defendant's motion for summary judgment with respect to Tronetti's FMLA claim for failure to allege that the employer employed the requisite number of employees).

> FN25. *See Keene v. Thompson*, 232 F.Supp.2d 574, 584 (M.D.N.C.2002) (granting defendant's motion to dismiss with respect to plaintiff's FMLA claim for failing to specify what section of the FMLA was allegedly violated).

> FN26. This Court declines to address TLC's other grounds for dismissing Tronetti's FMLA claim until plaintiff files an amended complaint that specifies the relied-upon FMLA sections. *See Sanders v. May Dep't Stores Co.*, 315 F.3d 940, 944 n. 4 (8th Cir.) (declining "to address whether sexual reassignment qualifies as a serious-health condition under FMLA"), *cert. denied*, 539 U.S. 942, 123 S.Ct. 2608, 156 L.Ed.2d 627 (2003).

[5] TLC also argues that Tronetti's state law disability claim must be dismissed because Tronetti filed an administrative complaint three days before filing a complaint in this action. Under New York Executive Law § 297(9), a plaintiff may elect to either file a complaint in a court of appropriate jurisdiction or with the Division of Human Rights ("the DHR").[FN27] Consequently, Tronetti has elected an administrative remedy.[FN28] Accordingly, Tronetti's state disability claim will be dismissed without prejudice.[FN29]

> FN27. On a motion to dismiss, this Court may take judicial notice of the fact that Tronetti filed a complaint with the DHR. *See Chambers v. Time Warner*, 282 F.3d 147, 152-154 (2d Cir.2002); *Evans v. New York Botanical Garden*, 2002 WL 31002814, at *4 (S.D.N.Y.2002) (taking judicial notice of a complaint filed with the DHR in deciding a motion to dismiss).

> FN28. *See Stout v. Int'l Bus. Machines Corp.*, 798 F.Supp. 998, 1008 (S.D.N.Y.1992); *Leake v. Long Isl. Jewish Med. Ctr.*, 695 F.Supp. 1414, 1418 (E.D.N.Y.1988) (dismissing NYHRL claim on ground that administrative claim had been filed and adjudicated in defendant's favor), *aff'd on other grounds*, 869 F.2d 130 (2d Cir.1989).

> FN29. In the event that plaintiff's administrative action is dismissed "for administrative convenience." plaintiff may seek to add a state disability claim if and when plaintiff files an amended complaint. *Moodie v. Fed. Reserve Bank of N.Y.*, 58 F.3d 879, 883 (2d Cir.1995); *Stout, supra* note 8, at 1008 ("Only when the administrative complaint is dismissed for administrative convenience will suit be subsequently allowed.").

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                           Page 8
Not Reported in F.Supp.2d, 2003 WL 22757935 (W.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 22757935 (W.D.N.Y.))**

Inasmuch as Tronetti's federal claims will not be dismissed, it is not improper to exercise jurisdiction over plaintiff's state law claims. See *United Mine Workers v. Gibbs,* 383 U.S. 715, 726-727, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Accordingly, it is hereby ORDERED that defendant's motion to dismiss is granted in part and denied in part, that plaintiff's FMLA claim is dismissed without prejudice, that plaintiff's state law disability claim is dismissed without prejudice, that defendant's motion is otherwise denied, that defendant's attorney shall submit to this Court a letter of no more than two pages explaining why TLC's brief made a legal argument that was not legally warranted in light of *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115-122, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), and that, absent adequate explanation, said attorney may be personally sanctioned.

W.D.N.Y.,2003.
Tronetti v. TLC HealthNet Lakeshore Hosp.
Not Reported in F.Supp.2d, 2003 WL 22757935 (W.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.