McGowan Declaration – Exhibit Y

Westlaw.

Not Reported in F.Supp.2d                                                                                           Page 1
Not Reported in F.Supp.2d, 2001 WL 34350174 (N.D.Ohio)
**(Cite as: Not Reported in F.Supp.2d, 2001 WL 34350174 (N.D.Ohio))**

Doe v. United Consumer Financial Services
N.D.Ohio,2001.
Only the Westlaw citation is currently available.
United States District Court,N.D. Ohio, Eastern Division.
Jane M. DOE, Plaintiff,
v.
UNITED CONSUMER FINANCIAL SERVICES, et al., Defendants.
No. 1:01 CV 1112.

Nov. 9, 2001.

Randi Allison Barnabee, Law Office of Deborah A. Smith, Northfield Center, OH, for Plaintiff.
Brooke Miller Hice, Lee J. Hutton, Duvin, Cahn & Hutton, Cleveland, OH, for Defendants.

*MEMORANDUM & ORDER*

OMALLEY, J.
*1 Plaintiff Jane M. Doe brings this action against United Consumer Financial Services ("United Consumer") and several of its employees. Doe is a transsexual who alleges discrimination under Title VII of the Civil Rights Act of 1964 and the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.*, as well as invasion of privacy, intentional infliction of emotional distress, and slander under Ohio law.[FN1] Pursuant to Federal Rule of Civil Procedure 12(b)(6), United Consumer moves for dismissal of this action (Docket No. 5). For the reasons stated below, this motion is GRANTED IN PART and DENIED IN PART.[FN2]

> FN1. Doe also asserted a claim under 42 U.S.C. § 1983, which she subsequently withdrew.

> FN2. In light of this Court's partial denial of Defendants' motion to dismiss, Defendants' subsequent Motion for Rule 11 Sanctions (Docket No. 10) is denied.

I. Background.

For the purpose of ruling on this motion, the Court accepts the following allegations as true. Doe was born on May 27, 1942. In 1973, Doe was diagnosed with Gender Identity Disorder, or transsexualism.[FN3] Since that time, Doe has undergone hormone therapy and surgery as treatment. In October, 1973, Doe changed her name from a traditionally male name to a traditionally female name, and has since lived as a person of the female gender.[FN4]

> FN3. The D.C. Circuit has described transsexualism as
>
>> a gender identity disorder, the sufferers of which believe that they are "cruelly imprisoned within a body incompatible with their real gender identity." The disorder is commonly accompanied by a desire to change one's anatomic sexual features to conform physically with one's perception of self. To relieve this gender discomfort, transsexuals may pursue some combination of hormone therapy, surgery, and psychological counseling. They may also choose to live in their preferred gender role by dressing, naming, and conducting themselves in conformity with that gender.
>
> *Farmer v. Moritsugu,* 163 F.3d 610, 611 (D.C.Cir.1998) (per curiam) (quoting The Merck Manual of Medical Information, 418-419 (1997)).

> FN4. As Doe refers to herself as a female, the Court will do the same. *See, e.g.,Sommers v. Budget Mktg., Inc.,* 667 F.2d 748, 748 (8th Cir.1982).

On May 5, 2000, Doe filled out an application for employment with The Reserve Network, an employment agency, and was placed with United Consumer in a "temp-to-hire" position on June 30, 2000. United Consumer initially reported satisfactory reviews of Doe's work.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34350174 (N.D.Ohio)
(Cite as: Not Reported in F.Supp.2d, 2001 WL 34350174 (N.D.Ohio))

Page 2

In order to assess United Consumer's satisfaction with Doe's performance, two Reserve Network employees met with Deborah Woodworth, the company's Human Resources Coordinator, on July 7, 2000. At one point during the meeting, Woodworth asked, "Have you noticed anything strange about [Doe]?" and relayed that several of Doe's co-workers were calling her "Mrs. Doubtfire" behind her back, in reference to a movie in which a male character dresses as a woman.

With suspicions about Doe's sexuality, United Consumer investigated her background more thoroughly than its normal procedures required. This investigation included an attempt to locate her high school records from the early 1970s to see if these records reflected a traditionally male name that would identify Doe as a transsexual. On July 10, 2000, Woodworth telephoned Doe at her home prior to her scheduled shift, and informed her that the company was having difficulty verifying Doe's high school graduation. Doe told Woodworth about her name change and informed her of her previous (traditionally male) name.

Later that day, Doe reported for work at her regular time. She was summoned to a meeting with co-Defendants William J. Ciszczon [FN5] (vice-president of United Consumer), Woodworth, and Brian Davis.[FN6] At the meeting, Doe was interrogated about her name change and her gender. Ciszczon asked her, "Are you a man or a woman?" and "What gender are you?... Just looking at you I can't tell." Doe told the group that she was a transgendered woman and had been so since 1973. She provided documents showing her legal name change, her then-current Ohio driver's license (indicating that she is female), her social security card with her current name, and her state of Ohio Notary Public identification card. Ciszczon told her that these documents were "not enough," and pressed on, asking, "Have you had an operation?" and "Where in the process are you?"

FN5. Spelled "Ciszon" in the Complaint, but as above in both parties' subsequent filings.

FN6. Although it is not entirely clear from the Complaint, Davis appears to be Doe's supervisor at United Consumer.

*2 Doe told the group that she considered the questioning inappropriate, highly offensive, and irrelevant to her work performance. Ciszczon told her that several days earlier, a United Consumer employee had complained that "a man dressed as a woman was using the ladies room." The employee claimed to know that Doe was transsexual because Doe had been seen on a television show in a context that made her transsexuality apparent. Doe, however, has never been on television.

Ciszczon told Doe that he needed medical evidence of her sexuality, and he ended the meeting by instructing Doe to go home and to call the next afternoon to see whether she was to report to work that day. The following day, July 11, 2000, Doe learned through The Reserve Network that United Consumer no longer required her services. No reason was given.

As a result of her treatment by United Consumer, in addition to losing her position, Doe asserts she suffered emotional distress including anxiety and depression, humiliation, and extreme embarrassment.

II. Law and Analysis.

*A. Standard for Motion to Dismiss.*

In deciding a motion to dismiss under Rule 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Summit Health, Ltd. v. Pinhas,* 500 U.S. 322, 111 S.Ct. 1842, 114 L.Ed.2d 366 (1991); *Dana Corp. v. Blue Cross & Blue Shield Mut.,* 900 F.2d 882 (6th Cir.1990); *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 489 (6th Cir.1990). However, the Court need not accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). The Court is to dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

*B. Title VII.*

1. *Unlawful termination.* Title VII of the Civil Rights Act of 1964 provides that "it shall be an unlawful

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34350174 (N.D.Ohio)
(Cite as: Not Reported in F.Supp.2d, 2001 WL 34350174 (N.D.Ohio))

Page 3

employment practice for an employer ... to discriminate ... because of [an] individual's race, color, religion, sex, or national origin."42 U.S.C. § 2000e-2(a). The question here is whether United Consumer discriminated against Doe "because of ... sex." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

The question of how this seemingly straightforward prohibition applies to transsexuals is a complex one. Defendant points out that all federal courts that have squarely addressed this issue have held that Title VII does not prohibit discrimination based on an individual's transsexualism. *See, e.g.,Ulane v. Eastern Airlines, Inc.,* 742 F.2d 1081 (7th Cir.1984); *Sommers v. Budget Mktg., Inc.,* 667 F.2d 748 (8th Cir.1982); *Holloway v. Arthur Andersen,* 566 F.2d 659 (9th Cir.1977). Basing their analysis on plain language and Congressional intent, these courts (hereinafter collectively referred to as "Ulane") found that Congress "had a narrow view of sex in mind" and "never considered nor intended that this 1964 legislation apply to anything other than the traditional concept of sex."Ulane, 742 F.2d at 1085-86.

*3 Doe argues, however, that *Ulane* does not apply here, because she is not alleging discrimination based on transsexuality per se; rather, she asserts that United Consumer engaged in "sexual stereotyping" prohibited by *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). In *Price Waterhouse,* a female senior manager was being considered for partner in a nationwide professional accounting partnership. *Id.* at 232. The Court found that, in part, she was denied partnership because she was considered not "feminine enough" in dress and behavior. *Id.* at 235. Finding that such conduct amounted to prohibited "sex stereotyping," the Court noted, "[W]e are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group."' *Id.* at 251 (citation omitted).

Similarly, Doe here alleges that United Consumer fired her because her appearance and behavior did not meet the company's sex stereotypes: United Consumer either viewed her as a man who dressed and behaved like a woman, or it considered her a woman who was insufficiently feminine. Either way, Doe asserts, United Consumer's sex stereotyping violated Title VII.

Defendants suggest that Doe's *Price Waterhouse* claim is a disingenuous recharacterization of a transsexuality discrimination claim and is thus foreclosed by *Ulane.*Defendants' position highlights the tension between *Ulane* and *Price Waterhouse.*Plaintiff claims that *Price Waterhouse* undercuts *Ulane'* s continuing viability, while Defendants argue that *Ulane* survives *Price Waterhouse* unscathed. In support of their position, Defendants direct the Court's attention to several cases where federal courts have followed, or cited favorably to, *Ulane* since *Price Waterhouse.See Dobre v. National R.R. Passenger Corp.,* 850 F.Supp. 284 (E.D.Pa.1993) (following *Ulane* but not addressing *Price Waterhouse* );*Cox v. Denny's, Inc.,* 1999 WL 1317785 (M.D.Fla. Dec.22, 1999) (same); *see alsoDillon v.. Frank,* 1992 U.S.App. LEXIS 766, at *12-13 (6th Cir. Jan. 15, 1992) (citing *Ulane* with approval in sexual orientation discrimination case) (unpublished); *Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.,* 224 F.3d 701, 704 (7th Cir.2000) (same). The majority of these cases, however, do not actually discuss *Price Waterhouse,* and at least one circuit court that *did* address both cases has suggested that *Ulane* is no longer good law. *SeeSchwenk v. Hartford,* 204 F.3d 1187, 1201 (9th Cir.2000) (noting that *Ulane* has been overtaken by the "logic and language of *Price Waterhouse"* and that Title VII prohibits discrimination based on "sexual identity," not just based on biological sex); *cf.Rosa v. Park W. Bank & Trust Co.,* 214 F.3d 213 (1st Cir.2000) (holding that under Equal Credit Opportunity Act, 15 U.S.C. § 1691, bank cannot refuse credit to an applicant merely because his crossdressing did not meet bank employee's gender stereotypes).[FN7]

> FN7. Moreover, *Ulane'* s reliance on Congressional intent is at odds with *Oncale v. Sundowner Offshore Services,* 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). In holding that male-on-male workplace harassment may be actionable, the *Oncale* Court acknowledged that it was applying Title VII to a situation not likely considered by Congress when it passed the Civil Rights Act, and advised, "[S]tatutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                     Page 4
Not Reported in F.Supp.2d, 2001 WL 34350174 (N.D.Ohio)
**(Cite as: Not Reported in F.Supp.2d, 2001 WL 34350174 (N.D.Ohio))**

than the principal concerns of our legislators by which we are governed."*Id.* at 79.

*4 For the purposes of this motion, the Court need not decide whether *Ulane* remains good law. The Court must address, instead, whether, even if *Ulane* remains viable, Doe can state a claim under a *Price Waterhouse* sex stereotypes theory. The Court holds that she can do so.

In this case, Doe's co-workers called her "Mrs. Doubtfire" behind her back. After receiving a complaint that "a man dressed as a woman was using the ladies room," United Consumer questioned her about her gender. Ciszczson asked her, "Are you a man or a woman?" and, "What gender are you?... Just looking at you I can't tell."Doe disclosed that she has been a transgendered woman since 1973. United Consumer fired her the next day.

Under these facts, it is certainly conceivable that she was fired for no reason other than the fact that she was a transsexual, and that her claim is, thus, precluded by *Ulane*.But, it is also conceivable that her transgendered status was not the sole issue, and that her termination may have been based, at least in part, on the fact that her appearance and behavior did not meet United Consumer's gender expectations (particularly in light of United Consumer's alleged inability to catagorize her as male or female "just from looking"). For example, United Consumer may not have fired Doe if she looked and acted "fully female" or "fully male," even if the company had independently discovered her transgender status. If this is the case, United Consumer may be liable for its actions under *Price Waterhouse.*

Although the distinction between a legitimate motive and an illegitimate motive in this case is narrow, such distinctions are often addressed in the Title VII context. Indeed, at least two circuit courts addressed similar distinctions in cases involving sexual orientation discrimination. In the Second and Sixth Circuits, homosexual plaintiffs claimed to have been sexually harassed by their respective employers. *SeeSimonton v. Runyon,* 232 F.3d 33 (2nd Cir.2000); *Dillon v. Frank,* 1992 U.S.App. LEXIS 766, at *12-13 (6th Cir. Jan 15, 1992). Both Courts acknowledged that Title VII does not prohibit sexual orientation discrimination per se. *SeeSimonton,* 232 F.3d at 36;*Dillon,*1992 U.S.App. LEXIS 766, at *12.

Each plaintiff, however, claimed that they were victimized by sex stereotypes prohibited by *Price Waterhouse.*Rather than dismiss these claims as a mere recharacterization of sexual orientation discrimination claims, each Court gave them independent consideration based on the facts presented. *SeeSimonton,* 232 F.3d at 37-38 (finding *Price Waterhouse* claim "more substantial" than other claims but insufficiently plead); *Dillon,*1992 U.S.App. LEXIS 766, at *27-28 (distinguishing *Price Waterhouse* on facts of case).[FN8] The *Simonton* Court noted that a *Price Waterhouse* claim based on the homosexual plaintiff's nonconformity with gender norms "would not bootstrap protection for sexual orientation into Title VII because not all homosexual men are stereotypically feminine, and not all heterosexual men are stereotypically masculine."*SeeSimonton,* 232 F.3d at 38.

> FN8. In *Dillon,* the plaintiff alleged only discrimination manifested in harassment. The *Dillon* Court suggested, however, that a *Price Waterhouse* claim may be stronger in a case, like this one, in which the alleged discrimination is manifested in a "specific management decision." *SeeDillon,* 1992 U.S.App. LEXIS 766, at *27-28.

*5 Likewise, a *Price Waterhouse* claim resting on Doe's nonconformity with gender norms would not simply bootstrap protection for transsexualism into Title VII because not all transsexuals appear less than "fully male" or "fully female." *See, e.g.,Miles v. New York Univ.,* 979 F.Supp. 248 (S.D.N.Y.1997). Thus, just as the *Simonton* and *Dillon* Courts gave independent consideration to *Price Waterhouse* claims, despite settled law that Title VII does not prohibit sexual orientation discrimination, this Court also will give independent consideration to Doe's *Price Waterhouse* claim, despite *Ulane.*Accordingly, since Doe may have been fired, at least in part, because her appearance and behavior did not fit into her company's sex stereotypes, rather than solely because of her transgendered status, dismissal of Doe's Title VII claims is not warranted.

2. *Harassment,* Doe also claims that her lack of conformity with Defendants' sex stereotypes led to unlawful harassment. She cites to the same behaviors that support her unlawful termination claim: Woodworth's knowledge of employees calling Doe

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34350174 (N.D.Ohio)
(Cite as: Not Reported in F.Supp.2d, 2001 WL 34350174 (N.D.Ohio))

Page 5

"Mrs. Doubtfire" behind her back; another employee complaining to management that "a man dressed as a woman was using the ladies' room"; allegations that she appeared on television as a transsexual; and aggressive and intrusive questioning by Ciszczon during the July 10, 2000, meeting. Taken together, Doe alleges, these actions constitute unlawful harassment motivated by the fact that United Consumer viewed her either as a man who looked like a woman or a woman who was insufficiently feminine.

The same narrow distinctions described in the previous section also apply here: To the extent that the harassment was motivated solely by Doe's transgendered status, such harassment is not actionable (again, assuming *Ulane* remains viable following *Price Waterhouse*). But, if the harassment was, at least in part, to "punish the victim's noncompliance with gender stereotypes," *EEOC v. Harbert-Yeargin, Inc.,* 266 F.3d 498 (6th Cir.2001) (citing *Bibby v. Philadephia Coca Cola Bottling Co.,* 260 F.3d 257 (3d Cir.2001)), then it is actionable regardless of *Ulane'* s status. Because the exact nature of the motivation underlying the alleged harassment is, as yet, unclear, Doe's claim cannot be dismissed. Although, on the limited record before it, the Court sees little evidence of the severity or pervasiveness required for actionable harassment, *seeHarris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), Defendant has not moved for dismissal on that basis; the Court, therefore, declines to do so at this time.

*C. The Americans With Disabilities Act*

Doe asserts a claim of discrimination under the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. She claims that her Gender Identity Disorder results from a physical impairment and substantially limits her major life activities, and that United Consumer knew of her transgendered status but refused to make reasonable accommodations for her.

*6 Title I of the ADA states that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... terms, conditions, and privileges of employment."42 U.S.C. § 12112(a). The ADA defines a disability to include "a physical or mental impairment that substantially limits one or more of the major life activities of such individual."*Id.* § 12102(2)(A). But certain conditions are explicitly excluded from that broad definition. "Transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, [and] other sexual behavior disorders" are not disabilities under the statute. *Id.* § 12211(b)(1).

Doe seems to argue that, because her Gender Identity Disorder results from a physical impairment, it should not be excluded. This argument is not persuasive. The Court sees no reason to question Doe's view that "Gender Identity Disorder" is synonymous with "transsexualism." (Compl.¶ 20). The plain language of the statute indicates that transsexualism is excluded from the definition of disability no matter how it is characterized, whether as a physical impairment, a mental disorder, or some combination thereof. Doe does not have a disability as defined in the statute. Thus, she fails to state a claim under the ADA.[FN9]

   FN9. Even if transsexualism was not explicitly excluded, Doe would fail to state an ADA claim because she has failed to specify what major life activities have been affected by her condition. "Major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."29 C.F.R. § 1630.2(I). Her conclusory statement that she might describe these in the future is not sufficient to defeat a 12(b)(6) motion. *SeePapasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

*D. Invasion of Privacy.*

Ohio law recognizes three varieties of invasion of privacy: (1) an intrusion into private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities; (2) the publicizing of one's private affairs of which the public has no legitimate concern; and (3) the unwarranted appropriation or exploitation of one's personality. *SeeJackson v. City of Columbus,* 67 F.Supp.2d 839 (6th Cir.1998) (citing *Sustin v. Fee,* 69 Ohio St.2d 143, 431 N.E.2d 992 (Ohio 1982) and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 6
Not Reported in F.Supp.2d, 2001 WL 34350174 (N.D.Ohio)
(Cite as: Not Reported in F.Supp.2d, 2001 WL 34350174 (N.D.Ohio))

*Housh v. Peth*, 165 Ohio St. 35, 133 N.E.2d 340 (Ohio 1956)). Doe alleges that Defendants wrongfully intruded into her private activities and publicized her private affairs.

1. *Intrusion.* Doe alleges that United Consumer intruded into her private affairs by checking her high school records to determine if Doe had ever used a traditionally male name and by "maliciously question[ing Doe] about sensitive, highly-personal matters."(Compl.¶ 74). With respect to high school records, Doe cannot state a claim. High school records are public records under Ohio law, *see* Ohio Revised Code § 149.43, and privacy concerns do not alter the public quality of those records. *See Fant v. Enright*, 66 Ohio St.3d 186, 610 N.E.2d 997 (holding that statutory right to privacy has no effect on right to inspect public records).

Doe's Complaint may also be fairly read to allege an intrusion claim arising from Ciszczon's interrogation of Doe concerning her gender and transsexuality. Highly personal questions "by a person in authority may be regarded as an intrusion on psychological solitude or integrity and hence an invasion of privacy."Prosser & Keeton, Prosser and Keeton on Torts § 117 (Supp.1988), *quoted in Garus v. Rose Acre Farms, Inc.*, 839 F.Supp. 563, 570 (N.D.Ind.1993). Because Defendant has not addressed this issue, the Court declines to dismiss Doe's invasion of privacy claim to the extent that claim arises from the interrogation by Ciszczon about her gender and transsexuality.

*7 2. *Publicity of private facts.* Doe alleges that Defendants Woodworth and Ciszczon wrongfully publicized Doe's name change and transsexuality. She alleges that Woodworth communicated this information to Ciszczon, and Ciszczon disclosed it to Brian Davis at a meeting among Woodworth, Davis, Ciszczon, and Doe. In order to state a claim for the publicizing of one's private affairs, a plaintiff must show: (1) publicity, that is, disclosure of a public, as opposed to a private, nature; (2) the disclosure of facts which concern the private life of the individual; (3) the publication of matters which are highly offensive and objectionable to a reasonable person of ordinary sensibilities; (4) an intentional publication; and (5) the publication of matters which are not of legitimate concern to the public. *Jackson*, 67 F.Supp.2d at 869 (citing *Seta v. Reading Rock, Inc.*, 100 Ohio App.3d 731, 654 N.E.2d 1061 (Ohio Ct.App.1995)).

A plaintiff must demonstrate disclosure "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."*See Seta*, 654 N.E.2d at 1068. " 'Thus it is not an invasion of the right of privacy ... to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.' " *Yoder v. Ingersoll-Rand Co.*, 1998 U.S.App. LEXIS 31993, at *7 (6th Cir. Dec. 22, 1998) (unreported) (quoting Restatement (Second) of Torts § 652D, cmt. a).

Doe has not sufficiently alleged public communication of her name change and transsexuality. She alleges only that Woodworth communicated these facts to Ciszczon, and that Ciszczon communicated these facts at a meeting with Davis, Woodworth, and Doe. Although Doe speculates that her private matters may have been communicated to other employees "within earshot" of the meeting (Compl.¶ 80), this does not amount to an allegation that the communication was made "to so many persons that the matter must be regarded as substantially certain to become one of public knowledge" as required under Ohio law. Doe fails to state a claim for publicizing of her private affairs.

*E. Intentional Infliction of Emotional Distress.*

Doe asserts an intentional infliction of emotional distress claim arising from United Consumer's checking her high school records and asking her pointed questions about her transsexuality. In Ohio, a claim for intentional infliction of emotional distress must show:

(a) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; (b) that the actor's conduct was extreme and outrageous, that it went beyond all possible bounds of decency, and that it can be considered as utterly intolerable in a civilized community; (c) that the actor's actions were the proximate cause of plaintiff's psychic injury; and (d) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure it.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-01090-JR   Document 49-38   Filed 06/18/2008   Page 8 of 9

Not Reported in F.Supp.2d                                                                                                     Page 7
Not Reported in F.Supp.2d, 2001 WL 34350174 (N.D.Ohio)
(Cite as: Not Reported in F.Supp.2d, 2001 WL 34350174 (N.D.Ohio))

*8 *Hartley v. Dayton Computer Supply*, 106 F.Supp.2d 976 (S.D.Ohio 1999) (citing *Bellios v. Victor Balata Belting Co.*, 724 F.Supp. 514, 520 (S.D.Ohio 1989). United Consumer argues that none of the conduct alleged by Doe amounts to extreme and outrageous conduct. The Court agrees.

Here, United Consumer employees attempted to locate Doe's high school records to determine whether she had changed her name. In a subsequent meeting with Ciszczon, Davis, and Woodworth, Doe was asked, "Are you a man or a woman?" and "What gender are you?" as well as "Have you had an operation?" and "Where in the process are you?" Clearly this caused Doe no small degree of embarrassment. But this questioning and United Consumer's check of Doe's high school records is not so extreme or outrageous that "the recitation of the facts to an average member of the community would arouse his resentment against" United Consumer. *See Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 6 Ohio St.3d 369, 453 N.E.2d 666, 671 (Ohio 1983). Even if the Court agreed with Doe that the inquiries had no reasonable relation to Doe's employment or job performance, United Consumer's conduct would still not qualify as extreme or outrageous under Ohio law. *Cf. Hartley*, 106 F.Supp.2d at 982 (finding that employer's repeated inquiries about employee's religious beliefs may be upsetting to employee, but not "extreme" or "outrageous" in character). Doe fails to state a claim for intentional infliction of emotional distress.[FN10]

> FN10. This does not alter the fact, however, that Doe may pursue damages for emotional distress within the context of her Title VII claim.

*F. Slander.*

Doe alleges that an unnamed co-Defendant employee of United Consumer informed Ciszczon that the employee, or another employee, had previously seen Doe on a television show in the context of being transsexual, and that this was the basis for the employee's knowledge that "a man dressed as a woman was using the ladies' room ." Doe asserts that the employee's claim was false in that Doe has never appeared on television.

To state a claim under Ohio law for defamation, the plaintiff must identify a statement that was (1) false; (2) defamatory to the plaintiff; (3) published to a third party; (4) made by a defendant who was at least negligent; and (5) damaging to the plaintiff's reputation. *See Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 312 (6th Cir.2000); *Lansdowne v. Beacon Journal Publ'g Co.*, 32 Ohio St.3d 176, 512 N.E.2d 979, 984 (Ohio 1987).

Defendants assert that, in light of two affirmative defenses-substantial truth of the statement and qualified privilege-Plaintiff has failed to state a claim of slander under Ohio law.

First, United Consumer claims that the "gist" of the employee's statement is the assertion that Doe is a transsexual (a fact conceded in the Complaint), rather than the (allegedly false) assertion that Doe appeared on television. In defending against a defamation action, it is sufficient for the defendant to show that " 'the imputation is substantially true, or as it is often put, to justify the 'gist,' the 'sting,' or the substantial truth of the defamation." ' *Parry*, 236 F.3d at 312 (citing *Nat'l Medic Servs. Corp. v. E.W. Scripps Co.*, 61 Ohio App.3d 752, 573 N.E.2d 1148, 1150 (Ohio Ct.App.1989)). Reading the Complaint in the light most favorable to Doe, however, it is not clear that the allegation that Doe appeared on television in the context of being a transsexual caused her no damage. Indeed, presented with a transsexual who has "gone public," United Consumer may have been more willing to fire her or to directly confront her. Without any factual development on this issue, the affirmative defense of "substantial truth" is premature.

*9 Defendants also assert that the communication was qualifiedly privileged under Ohio law. In Ohio,

[a] publication is conditionally or qualifiedly privileged where circumstances exist, or are reasonably believed by defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty, or when the person is so situated that it becomes right in the interests of society and he should tell third persons certain facts, which he in good faith proceeds to do.

*Parry*, 236 F.3d at 313. Defendant alleges that the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                    Page 8
Not Reported in F.Supp.2d, 2001 WL 34350174 (N.D.Ohio)
(Cite as: Not Reported in F.Supp.2d, 2001 WL 34350174 (N.D.Ohio))

employee's statements to Ciszczon were made pursuant to the duty of an employee to disclose relevant information about a fellow employee. See *Dodson v. Wright State Univ.,* 91 Ohio Misc.2d 57, 697 N.E.2d 287, 293 (Ohio Ct. Claims 1997) ("The preponderance of authority supports the view that communication between an employer and an employee ... concerning the conduct of a third employee ... are qualifiedly privileged."(quoting *McKenna v. Mansfield Leland Hotel Co.,* 55 Ohio App. 163, 9 N.E.2d 166 (Ohio Ct.App.1936)).

The qualified privilege, however, requires a showing of good faith on the part of the employee. Without this showing, "the affirmative defense of qualified privilege is not cognizable" in a motion to dismiss under Fed. Rule 12(b)(6).*Gall v. Dye,* 1999 Ohio App. LEXIS 4147 (Ohio Ct.App.1999); *see also Bell v. Horton,* 107 Ohio App.3d 824, 669 N.E.2d 546 (Ohio App.1995).[FN11]

> FN11.*Gall* and *Bell* found that a plaintiff's allegation of malice in the complaint was sufficient to negate the good faith requirement of the qualified immunity defense in a motion to dismiss. *See Gall,* 1999 Ohio App. LEXIS 4147, at *9-10; *Bell,* 669 N.E.2d at 550. Although an allegation of malice may be sufficient to defeat a qualified immunity defense on a motion to dismiss, the Court finds that it is not a requirement. Thus, Plaintiff's failure to assert malice here does not defeat her claim at this stage.

Defendant's motion to dismiss pursuant to Rule 12(b)(6) is GRANTED IN PART and DENIED IN PART. Defendant's motion is GRANTED as to Doe's Americans With Disabilities Act claim, her state law intentional infliction of emotional distress claim, her publication of private facts claim, and her intrusion claim to the extent that claim rests on an inspection of Doe's high school records. Defendant's motion is DENIED as to Doe's Title VII claims, her slander claim, and her intrusion claim as it relates to Defendants' questioning her about her gender and transsexuality.

IT IS SO ORDERED.

N.D.Ohio,2001.

Doe v. United Consumer Financial Services
Not Reported in F.Supp.2d, 2001 WL 34350174 (N.D.Ohio)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.