UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DIANE J. SCHROER,<br><br>    Plaintiff,<br><br>v.<br><br>JAMES BILLINGTON,<br>    In his official capacity<br>    as Librarian of Congress,<br><br>    Defendant. | Civil Action No. 05-1090 (JR) |

**DEFENDANT'S REPLY IN SUPPORT OF HIS
MOTION FOR SUMMARY JUDGMENT**

Defendant James Billington, Librarian of the Library of Congress ("Defendant" or "Library") respectfully submits this reply in support of his motion for summary judgment.

## INTRODUCTION

Defendant is entitled to judgment as a matter of law: the factual record is complete, there are no material facts in dispute, and Plaintiff's claim of sex discrimination is ripe for dismissal. Specifically, Plaintiff's claim of sex discrimination fails because: 1) transsexuals are not a protected class under Title VII, and 2) even assuming "an allegation by a male-to-female transsexual that she was discriminated against because of her failure to act or appear feminine enough states a claim under Title VII,"[1] Plaintiff cannot show that she was treated disparately when presenting as a woman.

---

[1] Schroer v. Billington, Civil Action No. 05-1090 (JR) (D.D.C. November 28, 2007), at 3.

Plaintiff, in her opposition memorandum, fails to raise a genuine issue in dispute such that a jury might rule in her favor. See e.g., Stewart v. Ashcroft, 352 F.3d 422, 428 (D.C. Cir. 2003)(affirming District Court's decision granting summary judgment to defendant in Title VII case where plaintiff/appellant failed to offer sufficient evidence such that a jury could find that the agency's reason for its actions was a pretext for discrimination). Indeed, Plaintiff's voluminous opposition and exhibits attempt to create the appearance of material facts in dispute when in fact there are none. Accordingly, for the reasons set forth below, Plaintiff's complaint should be dismissed in its entirety and with prejudice.

## ARGUMENT

**A.     Transsexuals Are Not a Protected Class Under Title VII**

In her Opposition, Plaintiff argues that transsexuals are a protected class under Title VII. Plaintiff's Opp. at 18-22. However, nothing in Plaintiff's Opposition establishes that as a matter of law transsexuals are a protected class under Title VII. Defendant's motion, on the other hand, demonstrates that transsexuals are not a protected class under Title VII. Defendant will not clutter the record with the arguments already delineated in its previous filings but briefly reiterates the following: 1) a fundamental canon of statutory construction requires that words within the statute be given their ordinary, common meaning, Perrin v. U.S. 444 U.S. 37, 42 (1979); therefore, the term "sex,"[2] as used by Title VII prohibits discrimination based on the

---

[2] The term "sex" is defined as "either of two major forms of individuals that occur in many species and that are distinguished respectively as female or male. . ." Merriam Webster's Collegiate Dictionary, 11th Edition.

biological state of a male or female;³ 2) every Federal court that has dealt directly with this issue has held that transsexuals are not a protected class under Title VII.  See, e.g., Etsitty v. Utah Transit Authority, 502 F. 3d 1215, 1357 (10th Cir. 2007) ("In light of the traditional binary conception of sex, transsexuals may not claim protection under Title VII from discrimination based solely on their status as a transsexual"); Underwood v. Archer Management Services, Inc., 857 F. Supp. 96, 65 (D.D.C. 1994) ("In construing Title VII district courts have ruled [that] discrimination on the basis of transsexuality is outside Title VII's protection");⁴  3) in 2007, members of the United States Congress attempted to enact legislation that would prohibit discrimination based on sexual orientation and gender identity, but this attempt failed.  See H.R. Report 110-406 at 44. H.R. 2015, 110 Cong., 1st Sess. (2007); H.R. 3685, 110 Cong., 1st Sess. (2007) and H.R. 3686, 110.  In fact, the decision to abandon H.R. 2015 and introduce two separate bills was based on the bills' sponsors' perception that including gender identity and sexual orientation on the same bill might jeopardize the bill's chance for passage on the House floor.  H.R. Report 110-406 at 44.  Moreover, as recently as June 26, 2008, Congress held a hearing during which the Committee members and witnesses acknowledged that there is no

---

³ There is nothing in language or the legislative history of Title VII which indicates that the term "sex" also encompasses transsexuals or persons with Gender Identity Disorder.

⁴ See also Ulane v. Eastern Airlines, Inc., 742 F. 2d 1081, 1085 (7th Cir. 1984)("the words of Title VII do not outlaw discrimination against a person who has a sexual identity disorder."); Sommers v. Budget Marketing, Inc., 667 F. 2d 748, 750 (8th Cir. 1982)("We hold that discrimination based upon one's transsexualism does not fall within the protective purview of [Title VII].").  Plaintiff cites no case law to support her assertion that Title VII prohibits discrimination based upon an individual's status as a transsexual.

federal law which protects transsexuals from discrimination.[5] Therefore, there is no basis to conclude that transsexuals are, or were ever intended to be, a protected class under Title VII.

      Notwithstanding the plain language of Title VII, court precedent, and the unsuccessful efforts to pass legislation to prohibit discrimination on the basis of gender identity, Plaintiff argues that "there is sufficient evidence to create a triable dispute over whether an individual's gender identity is part of his or her sex." Plaintiff's Opp. at 18. Plaintiff, however, cannot marshal any factual evidence establishing that the medical community has accepted a verifiable biological determinant for Gender Identity Disorder ("GID"). Specifically, Plaintiff is unable to refer the Court to a single piece of evidence establishing a known pathologic, neuropathologic, psychopathologic, genetic, or congenital cause of GID. And Plaintiff's expert, Walter Bockting, Ph.D, concedes that the cause of GID is not known. ("What causes gender identity disorder remains unknown." R. 34, Bockting report at ¶ 19). Therefore, Plaintiff's assertion that gender identity is part of and the same thing as one's biological sex lacks any evidentiary support and is insufficient to defeat Defendant's motion for summary judgment. While the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a <u>genuine issue for trial</u>.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986)(citing Fed. R. Civ. P. 56(e)) (emphasis in original). Accordingly, individuals who have GID or who claim discrimination on the basis of their sexual identity are not a protected class under Title VII and Plaintiff's claim should therefore be dismissed.

---

    [5]  http://edlabor.house.gov/hearings/help-2008-06-26.shtml

B.    **Plaintiff Cannot Show that The Library Treated Her Disparately on Account of Sex.**

Plaintiff posits that both her failure to conform to sex stereotypes and her gender identity were the factors behind her nonselection, and that both factors "constitute actionable discrimination because of sex" Plaintiff's Opp. at 23. Plaintiff is incorrect. The theory of sex stereotyping first enunciated in <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989), and which Plaintiff asserts is tantamount to sex discrimination, was meant to apply only <u>as evidence</u> of disparate treatment—that is, to expose employer conduct that imposes a burden on one sex that the employer does not impose on the opposite sex. However, Title VII creates no protection for someone "presenting" in a manner contrary to generally accepted cultural norms of dress or conduct for one's biological sex, otherwise referred to as "gender non-conforming behavior," in the absence of disparate treatment for members of the opposite sex. As the Court in <u>Price Waterhouse</u> explained, in determining whether a person's sex played "a motivating part" in an adverse employment decision, Title VII is violated where, "If we asked the employer at the moment of the decision what its reasons were and if we received a truthful response, one of those reasons would be that the applicant or employee was a woman." 490 U.S. at 250. In the case of Ann Hopkins, the Court observed that Price Waterhouse's promotion policies had placed her in an "impermissible Catch 22" by insisting that women in the workplace not be aggressive while simultaneously insisting on this very quality for advancement. <u>Id</u>. at 251. Thus, Ms. Hopkins was effectively barred from promotion to partner because the same quality she needed to advance (namely "aggressiveness") effectively disqualified her because, as a woman, such a quality was disapproved by the employer's organizational culture. This was discrimination on the basis of Ms. Hopkins' sex, not because a stereotype was the factor that supposedly prevented her from advancement, but because it represented an "arbitrary barrier to sexual equality at the

workplace" that did not exist for men. Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986).

Similar disparate treatment is critical to demonstrating that sex discrimination was at play in Plaintiff's non-selection—irrespective of Plaintiff's GID, transsexuality, or gender non-conformity—as the Court acknowledged when it determined that "Price Waterhouse does not create a Title VII claim for sex stereotyping in the absence of disparate treatment." Memorandum Order of March 31, 2006 at 17. Plaintiff, unlike Ann Hopkins, can neither show that she was treated disparately nor can she show that the Library's reason for not selecting her was because the Library did not want to hire a female.

In the instant matter, Plaintiff cannot show that she was treated disparately on account of her biological sex (male) or when presenting herself as a female. Plaintiff posits that she was treated disparately because a "gender conforming individual" or a "non-transgender individual" (i.e., John Rollins) was hired by the Library to fill the Terrorism Specialist position after she (Plaintiff) revealed her GID to Ms. Preece and showed Ms. Preece pictures of herself (a biological male who had not yet completed the transition to an anatomical female) in female attire. Plaintiff's Opp. at 28. Plaintiff's attempt to apply Price Waterhouse in this manner, however, has absolutely no support in the holding, facts, or reasoning of that case--where a woman, Ann Hopkins, was found to have been treated disparately as compared to men in terms of her ability to advance at her workplace. In Price Waterhouse, the Court's ultimate inquiry was not whether Ms. Hopkins was "gender non-conforming" in order to determine if sex discrimination was at play in the adverse employment decision. Rather, the Court's ultimate question was, as noted above, whether at the moment of the decision one of the employer's (truthful) reasons for not selecting Ms. Hopkins for advancement was because she was a woman.

That is not the case here.  Setting aside Plaintiff's biological status as a male and assuming *arguendo*, that Schroer was, at the time of the non-selection, a female, Plaintiff cannot show that, like Ann Hopkins, her would-be employer chose not to hire her because it simply does not hire or promote females and instead selected Mr. Rollins because he is male.  Thus, also unlike Ann Hopkins, Plaintiff cannot show that she was placed in an "impermissible Catch-22" whereby the Library imposed a standard on Schroer as a woman that it did not impose on Mr. Rollins as man.  Plaintiff argues that Defendant's logic is "deeply flawed" because under "Defendant's rule requiring disparate treatment, Price Waterhouse would have been able to defend against Ann Hopkins' claim of sex discrimination by asserting that it also would not promote to partner an effeminate man."  Plaintiff's Opp. at 28.  However, that is precisely the point:  "What the Supreme Court recognized is a Title VII action for disparate treatment based on sex stereotyping.  Sex stereotyping that does not produce disparate treatment does not violate Title VII."  Memorandum Order of March 31, 2006, at 10.  Thus, if Price Waterhouse had been able to demonstrate that it did not equally promote "effeminate" men as well as "masculine" women, there would have been no discrimination (i.e., disparate treatment) against men because they are men, or against women because they are women, because the promotion criteria would have affected non-conforming men and women alike.

Plaintiff also cannot show that the Library did not hire her because of a bias against hiring a woman for the position of Terrorism Analyst.  To support her claim of sex discrimination, Plaintiff relies on the fact that Ms. Preece was surprised and shocked that the person whom she had been dealing with throughout the interview process -- who had consistently presented as a man named David Schroer up to that point -- had just told her that he had been diagnosed with GID, would begin work presenting as a woman, and then proceeded to

show her pictures of himself in female attire.  Plaintiff's Opp. at 26.  Plaintiff also relies on Ms. Preece's concerns about Plaintiff's credibility before Members of Congress and whether or not Plaintiff might be able to maintain David Schroer's military contacts.  Plaintiff's Opp. at 26-27.  However, there is no evidence in the record that Ms. Preece was concerned that Congress and the military community would not want to deal with a <u>female</u> (in fact, Ms. Preece had previously hired a female, Audrey Cronin, for the Terrorism Specialist position[6]).  Indeed, Plaintiff's own filing reveals that it is not discrimination because she is a <u>female</u> of which she complains, but her status as a <u>transsexual</u>.  Specifically, Plaintiff posits that Ms. Preece believed Members of Congress would be "biased against, or at least intolerant of, a transgender person in the role of CRS analyst    would 'be less interested in what Plaintiff had to say because she was transgender'    [and] that the military community would be 'biased' against Plaintiff, as a transgender woman    " and that "[u]ltimately, Preece selected her second-choice candidate because he was not transsexual and therefore raised fewer concerns in Preece's mind."  Plaintiff's Opp. at 27, 29-30.  Absolutely nothing in Ms. Preece's reactions or comments evinces a bias against Plaintiff because of her sex— <u>either as a male or a female</u>—but, at most, a bias against persons who have been diagnosed with GID and will in the future report to work while presenting in a manner opposite to their biological sex.  As such, any bias that can be discerned from the actions and comments of Ms. Preece and the Library are simply not actionable under Title VII as a matter of law because they do not amount to discrimination because of sex.

        Plaintiff asserts that Defendant's concerns are "insufficient to satisfy Defendant's burden because they are nothing more than relabled concerns about sex."  Plaintiff's Opp. at 31.

---

[6] Moreover, one of the reasons Ms. Preece hired Ms. Cronin was the latter's success "assisting key committees of Congress."  R. 48, Ex. 6.

However, as noted above, the concerns of Ms. Preece and the Library had nothing to do with whether or not a <u>female</u> would be credible before Members of Congress or be able to maintain military contacts, but whether a transsexual person would. The fallacy of Plaintiff's premise is that she believes than an adverse action against her because she is a transsexual is no different than an adverse action against her because she is a woman. But there most certainly is a difference. As this Court has recognized, "a <u>Price Waterhouse</u>-type claim could not be supported by facts showing that Schroer's non-selection resulted <u>solely</u> from her disclosure of her gender dysphoria and her intention to present herself as a woman ̶ this is so because protection from sex stereotyping is different, not in degree, but in kind, from protecting transsexuals <u>as transsexuals</u>." Memorandum Order of November 28, 2007 at 8. (emphasis in the original).[7] Absolutely nothing presented by Plaintiff or uttered by the Defendant's officials

---

[7] As the First Circuit in <u>Hamm v. Weyauwega Milk Products</u>, 332 F. 3d 1058 (7th Cir. 2003) has noted:

> there is a difference that subsequent cases [following Price Waterhouse] have ignored between, on the one hand, using evidence of the plaintiff's failure to wear nail polish (or, if the plaintiff is a man, his using nail polish) to show that her sex played a role in the adverse employment action of which she complains, and, on the other hand, creating a subtype of sexual discrimination called 'sex stereotyping,' as if there were a federally protected right for male workers to wear nail polish and dresses ̶ .

332 F. 3d at 1067 (Posner, J., concurring). Indeed, Judge Posner exposed the folly of permitting a gender stereotyping cause of action independent of disparate treatment. In <u>Hamm</u>, a male employee occupied a job series that was filled entirely by men. In that situation, Judge Posner observed, if an employer "discriminates against effeminate men, there is no discrimination against men, just against a subclass of men. They are discriminated against not because they are men, but because they are effeminate." <u>Id</u>. at 1067. That is, the employer has imposed a sex stereotype by refusing to hire men it deems effeminate, but it has not engaged in sex discrimination against men per se. Properly understood, the theory of sex stereotyping applies only when it evidences disparate treatment of one gender over another. Thus, "if the producer of Antony and Cleopatra refuses to cast an effeminate man as Antony or a mannish woman as Cleopatra, he is not discriminating against men in the first case and women in the second, although he is catering to the audience's sex stereotypes." <u>Id</u>. at 1068. Moreover, permitting a gender stereotyping cause of action independent of disparate treatment would negate an entire

evince a bias against Plaintiff because of the fact that Diane Schroer would be a woman who would be working with Members of Congress and former military colleagues. At most, the only thing that can be shown is that Ms. Preece's concerns were premised on Plaintiff's revelation regarding her GID and the potential negative reaction that Members of Congress and military contacts might have in dealing with a transsexual. As such, and absent any showing by Plaintiff that she was treated disparately as compared to a female-to-male transsexual (for example), Plaintiff's claim is not actionable under Title VII because any adverse action that she may have been subject to was (at most) attributable only to her transsexualism and not to the fact that she would report to work as a woman.

---

line of case law that permits employers to impose gender-specific dress and grooming codes—and to discipline or fire employees who do not comply with those codes. See, e.g. Jesperson v. Harrah's Operating Co., Inc., 392 F. 3d 1076 (9th Cir. 2004); Harper v. Blockbuster Entertainment Corp., 139 F. 3d 1385 (11th Cir. 1998); Dodge v. Giant Food, Inc., 388 F. 2d (D.C. Cir. 1973).

      As noted above, Plaintiff cannot prove that she was disparately treated merely by showing that a gender-conforming, non-transgender male was selected instead of her for the Terrorism Analyst position. Rather, the proper inquiry is whether Plaintiff was treated disparately because of her "status" as a woman when presenting herself as female. The fact that Plaintiff may have been (correctly) perceived "as a man in woman's clothing" or lacking credibility before Members of Congress or her former colleagues in the military emanate not from the fact that she was a "woman" but from her transsexuality. Simply stated, the only argument that Plaintiff asserts is that she was discriminated against because she belongs to a "subclass" of women who are transsexual, not because of her status as a woman. Consequently, Plaintiff cannot assert a cause of action under Title VII.

## **CONCLUSION**

For the reasons stated herein, the Library respectfully requests that the Court grant its Motion for Summary Judgment and dismiss Plaintiff's Amended Complaint in its entirety and with prejudice.

July 2, 2008                             Respectfully submitted,


_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

/s/_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

/s/_____
BEVERLY M. RUSSELL, D.C. Bar #454257
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia,
Civil Division
555 4th Street, N.W., Rm. E-4915
Washington, D.C.  20530
Ph:  (202) 307-0492
Fax: (202) 514-8780
E-mail: beverly.russell@usdoj.gov

/s/_____
JULIA K. DOUDS
Special Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia,
Civil Division
555 4th Street, N.W.
Washington, D.C.  20530
Ph:  (202) 514-5134
Fax: (202) 514-8780
E-mail: jdou@loc.gov

Of Counsel:

Evelio Rubiella,
Associate General Counsel