UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DIANE J. SCHROER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-1090 (JR) |
| ) | |
| JAMES BILLINGTON, ) | |
| In his official capacity ) | |
| as Librarian of Congress, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S PRETRIAL STATEMENT**

1. **Parties and Counsel**

The Defendant, James H. Billington, Librarian of Congress, Library of Congress is represented by Assistant United States Attorney Beverly Russell, Special Assistant United States Attorney Julia Douds, and Special Assistant United States Attorney Evelio Rubiella, 501 Third Street, N.W., Washington, D.C. 20530.

2. **Defendant's Statement of the Case and Defenses**

Plaintiff filed an EEO complaint against the Library on December 22, 2004, regarding her non-selection for the Specialist on Terrorism and International Crime, GS-15, position ("Terrorism Specialist position") in the Congressional Research Service, ("CRS") at the Library of Congress. In her pretrial statement filed on July 25, 2008, Plaintiff alleges that the "Library's decision [not to hire her] was based on sex stereotypes and on [Plaintiff's] gender identity, both of which are forms of discrimination because of sex." Pl.'s Pretrial Statement, at 2. Neither establishes a claim of discrimination under Title VII. Accordingly, Defendant intends to renew his Motion for Summary Judgment [R. 48 and R. 53] at the pretrial conference because, based on

the claims as presented by Plaintiff in her pretrial statement, Defendant is entitled to judgment as a matter of law.

The Supreme Court in Price Waterhouse v. Hopkins did not hold that a party may bring a claim under Title VII based on "sex stereotyping," only that evidence of such might support a gender discrimination claim. The Supreme Court stated: "we are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group, for '[i]n forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." Price Waterhouse v. Hopkins, 490 U.S. 228, 251 (1989)(emphasis added)(quoting Los Angeles Dept. of Water and Power v. Manhardt, 435 U.S. 702, 707 n. 13(1978)); see also Schroer v. Billington, 424 F.Supp.2d 203, 208 (D.D.C. 2006)("Neither the logic nor the language of *Price Waterhouse* establishes a cause of action for sex discrimination in every case of sex stereotyping. . .What the Supreme Court recognized is a Title VII action for disparate treatment based on sex stereotyping. Sex stereotyping that does not produce disparate treatment does not violate Title VII."); Etsitty v. Utah Transit Authority, No. 2:04CV616 DS, 2005 WL 1505610 (D.Utah 2005), aff'd, 502 F.3d 1215 (10th Cir. 2007)("There is a huge difference between a woman who does not behave as femininely as her employer thinks she should, and a man who is attempting to change his sex and appearance to be a woman. Such drastic action cannot be fairly characterized as a mere failure to conform to stereotypes."). Thus, "sex stereotyping" is not actionable, but it may provide evidence or proof of discrimination – disparate treatment – based on gender. Ann Hopkins did not bring a "sex stereotyping" claim but one based on gender discrimination. She demonstrated that a different standard applied to

women and men – penalizing the former for being aggressive while rewarding the latter for the very same characteristic.  It was this "intolerable and impermissible catch 22[,]" i.e., the disparate treatment, which was unlawful.  Price Waterhouse, 490 U.S. at 251.  Thus, Plaintiff's claim of "sex stereotyping" or gender non-conformity fails to state a claim, and should be dismissed as a matter of law.

Plaintiff's claim based on "gender identity" fails to state a claim as well and should also be dismissed as a matter of law.  Schroer v. Billington, 525 F.Supp.2d 58, 63 (D.D.C. 2007)(". . .a Price Waterhouse-type claim could not be supported by facts showing that Schroer's non-selection resulted *solely* from her disclosure of her gender dysphoria and her intention to present herself as a woman.")(emphasis in original).

If the Court allows this case to move forward despite Defendant's arguments that Plaintiff has not presented (and cannot present) an actionable gender discrimination claim, Defendant has articulated legitimate, non-discriminatory reasons for its decision.  Specifically, based on her discussion with Cynthia Wilkins, the Library's Personnel Security Officer, and upon further reflection of Plaintiff's revelation, Ms. Preece decided that she would not recommend Plaintiff for the Specialist in Terrorism position.  Specifically, Ms. Preece declined to recommend Plaintiff because she (Ms. Preece) believed that Plaintiff, considering her transsexual status and transition from male to female, would be required to undergo a lengthy background investigation process to acquire a security clearance.  Ms. Preece was eager for the selectee to start at the beginning of the new Congress (i.e., the end of January 2005) because, the sudden departure of Audrey Cronin, who occupied the position from 2003-July 2004, left a void in the CRS' ability to assist Congress in the area of terrorism.  Therefore, Ms. Preece believed that the amount of

time it may have taken to process Plaintiff's security clearance was incompatible with the needs of the CRS at the time. Ms. Preece was additionally concerned that because of Plaintiff's transition from male to female, Plaintiff might be unable to maintain the high-level contacts in the military intelligence community she had developed in the past, and such contacts was one of the required Knowledge, Skills and Abilities for the position. Ms. Preece was also concerned that Plaintiff might not be viewed as credible by Members of Congress given Plaintiff's transsexuality. Further, Ms. Preece was concerned that the transitioning process would divert Plaintiff's attention away from the mission of the CRS. Finally, Ms. Preece was concerned about Plaintiff's future trustworthiness, since after appearing at the interview--and in all subsequent contacts including their December 20, 2004, meeting–Plaintiff presented herself as a male when Plaintiff had every intention of starting work as a female.

    **3.**    **Defendant's Witness List**

        1.    Charlotte Preece,
                 Assistant Director, Foreign Affairs, Defense and Trade Division
                 Congressional Research Service
                 The Library of Congress
                 101 Independence Avenue, S.E.
                 Washington, DC 20540

Ms. Preece will testify about the history of the Terrorism Specialist position, the interview/selection process for filling the Terrorism Specialist position that was advertised in August 2004 and her reasons for selecting John Rollins for the Terrorism Specialist position. Ms. Preece will also testify about her hiring practice as the Assistant Director, Foreign Affairs, Defense and Trade Division. Her testimony is expected to last 2 hours.

    2.    Daniel Mulhollan
          Director, Congressional Research Service
          The Library of Congress
          101 Independence Avenue, S.E.
          Washington, DC 20540

Mr. Mulhollan will testify about the role of the Congressional Research Service, history of the Terrorism Specialist position, his knowledge of Ms. Preece as a supervisor, and his involvement with the selection for the Terrorism Specialist position that was advertised in August 2004. His testimony is expected to last 1 hour.

    3.    Francis Miko
          Former employee of the Congressional Research Service,
          Library of Congress
          464 Laurel Valley Court
          Arnold, Md. 21012

Mr. Miko will testify about his involvement with the selection for the Terrorism Specialist position that was advertised in 2004 and his knowledge of Ms. Preece as a supervisor. His testimony is expected to last 1 hour.

    4.    Steve Bowman
          Former employee of the Congressional Research Service
          Library of Congress
          801 15th St. S Apt 1001
          Arlington, VA  22202

Mr. Bowman will testify about his involvement with the selection for the Terrorism Specialist position that was advertised in 2004 and his knowledge of Ms. Preece as a supervisor. His testimony is expected to last 1 hour.

    5.  Cynthia Wilkins
       Personnel Security Officer
       Office of Security and Emergency Preparedness
       Library of Congress
       101 Independence Avenue, S.E.
       Washington, D.C. 20540

Ms. Wilkins will testify about her role as the Personnel Security Officer at the Library, her understanding of the rules and regulations that govern the investigation and adjudication of security clearances, and her conversations with Ms. Preece and CRS Management regarding the Terrorism Specialist Position that was advertised in 2004. Ms. Wilkins may also testify about the expert reports of Peter Nelson, Plaintiff's witness. Her testimony is expected to last 1.5 hours.

    6.  Camilla Braxton
       Security Officer
       Benchmark International
       1421 Jefferson Davis Highway, Suite 50
       Arlington, VA 22202

Ms. Braxton will testify about her knowledge of Plaintiff's Gender Identity Disorder, when she learned about Plaintiff's Gender Identity Disorder, how she learned about Plaintiff's Gender Identity Disorder and the actions she took upon learning of Plaintiff's Gender Identity Disorder. Her testimony is expected to last .5 hours.

    7.  Chester Schmidt, M.D.*
       Johns Hopkins Healthcare
       6701 Suite A Curtis Court
       Glen Burnie, MD 21060

Dr. Schmidt will testify as an expert witness about the meaning of the term "sex;" Gender Identity Disorder; and the fact that the cause of Gender Identity Disorder has not been determined. Dr. Schmidt will also testify about the difference between intersex conditions and

Gender Identity Disorder. Dr. Schmidt will also provide interpretations of any reports/studies/publications relied upon by Walter Bockting, Ph.D., during his testimony and/or any representations made by Dr. Bockting during his testimony. His testimony is expected to last 1 hour.

        8.      Audrey Cronin
                National War College
                Fort Leslie Jackson McNair
                Washington, D.C. 20319-5066

Ms. Cronin will testify about her experience working in the Terrorism specialist position and her knowledge of Ms. Preece as a supervisor. Her testimony is expected to last .5 hours.

**4.**     **Defendant's Exhibit List**

    1.    Memorandum Regarding the Selection of Audrey Kurth Cronin

    2.    Sixth Month Qualifying Period for Audrey Cronin dated October 3, 2003

    3.    Performance Rating and Within-Grade Certification for Audrey Cronin dated July 14, 2004

    4.    Letter dated July 12, 2004, from Audrey Cronin to Charlotte Preece

    5.    Vacancy Announcement No. 040196, Specialist in Terrorism and International Crime Position

    6.    Application of John Rollins dated September 9, 2004

    7.    Application of David Schroer dated August 16, 2004

    8.    Initial Referral List dated September 17, 2004

    9.    Final Interview Rating Form for David Schroer

    10.    Final Interview Rating Form for John Rollins

    11.    Final Referral List Signed by Charlotte Preece December 29, 2004

12. Justification for Selecting John Rollins

13. Executive Order 12968

14. Adjudicative Guidelines for Determining Eligibility for Access to Classified Information

15. Supplemental Guideline - Sexual Behavior

16. Supplemental Guideline - Emotional, Mental, Personality Disorder

17. Expert Report of Dr. Chester W. Schmidt dated November 20, 2006

18. Curriculum Vitae of Dr. Chester W. Schmidt

19. DJ Schroer "Notice of Intent to Protest Federal Hiring Action" with enclosures dated December 22, 2004

20. DJ Schroer "Notice of Intend to Protest Federal Hiring Action" with enclosures dated January 20, 2005

21. Department of Defense Regulation 5220.6

22. Library Organizational Chart

23. Plaintiff's Interrogatory Responses

24. Any exhibit introduced by Plaintiff

5. **Deposition Testimony**

Defendant reserves the right to use deposition testimony for impeachment purposes.

6. **Pending Motions**

There are no pending motions at this time. However, Defendant believes that there are potentially dispositive legal issues raised in his motion for summary judgment and reply that should be addressed prior to trial so that the parameters of the trial – specifically what material factual issues are in dispute – are established in advance. As noted above, Defendant intends to

renew his dispositive motion at the pretrial conference, and request oral argument on the issues raised therein. Specifically, Defendant continues to maintain that transsexuals are not a protected class under Title VII. Defendant also maintains that a transsexual, like Plaintiff, cannot state a cause of action under Title VII by asserting that one's transsexuality is synonymous with a failure to conform to sex stereotypes. Defendant further maintains that the theory of sex stereotyping first enunciated in <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989), and which Plaintiff asserts is tantamount to sex discrimination, was meant to apply only <u>as evidence</u> of disparate treatment—that is, to expose employer conduct that imposes a burden on one sex that the employer does not impose on the opposite sex. However, Defendant contends that Title VII creates no protection for someone "presenting" in a manner contrary to generally accepted cultural norms of dress or conduct for one's biological sex, otherwise referred to as "gender non-conforming behavior," in the absence of disparate treatment for members of the opposite sex. All of the foregoing are issues of law which should be addressed prior to trial so that the parties may direct their trial presentations to those issues of fact that the Court deems material to the Court's ultimate resolution of this case.

    **7.**    **Trial Brief**

Plaintiff has presented her claim as one based on "sex stereotyping" and gender identity. Pl.'s Pretrial Statement, at 2. Defendant respectfully submits that the Court, as a threshold matter, should determine whether either or both are covered by Title VII. Thus, Defendant will renew its Motion for Summary Judgment at the pretrial conference and requests an oral argument on these issues.

**8.     Motions in Limine**

Plaintiff has presented her claim as one based on "sex stereotyping" and gender identity. Pl.'s Pretrial Statement, at 2. The claim should be dismissed as a matter of law. If this case nevertheless proceeds to trial, Defendant intends to move in limine at the pretrial conference requesting clarification with respect to which "sex stereotype" Plaintiff refers. Specifically, Defendant seeks clarification on whether Plaintiff alleges that she was discriminated against because she is a "man" or because she is a "woman."

Defendant also intends to move in limine to strike the testimony of Walter Bockting. Plaintiff identifies Dr. Bockting, a psychologist, as an expert witness designated to provide testimony that "[g]ender identity is a part of a person's sex." Pl.'s Pretrial Statement, at 3. The Court in its prediscovery memorandum opinion requested that the parties develop a factual record on the "<u>scientific</u> basis of sexual identity in general, and gender dysphoria in particular." <u>Schroer v. Billington</u>, 424 F.Supp.2d 203, 213 (D.D.C. 2006)(emphasis added). Dr. Bockting does not have the necessary qualifications or specialization (e.g., neurology, endocrinology, gynecology, psychiatry or other medical background) to provide expert testimony on whether gender identity is part of a person's sex, nor does Plaintiff identify any scientific evidence that will be used to support Dr. Bockting's testimony in this regard. Besides this, the Court has already stated that Plaintiff's "definition of sex under Title VII may be too expansive[,]" <u>Schroer</u>, 525 F.Supp.2d at 63, and Dr. Bockting's testimony is additionally problematic given recent legislative efforts affirmatively deleting transsexuals from coverage of proposed bills that would otherwise protect homosexuals from employment discrimination. <u>Id.</u>

**9.     Depositions**

Defendant reserves the right to offer into evidence deposition transcripts for purposes of impeachment and to refresh recollection.  Defendant objects to Plaintiff's introduction of depositions, or portions thereof, to the extent inconsistent with Rule 804, or any other rule, of the Federal Rules of Evidence.

**10.    Demonstrative Evidence**

None.

**11.    Estimated Length of Trial**

5 days.

July 28, 2008

Respectfully submitted,

/s/ Jeffrey A. Taylor /dvh
_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

/s/ Rudolph Contreras /dvh
_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

/s/ Beverly M. Russell
_____
BEVERLY M. RUSSELL, D.C. Bar #454257
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia,
 Civil Division
555 4th Street, N.W., Rm. E-4915
Washington, D.C.  20530
Ph:  (202) 307-0492
Fax: (202) 514-8780
E-mail: beverly.russell@usdoj.gov

/s/ Evelio Rubiella, Julia K. Douds /bmr
_____
EVELIO RUBIELLA
JULIA K. DOUDS
Special Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia,
 Civil Division
555 4th Street, N.W.
Washington, D.C.  20530
Ph:  (202) 707-7198
Fax: (202) 514-8780
E-mails: jdou@loc.gov
         erub@loc.gov