IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
                                            )
DIANE J. SCHROER,                           )
                                            )
            Plaintiff,                      )
                                            )    No. 05-cv-1090 (JR)
      v.                                    )
                                            )
JAMES H. BILLINGTON,                        )
   Librarian of Congress,                   )
                                            )
            Defendant.                      )
_____)

**PLAINTIFF'S MOTION IN LIMINE TO
EXCLUDE TESTIMONY OF CARMELA BRAXTON**

Pursuant to Local Rule 16.5 and Fed. R. Civ. P. 37(c)(1), Plaintiff moves in limine to exclude the testimony of Ms. Carmela Braxton, who was identified for the first time in Defendant's Pretrial Statement.[1]

In Plaintiff's Third Set of Interrogatories No. 8, served on October 12, 2006, Plaintiff specifically asked Defendant to "[i]dentify any person(s) (not identified in a previous response to an interrogatory) known or believed by Defendant to have discoverable information that Defendant may use to support its claims or defenses, and the subjects of that information." See McGowan Decl. Exh. A (Plaintiff's Interrogatory No. 8). On November 22, 2006, Defendant responded to that interrogatory by representing that "[t]here are no additional persons to identify outside of those named in Defendant's responses to Plaintiff's previous interrogatories." See McGowan Decl. Exh. B. In none of Defendant's prior discovery responses, nor in any response or

---

[1] Defendant identified the witness as "Camilla Braxton," but Plaintiff's understanding from the website of Benchmark International is that Ms. Braxton's first name is Carmela.

supplemental response from Defendant between the date of November 22, 2006, and the close of discovery in April 2008, did Defendant ever identify Ms. Braxton as an individual with knowledge relevant to Defendant's case.

In its Pretrial Statement, Defendant now indicates that it intends to call Ms. Braxton, who is identified as the Security Officer at Benchmark International ("Benchmark"), Plaintiff's prior employer.  Defendant indicates that Ms. Braxton will be called to testify about "her knowledge of Plaintiff's Gender Identity Disorder, when she learned about Plaintiff's Gender Identity Disorder, how she learned about Plaintiff's Gender Identity Disorder and the actions she took upon learning of Plaintiff's Gender Identity Disorder."  Rec. Doc. 59 at 6.

Pursuant to the Local Rules, a party may object to a witness identified for the first time in an opposing party's pretrial statement if "the party objecting has unsuccessfully sought to learn the identity of the witness or the substance of the testimony by discovery, and the court or magistrate judge finds the information to have been wrongfully withheld."  Local Rule 16.5(b)(5).  Likewise, Rule 37(c)(1) provides that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."[2]

Plaintiff sought to learn the identity of any witnesses upon whom Defendant intended to rely as part of its case, and specifically asked for the subject of any testimony that would be offered by such witnesses.  Plaintiff will be substantially prejudiced if Defendant is permitted to offer testimony from a witness whom Defendant failed to

---

[2] Although the parties waived the initial disclosures discussed in Rule 26(a), Rule 26(e) refers to the ongoing obligation of a party to supplement its responses to any request for discovery from opposing counsel.

disclose notwithstanding Plaintiff's explicit discovery request seeking such information. Accordingly, any testimony from this witness should be excluded.

Prior to filing this motion, as part of Plaintiff's meet and confer discussions with Defendant, Defendant indicated that it believed that it had not improperly failed to disclose this witness because it was Plaintiff who had introduced Ms. Braxton into the controversy through Plaintiff's responses to Defendant's third set of discovery requests, where Plaintiff indicated that she disclosed information about her gender transition to a security officer at Benchmark.[3]  In a phone call with Defendant on Friday, August 1, 2008, Plaintiff clarified that she had not been referring to Ms. Braxton, but rather to a principal of Benchmark whom Plaintiff understood to be the person responsible for the personnel security matters of the company at that time.

Notwithstanding this clarification from Plaintiff, Defendant informed Plaintiff on August 4, 2008, that Defendant nevertheless intends to call Ms. Braxton.  Plaintiff asked Defendant to clarify what information Ms. Braxton would be testifying about beyond the undisputed fact that Plaintiff did not inform Ms. Braxton about her gender transition.  In its response, sent to Plaintiff today, Defendant stated that it intends to call Ms. Braxton to testify (1) about her actions once she learned that Plaintiff was transgender, (2) about her knowledge of how Plaintiff's recent security clearance was adjudicated, and (3) about the fact that Ms. Braxton had no knowledge of Plaintiff's transsexuality until after Plaintiff left Benchmark.  With respect to the relevance of this information, Defendant stated that

---

[3] On March 11, 2008, less than thirty days before the close of discovery, Defendant asked Plaintiff to extend the discovery period by three days so that Defendant could serve Plaintiff with a third set of discovery requests.  Plaintiff agreed to Defendant's request.  The discovery that Defendant served focused on Plaintiff's security clearance investigation history, and specifically asked what, when and to whom Ms. Schroer had disclosed information about her gender transition.  In her responses, Plaintiff indicated that she disclosed that she was transgender, that she was seeing a mental health therapist for her gender dysphoria, and that she was planning to undertake a gender transition to a security officer at Benchmark in early 2004, and provided some additional detail beyond the specific facts sought by Defendant's requests.

3

it believes this testimony is "probative as it relates to the Library's reasons for the decision not to select Schroer for the position." See McGowan Decl. Exh. C.

Defendant's attempt to create a controversy on the eve of trial over whether Plaintiff disclosed or should have disclosed her gender transition to Ms. Braxton is highly prejudicial. Months prior to the close of discovery, Plaintiff attempted to ascertain whether Defendant intended to dispute whether Plaintiff held a valid Top Secret-Sensitive Compartmentalized Information (TS-SCI) ready security clearance either at the time of her application or at any time thereafter, which would have included any subsidiary questions regarding whether Plaintiff's gender transition had created any issues with respect to the ongoing validity of her security clearance. See, e.g., McGowan Decl. Exh. D (Plaintiff's Interrogatory Nos. 29 & 31). Defendant, however, refused to answer Plaintiff's interrogatories related to this subject. See McGowan Decl. Exh. E (Defendant's letter in response, dated February 8, 2008). At no point did Defendant indicate to Plaintiff that Defendant intended to contest whether Plaintiff had properly reported information to her prior employer, Benchmark International.

Defendant's apparent attempt to create a dispute about this collateral issue at the eleventh hour would significantly prejudice Plaintiff because Plaintiff would be unable to rebut fully any inference by Defendant that Plaintiff's actions were insufficient. Moreover, the prejudice to Plaintiff could not be fully remedied simply by offering Plaintiff the opportunity to depose Ms. Braxton at this very late date. Rather, a set of collateral issues regarding the details of the operations of Benchmark International at the time of Plaintiff's disclosure of her gender identity to her former employer would require Plaintiff's attention. Plaintiff would attempt to address some of these issues through her

4

testimony.  Specifically, Plaintiff would testify that Ms. Braxton did not handle any of Plaintiff's security clearance matters when she first joined Benchmark after her retirement from the U.S. Army; rather, a principal of the company handled those issues.  Plaintiff would also testify that her understanding was that Ms. Braxton was hired as a part-time contractor sometime after Plaintiff began at Benchmark, but that at the time of her disclosure, all personnel security matters were handled by the principals of the company, which was why Plaintiff disclosed information about her gender transition to them.  Indeed, Plaintiff would testify that, at the time of her meeting with her former employer to discuss her gender identity and transition, Plaintiff was not aware of any professional relationship between Ms. Braxton and Benchmark, nor did anyone at Benchmark direct Plaintiff to Ms. Braxton at that time.

Plaintiff would not, however, have the opportunity at this late date to develop the kind of evidence that would be critical to bolstering her testimony to the extent that it is called into question by Ms. Braxton.  Had Defendant timely disclosed the identity of Ms. Braxton and its intent to challenge the propriety of Plaintiff's disclosure of her gender identity to her former employer, Plaintiff would have developed additional evidence to demonstrate that she was correct in terms of the person to whom she needed to report this information, and that, even if there was someone else to whom she should have reported information regarding her gender transition, her actions were based on a good faith and well-founded belief regarding the person at Benchmark to whom she needed to report this information.  For example, Plaintiff would have subpoenaed documents from Benchmark to clarify the relevant dates of Ms. Braxton's employment (both full- and part-time), as well as her official titles and actual job responsibilities during the relevant period of time.

5

If necessary, Plaintiff would have deposed the principals of Benchmark to the extent that the documents from Benchmark were unclear or did not reflect the actual operation of Benchmark at the time that Plaintiff disclosed her gender identity to her former employer. Plaintiff would have also named other witnesses in her Pretrial Statement who could have supported her testimony regarding the operation of Benchmark International during the relevant period of time. Defendant's announcement of its intention to call Ms. Braxton potentially creates a whole series of collateral issues that Plaintiff would wish to, but will be unable to, address at this point, less than two weeks from trial.

With respect to any issue regarding how Plaintiff's recent security clearance was adjudicated, Defendant refused to respond to Plaintiff's discovery requests designed to ascertain whether this would, in fact, be an issue in this case, and Defendant is only now, for the first time, informing Plaintiff that it intends to present evidence on this issue. Had Plaintiff known that Defendant intended to contest this issue, she would have identified witnesses (e.g., her current and recent security officers) and developed other evidence regarding these matters. To allow Defendant to offer testimony on this issue from a previously undisclosed witness would be highly prejudicial to Plaintiff.

For these reasons, Plaintiff moves to exclude any testimony from Ms. Braxton, and requests any and all additional relief contemplated by Federal Rule of Civil Procedure Rule 37(c)(1) that the Court deems appropriate.

In the alternative, should the Court be inclined to allow Defendant to call Ms. Braxton, Plaintiff would then request that the Court allow Plaintiff (1) to depose Ms. Braxton and at least one additional witness associated with Benchmark International during the relevant period of time prior to trial; (2) to identify additional witnesses whom

Plaintiff may call at trial on this issue; and (3) to issue a subpoena, with a Court-authorized return date of three business days, to Benchmark International for all documents regarding the handling of personnel security functions during the period between October 1, 2003, and December 21, 2004.

Respectfully submitted,

/s/ Sharon M. McGowan
Sharon M. McGowan  (D.C. Bar No. 476417)

Arthur B. Spitzer
 (D.C. Bar No. 235960)
American Civil Liberties Union
 of the National Capital Area
1400 20th Street, N.W., #119
Washington, D.C. 20036
(202) 457-0800

Kenneth Y. Choe
James D. Esseks
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004
(212) 549-2627

Date:  August 5, 2008

*Counsel for Plaintiff*

7