IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DIANE J. SCHROER, | ) | |
| Plaintiff, | ) | |
| | ) | No. 05-cv-1090 (JR) |
| v. | ) | |
| JAMES H. BILLINGTON, | ) | |
| Librarian of Congress, | ) | |
| Defendant. | ) | |

## DECLARATION OF SHARON M. McGOWAN

Pursuant to 28 U.S.C. § 1746, I, Sharon M. McGowan, declare as follows:

1.    I am a Staff Attorney at the ACLU's Lesbian Gay Bisexual Transgender Rights Project, and I am counsel for Plaintiff in this case.

2.    Attached as Exhibit A to this declaration is a true and correct copy of excerpts from the deposition of Charlotte Preece, taken in this action on January 11, 2007.

3.    Attached as Exhibit B to this declaration is a true and correct copy of excerpts from the deposition of Francis Miko, taken in this action on March 14, 2008.

4.    Attached as Exhibit C to this declaration is a true and correct copy of excerpts from the deposition of Steven Bowman, taken in this action on March 14, 2008.

5.    Attached as Exhibit D to this declaration is a true and correct copy of excerpts from the deposition of Gary Pagliano, taken in this action on March 13, 2008.

6.    Attached as Exhibit E to this declaration is a true and correct copy of excerpts from the deposition of Daniel Mulhollan, taken in this action on March 13, 2008.

7.    Attached as Exhibit F to this declaration is a true and correct copy of excerpts from the deposition of Bessie Alkisswani, taken in this action on January 8, 2007.

8.    Attached as Exhibit G to this declaration is a true and correct copy of excerpts from the deposition of Kathryn Deese, taken in this action on March 7, 2008.

9.    On this date, a copy of these deposition excerpts, with the designated passages highlighted, was sent to the Court and to opposing counsel.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 28, 2008

Sharon M. McGowan

# Exhibit A –

# Charlotte Preece Deposition Designations

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - x
DIANE J. SCHROER,               :
                                :
        Plaintiff,              :
                                :
            v.                  :   CA No. 06-763
                                :
JAMES H. BILLINGTON,            :
                                :
        Defendant.              :
- - - - - - - - - - - - - - - x

                    Washington, D.C.

                    Thursday, January 11, 2007


        Deposition of CHARLOTTE P. PREECE, called

for examination by counsel for Plaintiff, pursuant

to notice, at the Law Offices of 1875 Pennsylvania

Avenue, N.W., Washington, D.C., and commencing at

9:10 a.m., before Barbara a. Huber, Notary Public in

and for the District of Columbia, when were present

on behalf of the respective parties:

Charlotte P. Preece                                    January 11, 2007
                        Washington, DC

<table>
<tr><td>

Page 2

1   APPEARANCES:
2     On behalf of Plaintiff:
3       SHARON M. McGOWAN, ESQUIRE
        JAMES D. ESSEKS, ESQUIRE
4       American Civil Liberties Union Foundation
        125 Broad Street
5       18th Floor
        New York, New York 10004-2400
6       (212) 549-2593
        smcgowan@aclu.org
7
      On behalf of Defendant:
8
        BEVERLY M. RUSSELL, ESQUIRE
9       U.S. Department of Justice
        Judiciary Center Building
10      555 4th Street, N.W.
        Washington, D.C. 20001
11      (202) 307-0492
        beverly.russell@usdoj.gov
12
      Also Present:
13
        Jessie James, Jr.
14      Julia Douds
15
16
17              * * * * *
18
19
20

</td><td>

Page 4

1         P R O C E E D I N G S
2   Whereupon,
3         CHARLOTTE P. PREECE,
4   was called as a witness by counsel for Plaintiff,
5   and having been duly sworn, by the Notary Public,
6   was examined and testified as follows:
7       EXAMINATION BY COUNSEL FOR PLAINTIFF
8   BY MS. McGOWAN:
9     Q   Good morning, Ms. Preece.  My name is
10  Sharon McGowan.  And I'm here with my colleague,
11  James Esseks.  And we represent the Plaintiff in
12  Schroer versus Billington.  And we're here this
13  morning to take your deposition.
14      Have you ever been deposed before?
15    A   No.
16    Q   Okay.  So I'm just going to go through a
17  series of instructions and tips so that you
18  understand how things are going to proceed today,
19  and that the court reporter can take everything
20  down.  I will ask you a series of questions that
21  you will answer under oath, as you've just been
22  sworn.  And the court reporter will take it all

</td></tr>
<tr><td>

Page 3

1              C O N T E N T S
2   EXAMINATION BY:                    PAGE
3     Counsel for Plaintiff        4
4     Counsel for Defendant        314
5
6
7
8   DEPOSITION EXHIBITS:              PAGE
9   No. 19 - Vacancy Announcement          77
10  No. 20 - Crediting Plan Questionnaire  77
11  No. 21 - E-Mail, September 16, 2004    90
12  No. 22 - Listing of Scores for Candidates  90
13  No. 23 - Memo, September 17, 2004; Attachment  95
14  No. 24 - E-Mail, September 28, 2004    95
15  No. 25 - E-Mail, December 7, 2004      103
16  No. 26 - E-Mail, December 8, 2004      112
17  No. 27 - Beginning of a Recommendation  127
18  No. 28 - Letter, January 20, 2005; Attachments  286
19  No. 29 - Memo, January 24, 2005        292
20  No. 30 - Letter, March 7, 2005       306
    No. 31 - E-Mail, March 23, 2005      306
22

</td><td>

Page 5

1   down.  Okay?
2     A   Okay.
3     Q   And it's important that you answer out
4   loud, because the court reporter cannot record a
5   nod of the head or a gesture.  Okay?
6     A   I understand.
7     Q   The court reporter also cannot -- or
8   it's difficult for her to record when two people
9   are talking at the same time.  And so I will
10  certainly try not to interrupt you.  And at the
11  same time, it's important for me to get the
12  question out so that the court reporter can have a
13  clear transcript.  Okay?
14    A   Okay.
15    Q   Okay.  And if you don't understand a
16  question, will you ask me to repeat it and to
17  clarify?
18    A   Yes.
19    Q   Okay.  And if you do answer a question,
20  I will assume that you understood it.  Okay?
21    A   Yes.
22    Q   I will take breaks throughout the day.

</td></tr>
</table>

2 (Pages 2 to 5)

Charlotte P. Preece                                          January 11, 2007
                        Washington, DC

1    actually had a medical term?

2        A    I did not.

3        Q    Did you think of it more as a lifestyle

4    concern at that point?

5        A    Probably, yes, to the extent I thought

6    about it.

7        Q    Okay.  So that evening after leaving

8    work, other than your sons, did you speak with

9    anyone else about this situation with Ms. Schroer?

10       A    I can't remember.

11       Q    Okay.  I'm going to turn now to the next

12   day.

13       A    Okay.

14       Q    Describe what happened the next day

15   with -- which is we're talking now about December

16   21st, 2004 -- with respect to any conversations or

17   meetings that you had about Ms. Schroer.

18       A    Okay.  The previous day, I believe late

19   in the day before I went home, I got an e-mail

20   from Kent Ronhovde asking if I was available to

21   meet at 9:00 o'clock the following day with

22   Cynthia and Bessie Alkisswani.

Charlotte P. Preece                                          January 11, 2007
                          Washington, DC

1       Q     Okay.   Anything else?

2       A     At the meeting was also Bessie's deputy,

3   Kathy Deese, and Kent.

4       Q     Up until this point, had you had any

5   interaction with Ms. Alkisswani?

6       A     Professionally?

7       Q     About the Schroer situation?

8       A     No.

9       Q     And did it strike you as unusual that

10  she had been asked to attend the meeting?

11      A     No.  She's the head of our workforce

12  development.  She's ultimately responsible for

13  postings.

14      Q     Did you have any conversation with

15  Mr. Ronhovde before the meeting about what

16  Ms. Alkisswani knew or might need to know in

17  advance of the meeting?

18      A     No.

19      Q     And so did the meeting take place at

20  9:00 a.m.?

21      A     Yes, it did.

22      Q     So I have the lineup of the meeting as

Charlotte P. Preece                                    January 11, 2007
                    Washington, DC

1    joined the meeting, did anyone make reference to

2    the transgender employee that Ms. Deese had

3    discussed?

4          A    Not that I recall.

5          Q    And did anyone else mention sort of any

6    knowledge that they had about transsexuality or

7    transgender people?

8          A    No.

9          Q    Did you mention at the meeting

10   describing the situation that Ms. Schroer had

11   shown you pictures of her dressed as a woman?

12         A    Yes.

13         Q    And did anyone ask what those pictures

14   looked like?

15         A    They may have.

16         Q    Do you remember how people asked?

17         A    No, I don't.

18         Q    Did anyone ask whether or not she

19   actually looked like a woman, in your opinion, in

20   those pictures?

21         A    Again, they may have but, I have no --

22         Q    Did anyone express any concern about

# Exhibit B –

# Francis Miko Deposition Designations

Francis T. Miko                                     March 14, 2008
                        Washington, DC

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

--------------------------------X

DIANE J. SCHROER,                    :

        Plaintiff,                   :

    v.                               :  No. 05-CV-01090 (JR)

JAMES H. BILLINGTON,                 :

        Defendant.                   :

--------------------------------X

                        Washington, D.C.

                        Friday, March 14, 2008

        Deposition of FRANCIS T. MIKO, a witness herein,

called for examination by counsel for Plaintiff in the

above-entitled matter, pursuant to notice, the witness being

duly sworn by DENNIS A. DINKEL, a Notary Public in and for

the District of Columbia, taken at the offices of

WilmerHale, LLP, 1825 Pennsylvania Avenue, N.W., Washington,

D.C. at 9:28 a.m., Friday, March 14, 2008, and the

proceedings being taken down by Stenotype by DENNIS A.

DINKEL, FAPR, CRR, and transcribed under his direction.

Francis T. Miko                                      March 14, 2008
                        Washington, DC

---

**Page 2**

APPEARANCES:

On behalf of the Plaintiff:
    SHARON M. McGOWAN, ESQ.
    KEN CHOE, ESQ.
    American Civil Liberties Union
    125 Broad Street
    New York, NY 10004
    Phone: 212-549-2593

On behalf of the Defendant:
    BEVERLY M. RUSSELL, ESQ.
    United States Attorney's Office for the
       District of Columbia
    555 4th Street, N.W.
    Washington, DC 20530
    Phone: 202-307-0492
       and

---

**Page 3**

APPEARANCES (Continued):

On behalf of the Defendant (continued):
    JULIA K. DOUDS, ESQ.
    EVELIO RUBIELLA, ESQ.
    Assistant General Counsel
    Library of Congress
    101 Independence Avenue, S.E.
    Washington, DC 20540-1050
    Phone: 202-707-7198

---

**Page 4**

CONTENTS

WITNESS                                  PAGE
  FRANCIS T. MIKO

EXAMINATION BY COUNSEL FOR PLAINTIFF          5

EXHIBITS

| EXHIBIT NO. | DESCRIPTION | PAGE |
|---|---|---|
| 47 | Bates 3 through 35 | 49 |
| 48 | Bates 153 and 154 | 52 |
| 49 | Bates PO 540 through PO 571 | 60 |
| 50 | Bates PO 616 and 617 | 63 |
| 51 | Bates 119 | 67 |
| 52 | Bates 118 | 69 |
| 53 | Bates 149 | 70 |
| 54 | Bates PO 697 | 72 |
| 55 | Bates PO 696 | 74 |

---

**Page 5**

PROCEEDINGS

Whereupon,
      FRANCIS T. MIKO,
was called as a witness by counsel for Plaintiff, and
having been duly sworn by the Notary Public, was
examined and testified as follows:
    EXAMINATION BY COUNSEL FOR PLAINTIFF
BY MS. McGOWAN:
    Q.   Good morning, Mr. Miko.
    A.   Good morning.
    Q.   I am Sharon McGowan. I am here with my
colleague Ken Choe, and we represent the plaintiff in
Schroer versus Billington. I am here this morning to
take your deposition.
    I am going to ask you a series of
questions that you will answer under oath as you have
just been sworn and the court reporter will take it
all down. Okay?
    It is important for you to answer out loud
as the court reporter cannot record gestures or other
inaudibles; okay?
    A.   Yes.

---

2 (Pages 2 to 5)

1    not the best choice.

2    BY MS. McGOWAN:

3        Q.    In your conversations with Ms. Preece, did

4    she ever say that -- you know -- she had wanted to go

5    forward with Ms. Schroer?  Notwithstanding this

6    revelation?

7        A.    No.

8        Q.    Did she express any sentiment along those

9    lines of wanting to figure out how to make it work,

10   so to speak, with Ms. Schroer?

11           MS. RUSSELL:  Objection to the form.

12           THE WITNESS:  My sense was she had

13   sympathy and that she -- you know -- was not pleased

14   to change her mind; but I don't remember anything

15   more than that.

16   BY MS. McGOWAN:

17       Q.    But was it your sense from Ms. Preece that

18   once she heard this information from Ms. Schroer, she

19   knew that she probably had to make a different

20   choice?

21       A.    Yes.  It was my sense, based on her --

22   again -- consultations with the other people.

Francis T. Miko                                                         March 14, 2008
                            Washington, DC

Page 100

1        Q.     Was there any conversation that you had

2   with Ms. Preece about concerns over how Members of

3   Congress or their staffers would interact with the

4   plaintiff as Diane Schroer?

5        A.     I don't remember that specifically.  She

6   may have mentioned that.

7        Q.     Was there any discussion about how others

8   at CRS might interact with the plaintiff if she came

9   to work as Diane Schroer?

10       A.     She may have expressed concern about the

11  timing and so forth.  But I can't remember

12  specifically if she did or how she did.  But

13  certainly I would have wondered how the people in our

14  division would have approached the transition.

15             It would be the transition if the

16  transition had already occurred as opposed to sort of

17  being in process.

18             But that was not -- that was not a major

19  point of discussion.

20       Q.     And when you said the timing, is that --

21       A.     I meant timing by the fact that she was

22  undergoing the transition rather than having

Francis T. Miko                                                          March 14, 2008
                          Washington, DC

Page 101

1    completed the transition.

2         Q.    Did Ms. Preece say anything to you about

3    Ms. Schroer had put the Library in an awkward

4    position?

5         A.    I don't remember specifically stating it

6    in those terms.

7         Q.    Was there any discussion at all, whether

8    in those terms or different language, conveying that

9    Ms. Preece felt as though she had been set up?

10        A.    I think she wondered about that.

11        Q.    Did she articulate anything about that in

12   her discussions with you?

13        A.    I'm trying to remember if there was

14   anything specific.

15             No.    I just -- I can't remember think of

16   any.

17        Q.    In your conversation with Ms. Preece, you

18   mentioned that she said that she spoke to individuals

19   from the personnel security office?

20        A.    Yes.

21        Q.    Did she mention Cynthia Wilkins

22   specifically?

# Exhibit C –

# Steven Bowman Deposition Designations

Steven R. Bowman                                        March 14, 2008
                           Washington, DC

                                                              Page 1

                   UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF COLUMBIA

        --------------------------------X

          DIANE J. SCHROER,                  :

                  Plaintiff,                 :

                  v.                         :  No. 05-CV-01090 (JR)

          JAMES H. BILLINGTON,               :

                  Defendant.                 :

        --------------------------------X

                           Washington, D.C.

                           Friday, March 14, 2008

                  Deposition of STEVEN R. BOWMAN, a witness

        herein, called for examination by counsel for Plaintiff in

        the above-entitled matter, pursuant to notice, the witness

        being duly sworn by DENNIS A. DINKEL, a Notary Public in and

        for the District of Columbia, taken at the offices of

        WilmerHale, LLP, 1825 Pennsylvania Avenue, N.W., Washington,

        D.C. at 2:00 p.m., Friday, March 14, 2008, and the

        proceedings being taken down by Stenotype by DENNIS A.

        DINKEL, FAPR, CRR, and transcribed under his direction.

Steven R. Bowman                                          March 14, 2008
                        Washington, DC

---

**Page 2**

```
 1    APPEARANCES:
 2
 3       On behalf of the Plaintiff:
 4          SHARON M. McGOWAN, ESQ.
 5          KEN CHOE, ESQ.
 6          American Civil Liberties Union
 7          125 Broad Street
 8          New York, NY 10004
 9          Phone: 212-549-2593
10
11       On behalf of the Defendant:
12          BEVERLY M. RUSSELL, ESQ.
13          United States Attorney's Office for the
14           District of Columbia
15          555 4th Street, N.W.
16          Washington, DC 20530
17          Phone: 202-307-0492
18
19
20
21
```

---

**Page 4**

```
 1                     C O N T E N T S
 2    WITNESS                       PAGE
 3      STEVEN R. BOWMAN
 4
 5    EXAMINATION BY COUNSEL FOR PLAINTIFF        5
 6
 7                      EXHIBITS
 8    EXHIBIT NO.        DESCRIPTION        PAGE
 9      56   Bates 48 through 80            43
10      57   Bates PO 505 through PO 539    53
11      58   Bates 117              71
12      59   Bates PO 698              76
13
14
15
16
17
18
19
20
21
22
```

---

**Page 3**

```
 1
 2
 3       On behalf of the Defendant (cont.):
 4          JULIA K. DOUDS, ESQ.
 5          EVELIO RUBIELLA, ESQ.
 6          Assistant General Counsel
 7          Library of Congress
 8          101 Independence Avenue, S.E.
 9          Washington, DC 20540-1050
10          Phone: 202-707-7198
11
12
13
14
15
16
17
18
19
20
21
22
```

---

**Page 5**

```
 1               P R O C E E D I N G S
 2    Whereupon,
 3            STEVEN R. BOWMAN,
 4    was called as a witness by counsel for Plaintiff, and
 5    having been duly sworn by the Notary Public, was
 6    examined and testified as follows:
 7            EXAMINATION BY COUNSEL FOR PLAINTIFF
 8            BY MS. McGOWAN:
 9        Q.   Good afternoon, Mr. Bowman.
10            My name is Sharon McGowan.  I'm here with
11    my colleague, Ken Choe.  We represent the plaintiff
12    in Schroer versus Billington.
13            I'm here this afternoon to take your
14    deposition.  I'm going to ask you a series of
15    questions that you will answer under oath, as you've
16    just been sworn, and the court reporter will take it
17    all down.  Okay?
18        A.   All right.
19        Q.   For purposes of the deposition, it is
20    important that you answer out loud.  It is difficult,
21    if not impossible, for the court reporter to record
22    gestures and head movements.  Okay?
```

---

2 (Pages 2 to 5)

Steven R. Bowman                                                    March 14, 2008
Washington, DC

Page 93

```
 1          Q.    What were the photographs of?

 2          A.    Of Schroer presenting as a woman.  You

 3    know, that's just what she said.  Schroer as a woman.

 4          Q.    Did she describe what Ms. Schroer was

 5    wearing?

 6          A.    No.  Huh-uh.  I don't even know if -- she

 7    didn't even say whether they were just facial shots

 8    or full shots.  Just that there were photographs.

 9          Q.    Did you ask at all for more information

10    about what was in the photographs?

11          A.    No.

12          Q.    Why not?

13                MS. RUSSELL:  Objection.  Calls for

14    speculation.

15                THE WITNESS:  Didn't occur to me.

16                BY MS. McGOWAN:

17          Q.    Did you and Ms. Preece discuss at all how

18    Ms. Schroer looked dressed in women's clothing?

19          A.    I didn't.  I don't know if Charlotte said

20    something or not.  I really don't remember.

21          Q.    Do you recall any discussion about

22    concerns over whether or not Ms. Schroer actually
```

Steven R. Bowman                                                    March 14, 2008
                        Washington, DC

Page 94

1    looked like a woman when dressed in women's clothing?

2         A.    Charlotte may have said something like

3    that, now that you are bringing it up.   There is a

4    vague recollection that she made some comment, but I

5    couldn't be specific on what she said, except it was

6    not particularly positive.   That's -- I come up with

7    a sense of that.   But I really don't remember beyond

8    that.

9         Q.    Did Ms. Preece talk to you at all about

10   what concerns she had as a result of learning this

11   information from Ms. Schroer?

12        A.    Just what's it going to do to the process.

13   She didn't know what effect this would have.   That's

14   why I said, you've got to go to the second floor.

15        Q.    Did she say anything else about her

16   concerns about an impact on the process as a result

17   of this information?

18        A.    No.   I don't think so.   I don't remember

19   any -- no.   I don't remember.

20        Q.    In the course of the discussion, was --

21   did anything Ms. Preece -- was there anything that

22   Ms. Preece said that conveyed that it was almost a

Steven R. Bowman
Washington, DC

March 14, 2008

Page 103

1        A.    No.

2        Q.    Did either of you, in the course of this

3   conversation, express any opinion about whether or

4   not this information about Ms. Schroer should impact

5   her chance of getting the job?

6        A.    No.

7        Q.    Was there any discussion about whether or

8   not it would impact her chance of getting the job?

9        A.    That it could.

10       Q.    Was there any discussion about either you

11  or she feeling disappointed that information had come

12  up about Ms. Schroer that might impact negatively her

13  ability to get the job?

14       A.    No.  I don't remember anything like that.

15       Q.    In the conversation, did either of you

16  express concerns about Ms. Schroer's honesty?

17       A.    No, aside from what I said earlier that,

18  you know, why didn't this come up in the interview,

19  when there was an opportunity to do so, to bring it

20  up.  But that's the only comment.

21       Q.    Was there any discussion, other than what

22  we've talked about, any other concerns that were

Steven R. Bowman

Washington, DC

March 14, 2008

Page 104

1    triggered by Ms. Schroer's revelation of her

2    intention to transition from male to female?

3        A.    No.  Not that I'm aware.

4        Q.    Was there any discussion about additional

5    information that would be needed in order to assess

6    what the impact of Ms. Schroer's gender transition

7    would be?

8        A.    Not with me.

9        Q.    Was there any discussion you had with

10   Ms. Preece about getting information from the health

11   services office?

12       A.    No.

13       Q.    Other than what we've discussed, was there

14   any discussion about Ms. Schroer's psychological

15   health or well-being?

16       A.    No.  Not other than what we've discussed,

17   no.  No.

18       Q.    Was there any discussion about Ms. Schroer

19   being distracted as a result of her gender

20   transition?

21       A.    Distracted?  No.

22       Q.    Was there any mention of contacting either

Steven R. Bowman
Washington, DC

March 14, 2008

Page 105

1    Ms. Schroer or health care providers to find out more

2    information about her gender transition?

3        A.    Not with me.  No discussion with me about

4    that.

5        Q.    Was there any discussion about finding out

6    whether or not Ms. Schroer had reported this

7    information to the security clearance agency that

8    held her clearance at that time?

9        A.    No.  I don't -- I don't believe so.  I

10   kind of wondered about that privately to myself.  But

11   that -- but you know, we didn't talk about that,

12   because that's kind of out of our realm.

13       Q.    Was there any discussion with Ms. Preece

14   about whether or not Ms. Schroer's references knew

15   this information about Ms. Schroer at that time?

16       A.    No.  No discussion that I remember.  No.

17       Q.    Was there any discussion about whether

18   Ms. Schroer would pose a security risk as a result of

19   her gender transition?

20       A.    No.

21       Q.    And recognizing that we've spent more time

22   talking about the conversation than it may have

**Exhibit D –**

**Gary Pagliano Deposition Designations**

Gary J. Pagliano                                          March 13, 2008
                         Washington, DC

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

-------------------------------X

DIANE J. SCHROER,                    :

          Plaintiff,                 :

     v.                              :   No. 05-CV-01090 (JR)

JAMES H. BILLINGTON,                 :

          Defendant.                 :

-------------------------------X

                         Washington, D.C.

                         Thursday, March 13, 2008

          Deposition of GARY J. PAGLIANO, a witness

herein, called for examination by counsel for Plaintiff in

the above-entitled matter, pursuant to notice, the witness

being duly sworn by DENNIS A. DINKEL, a Notary Public in and

for the District of Columbia, taken at the offices of

WilmerHale, LLP, 1825 Pennsylvania Avenue, N.W., Washington,

D.C. at 1:52 p.m., Thursday, March 13, 2008, and the

proceedings being taken down by Stenotype by DENNIS A.

DINKEL, FAPR, CRR, and transcribed under his direction.

Gary J. Pagliano                                        March 13, 2008
                          Washington, DC

---

Page 2

APPEARANCES:

1  APPEARANCES:
2     On behalf of the Plaintiff:
3        SHARON M. McGOWAN, ESQ.
4        KEN CHOE, ESQ.
5        American Civil Liberties Union
6        125 Broad Street
7        New York, NY 10004
8        Phone: 212-549-2593
9
10    On behalf of the Defendant:
11       BEVERLY M. RUSSELL, ESQ.
12       United States Attorney's Office for the
13          District of Columbia
14       555 4th Street, N.W.
15       Washington, DC 20530
16       Phone: 202-307-0492
17        and
18
19
20
21

---

Page 3

1  APPEARANCES (Continued):
2
3     On behalf of the defendant (continued):
4        JULIA K. DOUDS, ESQ.
5        EVELIO RUBIELLA, ESQ.
6        Assistant General Counsel
7        Library of Congress
8        101 Independence Avenue, S.E.
9        Washington, DC 20540-1050
10       Phone: 202-707-7198
11
12
13
14
15
16
17
18
19
20
22

---

Page 4

                    C O N T E N T S
1
2  WITNESS                        PAGE
3    GARY J. PAGLIANO
4
5  EXAMINATION BY COUNSEL FOR PLAINTIFF      5
6
7            EXHIBITS
8  EXHIBIT NO.     DESCRIPTION       PAGE
9        (No exhibits marked)
10
11
12
13
14
15
16
17
18
19
20
21
22

---

Page 5

1               P R O C E E D I N G S
2  Whereupon,
3           GARY J. PAGLIANO,
4  business address at 101 Independence Avenue, S.E.,
5  Washington, D.C., was called as a witness by counsel
6  for plaintiff, and having been duly sworn by the
7  Notary Public, was examined and testified as follows:
8         EXAMINATION BY COUNSEL FOR PLAINTIFF
9  BY MS. McGOWAN:
10    Q.  Good afternoon.
11    A.  Hi.
12    Q.  My name is Sharon McGowan.  I'm here with
13  my colleague Ken Cho.  We represent the plaintiff,
14  Ms. Diane Schroer in Schroer versus Billington.  I'm
15  here this afternoon to take your deposition.
16        I will ask you a series of questions that
17  you will answer under oath, as you've just been
18  sworn.  And the court reporter will take it all down.
19  Okay?
20    A.  Uh-huh.
21    Q.  One of the things that's helpful in the
22  course of the deposition is to make sure that you

---

2 (Pages 2 to 5)

Gary J. Pagliano                                                March 13, 2008
                        Washington, DC

Page 46

1    simple mind, it was going -- it was a gender

2    transformation, going from being Dave to being Diane.

3    That's -- I don't remember whether she mentioned any

4    specific terminology.

5         Q.    Did Ms. Preece say anything about

6    Ms. Schroer showing her pictures during lunch?

7         A.    No.   That I would have remembered.   I

8    don't remember that at all.

9         Q.    Did Ms. Preece say anything at all about

10   Ms. Schroer's intention to dress in women's attire?

11        A.    I think when she told me that Dave wanted

12   to be Diane and he wanted -- she wanted to report to

13   work in women's attire, yes; I think that was

14   mentioned.   Yes.

15        Q.    And in mentioning that, what did

16   Ms. Preece say?

17        A.    It was just part of the story of her -- of

18   Dave deciding he wanted to be Diane.   And report to

19   work in women's clothing.

20        Q.    Did Ms. Preece or you discuss any concern

21   about how Ms. Schroer would look in women's clothing?

22        A.    No.   I personally had a concern as to --

Page 47

 1    well, there was a concern about how -- I mean, we

 2    were wondering about how the staff would -- you know,

 3    the Hill staff would react, knowing that we hired

 4    Dave but we had Diane.  How that would work and how

 5    many staffers would say how did you do that.

 6              So no.  But other than that, I had --

 7        Q.    The concern about the reaction of Hill

 8    staffers, was that something you mentioned to

 9    Ms. Preece?

10        A.    No.  But I thought about it.

11        Q.    Did you discuss that concern with anyone

12    else?

13        A.    No.

14              MS. RUSSELL:  Objection to the form.

15    BY MS. McGOWAN:

16        Q.    Did Ms. Preece ever express to you any

17    concern about the reaction of Members of Congress or

18    their staff if she hired a transgender analyst?

19        A.    No.  No.  No.

20        Q.    Did you and she discuss any concern about

21    how other members of CRS would react to the knowledge

22    that a transgendered woman had been hired?

**Exhibit E --**

**Daniel Mulhollan Deposition Designations**

Daniel P. Mulhollan                                          March 13, 2008
                          Washington, DC

                                                              Page 1

                  UNITED STATES DISTRICT COURT

                  FOR THE DISTRICT OF COLUMBIA

-------------------------------X

    DIANE J. SCHROER,                      :

              Plaintiff,                   :

              v.                           :   No. 05-CV-01090 (JR)

    JAMES H. BILLINGTON,                   :

              Defendant.                   :

-------------------------------X

                          Washington, D.C.

                          Thursday, March 13, 2008

          Deposition of DANIEL P. MULHOLLAN, a witness

herein, called for examination by counsel for Plaintiff in

the above-entitled matter, pursuant to notice, the witness

being duly sworn by DENNIS A. DINKEL, a Notary Public in and

for the District of Columbia, taken at the offices of

WilmerHale, LLP, 1825 Pennsylvania Avenue, N.W., Washington,

D.C. at 9:32 a.m., Thursday, March 13, 2008, and the

proceedings being taken down by Stenotype by DENNIS A.

DINKEL, FAPR, CRR, and transcribed under his direction.

Daniel P. Mulhollan                                    March 13, 2008
                        Washington, DC

---

Page 2

APPEARANCES:

1
2
3   On behalf of the Plaintiff:
4       SHARON M. McGOWAN, ESQ.
5       KEN CHOE, ESQ.
6       American Civil Liberties Union
7       125 Broad Street
8       New York, NY 10004
9       Phone: 212-549-2593
10
11  On behalf of the Defendant:
12      BEVERLY M. RUSSELL, ESQ.
13      United States Attorney's Office for the
14       District of Columbia
15      555 4th Street, N.W.
16      Washington, DC 20530
17      Phone: 202-307-0492
18
19
20
21

---

Page 3

APPEARANCES:

1
2
3   On behalf of the Defendant (cont.):
4       JULIA K. DOUDS, ESQ.
5       EVELIO RUBIELLA, ESQ.
6       Assistant General Counsel
7       Library of Congress
8       101 Independence Avenue, S.E.
9       Washington, DC 20540-1050
10      Phone: 202-707-7198
11
12
13
14
15
16
17
18
19
20
22

---

Page 4

                     C O N T E N T S

1
2   WITNESS                        PAGE
3       DANIEL P. MULHOLLAN
4
5   EXAMINATION BY COUNSEL FOR PLAINTIFF        5
6
7           EXHIBITS
8   EXHIBIT NO.    DESCRIPTION        PAGE
9   45   Bates number 736 to 737        125
10  46   Bates number 738 to 739        125
11
12
13
14
15
16
17
18
19
20
21
22

---

Page 5

                  P R O C E E D I N G S

1
2   Whereupon,
3           DANIEL P. MULHOLLAN,
4   business address at Library of Congress, 101
5   Independence Avenue, S.E., Washington, D.C., was
6   called as a witness by counsel for Plaintiff, and
7   having been duly sworn by the Notary Public, was
8   examined and testified as follows:
9       EXAMINATION BY COUNSEL FOR PLAINTIFF
10      BY MS. McGOWAN:
11      Q.   Mr. Mulhollan, good morning.  I am Sharon
12  McGowan.  I am here with my colleague, Ken Choe.  We
13  represent the plaintiff in Schroer versus Billington.
14          I am here this morning to take your
15  deposition.  I'll ask you a series of questions.  You
16  will answer under oath, as you've just been sworn,
17  and the court reporter will take it all down; is that
18  okay?
19      A.   Of course.
20      Q.   It is important for you to answer out loud
21  as the court reporter cannot record a nod of the head
22  or other gestures, okay?

---

2 (Pages 2 to 5)

Daniel P. Mulhollan                                                    March 13, 2008
                              Washington, DC

Page 12

1    was Diane Duffy and Douglas Warshof.

2         Q.    Did you speak with anyone else?

3         A.    Not to my recollection.

4         Q.    In particular, anyone who is not part of

5    your legal team?

6         A.    No.

7         Q.    Mr. Mulhollan, are you employed?

8         A.    On occasion, yes.

9         Q.    Who is your employer?

10        A.    The United States Congress.

11        Q.    And what is your title?

12        A.    Director of the Congressional Research

13   Service.

14        Q.    And what are your job responsibilities?

15        A.    To ensure the fact that Congress has

16   objective, nonpartisan analysis on the legislation

17   and deliberations before Congress.

18        Q.    Anything else?

19        A.    To ensure that, in fact, that the

20   Congressional Research Service as an institution is

21   there available to Congress, 24/7, in order to help

22   Congress in its -- in the difficult decisions it has

Daniel P. Mulhollan
Washington, DC

March 13, 2008

Page 122

```
 1    believe there is in the regulations -- and this is

 2    speculation on my part -- that there's any

 3    characterization of the kind of competency or

 4    specialization on the part of the physician.

 5              BY MS. McGOWAN:

 6       Q.    Is there anything else regarding

 7    restrictions or qualifications on an individual's

 8    ability to take sick leave for management of a

 9    condition?

10       A.    With regard to a person's sick leave, with

11    regard to taking sick leave?

12       Q.    Taking sick leave.

13       A.    There may well be, but I don't know.

14       Q.    With respect to the annual leave policy,

15    by which I mean non-sick leave, personal leave,

16    however it is denominated, are there any restrictions

17    on what an employee may use his or her annual leave

18    for?

19       A.    To my recollection, no.  But I -- I'd have

20    to check to see that that is a verifiable fact.

21       Q.    If an employee wanted to take care of any

22    health care concern by using his or her annual leave
```

Daniel P. Mulhollan                                                    March 13, 2008
                              Washington, DC

```
1    as opposed to sick leave, are there any restrictions

2    on their ability to do so?

3         A.    I don't believe so.

4         Q.    Have you had any communication with

5    Members of Congress about this matter?

6         A.    Yes.  Not Members of Congress

7    individually.  But -- oh, yes.  As a matter of fact,

8    I have.

9         Q.    And I can broaden that to Members of

10   Congress or their staff.  And so tell me about what

11   interaction you have had?

12        A.    I wouldn't be telling you.

13              MS. RUSSELL:  Objection.

14              THE WITNESS:  You have to understand,

15   we're under the speech and debate clause.  From my

16   perspective, the Congressional Research Service

17   communication with Congress is confidential.  I'm not

18   able to further elaborate on those conversations.

19              BY MS. McGOWAN:

20        Q.    Did you receive --

21              MS. RUSSELL:  Actually -- okay.  Go ahead.

22              BY MS. McGOWAN:
```

**Exhibit F –**

**Bessie Alkisswani Deposition Designations**

Bessie Alkisswani                                          January 8, 2007
                              Washington, DC

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ x
DIANE J. SCHROER,                    :
                                     :
          Plaintiff,                 :
                                     :
               v.                    :   CA No. 06-763
                                     :
JAMES H. BILLINGTON,                 :
                                     :
          Defendant.                 :
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ x

                        Washington, D.C.

                        Monday, January 8, 2007


          Deposition of BESSIE ALKISSWANI, called

for examination by counsel for Plaintiff, pursuant

to notice, at the Law Offices of 1875 Pennsylvania

Avenue, N.W., Washington, D.C., and commencing at

9:35 a.m., before Barbara a. Huber, Notary Public in

and for the District of Columbia, when were present

on behalf of the respective parties:

Bessie Alkisswani                                January 8, 2007
Washington, DC

---

Page 2

1  APPEARANCES:
2   On behalf of Plaintiff:
3    SHARON M. McGOWAN, ESQUIRE
     JAMES D. ESSEKS, ESQUIRE
4    American Civil Liberties Union Foundation
     125 Broad Street
5    18th Floor
     New York, New York 10004-2400
6    (212) 549-2593
     smcgowan@aclu.org
7
    On behalf of Defendant:
8
     BEVERLY M. RUSSELL, ESQUIRE
9    U.S. Department of Justice
     Judiciary Center Building
10   555 4th Street, N.W.
     Washington, D.C. 20001
11   (202) 307-0492
     beverly.russell@usdoj.gov
12
    Also Present:
13
     Jessie James, Jr.
14   Julia Douds
15
16
17        * * * * *
18
19
20

---

Page 3

# CONTENTS

1
2  EXAMINATION BY:              PAGE
3   Counsel for Plaintiff          4
4
5
6
7
8  DEPOSITION EXHIBITS:         PAGE
9  No. 12 - Final Referral List        140
10 No. 13 - Calendar, Tuesday, December 21, 2004  148
11 No. 14 - Memo, December 21, 2004, 10:54 a.m.   151
12 No. 15 - Memo, December 12, 2004, 11:48 a.m.   160
13 No. 16 - Memo, January 4, 2003      184
14 No. 17 - Memo, February 1, 2005     205
15 No. 18 - Memo, June 2, 2005         212
16
17
18
19
20

---

Page 4

1          P R O C E E D I N G S
2  Whereupon,
3          BESSIE ALKISSWANI,
4  was called as a witness by counsel for Plaintiff,
5  and having been duly sworn, by the Notary Public,
6  was examined and testified as follows:
7      EXAMINATION BY COUNSEL FOR PLAINTIFF
8  BY MS. McGOWAN:
9    Q   Morning.
10   A   Morning.
11   Q   Ms. Alkisswani, my name is Sharon
12 McGowan.  And I'm here with my colleague, James
13 Esseks.  And we represent the plaintiff in Schroer
14 versus Billington.
15     MS. McGOWAN:  Off the record for a
16 moment.
17     (Discussion off the record)
18 BY MS. McGOWAN:
19   Q   We represent the plaintiff in Schroer
20 versus Billington.  And we are here this morning
21 to take your deposition.
22     Have you ever been deposed before?

---

Page 5

1    A   No.
2    Q   Okay.  So I'm going to just run through
3  a series of preliminary things so that you
4  understand how things will proceed today.  I'm
5  going to ask you a series of questions that you
6  will answer under oath, as you've just been sworn
7  in.  And the court reporter will take it all down.
8  Okay?
9    A   Uh-huh.
10   Q   And it's important that you answer out
11 loud, because the court reporter cannot record
12 nods or other gestures.  Okay?
13   A   Okay.
14   Q   And if you don't understand a question,
15 will you ask me to repeat it?
16   A   Yes.
17   Q   Okay.  And if you do answer a question,
18 I'm going to assume that you understood the
19 question.  Okay?
20   A   Okay.
21   Q   And I will take breaks throughout the
22 day.  But if you need to take a break, you should

---

2 (Pages 2 to 5)

1    in the case, Ms. Schroer went by the name David

2    Schroer.  So during this deposition, when I talk

3    about Diane Schroer or Ms. Schroer, I'm also

4    referring to the person formerly known as David

5    Schroer.  Okay?

6        A    Okay.

7        Q    Ms. Alkisswani, what is your title?

8        A    I am the associate director for the

9    office of workforce development in the

10   Congressional Research Service.

11       Q    And so are your responsibilities

12   exclusively within the Congressional Research

13   Service, or do you have responsibilities with the

14   larger Library, as well?

15       A    Exclusively within the Congressional

16   Research Service.

17                      (Whereupon Ms. Russell

18                      entered the deposition.)

19        MS. McGOWAN:  Good morning, Beverly.

20        MS. RUSSELL:  Good morning.

21   BY MS. McGOWAN:

22        Q    What are the responsibilities of

Bessie Alkisswani                                                          January 8, 2007
                            Washington, DC

Page 101

```
 1        A     I did not.

 2        Q     All right.  And did you speak with

 3   Cynthia Wilkins?

 4        A     I did not.

 5        Q     Okay.  And so -- and did you speak with

 6   anyone else at the Library about this matter that

 7   Mr. Ronhovde had --

 8        A     I did not.

 9        Q     -- brought to you?

10              Did you speak with anyone outside of the

11   Library about the fact that Mr. Ronhovde had come

12   to you with this issue?

13        A     No.  I did not.

14        Q     So describe to me the next time that you

15   discussed this issue.

16        A     It was in a meeting with Mr. Ronhovde,

17   Cynthia Wilkins, Charlotte Preece, and Kathy Deese

18   from my staff.

19        Q     And who is Kathy Deese?

20        A     She is my deputy.

21        Q     So where did you have this meeting?

22        A     In Kent Ronhovde's office.
```

Bessie Alkisswani                                           January 8, 2007
                        Washington, DC

1    suitability and all of that.  And I don't know all

2    of the particulars, but that was -- that was our

3    focus.

4        Q    And when Charlotte describes sort of

5    what Ms. Schroer had said to her about, you know,

6    what was involved, how did she explain sort of

7    what information had been conveyed to her about

8    what was involved?

9        A    She was -- all -- all I remember is she

10   was -- she said that he had mentioned to her that

11   he was going to report to work as -- as a female.

12   And she -- he was going to take the name of Diane,

13   and had shown her this portfolio, and that she was

14   really surprised.  She -- it was just a real

15   surprise to her that this had happened and that

16   this had occurred.

17       Q    How did she describe what was in the

18   portfolio?

19       A    Just -- just what I just said, pictures

20   of what he would look like as female.  That's all

21   she said.

22       Q    Did she express any comment about

```
1    security clearance process, which of these codes

2    you use?

3        A    I'd rather --

4            MS. RUSSELL:  Objection.  Calls for

5    speculation.

6            But you can answer if you know.

7            THE WITNESS:  I -- would you repeat the

8    question?

9    BY MS. McGOWAN:

10       Q    Sure.  If you were the hiring official

11   and you were asked to fill out this form and there

12   was a candidate that you were not selecting for

13   the reason that they would take too long to go

14   through the security clearance process, which code

15   would you used to reflect that reason for not

16   choosing the candidate?

17       A    Well --

18           MS. RUSSELL:  I'm also going to object

19   on relevance grounds.

20           And I hope that you can remember the

21   question.

22           THE WITNESS:  Okay.  Let me answer it
```

Bessie Alkisswani

January 8, 2007

Washington, DC

Page 146

```
 1    this way.  If that was the only reason -- and,

 2    again, this is -- this is hypothetical.  And it's

 3    applying to me, and I'm in this situation.

 4            If I only had two candidates and their

 5    qualifications were equal, totally equal, okay,

 6    and even to the point where one candidate even --

 7    even though one candidate's experience may have

 8    been more -- if they both -- both candidate's

 9    experience were absolutely equal, okay, they

10    offered the exact same background, the exact same

11    everything, totally equal, and the only reason I'm

12    taking one over the other was because of the time

13    it takes for the security clearance, I would have

14    done NSO.

15    BY MS. McGOWAN:

16        Q    Okay.

17        A    And I would have documented that.  But I

18    need to explain something else.  Because I had

19    been in this situation myself.  These are the

20    codes that we are provided by the Library.  And

21    even if -- even if one candidate -- their

22    experience is relevant.  If one candidate's
```

Page 147

1    experience is more relevant than the other, you

2    can always use that, since these are the only ones

3    that -- that are there, in terms of what we are

4    looking at.

5        Q    Okay.  Turning back -- we're actually

6    done with that document.  So if you want to hand

7    it back to our court reporter.

8        A    (Handing document).

9        Q    Turning back to the meeting that we were

10   describing before lunch, the meeting with

11   Mr. Ronhovde and the meeting with the Office of

12   General Counsel.

13           Are meetings like those a common part of

14   the hiring process?

15       A    If there is an unusual situation, then

16   we would meet and we would consult.

17       Q    How often have you had meetings like

18   those as part of the hiring process?

19       A    They don't happen very often, but

20   occasionally.

21       Q    I'm going to next ask you to look at the

22   document that we will mark Number 13.

**Exhibit G –**

**Kathryn Deese Deposition Designations**

Kathryn Deese                                              March 7, 2008
                        Washington, DC

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

---------------------------------X

    DIANE J. SCHROER,                    :

            Plaintiff,                   :

            v.                           :   No. 05-CV-01090 (JR)

    JAMES H. BILLINGTON,                 :

            Defendant.                   :

---------------------------------X

                        Washington, D.C.

                        Friday, March 7, 2008

        Deposition of KATHRYN N. DEESE, a witness

herein, called for examination by counsel for Plaintiff in

the above-entitled matter, pursuant to notice, the witness

being duly sworn by DENNIS A. DINKEL, a Notary Public in and

for the District of Columbia, taken at the offices of

WilmerHale, LLP, 1825 Pennsylvania Avenue, N.W., Washington,

D.C. at 9:44 a.m., Friday, March 7, 2008, and the

proceedings being taken down by Stenotype by DENNIS A.

DINKEL, FAPR, CRR, and transcribed under his direction.

Kathryn Deese                                              March 7, 2008
                        Washington, DC

**Page 2**

1  APPEARANCES:
2      On behalf of the Plaintiff:
3          SHARON M. McGOWAN, ESQ.
4          KEN CHOE, ESQ.
5          American Civil Liberties Union
6          125 Broad Street
7          New York, NY 10004
8          Phone: 212-549-2593
9
10     On behalf of the Defendant:
11         BEVERLY M. RUSSELL, ESQ.
12         United States Attorney's Office for the
13            District of Columbia
14         555 4th Street, N.W.
15         Washington, DC 20530
16         Phone: 202-307-0492
17         JULIA K. DOUDS, ESQ.
18         Assistant General Counsel
19         Library of Congress
20         101 Independence Avenue, S.E.
21         Washington, DC 20540-1050
2          Phone: 202-707-7198

**Page 3**

1            C O N T E N T S
2  WITNESS                    PAGE
3  KATHRYN N. DEESE
4
5  EXAMINATION BY COUNSEL FOR PLAINTIFF      4
6  EXAMINATION BY COUNSEL FOR DEFENDANT    160
7
8  AFTERNOON SESSION            108
9
10           EXHIBITS
11  EXHIBIT NO.   DESCRIPTION      PAGE
12        (No exhibits marked)
13
14
15
16
17
18
19
20
?1
.2

**Page 4**

1            P R O C E E D I N G S
2  Whereupon,
3          KATHRYN N. DEESE,
4  was called as a witness by counsel for PLAINTIFF, and
5  having been duly sworn by the Notary Public, was
6  examined and testified as follows:
7      EXAMINATION BY COUNSEL FOR PLAINTIFF
8  BY MS. McGOWAN:
9    Q.  Good morning, Ms. Deese.  I am Sharon
10  McGowan, and I'm here with my colleague Ken Choe, and
11  we represent the plaintiff in the matter of Schroer
12  v. Billington.  I'm here this morning to take your
13  deposition.
14      Have you been deposed before?
15    A.  Yes.
16    Q.  So you may be familiar with the general
17  proceedings, but I will just go over how we'll do
18  things today.
19      If you have any questions, certainly ask
20  me.  I'm going to ask you a series of questions that
21  you will answer under oath as you have just been
22  sworn.  And the court reporter will take it all down.

**Page 5**

1  Okay?
2    A.  Uh-huh.  Yes.
3    Q.  That was my next point.  Very important.
4  To answer out loud and to try to minimize -- as will
5  I -- use of gestures or things that might actually
6  not translate very well on to paper; okay?
7    A.  All right.
8    Q.  And if you don't understand a question,
9  would you ask me to repeat it or rephrase it?
10    A.  All right.
11    Q.  And if you answer a question, I'm going to
12  then assume that you actually understood the
13  question.  Okay?
14    A.  Yes.
15    Q.  I will take breaks throughout the day.
16  But if you need a break, let me know and I'll try to
17  find a place where we can take a break as soon as
18  possible.  All right?
19    A.  All right.
20    Q.  Are you taking any medication today that
21  would prevent you from being able to give complete
22  and accurate testimony?

2 (Pages 2 to 5)

Kathryn Deese                                                                                      March 7, 2008
                                    Washington, DC

1      deputy director of CRS might ask me to do.

2          Q.    And who is the deputy director of CRS to

3      whom you report?

4          A.    Angela Evans.

5          Q.    And what is the nature, generally

6      speaking, of the projects that you work on?

7          A.    Developing performance assessment

8      standards for CRS staff.  That's one of the major

9      projects.

10             Assisting in the development of the

11     orientation for the new section heads.

12         Q.    Anything else?

13         A.    Preparing job descriptions if requested.

14         Q.    Anything else?

15         A.    I think that's it.

16         Q.    And prior to August 2007, were you

17     employed at the Congressional Research Service?

18         A.    Yes.

19         Q.    And what position did you hold prior to

20     August 2007?

21         A.    I was deputy associate director for

22     workforce development.

Kathryn Deese                                                                              March 7, 2008
                              Washington, DC

1          Q.     What is the approximate date you began in

2     that position?

3          A.     I think January 11 or 12 of 2004.

4          Q.     And so to be clear, this is the position

5     you held at the time of the events in this case, the

6     deputy associate director for workforce development

7     position?

8          A.     Yes.

9          Q.     What were your job responsibilities in

10    that -- in the deputy associate position?

11         A.     To supervise the workforce development

12    staff, to manage projects, and to oversee the

13    operations of the workforce development office; and

14    specifically, assisting in standing up the KSG, the

15    Knowledge Services Group, which had been organized.

16                That was a major project that lasted for

17    quite some time.  In addition to that, I was hiring

18    CRS staff and developing a training program.

19                MS. McGOWAN:  I wanted to make sure I had

20    everything down on my list.

21    BY MS. McGOWAN:

22         Q.     With respect to the first job

Kathryn Deese                                                    March 7, 2008
                        Washington, DC

Page 14

1     were you involved in other hires in CRS?

2          A.    Hiring in the Office of Workforce

3     Development.

4          Q.    With respect to your responsibilities that

5     I believe you described as overseeing the workforce

6     development office, what did that entail?

7          A.    In terms of my supervisory

8     responsibilities?

9               Approving leave; that type of thing.  At

10    the beginning, I was much more involved, though, with

11    the KSG than supervising the day-to-day supervision

12    in terms of performance appraisals.  I didn't start

13    doing that until later.

14         Q.    Do you recall approximately when you

15    became more involved in performance appraisals?

16         A.    Probably toward the end of my first year.

17         Q.    So the end of 2004; is that --

18         A.    Yes.

19         Q.    With respect to your responsibilities

20    regarding approving leave, whose requests for leave

21    were you approving?

22         A.    The section heads.

Kathryn Deese                                           March 7, 2008
                        Washington, DC

Page 151

1    or lose leave, you ask them to project it out so

2    everybody doesn't leave the first of December and

3    come back in the middle of January.

4         Q.    That might lead to problems?

5         A.    That can be an issue.

6         Q.    When an individual submits a request to

7    take leave, do they have to specify what they're

8    intending to do while on leave?

9         A.    No.  For annual leave, you don't have to

10   give a reason.

11        Q.    As a matter of practice, do people reveal

12   what they're intending to do when they're on leave?

13        A.    It varies.  It varies with the person.

14   Some people are very private and say I want to take

15   annual leave next Friday.  That's fine.  Some people

16   will tell you I want to take annual leave next Friday

17   and they tell you what they're going to do from 7:00

18   in the morning until midnight, things you'd rather

19   not know.

20              But generally speaking, if it's a

21   vacation, people will usually tell you that, if

22   they're going to be gone for several days.

Kathryn Deese                                                          March 7, 2008
                          Washington, DC

```
 1    due to a work crunch that would be negatively

 2    impacted by somebody taking leave, are there any

 3    other reasons why if somebody wanted to take their

 4    annual leave would impact whether or not the leave

 5    requests were approved?

 6         A.    I can't think of a reason.  Not off --

 7    just offhand, I can't think of a reason.

 8              MS. McGOWAN:  Can we go off the record?

 9              (Recess.)

10    BY MS. McGOWAN:

11         Q.    During the meeting where you were present

12    with Ms. Alkisswani and Ms. Preece and Mr. Ronhovde,

13    you mentioned that there was a concern about whether

14    or not, in light of the information about

15    Ms. Schroer's gender transition, that the security

16    clearance process could be completed in a timely

17    manner; is that --

18         A.    Yes.

19         Q.    Was there any discussion about how much

20    time would be timely?

21         A.    You mean -- ask me that again.

22         Q.    Sure.  There was concern about having this
```

Page 154

1    process being completed in a timely manner?

2        A.    Yes.

3        Q.    I'm interested in whether or not there was

4    any discussion about how much time that meant?   How

5    quickly would it need to have been completed in order

6    to have been timely?

7        A.    I don't remember.   I don't remember.

8        Q.    Was there any discussion at all about how

9    quickly it would need to have happened?

10        A.    I don't remember a time put on "timely."

11    I don't remember that.

12        Q.    Was there any discussion by anyone at the

13    meeting that the process needed to be completed by X

14    date?

15        A.    Only that we needed the job filled as

16    quickly as possible, which meant as quickly as

17    possible.

18        Q.    Was there any discussion about whether the

19    need to fill the position quickly was more important

20    than picking the top candidate for job?

21            MS. RUSSELL:   Objection to the form.

22            THE WITNESS:   My understanding is that